# ALSTON & BIRD

90 Park Avenue
New York, NY 10016
212-210-9400 | Fax: 212-210-9444

BY ECF

September 20, 2023

Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Nicole Daedone & Rachel Cherwitz*, 1:23-cr-00146

Dear Judge Gujarati:

This firm represents Rachel Cherwitz in connection with the above-referenced matter. We write in response to the Government's September 13, 2023 letter requesting a *Curcio* hearing, ECF Dkt. No. 42 (the "September 13 Letter"), and at the direction of the Court's September 15, 2023 Docket Order. As set forth more fully below, in lieu of a more formal submission, this letter will: 1) supplement the procedural record of this issue; 2) demonstrate that the Government's concerns are speculative, hypothetical, and do not justify conducting a *Curcio* hearing; 3) address the Government's reliance on inapposite cases; and 4) address Ms. Cherwitz's informed consent and Alston & Bird's compliance with the applicable Rules of Professional Conduct which obviate the need for a *Curcio* hearing.

I.   The Government Fails to Identify an Appropriate Basis Entitling It to the Details of Ms. Cherwitz's Legal Fee Arrangement

We have participated in an open dialogue with the Government regarding their *Curcio* concerns, which were first raised during a call on August 10, 2023. Specifically, the Government indicated that prior counsel for Ms. Cherwitz had purportedly confirmed that OneTaste (the "Company") or its owners[1] were advancing Ms. Cherwitz's legal fees and, without basis or justification, demanded that we, as current counsel, provide details about Ms. Cherwitz's legal fee arrangement. The Government then stated its position that there is a presumed conflict of interest whenever a third party advances legal fees, which, as explained below, is neither supported by a plain reading of the relevant Rules of Professional Conduct, nor is it a fair reading of the applicable case law.

Without confirming the source of payment, we thanked the Government for sharing its view and confirmed that we are fully aware of, and have complied with, our ethical obligations to our client. We also asked the Government to explain its concerns about Ms. Cherwitz's fee arrangement and

---

[1] Anjuli Ayer, Amanda Dunham, and Austin Ayer purchased the Company in 2017.

United States v. Nicole Daedone & Rachel Cherwitz, 1:23-cr-00146-DG
September 20, 2023
Page 2

to provide the legal authority supporting its request for the details of that arrangement and the Government's position that the fact of a third-party payor creates a *per se* conflict. The Government never provided us with that authority, despite offering to do so, and instead submitted to the Court its September 13 Letter.

The Sixth Amendment protects a defendant in connection with using "*wholly legitimate funds* to hire the attorney of [her] choice," and the Government has not alleged that the presumed advanced fees are tainted (they are not). *United States v. Stein*, 541 F.3d 130, 155 (2d Cir. 2008) (quoting *United States v. Farmer,* 274 F.3d 800, 804 (4th Cir. 2001)). Should the Court require disclosure of the details of Ms. Cherwitz's fee arrangement in the first instance, however, we respectfully request leave to do so *ex parte* for the Court's consideration. *See United States v. Raniere*, 18-CR-204 (NGG), ECF Dkt. No. 266 (E.D.N.Y. Jan. 9, 2019) (accepting submission *ex parte* and under seal of information related to defendants' legal fees).

II.     The Government Cannot Identify a Potential Conflict that Is Sufficiently Apparent

The law requires that the Government articulate a potential conflict that is "sufficiently apparent" to justify further inquiry by the Court. *Wood v. Georgia*, 450 U.S. 261, 272 (1981). In support of its position that there is an identifiable conflict, the Government advances a hypothetical, attenuated theory that Alston & Bird's loyalties might conceivably be divided between Ms. Cherwitz, on the one hand, and the Company or Ms. Daedone, on the other, because (1) Ms. Daedone and the Company are "strongly associated," and (2) one of the Company's owners subjectively views the Indictment as attacking the Company's meditative practices. September 13 Letter at 7.

The Government's conclusion from these unremarkable facts is that Ms. Cherwitz might, at some undetermined future date, decide to cooperate or otherwise plead guilty, and might be pressured not do so for fear of "incriminating or disparaging" Ms. Daedone or the Company. *Id.* Put simply, the Government has devised a putative conflict, and it seeks the Court's judicial imprimatur on the advisability of Ms. Cherwitz's hypothetical future cooperation. Such a "vague, unspecified possibility of conflict" amounts only to "creative speculation" that cannot justify the Court's inquiry here. *United States v. Velez*, 354 F.3d 190, 198 (2d Cir. 2004) (quoting *Mickens v. Taylor*, 535 U.S. 162, 168–69 (2002)).

*Curcio* proceedings are not based on positional or hypothetical conflicts. The Government must articulate an actual conflict, and the fact of third-party payment, alone, does not give rise to such a conflict unless such payment is conditioned on one or more factors that compromise counsel's independent judgment. Here, the Government has offered no tangible evidence or permissible inference of a third-party limitation or condition on counsel's engagement by Ms. Cherwitz, which would warrant invading the attorney-client privilege and placing a judicial seal on the importance of her hypothetical cooperation.

United States v. Nicole Daedone & Rachel Cherwitz, 1:23-cr-00146-DG
September 20, 2023
Page 3

Ms. Cherwitz has pleaded not guilty to the Indictment which, following a years-long investigation, charges her with a single count of conspiracy to commit forced labor. Despite the Government's hypothetical predictions of cooperation, which they allege give rise to a contrived *Curcio* issue, Ms. Cherwitz has expressed her intention to fully defend against this charge and has remained steadfast in her position. *See United States v. Wells*, 394 F.3d 725, 735 (9th Cir. 2005) (cited by the Government, and rejecting an ineffective assistance of counsel claim where the defendant was unwilling to plead guilty or cooperate, regardless of his counsel's advice). Despite the Government representing that it is nearly complete in its provision of Rule 16 discovery, what remains conspicuously absent is a single shred of evidence that Ms. Cherwitz engaged in a forced-labor conspiracy. *See* ECF Dkt. No. 32. As a result, there is no realistic possibility that she will take any action adverse to either Ms. Daedone or the Company.

III.   The Government Offers Nothing to Distinguish This Case from the Myriad Cases Involving Payment by Interested Third Parties

Ms. Cherwitz's counsel is not being paid by Ms. Cherwitz's co-defendant—either directly or indirectly—which makes the facts here easily distinguishable from the cases upon which the Government relies. *See United States v. Locascio*, 6 F.3d 924, 932, 925 (2d Cir. 1993); *United States v. Raniere*, 18-CR-204 (NGG), ECF Dkt. No. 266 (E.D.N.Y. Jan. 9, 2019); *Moreno-Godoy v. United States*, 2014 U.S. Dist. LEXIS 37576 at *7–8 (S.D.N.Y. Mar. 20, 2014). Ms. Cherwitz's counsel is also not being paid by any "ringleader" responsible for criminal activity with which Ms. Cherwitz was allegedly involved, or by any other individual who exposed her to alleged criminal liability. *See Wood*, 450 U.S. at 266–69; *In re: Grand Jury Subpoena Served Upon John Doe, Esq.*, 781 F.2d 238, 247–48 & n.6 (2d Cir. 1986); *United States v. Duran-Benitez*, 110 F. Supp. 2d 133, 151–53 (E.D.N.Y. 2000). Indeed, the Indictment does not name any co-conspirators other than Ms. Cherwitz and Ms. Daedone, and certainly not the current owners of OneTaste, who purchased the Company *after* the alleged events underlying the Indictment. At bottom, the Government's recasting of this routine, unremarkable payment arrangement as suspect rests on rank speculation divorced from the facts here.

Companies routinely agree to advance the legal fees of current and former employees which does not give rise to a conflict in and of itself. The hypothetical conflict advanced by the Government invites the Court to presume that counsel would forego its independent judgment and engage in an ethics violation essentially to ensure continued payment which, as set forth below, begs the question of precisely what it is the Government believes Ms. Cherwitz should waive.

IV.   Counsel Has Complied with the Ethics Rules Applicable to Third-Party Payment

The Government's position suggests the Court has jurisdiction to proceed with a *Curcio* hearing any time an employer, company, or other third party elects to advance the fees of an individual who has been referred to and has engaged independent counsel. This is entirely inconsistent with the applicable ethics rules, which presume that counsel will discharge their ethical responsibilities without need for judicial, and certainly not the Government's, intervention.

United States v. Nicole Daedone & Rachel Cherwitz, 1:23-cr-00146-DG
September 20, 2023
Page 4

Alston & Bird takes its ethical obligations to its clients very seriously, and the Government's suggestion that the presumed "payment structure could, hypothetically, affect defense counsel's advice" (September 13 Letter at 6) is concerning. Ms. Cherwitz has furnished informed consent, and there is no interference with Alston & Bird's independent professional judgment on Ms. Cherwitz's behalf. The New York Rules of Professional Conduct undermine the Government's position that a third-party payment arrangement automatically triggers the need for Court intervention. Rule 1.8(f), which expressly addresses this situation, sets forth a three-part test to protect clients whose fees are paid by third parties: (1) the client must give informed consent to the payment arrangement; (2) the third-party payor does not interfere with the lawyer's independent judgment or with the attorney-client relationship; and (3) the attorney protects the client's confidential information. N.Y. R.P.C. 1.8(f). Alston & Bird has complied with its ethical obligations and has received Ms. Cherwitz's informed waiver of any conceivable conflict created by the payment arrangement. The Government has been informed of such compliance. That alone is sufficient to obviate the need for a *Curcio* hearing. *See United States v. Ward,* 85 F. App'x 246, 248 (2d Cir. 2004) ("When, as here, a conflict of interest poses only a slight risk of impairing a lawyer's representation, a district court may accept a defendant's waiver of the conflict without holding a *Curcio* hearing"). In addition, the terms of Alston & Bird's engagement letter expressly obligate counsel to provide representation consistent with Disciplinary Rule 5-107(B) of the New York Code of Professional Responsibility (requiring that a lawyer not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the attorney's professional judgment).

As set forth above, the Government improperly presumes that counsel will be rendered conflicted to the extent Ms. Cherwitz ever considers testifying, cooperating, or pleading guilty, notwithstanding the client's informed consent and counsel's steadfast compliance with the prevailing Rules of Professional Conduct and accompanying ethical obligations.

## Conclusion

Granting the Government's request for a *Curcio* hearing, absent anything other than the Government's self-serving invocation of a positional conflict, would establish an untenable precedent. Nonetheless, to the extent Your Honor determines that, in an abundance of caution and as a prophylactic measure, a *Curcio* hearing is appropriate, we do not object, and we respectfully request that the Court do so at the next status conference for the sake of efficiency. However, we respectfully ask, through this letter, that the Court require the Government to meet and confer in an effort to agree upon the proposed questions that will form the factual basis for Ms. Cherwitz's waiver. Without a specific and supportable justification for holding a *Curcio* hearing, and in the absence of a proposed colloquy, the Government's letter leaves the reader to speculate precisely what it is Ms. Cherwitz will be asked to waive.

We thank the Court for its prompt consideration of this matter and are available for any questions.

United States v. Nicole Daedone & Rachel Cherwitz, 1:23-cr-00146-DG
September 20, 2023
Page 5

Respectfully Submitted,

*/s/ Jenny R. Kramer*

_____
Jenny R. Kramer
Rachel Finkel
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
jenny.kramer@alston.com
rachel.finkel@alston.com

*Counsel for Rachel Cherwitz*