**Disclosure as to Expert Witness Dr. Chitra Raghavan**

September 16, 2024

**I.      Statement of Opinions, Bases, and Reasons[1]**

The following is a complete statement of all opinions that the government will elicit from Dr. Chitra Raghavan in its case-in-chief,[2] along with the bases and reasons for them. Fed. R. Crim. P. 16(a)(1)(G)(iii).

Dr. Raghavan is a licensed clinical psychologist. She is also a tenured professor, the director of the Forensic Mental Health Counseling Program, and the coordinator of Victimology Studies in Forensic Psychology, all at John Jay College of Criminal Justice. Her qualifications are discussed in greater detail below. See supra Part III (qualifications). Dr. Raghavan is expected to offer her expert opinion on tactics of coercive control, as specifically identified below.

**A.      Coercive Control and Tactics of Coercive Control**

The government expects that Dr. Raghavan will testify about methods of "coercive control" employed against individuals. Coercive control is an ongoing abusive dynamic that seeks to rob victims of their autonomy by using a combination of tactics.[3] It has been recognized not only in the scholarly literature,[4] but also in the laws of several countries, such as Australia and the

---

[1] At this time, the government intends to offer Dr. Raghavan's testimony as background for this case and does not presently intend to offer her testimony regarding any specific witness or victim.

[2] The defense has not yet provided notice of any testimony under Federal Rule of Criminal Procedure 16(b)(1)(C). To the extent such timely notice is provided, the government will supplement this notice to include a statement of opinions it will elicit during its rebuttal to counter that testimony, as required by Federal Rule of Criminal Procedure 16(a)(1)(G).

[3] See, e.g., Doychak, K., & Raghavan, C. (2018). "No voice or vote:" trauma-coerced attachment in victims of sex trafficking. *Journal of Human Trafficking*, 6(3), 1-19. https://doi.org/10.1080/23322705.2018.1518625; Hanna, C. (2009). The paradox of progress: translating Evan Stark's Coercive Control into legal doctrine for abused women. *Violence Against Women*, 15(12), 1458-1476. https://doi.org/10.1177/1077801209347091; Stark, E. (2007). *Coercive control: the entrapment of women in personal life.* New York: Oxford University Press; Feliciano, Sarah Elena (2023). *An Application of the Coercive Control Framework to Cults. A Thesis Submitted in Partial Fulfillment of the Requirements for the Degree of Master of Arts in Forensic Mental Health Counseling*, John Jay College of Criminal Justice; Lifton, R. J. (1991). Cult Formation. *Cultic Studies Journal*, 8(1), 1-6.

[4] Barbaro, L., & Raghavan, C. (2018). Patterns in coercive controlling behaviors among men mandated for batterer treatment: Denial, minimization, and consistency of tactics across relationships. *Partner Abuse*, 9(3), 270-290; Kaplenko, H., Loveland, J. E., & Raghavan, C. (2018). Relationships among shame, restrictiveness, authoritativeness, and coercive control in

1

United Kingdom, and states, such as California and Connecticut, including in the domestic violence context. Coercive control tactics often include a variety of emotional, psychological, material, sexual, and/or physical tactics that together seek to control the victim. Dr. Raghavan will explain that the coercive control tactics can include the following: surveillance, micro-regulation, manipulation/exploitation, isolation, intimidation, deprivation, degradation, and sexual coercion.[5] Dr. Raghavan will define those coercive control tactics as follows and provide examples, in no particular order:

| Term | Definition |
| --- | --- |
| Surveillance | Monitoring location and/or activities |
| Micro-regulation | Governing minute aspects of everyday life |
| Manipulation/ Exploitation | Using intentional deceit, misrepresentation, or existing vulnerabilities to induce compliance and/or alter perception |
| Isolation | Restricting or denying access to outside sources of support in the forms of family, friends, people, or places |
| Intimidation | Engaging in behaviors that induce fear, self-blame, or compliance with or without the threat of physical harm |

---

men mandated to batterer treatment. *Violence and Victims, 33(2),* 75-103; Loveland, J. E., & Raghavan, C. (2017). Coercive control, physical violence, and masculinity. *Violence and Gender*, 4(1), 1-6; Myhill, A. (2015). Measuring Coercive Control: What Can We Learn From National Population Surveys? *Violence Against Women*, 21(3), 355–375. https://doi.org/10.1177/1077801214568032; Myhill, A., & Hohl, K. (2019). The "Golden Thread": Coercive Control and Risk Assessment for Intimate partner Violence. *Journal of Interpersonal Violence*, 34(21-22), 4477–4497. https://doi.org/10.1177/0886260516675464; Stark, E. (2006). Commentary on Johnson's "Conflict and Control: Gender Symmetry and Asymmetry in Intimate partner Violence." Violence Against Women, 12(11), 1019–1025, https://doi.org/10.1177/1077801206293329; Doychak, K., & Raghavan, C. (2018). "No voice or vote:" trauma-coerced attachment in victims of sex trafficking. *Journal of Human Trafficking*, 6(3), 1-19, https://doi.org/10.1080/23322705.2018.1518625; Pomerantz, J., Cohen, S.J., Doychak, K., Raghavan, C. (2021). Linguistic Indicators of Coercive Control: in Sex Trafficking Narratives. Violence and Gender, 8(4), 175-186; Unger, Doychak, K., & Raghavan, C. (2021). *Isolation and Support Dynamics among Women in a Pimp-Based Commercial Sex Ring. Journal of Human Trafficking, ahead-of-print* (ahead-of-print), 1–20, https://doi.org/10.1080/23322705.2021.1918966.

[5]    Beck, C. J. A., & Raghavan, C. (2010). Intimate partner abuse screening in custody mediation: The importance of assessing coercive control. *Family Court Review*, 48(3), 555–565, https://doi.org/10.1111/j.1744-1617.2010.01329; Stark, E. (2007). *Coercive control: the entrapment of women in personal life*. New York: Oxford University Press; Mitchell, J., & Raghavan, C. (2019). The impact of coercive control on use of specific sexual coercion tactics. *Violence Against Women*, 27(2), 187-206.

2

| Deprivation | Denying basic needs, which can be physical (e.g., food), physiological (e.g., sleep), or emotional (e.g., warmth/support) |
|---|---|
| Degradation | Using tactics designed to erode sense of self-worth (e.g., verbal abuse, manual labor, etc.) |
| Sexual Coercion/Abuse | Occurs when the victim resists unsuccessfully, does not give consent, or is complied under duress, which results in forced compliance |

In addition, Dr. Raghavan will discuss more specific coercive control tactics that fall within one or more of these categories.[6] For example, Dr. Raghavan will discuss and provide examples of the following actions:

(1) exertion of control over dress code, romantic relationships, schedule, diet, access to mainstream activities and materials, sexual expression, and financial decisions, which fall within the general tactic of micro-regulation;

(2) use of deception, guilt-tripping, gaslighting in the form of cognitive overload (repeating an argument until a listener is overwhelmed), invalidating perception/denying facts (i.e., making the subject feel their understanding of things, emotional response, etc. is incorrect or blown out of proportion), the economic exploitation of time (i.e., expected and/or obligated, frequent participation in group activities), the economic exploitation of money (i.e., high-pressure sales, requirement of large donations, etc.), mandating disclosure of personal or sensitive details, the indoctrination into a specific philosophy or ethos, and threats of ostracization and/or excommunication, which fall within the general tactic of manipulation;

(3) villainization of naysayers (i.e., making a subject believe outsiders or those against a group are enemies) and segregation from other members of a group or other forms of ostracization, which fall within the general tactic of isolation;

(4) verbal abuse, the use of particularized lexicon, public shaming and humiliation, and demotion, which fall within the general tactic of degradation;

(5) reporting, check-ins, record keeping, monitoring, continuous communication, communal living arrangements, and insistence that activities be performed in pairs or groups, which fall within the general tactic of surveillance;

(6) displaced aggression (i.e., directing hostility away from the source of frustration/anger and toward the self), punishment of others (e.g., witnessing the public shaming of other members), threats and punishment, which fall within the general tactic of intimidation; and

---

[6] Several of these tactics can fit into multiple categories.

(7) dismissing, explaining away, or minimizing sexual assault, which fall within the general tactic of sexual coercion.

In addition to defining and explaining the types of coercive control tactics, Dr. Raghavan will also offer testimony about the use of such tactics. She will explain that perpetrators do not utilize every coercive tactic in every situation. For example, considerable research suggests that physical tactics in particular need not be present for coercive control to be successful.[7] She will testify that the expression of the tactics can differ based on context and victim. In other words, perpetrators often use particular coercive control tactics that are targeted to exploit the vulnerabilities of specific victims. Dr. Raghavan will also explain that some of these coercive control tactics can be subtle and not immediately obvious to the lay observer. Indeed, the success of many of the coercive tactics is dependent on the subjects' inability to perceive them as such; accordingly, perpetrators often disguise the tactics they employ to ensure they are not identified and detected.

### B.     Existence of Coercive Control

Dr. Raghavan is expected to testify that coercive control is a dynamic that can exist when two or more individuals are in a work, romantic or familial relationship whenever there is a power imbalance between individuals exercising control and the subjects of that control.[8] By way of example, Dr. Raghavan has studied coercive control in relationships that involve domestic violence, sex trafficking, cults, and other types of organizations.

Within an organizational structure, Dr. Raghavan will testify that perpetrators may pick a subset of members as targets for abuse. These perpetrators may target a particular individual through his or her vulnerabilities, which can include a history of prior trauma or substance abuse, mental health issues, a recent divorce, death, illness, relocation or other major life event, isolation from friends and family, as well as longstanding fears and insecurities. As explained below, perpetrators may use different strategies with different targets.

Moreover, Dr. Raghavan will testify that other members within an organizational structure can exert collective or peer pressure to ensure a victim's obedience. Such pressure can take the form of love and support as well as the sudden withdrawal of support and/or threats. The ability to exert such pressure is particularly pronounced where a victim is dependent on an abuser for any kind of basic resources, including housing, income, work, spiritual guidance, friendship, or other forms of community support. The ability to exert such pressure is also increased where members devote the majority of their time to the group; where outsiders to the group are portrayed

---

[7]     Stark, E. (2023). *Coercive Control.* New York: Oxford University Press.

[8]     Coercive control is a dynamic that can exist between as few as two individuals or include multiple abusers within a larger organization. the concept of coercive control can be applied to many different contexts in which there is a power differential and/or an abuse of power. Raghavan, C., & Doychak, K. (2015). Trauma-coerced bonding and victims of sex-trafficking: Where do we go from here? *International Journal of Emergency Mental Health and Human Resilience*, 17, 583–587. doi:10.4172/1522-4821.1000223.

as inferior; and where members are distanced or alienated from the outside word or others not in the group, especially family or friends.

### C. Effects of Coercive Control Tactics

The Government expects that Dr. Raghavan will testify that through the use of these coercive control tactics, perpetrators can create an environment of fear and obedience that affects victims' decision-making and free will, as well as manipulates victims' emotions.[9] Coercive tactics, often followed by different kinds of rewards, can also create a belief in victims—especially victims those who have suffered intense abuse—that they are intensely in love with and/or dependent on the perpetrators, or that the perpetrators possess superior qualities, rendering them in some way omnipotent.[10]

Dr. Raghavan will also explain how coercive control is used to groom—whereby a target through a gradual process is tricked, deceived or coerced into engaging in activities that they would have otherwise initially resisted.[11]

Dr. Raghavan will additionally testify that coercive control is often exercised following a period when a perpetrator showers the target with intense attention and affection, employs a predatory helpfulness, and offers the target support and solutions to important problems, including through an intense showing of positive affirmation or validation, or "love bombing."[12]

---

[9] Basra, I. K., Kenney, T., Forrest-Bank, S., Zottarelli, L. K., & Raghavan, C. (2023). Predatory Helpfulness: An Empirical Framework to Identify Fraudulent Tactics Used by Pimps to Recruit and Commercially Sexually Exploit Young Girls and Women. *Journal of Human Trafficking*, 1–16. https://doi.org/10.1080/23322705.2023.2259263; Kenney, T. (2023). "Predatory Helpfulness: A Replication (And Expansion) Study Examining Grooming and Recruitment Tactics in Sex Trafficking" CUNY Academic Works. https://academicworks.cuny.edu/jj_etds/279.

[10] Basra, I. K., Kenney, T., Forrest-Bank, S., Zottarelli, L. K., & Raghavan, C. (2023). Predatory Helpfulness: An Empirical Framework to Identify Fraudulent Tactics Used by Pimps to Recruit and Commercially Sexually Exploit Young Girls and Women. *Journal of Human Trafficking*, 1–16. https://doi.org/10.1080/23322705.2023.2259263; Kenney, T. (2023). "Predatory Helpfulness: A Replication (And Expansion) Study Examining Grooming and Recruitment Tactics in Sex Trafficking" CUNY Academic Works. https://academicworks.cuny.edu/jj_etds/279.

[11] Basra, I. K., Kenney, T., Forrest-Bank, S., Zottarelli, L. K., & Raghavan, C. (2023). Predatory Helpfulness: An Empirical Framework to Identify Fraudulent Tactics Used by Pimps to Recruit and Commercially Sexually Exploit Young Girls and Women. *Journal of Human Trafficking*, 1–16. https://doi.org/10.1080/23322705.2023.2259263; Kenney, T. (2023). "Predatory Helpfulness: A Replication (And Expansion) Study Examining Grooming and Recruitment Tactics in Sex Trafficking" CUNY Academic Works. https://academicworks.cuny.edu/jj_etds/279.

[12] Basra, I. K., Kenney, T., Forrest-Bank, S., Zottarelli, L. K., & Raghavan, C. (2023). Predatory Helpfulness: An Empirical Framework to Identify Fraudulent Tactics Used by Pimps to

Following that period, perpetrators' intermittent use of reward and punishment, where favors and reprimands are employed in a more unreliable manner, can create sense of uncertainty and insecurity in the subjects, leading to increased obedience and fear.

Successful coercive control can lead to a state of psychological entrapment, whereby subjects may find it difficult to leave perpetrators, even if they are not physically restrained, and when they do, struggle to establish and maintain new relationships, hold jobs, and engage in fundamental human activities including identifying their own realities and needs over organizational or group values imposed by their perpetrators.[13]  Dr. Raghavan will explain that victims may also express love, tenderness, or loyalty in the face of fear they cannot exist without the perpetrators or a belief that leaving the perpetrators or the organization in which the perpetrators operate may result in them suffering significant and serious physical, psychological, financial, or reputational harm, or retaliation by the perpetrators and others within the perpetrators' control.[14]

The government expects that Dr. Raghavan will also testify that the process of leaving organizations that have tight control of membership is not straightforward.  Often, the leader or the peers in the organization will maintain contact with former members though a mix of threats, pleas, positive affirmation, to overcome the members' resistance to get them to return to or stay involved in the organization.[15]

---

Recruit and Commercially Sexually Exploit Young Girls and Women. *Journal of Human Trafficking*, 1–16.  https://doi.org/10.1080/23322705.2023.2259263; Kenney, T. (2023). "Predatory Helpfulness: A Replication (And Expansion) Study Examining Grooming and Recruitment Tactics in Sex Trafficking" CUNY Academic Works. https://academicworks.cuny.edu/jj_etds/279.

[13]     Dahlen, P. (1997). Working with women survivors of cults: An empowerment model for counselors. *Cultic Studies Journal*, 14(1), 145-154; Goldberg, L. (2011). Diana, leaving the cult: Play therapy in childhood and talk therapy in adolescence. *International Journal Of Cultic Studies*, 2(1), 33-43; Healy, D. P. (2017). The unique characteristics of postcult post traumatic stress disorder and suggested therapeutic approaches. *International Journal Of Cultic Studies*, 8, 60-70; Matthews, C. H., & Salazar, C. F. (2014). Second-generation adult former cult group members' recovery experiences: Implications for counseling. *International Journal For The Advancement Of Counselling*, 36(2), 188-203.

[14]     Some examples of emotional bonds include a trauma bond, which is a traumatic dependence of a victim on his/her abuser created by an abuser's intermittent use of reward and punishment.  Doychak, K., & Raghavan, C. (2018). "No voice or vote:" trauma-coerced attachment in victims of sex trafficking. *Journal of Human Trafficking*, 6(3), 1-19, https://doi.org/10.1080/23322705.2018.1518625.

[15]     Dahlen, P. (1997). Working with women survivors of cults: An empowerment model for  counselors. *Cultic Studies Journal*, 14(1), 145-154.

6

### D. Bases and Reasons

Dr. Raghavan's testimony will be based on her training, experience, and research in this field. As documented in her enclosed *curriculum vitae*, Dr. Raghavan has published over 50 publications, over 40 of which address domestic violence and/or coercive control. Her work, as well as additional research discussing tactics coercive control are cited herein and included in Appendix A.

Furthermore, through her teaching and research, she is familiar with the larger body of qualitative research in this field. As a clinical psychologist, Dr. Raghavan has conducted hundreds of extensive forensic interviews of victims of domestic violence and trafficking. As a researcher, she has conducted or overseen thousands of non-forensic interviews. These interviews have included victims who experienced tactics of coercive control in group settings. In addition, as part of her research, Dr. Raghavan has interviewed, or supervised interviews of, over 100 individuals who have been arrested and found guilty of offenses involving the employment of tactics of coercive control.

## II. Qualifications

As noted above, Dr. Raghavan's qualifications are documented in her *curriculum vitae*, which is enclosed. Her *curriculum vitae* documents her professional experience, as well as her publications over the last ten years. In sum, Dr. Raghavan is a licensed clinical psychologist and a tenured professor of forensic psychology at John Jay College, whose research, publications, and teaching have focused on trauma and coercive control in the context of domestic violence. Dr. Raghavan is the Director of the Forensic Mental Health Counseling Master's Program at John Jay College, which trains therapists. Dr. Raghavan also designed a program for master's degree students specializing in victim services.

In addition to her work with John Jay College, Dr. Raghavan leads trainings groups who deal with domestic violence and/or coercive control, including mental health counselors, such as social workers, and also lawyers and judges working in areas that may involve victims and/or perpetrators of domestic violence. Recently, she provided a multi-day training to New York Supreme Court judges on sex trafficking, specifically defining coercive control and predatory helpfulness, as part of a program organized by the Office of Court Administration.

Dr. Raghavan has been deemed an expert in topics such as domestic violence, intimate partner violence, and coercive control in federal courts, as well as New York State courts.

## III. List of Cases

The following is a list, to the best of Dr. Raghavan's recollection and ability to reconstruct, of other cases in which, during the previous four years, she has testified as an expert at trial or by deposition.

7

| Approximate Date of Testimony | Case Name & Docket No. | Court |
|---|---|---|
| April 10, 2019 | *People v. Drucker* | New York County Court, Ulster County |
| April 29, 2019 | *Toro Bonilla v. Rivera Erazo*, 18 Civ. 4569 | United States District Court for the Eastern District of New York |
| August 9, 2019 | *People v. Farquharson*, Ind. No. 751/2018 | New York Supreme Court, Kings County |
| March 4–5, 2020 | *United States v. Armstead*, 18 Cr. 357, 19 Cr. 369 | United States District Court for the District of Columbia |
| March 10–11, 2020 | *United States v. Randall*, 19 Cr. 131 | United States District Court for the Southern District of New York |
| October 19–20, 2020 | *Francis v. Culley*, 20 Civ. 3326 | United States District Court for the Eastern District of New York |
| May 7, 2021 | *United States v. Subhannah Wahhaj*, 18 Cr. 2945 | United States District Court for the District of New Mexico |
| June 7–8, 2021 | *United States v. Rivera*, 19 Cr. 131 | United States District Court for the Southern District of New York |
| July 7–8, 2021 | *United States v. Torres*, 20 Cr. 608 | United States District Court for the Southern District of New York |
| July 28, 2021 | *United States v. Green-Remache*, 20 Cr. 124 | United States District Court for the District of Columbia |
| October 5, 2021 | *United States v. Stennis*, 20 Cr. 19 | United States District Court for the District of Minnesota |
| October 20, 2021 | *People v. Gilkes*, Ind. No. 245/2020 | New York Supreme Court, Kings County |
| March 15, 2022 | *People v. Simpson* | Michigan state court |
| September 24, 2022 | *People v. Uddin, Meftaah*, Ind. No. 73667-21 | New York Supreme Court, Kings County |
| January 31, 2023 | *People v. Dantignac*, Ind. No. 73950-21 | New York Supreme Court, Kings County |

_____
Chitra Raghavan, Ph.D.
Licensed Psychologist
016466

# Appendix A

Almendros, C., Carrobles, J. A., & Rodríguez-Carballeira, Á. (2007). Former members' perceptions of cult involvement. *Cultic Studies Review*, *6*(1), 1-20;

Ayella, M. (1990). 'They must be crazy': Some of the difficulties in researching 'cults.'. *American Behavioral Scientist*, *33*(5), 562-577. https://doi.org/10.1177/0002764290033005005;

Baldwin, S. B., Fehrenbacher, A. E., & Eisenman, D. P. (2015). Psychological coercion in human trafficking: An application of Biderman's framework. *Qualitative Health Research*, *25*(9), 1171–1181. https://doi-org.ez.lib.jjay.cuny.edu/10.1177/1049732314557087;

Barbaro, L., & Raghavan, C. (2018). Patterns in coercive controlling behaviors among men mandated for batterer treatment: Denial, minimization, and consistency of tactics across relationships. *Partner Abuse*, 9(3), 270-290;

Beck, C. J. A., & Raghavan, C. (2010). Intimate partner abuse screening in custody mediation: The importance of assessing coercive control. *Family Court Review*, *48*(3), 555–565. https://doi.org/10.1111/j.1744-1617.2010.01329;

Barker, E. (1986). Religious movements: Cult and anticult since Jonestown. *Annual Review Of Sociology*, *12,* 329-346. https://doi.org/10.1146/annurev.so.12.080186.001553;

Coates, D. D. (2011). Counselling former members of charismatic groups: Considering pre-involvement variables, reasons for joining the group and corresponding values. *Mental Health, Religion & Culture*, *14*(3), 191–207;

Dahlen, P. (1997). Working with women survivors of cults: An empowerment model for counselors. *Cultic Studies Journal*, 14(1), 145-154.

Dole, A. A. (2008). Review of Malignant pied pipers of our time: A psychological study of destructive cult leaders from Reverend Jim Jones to Osama Bin Laden. *Cultic Studies Review*, *7*(1), 79–82.

Doychak, K., & Raghavan, C. (2018). "No voice or vote:" trauma-coerced attachment in victims of sex trafficking. *Journal of Human Trafficking*, *6*(3), 1-19. https://doi.org/10.1080/23322705.2018.1518625;

Eister, A. W. (1972). An outline of a structural theory of cults. *Journal for the Scientific Study of Religion*, *11*(4), 319–333. https://doi-org.central.ezproxy.cuny.edu/10.2307/1384673;

Feldmann, T. B., & Johnson, P. W. (1995). Cult membership as a source of self-cohesion: Forensic implications. *Bulletin Of The American Academy Of Psychiatry & The Law*, *23*(2), 239-248;

Feliciano, Sarah Elena (2023).  An Application of the Coercive Control Framework to Cults.  *A Thesis Submitted in Partial Fulfillment of the Requirements for the Degree of Master of Arts in Forensic Mental Health Counseling*, John Jay College of Criminal Justice.

Goldberg, L. (2011). Diana, leaving the cult: Play therapy in childhood and talk therapy in adolescence. *International Journal Of Cultic Studies*, *2*(1), 33-43.

Goldberg, L. (2012). Influence of a charismatic antisocial cult leader: Psychotherapy with an ex-cultist prosecuted for criminal behavior. *International Journal Of Cultic Studies*, *3*(1), 15-24.

Hanna, C. (2009) The paradox of progress: translating Evan Stark's Coercive Control into legal doctrine for abused women. *Violence Against Women*, *15*(12), 1458-1476. https://doi.org/10.1177/1077801209347091

Hardesty, J. L., Crossman, K. A., Haselschwerdt, M. L., Raffaelli, M., Ogolsky, B. G., & Johnson, M. P. (2015). Toward a standard approach to operationalizing coercive control and classifying violence types. *Journal of Marriage and Family*, *77*(4), 833–843. https://doi-org.ez.lib.jjay.cuny.edu/10.1111/jomf.12201

Healy, D. P. (2017). The unique characteristics of postcult post traumatic stress disorder and suggested therapeutic approaches. *International Journal Of Cultic Studies*, *8,* 60-70.

International Cultic Studies Association. (2004). FAQs. Retrieved March 25, 2020 from https://www.icsahome.com/elibrary/faqs

Lifton, R. J. (1991). Cult Formation. *Cultic Studies Journal*, *8*(1), 1-6.

Lifton, R. J. (2020). Owning reality: Reflections on Cultism and Zealotry. *Journal of the American Psychoanalytic Association*, *68*(3), 413–432. https://doi.org/10.1177/0003065120937064;

Kaplenko, H., Loveland, J. E., & Raghavan, C. (2018). Relationships among shame, restrictiveness, authoritativeness, and coercive control in men mandated to batterer treatment. *Violence and Victims, 33(2),* 75-103.

Loveland, J. E., & Raghavan, C. (2017). Coercive control, physical violence, and masculinity. *Violence and Gender, 4*(1), 1-6.

Matthews, C. H., & Salazar, C. F. (2014). Second-generation adult former cult group members' recovery experiences: Implications for counseling. *International Journal For The Advancement Of Counselling*, *36*(2), 188-203.

Mitchell, J., & Raghavan, C. (2019). The impact of coercive control on use of specific sexual coercion tactics. *Violence Against Women*, *27*(2), 187-206.

Myhill, A. (2015). Measuring Coercive Control: What Can We Learn From National Population Surveys? *Violence Against Women*, *21*(3), 355–375. https://doi.org/10.1177/1077801214568032

Myhill, A., & Hohl, K. (2019). The "Golden Thread": Coercive Control and Risk Assessment for Intimate partner Violence. *Journal of Interpersonal Violence*, *34*(21-22), 4477–4497. https://doi.org/10.1177/0886260516675464

Pomerantz, J., Cohen, S.J., Doychak, K., Raghavan, C. (2021). Linguistic Indicators of Coercive Control: in Sex Trafficking Narratives. *Violence and Gender*, *8*(4), 175-186.

Raghavan, C., Beck, C. J. A., Menke, J. M., & Loveland J. E. (2019). Coercive controlling behaviors in intimate partner violence in male same-sex relationships: A mixed methods study. *Journal of Gay and Lesbian Social Services*, *31*(3), 370-395. https://doi.org/10.1080/10538720.2019.1616643

Rosen, S. (2014). Cults: A natural disaster — Looking at cult involvement through a trauma lens. *International Journal Of Cultic Studies*, *5*, 12-29.

Salande, J. D., & Perkins, D. R. (2011). An object relations approach to cult membership. *American Journal Of Psychotherapy*, *65*(4), 381-391.

Shaw, D. (2014). The relational system of the traumatizing narcissist. *International Journal of Cultic Studies*, *5*, 4–11.

Singer, M. T. (2003). *Cults in our midst: The continuing fight against their hidden menace., Rev. ed.* California: Jossey-Bass.

Stark, E. (2006). Commentary on Johnson's "Conflict and Control: Gender Symmetry and Asymmetry in Intimate partner Violence." *Violence Against Women*, *12*(11), 1019–1025. https://doi.org/10.1177/1077801206293329

Stark, E. (2007). *Coercive control: the entrapment of women in personal life*. New York: Oxford University Press.

Unger, Doychak, K., & Raghavan, C. (2021). Isolation and Support Dynamics among Women in a Pimp-Based Commercial Sex Ring. *Journal of Human Trafficking*, *ahead-of-print* (ahead-of-print), 1–20. https://doi.org/10.1080/23322705.2021.1918966

Ushiyama. (2019). Discursive opportunities and the transnational diffusion of ideas: "brainwashing" and "mind control" in Japan after the Aum Affair. *The British Journal of Sociology*, *70*(5), 1730–1753. https://doi.org/10.1111/1468-4446.12705

Walsh, Y., & Bor, R. (1996). Psychological consequences of involvement in a new religious movement or cult. *Counselling Psychology Quarterly*, *9*(1), 47–60.

Walsh, Y. (2001). Deconstructing "brainwashing" within cults as an aid to counselling psychologists. *Counselling Psychology Quarterly*, *14*(2), 119–128. https://doi-org.central.ezproxy.cuny.edu/10.1080/09515070110058558.