GK/KCB/DEL/SF
F. #2018R01401

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                                                                Docket No. 23-CR-146 (DG)

RACHEL CHERWITZ and
NICOLE DAEDONE,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM IN OPPOSITION TO
THE DEFENDANTS' MOTIONS IN LIMINE

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Gillian Kassner
Kayla Bensing
Devon Lash
Sean Fern
Assistant U.S. Attorneys
     (Of Counsel)

1

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

I.   The Use of the Word "Cult," "Members" and "Leaders" Should be Permitted in Limited Fashion ................................................................................................................................ 1

II.  Spiritual and Religious Beliefs are Admissible as Evidence of Criminal Conduct ................ 7

III. The Court Should Deny the Defendants' Motions Pursuant to Rules 401 and 403 ................ 9

   A. The Court Should Permit the Admission of Evidence and Argument Regarding the Defendants' Acts of Inducing OneTaste Participants to Engage in Sexual Activity with "VIPs" ................................................................................................................................ 9

   B. The Court Should Permit the Admission of Limited Evidence of the Defendants' and Co-Conspirators' Sexual Acts and Related Statements ......................................................... 11

   C. The Court Should Permit the Admission of Evidence Regarding OneTaste's Targeting of Vulnerable Individuals ................................................................................................... 15

   D. The Court Should Permit the Admission of Evidence and Argument Relating to OneTaste's Sales Practices ............................................................................................... 16

   E. The Court Should Permit the Admission of Evidence Regarding the Defendants' Financial Benefits from OneTaste .................................................................................... 18

   F. The Court Should Permit the Admission of Evidence Regarding Communal Homes that the Defendants, their Co-Conspirators and their Agents Oversaw and Controlled ........... 19

   G. The Court Should Permit the Admission of Limited Evidence Relating to a Settlement Agreement between OneTaste and Jane Doe 1 ................................................................. 20

IV.  The Defendants Should Not Be Permitted to Call Unnamed "Many Former OneTaste Employees" ......................................................................................................................... 23

i

V.   The Court Should Not Admit Evidence as to Purported Science Behind Orgasmic
     Meditation.................................................................................................................. 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

Bistline v. Parker,
  918 F.3d 849 (10th Cir. 2019)...................................................................................18

Giboney v. Empire Storage & Ice Co.,
  336 U.S. 490 (1949)...........................................................................................7

Gilbert v. United States Olympic Comm.,
  423 F. Supp. 3d 1112 (D. Colo. 2019)..............................................................18

Manko v. United States,
  87 F.3d 50 (2d Cir. 1996)..................................................................................21

Riccio v. McLean,
  853 F.3d 553 (1st Cir. 2017).............................................................................18

United States v. Austin,
  54 F.3d 394 (7th Cir. 1995) ..............................................................................22

United States v. Ahmed,
  94 F. Supp. 3d 394 (E.D.N.Y. 2015) ..................................................................1

United States v. Beasley,
  72 F.3d 1518 (11th Cir. 1996)............................................................................8

United States v. Benjamin,
  No. 18-CR-874 (JSR) (S.D.N.Y. 2019) ..............................................................4

United States v. Davis,
  No. 09-CR-343, 2009 WL 3646459 (E.D. Pa. Nov. 4, 2009)............................21

United States v. Downing,
  297 F.3d 52 (2d Cir. 2002).................................................................................22

United States v. Dupigny,
  No. 18-CR-528 (JMF) (S.D.N.Y.) ......................................................................5

United States v. Edwards,
  No. 16-CR-103 (BLG) (SPW), 2017 WL 4159365 (D. Mont. Sept. 19, 2017).......................6

United States v. Evans,
  No. 09-CR-619 (SJF), 2012 WL 23339318 (E.D.N.Y. June 19, 2012) ................18

United States v. Jorgenson,
 No. 04-CR-169 (PAM), 2004 WL 1774529 (D. Minn. Aug. 8, 2004) ...................................................22

United States v. Kaziu,
 559 F. App'x 32 (2d Cir. 2014) ......................................................................................................7, 8

United States v. Kincaid,
 No. 10-CR-160, 2013 WL 5595404 (E.D. Tenn. Oct. 11, 2013) ..........................................................4

United States v. Marcus,
 628 F.3d 36 (2d Cir. 2010)...................................................................................................................9

United States v. Maxwell,
 No. 20-CR-330 (AJN) (S.D.N.Y.) ........................................................................................................1

United States v. Murra,
 No. 16-CR-78, 2016 WL 10953909 (N.D. Tex. July 18, 2016) ...........................................................8

United States v. Paulino,
 445 F.3d 211 (2d Cir. 2006)...............................................................................................................11

United States v. Raniere,
 384 F. Supp. 3d 282 (E.D.N.Y. 2019) ..........................................................................................16, 23

United States v. Raniere,
 No. 20-3520, 2022 WL 17544087 (2d Cir. Dec. 9, 2022) .............................................................9, 10

United States v. Rivera,
 799 F.3d 180 (2d Cir. 2015)...............................................................................................................24

United States v. Sun Myung Moon,
 718 F.2d 1210 (2d Cir. 1983)...............................................................................................................8

United States v. Walker,
 142 F.3d 103 (2d Cir. 1998)..........................................................................................................15, 22

United States v. White,
 No. 08-CR-0682 (NGG), 2009 WL 4730234 (E.D.N.Y. Dec. 4, 2009) ................................................4

Wisconsin v. Mitchell,
 508 U.S. 476 (1993)..............................................................................................................................7

**Statutes**

18 U.S.C. § 1589...........................................................................................................................21, 23

18 U.S.C. § 1589(a) .................................................................................................................4, 10, 19

18 U.S.C. § 1589(b) ..................................................................................... 15, 18

18 U.S.C. § 1589(c) ......................................................................................... *passim*

18 U.S.C. § 1594 ................................................................................................ 23

## Rules

Fed. R. Evid. 402 ............................................................................................... 21

Fed. R. Evid. 403 ................................................................................... 4, 9, 17, 21

Fed. R. Evid. 404(b) .......................................................................................... 21

Fed. R. Evid. 408 ............................................................................................... 21

Fed. R. Evid. 408 cmt. ...................................................................................... 21

Fed. R. Evid. 701 ................................................................................................. 4

## PRELIMINARY STATEMENT

The government respectfully submits this response to the defendants' motions in limine. See ECF No. 171 ("Def. Mot."). For the reasons stated below, the defendants' motions should be denied.

## ARGUMENT

I.    The Use of the Word "Cult," "Members" and "Leaders" Should be Permitted in Limited Fashion

The defendants seek an order precluding all trial participants from using the terms "cult," "members" or "leaders," or similar unidentified "prejudicial and inflammatory characterization from the government or any of its witnesses in the presentation of evidence and argument at the upcoming trial." Def. Mot. at 4-8. The Court should decline to impose these burdensome, artificial and unnecessary limitations on the language used at trial. The terms identified by the defendants, which are commonly used—including by the defendants—and easily understood, are not unfairly prejudicial under the circumstances of this case and should not be precluded.

As a general matter, "there is no basis to preclude the Government from using words that are central to the case." United States v. Ahmed, 94 F. Supp. 3d 394, 436 (E.D.N.Y. 2015). Rather, the government is permitted to prove the crime by describing the crime and communicating its theory of the case. See, e.g., United States v. Maxwell, 20-CR-330 (AJN), Nov. 1, 2021 Pre-Trial Conf. Tr., Dkt. No. 465 at 4-5 (S.D.N.Y.) ("In the defendant's 12th motion in limine, the defense asked the Court to preclude use of the terms 'victim' and 'minor victim.' The motion is denied. Government counsel can use the word 'victim' if they're

1

referring to someone alleged to be a victim of the crimes charged in the indictment . . . . It is appropriate for the government to use the terms as representative of its litigating position."). Here, the government does not intend to argue or present any testimony regarding whether OneTaste met any technical criteria to qualify as a cult.[1]  As outlined exhaustively in its motions in limine, however, the government does intend to argue that the defendants ran a business through the use and threats of serious harm, as defined by 18 U.S.C. § 1589(c), and benefitted from their participation in a venture that employed such means.  The government anticipates that, in describing what happened to them, certain of the government's victim-witnesses may observe that some of the defendants' practices appeared to them to be akin to those of a cult, as the term is commonly used, including in describing "psychological, financial, or reputational harm."  18 U.S.C. § 1589(c).

Indeed, the defendants themselves have likened OneTaste to a cult.  See, e.g., *The Pleasure Principle*, available at https://www.nytimes.com/2009/03/15/fashion/15commune.html (Mar. 13, 2009) (Daedone informing the New York Times that "[t]here's a high potential for this to be a cult").  In addition to witness testimony, the government will seek to admit at trial exhibits in which the defendants expressed awareness — in examples that span over the course of eight years — that numerous OneTaste members had concerns that their organization operated

---

[1]   The government does not, for example, intend to present expert testimony regarding whether OneTaste met any specific criteria necessary to qualify as a cult, though it reserves the right to do so to rebut any potential defense expert whom the Court permits to testify about the same.

like a cult.  For example, on December 22, 2011, Cherwitz emailed a group of OneTaste participants about a sales event happening that evening, instructing them:

> Please do not talk about l[i]ving in [a OneTaste communal home] .
> . . . [d]o not talk about group shower experiences, group OM'ing,
> the last hot threesome you had, etc. . . .  Do not under any
> circumstance, even if you are joking, say that you live in a cult.  We
> have worked for many years to dissolve this from our reputation.
> Please please please (I cannot stress this enough) be vigilant here.

Ex. A.  As another example, on August 9, 2014, after a OneTaste participant expressed concern about OneTaste "being a cult," Cherwitz responded by directing that the participant "need[ed] to sign" OneTaste's "no refund policy" . . . and reiterating, "[s]he really needs to sign it."  Ex. B.[2] In 2017, Daedone, coaching Co-Conspirator 7, informed her that "people are now looking at you to confirm that they belong," "That's how I ended up accidentally being a cult leader."  Ex. C. In 2018, Daedone directed two co-conspirators to "collect all memoir stuff," and then described the "basic layout" of her memoir, which included, as an apparent chapter of Daedone's life: "OneTaste Cult leader and the horrors of it and [the Investor's first name] debt Ted Talk/. . . Unconditional sex Sell the company. . . .  and the thing I wrote about being like trump could go under cult leader."  Ex. D.  In OneTaste coaching program materials, OneTaste coaches were taught to consider how to respond to questions from potential clients, including "Is this a cult?" Ex. E at 86.

---

[2]      The government respectfully requests to file Exhibits B, C, D, H, I, J and K under seal, principally for the reasons set forth in the government's October 11, 2024 sealing request. See ECF No. 173.

These are just some of many instances in which the defendants used the term and/or were put on notice, as Daedone aptly put it, that there was "high potential for [OneTaste] to be a cult." This evidence is relevant to the defendants' "knowingly" obtaining the labor or services of others through means of serious harm, and "knowingly benefiting . . . from participation in a venture which has engaged in the [same] . . . knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services" through prohibited means. 18 U.S.C. § 1589(a)-(b).

The term "cult" is thus not unduly prejudicial in light of the limited ways in which the government anticipates that the word may arise at trial, as described herein. <u>See</u> Fed. R. Evid. 403. To the contrary, the term "cult" is a well-established and commonly understood term that offers a convenient shorthand for concepts that are otherwise difficult to describe. <u>See, e.g.</u>, <u>United States v. Benjamin</u>, 18-CR-874 (JSR) (S.D.N.Y.), May 8, 2019 Pre-Trial Tr., ECF No. 53, at 6 ("[P]imp . . . is in fact a well-established Anglo-Saxon word of several centuries, at least several hundred years' duration, and its meaning is well known, and I don't think it carries any racial connotations. That will be allowed as well."); <u>United States v. White</u>, No. 08-CR-0682 (NGG), 2009 WL 4730234, at *2 (E.D.N.Y. Dec. 4, 2009) (permitting use of phrase "convicted felon" as a convenient shorthand, and noting "[c]ourts have routinely used it in that manner, and defense counsel has provided no reason why it would be inflammatory to use it before a jury"); <u>United States v. Kincaid</u>, No. 10-CR-160, 2013 WL 5595404, at *3 (E.D. Tenn. Oct. 11, 2013) (finding term "pill mill" not unduly prejudicial in drug conspiracy case, as the term "is not a legal conclusion" but rather "a phrase used in law enforcement and in the media to describe the activity that has been attributed to [the defendants]").

Further, that some of the victim-witnesses may choose to liken certain of their experiences as akin to a cult does not constitute improper opinion testimony. Consistent with Federal Rule of Evidence 701, such lay testimony would be based on the "witness's perception;" "helpful to clearly understanding the witness's testimony;" and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The government does not anticipate that its witnesses will be identifying OneTaste as a "cult" under any kind of scientific definition, much as the defendants were not so analyzing it in using it amongst themselves and with co-conspirators. It is a descriptive term that some witnesses may choose to use, as did the defendants, and is not unfairly prejudicial for such limited use. Cf. United States v. Dupigny, 18-CR-528 (JMF), Oct. 17, 2019 Pre-Trial Conf. Tr., Dkt. 198 at 49-50 (S.D.N.Y.) ("It strikes me that precluding the[] use [of 'victim' or 'pimp'] altogether is both unnecessary and impractical.").[3]

Finally, the government and trial witnesses should be permitted to use the terms "leaders" or "members" to state, with respect to the government, its litigative position (consistent with the use of those terms in the above-captioned indictment) and explain, with respect to witnesses, what they observed about the defendants and others' positions with respect to OneTaste. These terms bear no prejudicial connotations; they are merely descriptive and relevant to testimony. Further, the defendants are incorrect that they did not use such terms.

---

[3]     The government would not object to a limiting instruction directing the jury that the term "cult" as used by the defendants in the trial exhibits and by witnesses is a reference to that term in its colloquial sense, and it should be given no specialized weight, should the defendants seek such an instruction.

<u>See, e.g.</u>, Def. Mot. at 4, 6 (claiming that OneTaste "never" had members). To the contrary, the

evidence at trial will establish that the defendants sold "memberships" (costing approximately

$55,000) and regularly used the terms "members" and "leaders," including in its own marketing

material, on "member" messaging threads and in notes to one another. <u>See, e.g.</u>, Ex. F

(OneTaste Code of Conduct policy referring to "leaders" and "community members"); Ex. G

(Daedone writing in 2007 referring to OneTaste participants as "members"); Ex. H (Cherwitz

emailing Daedone in 2018 with "notes on circle students" and referring to numerous OneTaste

participants as "members" or with reference to "memberships"). Such terms are relevant and do

not carry any negative connotations that would unfairly prejudice the defendants.[4]

   Finally, other courts have repeatedly acknowledged that the government's use of

terms consistent with its theory of the case is not unfairly prejudicial when the jury is clearly

instructed about the Government's burden of proof, as the jury will be here. <u>See, e.g.</u>, <u>United</u>

<u>States v. Edwards</u>, No. 16-CR-103, 2017 WL 4159365, at *1 (D. Mont. Sept. 19, 2017)

(explaining that "use of the term 'victim' is not prejudicial to the defendant's rights when the

presentation of evidence taken as a whole clarifies the government's burden of proving all of the

elements of the crime").

---

[4] Nor would the defendants' proposed alternative—solely using "employees," "customers" and "executives"—be feasible given the circumstances presented in this case. The government anticipates the evidence will show that, at times, the defendants fired individuals, or individuals were not actively taking courses, but would consider themselves to be part of the OneTaste community—such as, for example, by performing uncompensated labor, participating in "OM circles" and/or residing in OneTaste communal homes.

The defendants' motion amounts to an attempt to sanitize the evidence and testimony by preventing the government and its witnesses from describing it. Such cumbersome and unworkable restrictions are routinely rejected by courts and should not be imposed here.

II.     Spiritual and Religious Beliefs are Admissible as Evidence of Criminal Conduct

The defendants next argue that the Court "should preclude the Government from making improper arguments that attack OneTaste's religious and spiritual beliefs and practices or offering evidence to suggest that such beliefs and practices were used to exercise coercion over OneTaste students or employees." Def. Mot. at 9. Though the defendants reference the First Amendment in making the argument, they cite no case law indicating that a jury should be deprived of evidence—here, use of purported spiritual practices to direct individuals to, among other things, perform sexual acts and go into debt—on such grounds. That is because the law is squarely to the contrary. The First Amendment "does not . . . prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." United States v. Kaziu, 559 F. App'x 32, 35 (2d Cir. 2014) (summary order) (quoting Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)); see also Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949) (rejecting contention that "the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute"). Just as people who associate can have that association used against them in a trial, and people who speak can have that speech used against them in a trial, the same is true of the use of spiritualism where such use establishes the elements of a crime or proves motive or intent.

Here, the government intends to argue, and prove, that, as set forth in the Indictment, the defendants "demanded absolute commitment to DAEDONE, including by

7

exalting DAEDONE's teaching and ideology."  Indictment, ¶ 7(d).  For example, the government anticipates that the trial evidence will establish that the defendants used the concept of "orgasm" as a spiritual force justifying certain of the alleged serious harm and performance of labor and services in this case.  See, e.g., Ex. I (Co-Conspirator 2 informing Daedone that, "I love you so much it hurts.  I've given my life over to you, over to the Orgasm," and then informing Daedone that she is "ride or die"); Ex. J (Daedone directing that OneTaste use the tagline "powered by orgasm" because she "like[d] the subtle god reference"); Ex. K (example of use of purported spirituality and rituals as directing performance of labor).  Such evidence is relevant and admissible.  See, e.g., United States v. Beasley, 72 F.3d 1518, 1527 (11th Cir. 1996) (holding that "evidence regarding [defendant's] religion was relevant, because religious teachings were used to justify, rationalize, and promote crime"); United States v. Sun Myung Moon, 718 F.2d 1210, 1233 (2d Cir. 1983) (holding that evidence of a person's beliefs is admissible where probative and finding that it was "inevitable that some Unification Church practices would creep into the trial in order to illustrate Moon's control over the activities of other church officials"); United States v. Murra, No. 16-CR-78, 2016 WL 10953909, at *6 (N.D. Tex. July 18, 2016) (same, as to forced labor conspiracy).

   The government does not intend to attack the defendants' spiritual beliefs on their merits, devoid of evidentiary value to the charged conspiracy, and, thus, the defendants' proposed and self-described "detour" of offering evidence as to the merits of their religious or spiritual beliefs is unnecessary.  The government, however, would not oppose a jury instruction that the defendants' espoused beliefs were probative only as evidence of the charged conspiracy, that the defendants are not on trial for having such spiritual views and that such evidence cannot

"act as a substitute for proof beyond a reasonable doubt of the elements." <u>Kaziu</u>, 559 F. App'x, at 35 (Second Circuit approving a similar jury instruction).

III.    <u>The Court Should Deny the Defendants' Motions Pursuant to Rules 401 and 403</u>

       The defendants seek the categorical exclusion of broad classes of evidence based on conclusory assertions that such evidence is irrelevant to the charges or otherwise unfairly prejudicial. The defendants' relevance arguments rely on mischaracterizations of fact and fail to engage with the requirements to establish a conspiracy to commit a violation of 18 U.S.C. § 1589. Furthermore, the defendants' arguments as to prejudice fail to establish that the exceedingly high probative value of such evidence would be outweighed by any risk of unfair prejudice, as required for its exclusion. Fed. R. Evid. 403. They should be denied.

    A.    <u>The Court Should Permit the Admission of Evidence and Argument Regarding the Defendants' Acts of Inducing OneTaste Participants to Engage in Sexual Activity with "VIPs"</u>

       The defendants seek to exclude evidence that they encouraged, persuaded or pressured employees to have sex with wealthy or influential OneTaste customers based on the argument that labor constituting or obtained through such means falls "outside the charged conduct." Def. Mot. at 16. The defendants' assertion—for which they cite no legal authority—is wrong. As detailed in the government's motions <u>in limine</u>, evidence that the defendants and their co-conspirators induced victims and other OneTaste participants to engage in sexual acts with "VIPs" in connection with their employment at OneTaste is direct evidence of the charged conspiracy. <u>First</u>, such sexual acts and attendant tasks performed constitute labor and services by the OneTaste participants as a result of the charged conspiracy, and the fact that they were performed with so-called "VIPs" is directly relevant to understanding the value of the alleged

labor or services to the defendants.  See Gov. Mot., ECF No. 169 ("Gov. Mot."), at 32-33;

United States v. Raniere, No. 20-CR-3520, 2022 WL 17544087, at *2 (2d Cir. Dec. 9, 2022)

(holding that "[l]abor includes the expenditure of physical or mental effort especially when

fatiguing, difficult, or compulsory"); United States v. Marcus, 628 F.3d 36, 44 n.10 (2d Cir.

2010) (holding that "service" means "the performance of work commanded or paid for by

another").  Second, such acts are probative of the defendants' and their co-conspirators' intent

and agreement to obtain labor or services by means or threats of serious harm, or by means of a

scheme, plan, or pattern intended to cause the OneTaste participants to believe that, if they did

not perform such labor or services, they would suffer serious harm.  18 U.S.C. § 1589(a)-(b); see

also Gov. Mot. at 34-37.  The government anticipates that multiple witnesses will testify that the

instructions from the defendants—who served as their bosses, teachers, coaches, and, in some

cases, spiritual leaders—that they should perform such sexual acts, and their subsequent

performance of the acts, caused them serious psychological and/or reputational harm.  See 18

U.S.C. § 1589(c)(2) (defining "serious harm" as including "psychological, financial, or

reputational harm" (emphasis added)).  Furthermore, the forced labor conspiracy statute makes

no distinction regarding whether the plan or pattern the defendants employed was based in part

on "invitations, persuasion or . . . pressure" as opposed to physical force, and expressly permits

charges where no physical harm was present or threatened.  See id. (defining serious harm as

"any harm, whether physical or nonphysical").[5]

---

[5]      The blanket assertion that such sexual acts were "consensual" also does not offer
a valid basis to exclude the evidence.  See United States v. Raniere, No. 20-3520-CR, 2022 WL

Furthermore, the fact that the defendants are not also charged with prostitution-related offenses does not render evidence regarding the defendants' use of sexual directives to carry out the conspiracy, and the victims' performance of sexual acts as labor or services provided, any less probative of the charged offense.[6]  The defendants have cited to no case law, or provided any argument, to the contrary.  Finally, the Court should reject the defendants' argument that, should evidence of the forced labor conspiracy be admitted, they should be permitted to present evidence that, among other things, "OneTaste customers and students came from all socio-economic backgrounds."  Def. Mot. at 12.  The defendants fail to explain and it is otherwise unclear why such evidence would be responsive to evidence of the defendants' sexual directives to the OneTaste participants.

      B.    <u>The Court Should Permit the Admission of Limited Evidence of the Defendants' and Co-Conspirators' Sexual Acts and Related Statements</u>

The defendants move to preclude all evidence regarding (1) the defendants' "personal, consensual sexual activities," Def. Mot. at 13-14; (2) the defendants' "attitudes about sex" and "religious beliefs," <u>id.</u>; (3) Daedone's "childhood trauma and/or relationship with her father," <u>id.</u> at 18-19; and (4) Daedone's "[a]lleged [v]iews about [r]ape and [s]exual [a]ssault,"

---

17544087, at *2 (2d Cir. Dec. 9, 2022) (finding an argument that a victim consented to perform labor "unconvincing" and observing that a victim's "initial participation in consensual . . . activities" does not require an inference that the victim "consented to all of the labor she subsequently undertook").

[6]    Further, as the government argued at length in its motions <u>in limine</u>, in the alternative, evidence of uncharged acts performed in furtherance of a conspiracy, or pursuant to Rule 404(b), is routinely permitted.  <u>See, e.g.</u>, <u>United States v. Paulino</u>, 445 F.3d 211, 221 (2d Cir. 2006) (observing the Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence").

id. at 19.  Although the government will not seek to present extraneous evidence regarding such topics that the defendants have maintained and/or shared separate and apart from their participation in OneTaste, certain of Daedone and Cherwitz's personal relationships and views on sexual activities were either direct evidence of or inextricably intertwined with the charged offense, as set forth at length in the government's motions in limine.[7]

For instance, as just one example, as detailed in the government's motions in limine, Daedone engaged in a personal sexual relationship with the Investor, which the government expects the trial evidence to show was in part a transactional relationship to obtain money from the Investor to finance OneTaste.  Daedone then directed subordinates within OneTaste to act as "surrogates" and "handlers" to perform sexual and domestic services for the Investor.  As another example, the government expects the evidence will show that Cherwitz and others engaged in personal sexual relationships with other OneTaste participants as part of OneTaste's so-called "aversion practice," in response to a OneTaste-related directive to, for example, have sex within a certain time frame or with a certain number of sexual partners, or in an effort to interfere with established relationships, all for the purposes outlined in the government's motions in limine.  Thus, such evidence about personal relationships, even those of a sexual nature, is relevant to and inextricably intertwined with the charged crime.[8]

_____

[7]     The government nonetheless reserves the right, should the defendants choose to testify in their own defense about such topics, to cross examine the defendants regarding any inconsistent statements.

[8]     The defendants in their motion specifically reference unspecified "consensual activity" between Daedone and "A.P.," whom the government understands was a OneTaste

Further, the government anticipates that the trial evidence will show that Daedone used her own personal experiences, including sexual experiences, to then advocate for others to have similar experiences as a means to achieve "breakthroughs" or advance in OneTaste, but which were, in reality, a means of effecting the forced labor conspiracy.[9]  Thus, the government will seek to admit evidence concerning the defendants' and their co-conspirators' teachings and assignments regarding sex, OMing, victims, trauma, sexual assault and rape, including OneTaste courses and lectures where the defendants cited their personal views and experiences with trauma to further the aims of the charged conspiracy.  A lecture that Daedone delivered as part of a 2013 OneTaste Coaching Program offers an example of an instance where Daedone tied her own experiences with sex and trauma to OneTaste's purpose and goals.  See ECF No. 170,

---

participant and Daedone's subordinate at OneTaste at the time of the referenced relationship.  In particular, the defendants state "A.P. has already filed a declaration in this case (ECF 113, Exh. O) stating that the activity was entirely consensual."  Def. Mot. at 13.  However, the publicly-filed version of A.P.'s declaration, which bears redactions, contains no such statement.  To the extent the defendants rely on redacted contents from A.P.'s declaration, they should be required to disclose them.  Regardless, insofar as relevant, admissible evidence exists regarding Daedone's and A.P.'s relationship—such as Daedone's use of A.P. to sexually service the Investor as a "surrogate" for Daedone when she was unable to do so or Daedone's performance of rituals involving A.P., all for Daedone's financial benefit—the Court should admit that testimony for the reasons outlined in the government's motions in limine.

[9]     For example, the defendants seek to preclude evidence "related to Ms. Daedone's writings about period[s] of explorations that she entitled a year of 'unconditional sex' or her views on the practice."  Def. Mot. at 14.  But the trial evidence will establish that Daedone regularly discussed the concept of "unconditional sex" in lectures and OneTaste courses, including at so-called "Nicole Daedone Intensive" courses, which were received as teachings that OneTaste participants were to follow.  Thus, although the government does not intend to present extensive evidence on Daedone's own experiences with sexual partners engaging in "unconditional sex," it does intend to introduce that concept as a Daedone and OneTaste teaching, for all the reasons outlined herein and in the government's motions in limine.

Exhibit A (transcription of lecture), at 24 ("[T]hat's one of the reasons why . . . we are doing the work to create systems that can come down in it that aren't so precious, that aren't so easily traumatized that we can't enter the world.") <u>see also</u> <u>id.</u> at 3 (referencing the idea of making OneTaste T-shirts that say "I got raped and all I got was a victim story."). In the lecture, Daedone advised the OneTaste participants that they needed to be "turned on" and "surrender" in the face of sexual abuse and rape, and they must break their "conditioning" and complete OneTaste assignments, including the disclosure of their innermost fears in a "fear inventory" to be "free." <u>Id.</u> at 17 (describing prior instructions Daedone gave to a OneTaste "women's group" after some members expressed fear of rape, "[i]f you want to know the real way to deflect rape, it's to turn on 100 percent. Because then there's nothing to rape"); 49 (advising a OneTaste participant, "[y]ou have some beautiful work ahead of you. You have some beautiful conditioning that can be broken"); 50 (advising a OneTaste participant, "if you do your fear inventory this will be the thing that gets you free"). Daedone cited as the primary authority for her statements her prior experience with trauma, including her father's criminal history—which she called her "great 'cred,'" or credentials, <u>id.</u> at 4—and acknowledged that she could only "get away" with making the statements she made about victims because she "[had] cred." <u>Id.</u> at 3; <u>see also</u> <u>id.</u> 56 (OneTaste member observing to Daedone "you have cred").[10]

Far from being irrelevant, Daedone's proselytization of her personal views and evocation of her prior experience with trauma—her "cred"—as a source of authority was one of

---

[10] The government previously filed ECF No. 170, Exhibit A under seal in an abundance of caution; however, in light of the defendants' disclosure of information regarding Daedone's father's sexual abuse, continued sealing does not appear to be necessary.

the primary means and methods she employed to get OneTaste participants to lower their own personal boundaries and surrender to her and her co-conspirators—including by performing labor and services for OneTaste.  And the fact that, as an executive of OneTaste, Daedone repeatedly and publicly encouraged OneTaste participants—many of whom had previously experienced trauma—to "surrender" to sexual assault at a minimum evidences a "reckless disregard" of the fact that OneTaste obtained labor and services from its participants by means of serious psychological harm or threats of serious psychological harm.  18 U.S.C. § 1589(b). Furthermore, the defendants have failed to articulate how the highly probative value of such evidence is outweighed by any unfair prejudice.  Indeed, to the extent that the defendants shared their views regarding sex, OMing, victims, sexual assault and rape within the scope of their roles as OneTaste executives, during official OneTaste courses or trainings, or on OneTaste's official "OMHub" webpage, their views cannot meaningfully be distinguished from OneTaste's official teachings—or, more aptly, the forced labor conspiracy with which the defendants are charged. Given the significance of the evidence at issue, the proper remedy to address any concerns regarding prejudice would be the issuance of a limiting instruction, rather than the evidence's exclusion.  United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998) ("As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice.").

C.    The Court Should Permit the Admission of Evidence Regarding OneTaste's Targeting of Vulnerable Individuals

The defendants seek the preclusion of evidence or argument that they marketed OneTaste to people who were vulnerable due to past trauma based on the unfounded assertion that such evidence would be irrelevant because the government "cannot and has not provided any

universally understood definition of 'trauma' or 'vulnerability,'" and that, even if the government were to offer such definitions, it "does not follow" that the defendants "did, or could," target such individuals.  Def. Mot. at 15-16.  These arguments are inconsistent with the governing law and should be rejected.

First, the defendants cite no legal authority to support the sweeping proposition that the government, prior to admitting evidence regarding the vulnerability of the defendants' intended victims, must first proffer a universally-accepted definition of "trauma" or "vulnerability"; indeed, any such requirement would run contrary to foundational rules of evidence and the forced labor statute.  See Fed. R. Evid. 401 (defining evidence as relevant if it "has any tendency to make a fact [that is of consequence] more or less probable than it would be without the evidence"); 18 U.S.C. § 1589(c)(2); United States v. Raniere, 384 F. Supp. 3d 282, 312 n.22 (E.D.N.Y. 2019) (observing that the forced labor statute defines serious harm based on "all the surrounding circumstances").  Moreover, the factual question of whether the defendants "did, or could" target individuals who had experienced trauma is a factual matter to be addressed at trial that falls squarely within the province of the jury—and which was previewed to the Court in connection with the government's motion in limine on this topic.  See Gov. Mot. at 9-13.  Finally, the defendants fail to cite to any plausible reason why such evidence would be unfairly prejudicial.  Accordingly, the Court should deny the defendant's motion.

D.     The Court Should Permit the Admission of Evidence and Argument Relating to OneTaste's Sales Practices

The defendants move to preclude evidence suggesting that OneTaste's sales tactics were "predatory," based on the assertion that aggressive sales tactics are employed by

other businesses and the general observation that credit cards exist and "people purchase things they cannot afford every day." Def. Mot. at 16-17. In addition, the defendants argue that such evidence would only be relevant if the government intends to argue that "taking courses" amounts to labor. Id. The defendant's arguments are misplaced and should be rejected.

First, the defendants attempt to sidestep all the ways in which the defendants' and their co-conspirators' sales practices imposed serious financial harm on the OneTaste members, particularly where enrolling in courses was an expected part of OneTaste participants' employment at OneTaste and continued residence at OneTaste's communal homes. See 18 U.S.C. § 1589(c)(2) (defining "serious harm" as "any harm . . . including financial [harm]"). But as set forth at length in the government's motions in limine, evidence of such sales practice constitutes direct evidence of the means and methods the defendants and their co-conspirators used to carry out the charged conspiracy. See Gov. Mot. at 64-68. In addition, because multiple victims served on OneTaste's sales team, the sales team's activities are also evidence of the labor and services performed as a result of the charged offense.

The defendants also fail to articulate why such evidence would be unduly—yet alone unfairly—prejudicial. See Fed. R. Evid. 403.[11]

---

[11] The defendants argue that permitting evidence and argument regarding OneTaste's sales practices would "require" that the defendants "offer contrary evidence regarding the value that customers obtained from the company's classes." Def. Mot. at 16. Not so. Indeed, the value of the services rendered is distinct from the tactics used to sell them and the attendant harm to the OneTaste participants.

E.     The Court Should Permit the Admission of Evidence Regarding the Defendants'
       Financial Benefits from OneTaste

The defendants also seek to preclude the government from offering evidence of
"Daedone's financial condition and/or the terms of the sale of OneTaste," claiming, without
authority, that such evidence is irrelevant to the charged conduct.  Def. Mot. at 17-18.  The
defendants are mistaken; evidence of Daedone and Cherwitz's financial condition is directly
relevant to the elements of the crimes with which they are charged.

Specifically, 18 U.S.C. § 1589 holds not just primary offenders accountable, but
also anybody who "benefits, financially or by receiving anything of value, from participation in a
venture which has engaged in" forced labor.  18 U.S.C. § 1589(b); see Bistline v. Parker, 918
F.3d 849, 871 (10th Cir. 2019) ("One can violate the statute either as a primary offender or by
benefiting financially in a 'venture' with the primary offender."); Riccio v. McLean, 853 F.3d
553, 556 (1st Cir. 2017) (defining "venture" for purposes of 18 U.S.C. § 1589 as a "group of two
or more individuals associated in fact").  As outlined in the government's motions in limine, see
Gov. Mot. at 37, 74-76, the government's proffered financial condition evidence will show that
Daedone and Cherwitz benefitted (financially and otherwise) from the forced labor conspiracy,
including by virtue of their participation in the OneTaste venture.  See, e.g., Gilbert v. United
States Olympic Comm., 423 F. Supp. 3d 1112, 1139 (D. Colo. 2019); United States v. Evans,
No. 09-CR-619 (SJF), 2012 WL 23339318, at *5 (E.D.N.Y. June 19, 2012).

As further detailed in the government's motions in limine, the evidence will show
that Cherwitz and Daedone earned income from OneTaste and, with respect to Daedone, used
OneTaste funds for her own personal use and sold her interest in the venture for a significant

18

sum.  Gov't Mot. at 37, 74-75.   This evidence is directly relevant to the elements of the crimes

charged and is admissible.  The defendants' arguments to the contrary fail to engage with the

applicable criminal statutes or any case law, and their motion should be denied.

  F. <u>The Court Should Permit the Admission of Evidence Regarding Communal Homes that the Defendants, their Co-Conspirators and their Agents Oversaw and Controlled</u>

   The defendants next move to preclude evidence regarding residences known as

"OM houses," based on an assertion that the defendants were not involved in managing any of

the properties—notwithstanding the fact that OneTaste signed the lease of two of the

properties—and that the OneTaste participants' living arrangements were "voluntary."  Def.

Mot. at 24-25.  While the defendants argue that there is "no evidence" that the defendants were

involved in organizing or managing OneTaste's communal living arrangements, Def. Mot. at 21;

the government anticipates that, to the contrary, records, electronic communications, and witness

testimony will establish that the defendants and their co-conspirators resided at and/or managed

multiple OneTaste communal residences, where they oversaw the OneTaste participants' living

arrangements and daily activities.  Evidence regarding the communal living arrangements and

conditions at OneTaste is relevant because it is probative of the means and methods the

defendants used to carry out the charged conspiracy, the defendants' knowledge and intent of the

conspiracy's aims, and the serious harm and threats of serious harm experienced by the

defendants' victims.  18 U.S.C. § 1589(a)(2) & (4); <u>see also</u> Gov. Mot. at 14-16.  To the extent

that there is a dispute regarding the management of OneTaste's communal residences, it is a

factual matter that should properly be submitted to the jury.  Moreover, the defendants have

failed to articulate how evidence regarding OneTaste communal homes poses a risk of unfair

prejudice, confusion of the issues, and misleading the jury beyond conclusory assertions that such living arrangements were "voluntary." The Court should deny the defendants' motion.

G. <u>The Court Should Permit the Admission of Limited Evidence Relating to a Settlement Agreement between OneTaste and Jane Doe 1</u>

In their motion <u>in</u> <u>limine</u>, the defendants seek to preclude the government from introducing evidence of a 2015 settlement agreement (the "2015 Settlement") negotiated between Co-Conspirator 1 and other OneTaste executives with Jane Doe 1. Def. Mot. at 22. The 2015 Settlement stemmed from an August 2015 demand letter Jane Doe 1 sent to OneTaste in which Jane Doe 1 alleged that Cherwitz and others had forced and manipulated Jane Doe 1 into having sex and OMing with OneTaste staff, supervisors and customers and that, when she refused to do so, she was publicly shamed and threatened with reduced earnings and termination. Pursuant to the 2015 Settlement, OneTaste agreed to pay Jane Doe 1 a significant sum, but required that Jane Doe 1 sign a non-disparagement provision requiring that Jane Doe 1 keep the actions of OneTaste confidential. <u>See also</u> Gov. Mot. at 23-24.

The defendants argue that evidence of the 2015 Settlement should be excluded because "it is irrelevant under Rule 401, unfairly prejudicial under Rule 403, and because Rule 408 prohibits using settlement offers to prove the validity of the underlying claim." Def. Mot. at 23. The government intends to seek at trial to admit the fact of the demand letter sent by Jane Doe 1—which is evidence of the defendants' and co-conspirators' knowledge and intent—and the fact of the 2015 Settlement to complete the narrative, but in light of the defendants' motion, the government does not intend to seek to admit details of the 2015 Settlement, including the

settlement amount.[12]  Such limited evidence, introduced for "another purpose" that is not to "prove or disprove the validity or amount of a disputed claim" is proper and not unfairly prejudicial under the Federal Rules of Evidence.  See Fed. R. Evid. 408; 403.

Insofar as Fed. R. Evid. 408 is applicable in criminal cases, see Manko v. United States, 87 F.3d 50, 51 (2d Cir. 1996) ("Rule 408 of the Federal Rules of Evidence does not require exclusion of evidence relating to a civil settlement in a criminal trial."); but see United States v. Davis, 2009 WL 3646459, at *3 (E.D. Pa. Nov. 4, 2009) (suggesting that the 2006 amendment to Fed. R. Evid. 408 overruled Manko), Rule 408(b) provides that evidence of a settlement agreement may be admitted when relevant "for another purpose, such as proving a witness' bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  The exceptions identified in Rule 408 are not exclusive. Fed. R. Evid. 408 cmt.  Here, the fact of Jane Doe 1's demand letter—which was sent squarely within the charged time period— is indisputably relevant to the defendants' knowledge, plan and absence of mistake, given that she sent it in 2015, during the middle of the charged conspiracy. See Fed. R. Evid. 402, 403, 404(b); 18 U.S.C. § 1589 (prohibiting "knowingly benefitting"); see also Gov. Mot. 86 (Co-Conspirator 1 informing Co-Conspirator 11 that Co-Conspirator 1 was "sitting with nic" and then discussing with Co-Conspirator 11 that Jane Doe 1 may have felt

---

[12]      However, the government respectfully submits that, if the defendants attempt to cross-examine Jane Doe 1 on facts that would open the door to the admissibility of the specifics of the settlement agreement—such as by raising the amount of money she requested in her demand letter to OneTaste or raising the non-disparagement provision of the agreement and the subsequent civil suit that OneTaste has filed against Jane Doe 1 regarding the same—the government be permitted to admit the specifics of the 2015 Settlement, including the amount for which OneTaste settled the case.

"coerced in some way," among other things).  Admission of the fact of the subsequent 2015

Settlement is necessary both as evidence of the defendants' knowledge of allegations of

wrongdoing in the venture from which they were running and profiting, but also to complete the

story that Jane Doe 1 does not stand to profit by testifying in the criminal case from any

unresolved claim relating to the demand letter.  See, e.g., United States v. Austin, 54 F.3d 394,

400 (7th Cir. 1995) (evidence relating to civil settlement admissible to show that defendant was

aware that his actions were illegal and that he acted with criminal intent); United States v.

Jorgenson, No. 04-CR-169 (PAM), 2004 WL 1774529, at *3 (D. Minn. Aug. 8, 2004)

(agreements admissible to show defendants' knowledge of impermissible ticketing practices).

Further, any potential prejudice to the defendants can be cured by a limiting

instruction directing the jury that the fact of the 2015 Settlement may be considered only to

evaluate the defendants' notice or intent.  See United States v. Downing, 297 F.3d 52, 59 (2d Cir.

2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a

district court's limiting instructions.").[13]  "As the Supreme Court has recognized, limiting

instructions are often sufficient to cure any risk of prejudice."  Walker, 142 F.3d at 110.

Accordingly, the Court should deny the defendants' motion to exclude evidence

as irrelevant or unfairly prejudicial in its entirety.

---

[13]     In light of such a curative instruction, evidence that OneTaste settled "for
business purposes to avoid the cost of litigating the claims," Def. Mot. at 23, would be
inadmissible as irrelevant, given that the fact of the 2015 Settlement is being admitted only for
the purpose of demonstrating the defendants' being put on notice of allegations of wrongdoing.

IV.   The Defendants Should Not Be Permitted to Call Unnamed "Many Former OneTaste Employees"

The defendants argue, citing to no case law, that they should be permitted to admit "the testimony of the many former OneTaste employees who worked and lived alongside [the victim-witnesses], who will testify that nobody was ever forced to do anything at OneTaste, and that employees were free to leave OneTaste." Def. Mot. at 25. However, as the government laid out in its motions, "statements by individuals who were not allegedly directed to [perform the forced labor] . . . have no bearing on whether the alleged victims were so directed or threatened." United States v. Raniere, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019); see also Gov't Mots. in Limine, ECF No. 169, at 102-04 (citing cases). In a bank robbery case, though the Court may permit evidence of witnesses with relevant knowledge of the victim-bank, the Court would not permit evidence of the numerous banks the robbers had frequented throughout their lives that they did not rob. In a sex trafficking case, though the Court would permit testimony regarding the victims or the trafficking scheme, the Court would not permit evidence that the defendants interacted with other individuals whom they did not traffic. Such evidence is patently irrelevant, and no different conclusion is warranted in this forced labor conspiracy.

The defendants nonetheless assert that the government's victims "represent just a tiny fraction of the hundreds of employees who worked at OneTaste for more than a decade." Def. Mot. at 25. But a criminal prosecution is not a numbers game. Forcing the labor of even one victim is a crime, as is conspiracy to do so. See 18 U.S.C. §§ 1589, 1594. That the statute defines "serious harm" as "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform

23

[labor]," see 18 U.S.C. § 1589(c)(2), does not make the testimony of other unnamed OneTaste employees ipso facto relevant.  The Second Circuit has held that the "correct standard" for the forced labor statute "is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances."  United States v. Rivera, 799 F.3d 180, 186-87 (2d Cir. 2015).

Thus, in Rivera, the Second Circuit held that "[e]vidence of victims' prior acts of commercial sex is irrelevant to whether those victims were coerced into working as prostitutes." Id. at 185 (emphasis in original).  The same is true here: whether others who engaged with OneTaste and its practices in some way were not coerced into performing labor or services, is not, on its own, relevant to the charged forced labor conspiracy.  Nor have the defendants made any attempt to specify what purported evidence they intend to elicit or coherently explained how such evidence is relevant.  In these circumstances, the government's motion should be granted and the defendants' motion denied.

V.     The Court Should Not Admit Evidence as to Purported Science Behind Orgasmic Meditation

As the Court is aware, the government moved to preclude evidence and argument of purported science or public endorsements pertaining to orgasmic meditation.  Gov Mot. at 104-05 & n.46.  In their motions, the defendants assert that the government "intends to impugn the OM practice."  Def. Mot. at 26-28.  The government does not intend to put the "OM practice" on trial; rather, the defendants are on trial, and insofar as the defendants used orgasmic meditation to cause or threaten serious harm, or insofar as the defendants directed the performance of orgasmic meditation as labor or services, the government should be permitted to

introduce such evidence.  The government is not seeking to prove or disprove the benefits or detractions of orgasmic meditation,[14] and the evidence proffered by the defense—consisting of purported independent studies (but with no information about who funded those studies or their peer review process, among other deficiencies)—could only be admitted through an expert witness, for which the government may need to call a competing expert witness.  Permitting such irrelevant testimony would only result in confusion of the issues, misleading the jury, undue delay and wasting time, and is squarely prohibited by Federal Rule of Evidence 403.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court deny the defendants' motions <u>in limine</u> in their entirety.

Dated: Brooklyn, New York
      October 25, 2024

                                       Respectfully submitted,

                                       BREON PEACE
                                       UNITED STATES ATTORNEY
                                       Eastern District of New York

By:       /s/
                                         Gillian Kassner
                                       Kayla Bensing
                                       Devon Lash
                                       Sean Fern
                                       Assistant United States Attorneys
                                       (718) 254-7000

---

[14]     Indeed, the government anticipates that some of its witnesses will testify that the practice of OM was beneficial to them in some respects.

25