

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KCB/GK/DEL/NG/SMF
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 4, 2024

By ECF and Email

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Cherwitz, et al.
     Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

   The government respectfully submits this letter in response to defendants Rachel Cherwitz and Nicole Daedone's December 2, 2024 letter (the "December 2 Letter"), requesting that the Court (i) authorize the issuance of Rule 17 subpoenas to Jane Doe 1 and her sister directing the production of the Google drive metadata and edit history associated with two collections of typewritten documents that the government produced to the defendants in Rule 16 discovery (which the defendants refer to as "Journal Set 1" and "Journal Set 2"); and (ii) direct the government to produce Journal Sets 1 and 2 in their original format to the defendants. See ECF Dkt. No. 214. The Court should deny the defendants' request to issue the Rule 17 subpoenas because they seek to compel third-party witnesses to produce materials that are neither admissible nor relevant at trial. Furthermore, any anticipated analysis of such materials by an unidentified expert witness would be untimely, as the Court's expert disclosure deadline has long passed. The Court should additionally deny the defendants' request for an order "commanding the government to immediately produce Journal Sets 1 and 2 in their original format" as moot in light of the government's prior disclosures of all of the relevant materials in its possession concerning Journal Sets 1 and 2, and the defendants' upcoming in-person inspection of the materials in the government's possession, including any relevant metadata, which the parties have scheduled for the afternoon of December 10, 2024.

I. Background

   Jane Doe 1 is a former OneTaste member who was associated with OneTaste between 2012 and 2015. After leaving OneTaste, in or around August 2015, Jane Doe 1 sent a demand letter to OneTaste in which she alleged that Rachel Cherwitz and other OneTaste leaders forced and manipulated her into having sex and OMing with OneTaste staff, supervisors and

customers and that, when she refused to do so, she was publicly shamed and threatened with reduced earnings and termination. Pursuant to a 2015 settlement agreement, OneTaste agreed to pay Jane Doe 1a significant sum, but required that Jane Doe 1 sign a non-disparagement provision requiring that she keep the actions of OneTaste confidential. In 2022, OneTaste filed a complaint against Jane Doe 1 in California state court, alleging breach of certain provisions of the 2015 settlement agreement. See Nov. 21, 2022 Amended Complaint ¶¶ 45-46, Case No. 22STCV33093 (Los Angeles, Cal. Superior Court). In connection with the civil action against Jane Doe 1, OneTaste has conducted depositions of Jane Doe 1 and her sister, and has received discovery from them as well as other individuals currently or previously affiliated with OneTaste.

Members of the FBI have interviewed and received materials from both Jane Doe 1 and her sister in connection with the investigation of the instant case. Among other things, in or around April 2024, Jane Doe 1's sister sent the FBI via UPS mail a collection of physical notebooks that she had been storing at her residence for Jane Doe 1—who currently lives abroad—which contained original handwritten journal entries that Jane Doe 1 has represented that she wrote during and shortly after her participation in OneTaste.

Prior to receiving Jane Doe 1's physical notebooks, on or about March 9, 2023, the FBI had separately received two typewritten documents— Journal Sets 1 and 2—from Jane Doe 1 via Google Doc link. See ECF Dkt. No. 214, Exhibit E. Journal Sets 1 and 2 are not Jane Doe 1's original journals; they are typewritten documents initially created by Jane Doe 1's sister, who transcribed excerpted portions of Jane Doe 1's handwritten journal entries and subsequently used them in connection with a documentary about OneTaste that later aired on Netflix in or around November 2022. Jane Doe 1 has stated that she reviewed and edited the typewritten documents prior to their use in the documentary. The government does not at present intend to call Jane Doe 1's sister as a witness or admit Journal Sets 1 and 2 at trial.

The government has produced scanned versions of Jane Doe 1's handwritten journals and Journal Sets 1 and 2 in Rule 16 discovery as well as in its disclosure of 18 U.S.C. § 3500 material.[1] The government has consistently indicated that such materials are available to the defendants for their inspection upon request, including the inspection of any metadata associated with the documents in the government's possession. After filing the instant motion and after a delay in responding to the government's repeated invitations to inspect any metadata, the defendants agreed to meet in person to inspect such materials immediately following the parties' next scheduled status conference on December 10, 2023.

II.  Applicable Law

Rule 17(c) of the Federal Rules of Criminal Procedure provides that

---

[1] The government has also produced in discovery the materials seized from a search of a hard drive belonging to Jane Doe 1 that Jane Doe 1's sister provided to the FBI at the same time that she provided the physical notebooks containing Jane Doe 1's handwritten journal entries. December 2 Letter at 8.

> [a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1); see also United States v. Pierre, No. 22-CR-19 (PGG), 2023 WL 7004460, at *15 (S.D.N.Y. Oct. 24, 2023). "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." United States v. Nixon, 418 U.S. 683, 702 (1974).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." Nixon, 418 U.S. at 700; see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." United States v. Louis, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in Nixon, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." United States v. Brown, No. 95-CR-168 (AGS),1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); see also United States v. RW Professional Leasing Services Corp., 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing Nixon, 418 U.S. at 699-700); Louis, 2005 WL 180885, at *5 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (internal quotations omitted)).

A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" Nixon, 418 U.S. at 700. Indeed, precisely because the rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 162 (emphasis added); see also Nixon, 418 U.S. at 699-700 (requiring a showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general 'fishing expedition'"). Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. United States v. Yian, No. 94-R-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995); see also United States v. Binday, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) (noting "an impermissible discovery motive is much more likely to underlie a subpoena calling for a return well in advance of trial than one issued for return the date trial is set to begin"); Pierre, 2023 WL 7004460, at *15 (same).

III.     Analysis

   A.    The Proposed Subpoenas Constitute an Untimely Fishing Expedition and Fail to Meet the *Nixon* Relevance and Admissibility Requirements

The Court should deny the defendants' request to issue Rule 17(c) subpoenas for multiple reasons.

First, the request to obtain information from third-party witnesses for review and analysis by an unidentified expert, who has yet to be properly noticed in this case, is untimely. The deadline for expert disclosures was on October 21, 2024; trial is scheduled to commence in less than six weeks. As the defendants themselves acknowledge, the defendants received copies of Journal Sets 1 and 2 in discovery in September 2023, well over a year ago. December 2 Letter, at 2. The defendants fail to offer any reason to justify the delay in seeking this information or noticing a data science expert in this case, particularly given they previously noticed an expert specifically to opine on the authorship of the same typewritten documents. See ECF Dkt. No. 178 at 46-47 (Dr. Robert A. Leonard Expert Disclosure).

Second, the Court should deny the defendants' request to issue the Rule 17 subpoena because it seeks the disclosure of the "the complete document history" of a series of documents that are wholly irrelevant to the upcoming trial. ECF Dkt. No. 214, Exhibit M. RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 162 (emphasis added); Nixon, 418 U.S. at 699-700. The government presently does not intend to admit Journal Sets 1 and 2 at trial or call Jane Doe 1's sister, the creator of the typewritten documents, as a witness.[2] Indeed, it is unclear how such documents would be admissible given that they were created well after the charged time period. Accordingly, any expert testimony regarding the authorship and editing history of such documents is irrelevant to the issues before the jury, and any minimal probative value of such information would be substantially outweighed by the significant risk of confusion of the issues before the jury and wasting time. Fed. R. Evid. 401 & 403.

---

   [2] Although some courts have determined that Rule 17(c) subpoenas may be used to obtain materials to be used for impeachment, see United States v. Seabrook, No. 16-CR-467, 2017 WL 4838311, at *1-2 (S.D.N.Y. Oct. 23, 2017), other courts have found that, "the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant after a witness has testified." United States v. Maxwell, No. 20-CR-330 (AJN), 2021 WL 2292773, at *1 (S.D.N.Y. June 4, 2021) (citing cases). Here, it is unclear how the defendants could use the information sought to impeach Jane Doe 1, in the event that she testifies, because she did not create or maintain sole custody over Journal Sets 1 and 2.

4

B.   The Court Should Deny the Defendants' Requests for Additional Discovery As Moot.

The Court should deny the defendants' request for the immediate production of Journal Sets 1 and 2 in their "original format" as moot. December 2 Letter at 1. The government has already produced to the defendants the versions of Journal Sets 1 and 2 that are in its possession and has repeatedly offered to make all versions of any journals provided by Jane Doe 1 and her sister available to the defendants for their inspection. The parties are scheduled to conduct an in-person review of the materials on December 10, 2024.

C.   A Hearing is Unnecessary

The defendants in their letter also accuse an agent of the FBI of "materially alter[ing]" Journal Set 1 prior to its production in discovery, December 2 Letter at 1, and request a hearing on this subject. Id. at 1-2. In particular, the defendants allege that the agent must have deleted a bold heading contained in Journal Set 1 prior to its production in discovery because a separate document produced by an unidentified party in a separate civil action included a heading. Id. at 3. This accusation is entirely baseless—particularly in light of the fact that the defendants themselves claim that multiple versions of the document at issue existed. Accordingly, the Court should deny the defendants' request for a hearing.

D.   Defendants Should Be Required to Produce 26.2 Material

This Court ordered the defendants to produce 26.2 material by November 22, 2024. The government has been informed that defendants recently subpoenaed Jane Doe 1 for trial testimony in this case. To date, they have not produced any 26.2 material for her, notwithstanding the fact that they have attached to their motion multiple documents which they purport constitute her statements, which were never previously disclosed to the government. See, e.g., ECF Dkt. No. 214, Exhibits C & D. The defendants should be required to immediately disclose 26.2 material for Jane Doe 1 or otherwise withdraw their trial subpoena.

The 26.2 material the defendants have disclosed for other witnesses likewise appears to be deficient on its face. The defendants' productions for the 19 individuals they have included in their 26.2 disclosures are limited to signed declarations by the witnesses. The productions do not include, among other things, any draft declarations, notes of witness statements, or, most glaringly, any communications whatsoever—in any format—by any of the 19 identified individuals.

The government is aware that OneTaste and its representatives are in possession of hundreds if not thousands of text messages, emails, and chat messages by each of the 19 individuals the defendants have identified. In addition, the government is aware that OneTaste and its attorneys—including Rachel Caine and Kevin Williams—collectively possess a collection of recorded interviews of all 19 individuals the defendants have identified as potential witnesses regarding subjects that overlap substantially with their anticipated testimony. Defense counsel specifically requested that Ms. Caine and Mr. Williams be added to the protective order

in this case to assist them in preparing their defense, and have, at various points, referred to them as essential members of the defense team.  See ECF Dkt. No. 201-1, Paragraph 2 (defining "Defense Staff" to include Kevin Williams and Rachel Caine); November 15, 2024 Tr. At 22 ("[W]e need to be able to have a back-and-forth with the attorneys of OneTaste . . . we have to be able to free flow information"), 34 ("I'm putting it on the record right now tit would almost be malpractice for my law firm to try this case without consulting with [OneTaste's lawyers] because they know so much more about the history and the details"); 36 ("I can't try this case without Kevin Williams.  Or Rachel Caine."); 36 ("[I]f I can't consult Mr. Williams or Rachel Caine, who are counsel for OneTaste, I can't do my job.").  The defendants cannot be permitted to communicate with potential witnesses and access statements and information relating to their testimony through intermediaries to avoid their disclosure obligations.  The Court should require the immediate disclosure of all statements in the possession of members of the defense team—including Kevin Williams and Rachel Caine—relating to the subject matter of each anticipated defense witnesses' testimony.

III.     Conclusion

For the reasons set forth herein, the government respectfully opposes the defendants' motion for the Court to issue Rule 17(c) subpoenas and for additional discovery.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Gillian Kassner
Devon Lash
Kayla Bensing
Nina Gupta
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (DG) (via ECF and Email)
Counsel for Cherwitz and Daedone (via ECF and Email)

6