UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————————X

UNITED STATES OF AMERICA

                                                                              23 CR 146 (DG)

- against -


RACHEL CHERWITZ and
NICOLE DAEDONE
              Defendants.
—————————————————————————X


# MOTION TO DISMISS PORTIONS OF THE INDICTMENT RELATED TO ALLEGED "NONPHYSICAL ACTS" THAT COERCED LABOR


BONJEAN LAW GROUP, PLLC
Jennifer Bonjean, Esq.
Ashley Cohen, Esq.
303 Van Brunt Street, 1st Fl.
Brooklyn, New York 11231
(718) 875-1850
jennifer@bonjeanlaw.com

AIDALA, BERTUNA & KAMINS, P.C.
Arthur L. Aidala, Esq.
Imran Ansari, Esq.
Michael Jaccarino, Esq.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
arthur@aidalalaw.com
iansari@aidalalaw.com
jaccarino@aidalalaw.com

*Counsel for Defendants*

# Table of Contents

Table of Authorities..................................................................................................................ii

PRELIMINARY STATEMENT............................................................................................. 1

I. The Defendants' Motion to Dismiss is Properly Filed Under Federal Rules of Criminal Procedure 12(b)(2) & (b)(3)................................................................................................... 1

   A. The Defendants' Thirteenth Amendment and Due Process Claims Are Properly Made Under Rule 12(b)(2)............................................................................................................ 2

   B. Alternatively, There Is Good Cause for Permitting the Defendants to File this Motion Under Rule 12(b)(3)............................................................................................................ 3

II. The Part of 18 U.S.C. § 1589 that Criminalizes Threats or Use of "Nonphysical" Harm to Coerce Labor and Services Exceeds Congress' Authority Under the Thirteenth Amendment....... 5

III. The Definition of "Serious Harm" in 18 U.S.C. § 1589(c) Is Void for Vagueness in Violation of the Fifth Amendment's Due Process Clause.......................................................... 11

CONCLUSION....................................................................................................................... 15

# Table of Authorities

Page(s)

Cases

*Ayala v. Livingston*,
 2017 WL 9292195 (E.D. Tex. June 26, 2017), *adopted*, 2017 WL 4081466 (E.D. Tex. Sept. 14, 2017) ................................................................................................................. 6

*Beckles v. United States*,
 580 U.S. 256 (2016) ........................................................................................................... 12

*Butler v. Perry*,
 240 U.S. 328 (1916) ...................................................................................................... 7, 8, 9

*Class v. United States*,
 583 U.S. 174 (2018) ............................................................................................................. 2

*Copeland v. Vance*,
 893 F.3d 101 (2d Cir. 2018) ............................................................................................... 11

*Hodges v. United States*,
 203 U.S. 1 (1906) ............................................................................................................. 8, 9

*Ingber v. Enzor*,
 841 F.2d 450 (2d Cir. 1988) ............................................................................................. 2, 4

*Jobson v. Henne*,
 355 F.2d 129 (2d Cir. 1966) ................................................................................................. 8

*Johnson v. United States*,
 576 U.S. 591 (2015) ............................................................................................... 12, 13, 14

*Jones v. Alfred H. Mayer Co.*,
 392 U.S. 409 (1968) ...................................................................................................... 10, 11

*Muchira v. Al-Rawaf*,
 850 F.3d 605 (4th Cir. 2017) ................................................................................................ 6

*Taylor v. Salvation Army National Corporation*,
 110 F.4th 1017 (7th Cir. 2024) ............................................................................................. 9

*United States v. Berroa*,
 2022 WL 1166535 (S.D. Fla. Apr. 20, 2022) ....................................................................... 2

*United States v. Cotton*,
 535 U.S. 625 (2002) ............................................................................................................. 2

*United States v. Davis*,
 588 U.S. 445 (2019) ....................................................................................................... 3, 12

*United States v. Dorsey*,
 2023 WL 8288965 (W.D. Tenn. Nov. 30, 2023) .................................................................. 2

*United States v. Durham*,
 2016 WL 319893 (W.D. Okla. Jan. 26, 2016) ...................................................................... 2

*United States v. Kozminski*,
 487 U.S. 931 (1988) ................................................................................................ 6, 7, 8, 14

*United States v. Morales*,
 2024 WL 3520394 (D. Conn. July 23, 2024) ....................................................................... 2

*United States v. Roof*,
 225 F. Supp.3d 438 (D. S.C. 2016) .................................................................................... 11

*United States v. Rosenblatt*,
   554 F.2d 36 (2d Cir. 1977) .................................................................................. 15
*United States v. Shackney*,
   333 F.2d 475 (2d Cir. 1964) .............................................................................. 8, 9
*United States v. Toviave*,
   761 F.3d 623 (6th Cir. 2014) ................................................................................ 6
*United States v. Van Der End*,
   943 F.3d 98 (2d Cir. 2019) ................................................................................... 2

Statutes
18 U.S.C. § 924(e)(2)(B) ........................................................................................ 13
18 U.S.C. § 1584 ................................................................................................ 8, 14
18 U.S.C. § 1584(a) ........................................................................................ 5, 6, 9
18 U.S.C. § 1584(b) ................................................................................................. 5
18 U.S.C. § 1589(c) ....................................................................................... 1, 5, 11
18 U.S.C. § 1589(c)(2) ............................................................................... 3, 5, 12, 13
18 U.S.C. § 1594 .................................................................................................. 1, 15
18 U.S.C. § 1594(b) ............................................................................................. 1, 12
18 U.S.C. § 1594(d) .................................................................................................. 1
18 U.S.C. § 1595 ...................................................................................................... 6
22 U.S.C. § 7101(13) ................................................................................................ 9

Rules
Federal Rules of Criminal Procedure 12(b)(2) ........................................................ 1
Federal Rules of Criminal Procedure 12(b)(3) ........................................................ 1
Federal Rules of Criminal Procedure 12(c)(3) ........................................................ 3

Other Authorities
*Human Trafficking: Understanding the Law and Deconstructing Myths*,
   60 St. Louis U. L. J. 1 (2015) ............................................................................... 6
*Is Vagueness Choking the White-Collar Statute*,
   53 Ga. L. Rev. 495 (2019) .................................................................................. 11
*Slavery Revisited in Penal Labor*,
   35 Seattle U. L. Rev. 869 (2012) ........................................................................ 10
*Vagueness Principles*,
   48 Ariz. St. L. J. 1137 (2016) ............................................................................. 12

**PRELIMINARY STATEMENT**

Pursuant to Federal Rules of Federal Criminal Procedure 12(b)(2) and 12(b)(3), the Defendants move to dismiss portions of the indictment that allege that the Defendants threatened or used "nonphysical" acts to coerce labor and services[1] because: (1) those allegations are based on a part of 18 U.S.C. § 1589[2] that exceeds Congress' constitutional authority under the Thirteenth Amendment (and, thus, is facially unconstitutional); and (2) the definition of "serious harm" is void for vagueness under the Due Process Clause.[3]

In support of this motion, the Defendants would show the following.

**I.**
**The Defendants' Motion to Dismiss is Properly Filed Under**
**Federal Rules of Criminal Procedure 12(b)(2) & (b)(3).**

As discussed below in Part II, the Defendants contend that Congress exceeded its constitutional authority under the Thirteenth Amendment to enact 18 U.S.C. § 1589(c), which makes it a felony offense for a Defendant to use or threaten to use "*nonphysical [harm]*, including psychological, financial, or reputational harm" to coerce another person to provide labor or services. 18 U.S.C. § 1589(c) (emphasis added). Although the Defendants may challenge the constitutionality of the statute during trial – including in a motion for judgment of acquittal

---

[1] *See* Indictment ¶¶ 6-10, 12(a)(ii) & (iv).

[2] Although the indictment also charges violations of 18 U.S.C. § 1594(b) & (d), the operation of those statutory provisions is dependent on an alleged conspiracy to violate § 1589. Therefore, if § 1589 is unconstitutional in part –as discussed below – then § 1594 also operates in an unconstitutional manner.

[3] Section 1 of the Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Section 2 provides: "Congress shall have power to enforce this article by appropriate legislation."

(challenging the statute as unconstitutional *as applied*) – the Defendants believe that they also may properly challenge the statute, as *facially* unconstitutional, in this pretrial motion. Similarly, the Defendants also contend that the definition of "serious harm" is facially vague in violation of the Due Process Clause. Such a constitutional challenge is properly made in a pretrial motion.

### A.
### The Defendants' Thirteenth Amendment and Due Process Claims Are Properly Made Under Rule 12(b)(2).

A motion to dismiss an indictment based on a "facially" unconstitutional criminal statute – which implicates the court's jurisdiction[4] – may be filed at any point in the proceedings pursuant to Federal Rule of Criminal Procedure 12(b)(2).[5] That is because a facially unconstitutional statute deprives the government of *constitutional power* to prosecute the Defendants and, thus, deprives a federal court of the constitutional power to adjudicate a defendant guilty and impose a sentence. *See Cotton*, 535 U.S. at 630; *Class*, 583 U.S. at 181-82; *see also Ingber v. Enzor*, 841 F.2d 450, 453-54 (2d Cir. 1988) (holding that, when a "trial court lacked authority to convict or punish a

---

[4] *United States v. Cotton*, 535 U.S. 625, 630 (2002) (noting that jurisdiction means the court's "statutory *or constitutional power to adjudicate a case*") (emphasis added); *cf. United States v. Van Der End*, 943 F.3d 98, 104 (2d Cir. 2019) (noting that, despite a guilty plea, a defendant thereafter may "'challenge the Government's power to criminalize [his] (admitted) conduct,' 'thereby call[ing] into question the Government's power to constitutionally prosecute'" him) (quoting *Class v. United States*, 583 U.S. 174, 181-82 (2018)). Therefore, a government's constitutional power (or lack thereof) to prosecute a criminal defendant is a "jurisdictional" issue that may be raised in a Rule 12(b)(2) motion to dismiss.

[5] *See, e.g.*, *United States v. Dorsey*, Case No. 2:22-cr-20122-MSN, 2023 WL 8288965, at *2 (W.D. Tenn. Nov. 30, 2023) (ruling on a motion to dismiss the indictment that challenged the facial constitutionality of criminal statute pursuant to Rule 12(b)(2)); *United States v. Berroa*, No. 21-20359-CR-Scola, 2022 WL 1166535, at *1 (S.D. Fla. Apr. 20, 2022) (same); *see also United States v. Morales*, No. 3:22-cr-127 (SRU), 2024 WL 3520394, at *1 & n.1 (D. Conn. July 23, 2024) (permitting defendant to file a motion to dismiss the indictment based on an allegedly facially unconstitutional statute after the defendant had pleaded guilty); *United States v. Durham*, CR-14-231-R, 2016 WL 319893, at *1 (W.D. Okla. Jan. 26, 2016) (permitting a "facial" challenge to the statute to be raised for the first time in a post-trial motion to arrest judgment).

criminal defendant in the first place" based on a facially unconstitutional statute, a defendant's conviction is "void *ab initio*" and she must be released to "avoid miscarriage of justice") (citations and internal quotation marks omitted); *see also United States v. Davis*, 588 U.S. 445, 447 (2019) ("[A] vague law is no law at all.").[6]

## B.
### Alternatively, There Is Good Cause for Permitting the Defendants to File this Motion Under Rule 12(b)(3).

Alternatively, assuming *arguendo* that this motion is not properly filed under Rule 12(b)(2), this Court should find that there is good cause to permit the Defendants to file this motion under Rule 12(b)(3), pursuant to Rule 12(c)(3). It was not until the government's recent memorandum in support of its motions in *limine* (ECF Document No. 169) that the Defendants became aware that the government's entire theory of their case against the Defendants is based on evidence of alleged "nonphysical [harm], including psychological, financial, or reputational harm"[7] (as opposed to actual or threatened *physical* force or threats of legal sanctions such as an arrest or imprisonment). That memorandum's theory of the alleged offenses is much narrower from the indictment's scope, which alleges that the defendants used or threatened to use physical restraint, abuse of the legal process, and "serious harm" (as defined as both "physical" *and* "nonphysical" harm). Therefore, until this recent disclosure, the Defendants did not contemplate that a pretrial motion to dismiss under the Thirteenth Amendment and Due Process Clause (on vagueness

---

[6] Although the Supreme Court in *Davis* referred to an unconstitutionally vague federal criminal statute as being void *ab initio* ("no law at all"), the same can be said of any criminal statute that is facially unconstitutional – including a federal criminal law that exceeds Congress's authority under the Thirteenth Amendment.

[7] 18 U.S.C. § 1589(c)(2).

3

grounds) was appropriate to foreclose the prosecution in this case. Now, only after the government's narrowing of their theory of the case (under § (a)(2)), is this motion ripe.

In addition, in deciding whether good cause exists, this Court should recognize that, if the Defendants are correct in their assertion that Congress enacted a facially unconstitutional statute – in defining "forced labor" to include use or threats of mere "nonphysical" harm to coerce labor or services – it would be a fundamental miscarriage of justice to permit the Defendants to be prosecuted, convicted, and sentenced under the facially unconstitutional portion of the statute. *See Ingber v. Enzor*, 841 F.2d 450, 453-54 (2d Cir. 1988) (holding that, when a "trial court lacked authority to convict or punish a criminal defendant in the first place" based on a facially unconstitutional statute, a defendant's conviction is "void *ab initio*" and she must be released to "avoid miscarriage of justice") (citations and internal quotation marks omitted).

Finally, this Court should address the important constitutional issues raised in this motion now – before the trial begins – because the Defendants also will (1) raise the same constitutional issues in their objections during trial to the admission of evidence of the Defendants' alleged use of or threats of "nonphysical" harm; (2) object to jury instructions that permit a conviction of the Defendants based only on the use of or threats of "nonphysical" harm; and (3) move for a judgment of acquittal on the ground that a conviction cannot constitutionally occur based on evidence of the Defendants' use of or threats of "nonphysical" harm.

# II.
# The Part of 18 U.S.C. § 1589 that Criminalizes Threats or Use of "Nonphysical" Harm to Coerce Labor and Services Exceeds Congress' Authority Under the Thirteenth Amendment.

Section 1589(a) & (b) provides that:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means –

   (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

   (2) by means of *serious harm or threats of serious harm to that person or another person*;

   (3) by means of the abuse or threatened abuse of law or legal process; or

   (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer *serious harm* or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589(a) & (b) (emphasis added).

Based on a 2008 amendment to the statute, § 1589(c)(2) defines "serious harm" as follows:

The term "serious harm" means any harm, whether physical *or nonphysical, including psychological, financial, or reputational harm*, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c) (emphasis added).

"Section 1589 was 'passed to implement the Thirteenth Amendment against slavery or involuntary servitude.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (quoting *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)); *see also* John C. Richmond, *Human Trafficking: Understanding the Law and Deconstructing Myths*, 60 St. Louis U. L. J. 1, 5 n.37 (2015) ("The jurisdictional basis for the Section 1589 forced labor statute is the Thirteenth Amendment of the Constitution that abolished slavery.").

Therefore, in order to determine whether the Thirteenth Amendment affords Congress the authority to have enacted § 1589(c) (to the extent that it criminalizes use or threats of use of nonphysical harm to coerce labor or services), this Court must determine the meaning of "slavery or involuntary servitude" within the meaning of the Thirteenth Amendment. If a Defendant's alleged criminal conduct does not fall within the scope of what Section 1 of the Thirteenth Amendment prohibits, then Congress cannot criminalize that conduct through legislation enacted pursuant to Section 2 of the amendment. *See Ayala v. Livingston*, Civ. Action Nos. 6:16cv612 & 6:16cv1144, 2017 WL 9292195, at *4 (E.D. Tex. June 26, 2017) ("Because Ayala cannot show a Thirteenth Amendment violation, he cannot maintain a claim under § 1589 or 18 U.S.C. § 1595 (providing a civil cause of action for certain violations of § 1589)."), *adopted*, 2017 WL 4081466 (E.D. Tex. Sept. 14, 2017).

In *United States v. Kozminski*, 487 U.S. 931 (1988), the Supreme Court, in interpreting a related statute, 18 U.S.C. § 1584(a),[8] held that "involuntary servitude" (within the meaning of the

---

[8] Section 1584(a) provides: "Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both."

Thirteenth Amendment) – a phrase with a related but distinct meaning from "slavery"[9] – has been interpreted in the Court's prior cases as meaning forced labor resulting from "physical or legal coercion" but did not include "psychological coercion." *Kozminski*, 487 U.S. at 944 ("[O]ur precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion. The guarantee of freedom from involuntary servitude has never been interpreted specifically to prohibit compulsion of labor by other means, such as psychological coercion.") (citing cases); *id.* at 943 ("[W]e find that in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction [i.e., arrest or imprisonment].") (citing cases); *id.* at 942 ("[W]e readily can deduce an intent [by the Thirteenth Amendment's framers] to prohibit compulsion through physical coercion [including a threat of legal sanction such as imprisonment].");  *id.* at 942 (noting that "involuntary servitude" meant "those forms of compulsory labor akin to African slavery") (citation and internal quotation marks omitted).

In passing, the Supreme Court stated that "[w]e draw no conclusions from this historical survey [of the Court's prior cases] about the potential scope of the Thirteenth Amendment." *Id.* at 944. However, the Court mentioned no historical evidence whatsoever showing that the term "involuntary servitude" (as used in 1865, when the amendment was adopted) included labor

---

[9] As the Court stated:

> The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *Butler v. Perry*, 240 U.S. 328, 332 (1916).

*Kozminski*, 487 U.S. at 942.

resulting from mere "nonphysical" coercion not coupled with actual or threatened physical force or a legal sanction like imprisonment.[10]

The government in this case will be unable to offer any such historical evidence because absolutely none exists. Clearly, in 1865, in drafting the Thirteenth Amendment, Congress intended "involuntary servitude" – although distinct from "slavery" – to mean something "akin" to slavery. *See Kozminski*, 487 U.S. at 942 (noting that "involuntary servitude" meant "those forms of compulsory labor akin to African slavery") (citation and internal quotation marks omitted).[11] Nothing in the historical record suggests that, in 1865, mere psychological or other "nonphysical" coercion, without any threat or application of *physical* force or legal sanction depriving a person of their liberty was viewed as "akin" to the type of horrific compulsory labor inherent in slavery existing in the American South. The common denominator between "slavery" and "involuntary servitude" is "enforced compulsory service," *Jobson v. Henne*, 355 F.2d 129, 132 (2d Cir. 1966) (stating that "the purpose of the Thirteenth Amendment was to proscribe conditions of 'enforced compulsory service of one to another,'" (quoting *Hodges v. United States*, 203 U.S. 1, 16 (1906)),

---

[10] The Court's statement – "[a]bsent change by Congress, we hold that, for purposes of criminal prosecution under § 241 or § 1584, the term 'involuntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Kozminski*, 487 U.S. at 952 – cannot be reasonably viewed as an endorsement of a future statutory definition of "involuntary servitude" based solely on "nonphysical" coercion. The Court merely was leaving the door open for Congress to amend the statute – subject, of course, to judicial review to determine whether such a revision was permissible under the Thirteenth Amendment.

[11] The drafters of the Thirteenth Amendment also likely intended to refer to the practice of indentured servitude and other forms of compulsory labor of persons (other than slaves and persons convicted of crimes) in the early history of America before Independence. *See United States v. Shackney*, 333 F.2d 475, 483-84 (2d Cir. 1964); *see also Butler v. Perry*, 240 U.S. 328, 332-33 (1916). Like slavery, such compulsory labor was enforced with the threat of legal sanction (including imprisonment) if the servant failed to work for the master. See Robert J. Steinfeld, *The Invention of Free Labor: The Employment Relation in English and American Law and Culture, 1350-1870* 3-4 (1991).

"akin to African slavery." *Butler v. Perry*, 240 U.S. 328, 332 (1916). There is no historical evidence that mere psychological or other "nonphysical" coercion was ever used to enforce compulsory service before the Thirteenth Amendment was adopted. Enforcement always was through actual or threatened physical force or legal sanction that could deprive a person of his or her liberty.[12]

Although Congress intended to negate the effect of the Supreme Court's decision in *Kozminski* through the 2000 enactment and 2008 amendment to § 1589[13] – by expanding the definition of "forced labor" to include labor or services coerced by certain types actual or threatened "serious harm" (including "nonphysical" harm)[14] – Congress exceeded its authority

---

[12] *See also United States v. Shackney*, 333 F.2d 475 (2d Cir. 1964):

> [A] holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, in . . . 'superior and overpowering force, constantly present and threatening,' [*Hodges*,] 203 U.S. at 34 – not a situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad. This seems to us a line that is intelligible and consistent with the great purpose of the 13th Amendment; to go beyond it would be inconsistent with the language and the history, both pointing to the conclusion that 'involuntary servitude' was considered to be something 'akin to African slavery,' *Butler v. Perry*, *supra*, 240 U.S. at 332, although without some of the latter's incidents. While a credible threat of deportation [made to the employee by the employer] may come close to the line, it still leaves the employee with a choice [not to work] . . . .

*Id.* at 486-87. Psychological or other "nonphysical" coercion, without any implementation of physical force or threat of legal sanction that would deprive a person of liberty, does not leave the employee with no choice but to work. The employee's liberty remains intact and they can always can walk away and seek to secure different employment, even if that choice "may entail consequences that are exceedingly bad" in the eyes of the employee. *Id.*

[13] For reasons that are not apparent, Congress did not thereafter amend the definition of "involuntary servitude" in § 1584(a).

[14] *Taylor v. Salvation Army National Corporation*, 110 F.4th 1017, 1030 (7th Cir. 2024); *see also* 22 U.S.C. § 7101(13).

9

under Section 2 of the Thirteenth Amendment by doing so. Section 2 of the Thirteenth Amendment empowers Congress to enforce Section 1 of the amendment through "appropriate legislation." Yet any such legislation enforcing that amendment clearly cannot constitutionally proscribe anything outside of the ambit of Section 1 of the Thirteenth Amendment. Because "involuntary servitude," as that term was understood in 1865 when the amendment was adopted, did not include the mere use or threat of "nonphysical" harm to coerce another person to provide labor or services, § 1589 cannot constitutionally criminalize such conduct today.

The remaining question is whether Congress can criminalize the use or threat of nonphysical harm to coerce another person to provide labor or services as means of enforcing the Thirteenth Amendment's distinct ban on "slavery."[15] The answer is definitely not. Simply put, Congress has no authority, pursuant to its authority to prohibit "slavery," to criminalize a private citizen's use of "nonphysical" coercive methods to coerce another person to provide labor or services *when there is no racially discriminatory motive or purpose by the person coercing the labor or services*.[16] Although Section 2 of the Thirteenth Amendment gives Congress authority to "'pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States,'" *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968), such a power cannot rationally extend to criminalizing a private person's use of "nonphysical" coercion in order to achieve forced labor from another person when such forced labor has nothing whatsoever to do with the *race* of the alleged victim. *See id.* at 441 ("Surely Congress has the power under the Thirteenth

---

[15] "Slavery" and "involuntary servitude," as used in the 13th Amendment, mean different things. *See* Andrea C. Armstrong, *Slavery Revisited in Penal Labor*, 35 Seattle U. L. Rev. 869, 876 (2012) (noting historical evidence that "slavery and involuntary servitude are distinct" as those terms are used in the 13th Amendment).

[16] There is no evidence or allegation that any alleged acts of "forced labor" in the instant case were the result of any discrimination or bigotry based on race, ethnicity, or any other such classification.

Amendment *rationally* to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation.") (emphasis added); *see also id.* 439 ("The constitutional question in this case, therefore, comes to this: Does the authority of Congress to enforce the Thirteenth Amendment 'by appropriate legislation' include the power to *eliminate all racial barriers* to the acquisition of real and personal property? We think the answer to that question is plainly yes.") (emphasis added).[17] Put another way, no "badge" or "incident" of slavery exists when one person merely uses or threatens to use "nonphysical" force to coerce another person to provide labor or services.

### III.
### The Definition of "Serious Harm" in 18 U.S.C. § 1589(c) Is Void for Vagueness in Violation of the Fifth Amendment's Due Process Clause.

The government's application of 18 U.S.C. §§ 1589 & 1594(b) in this case also violates the Fifth Amendment's Due Process Clause because the definition of "serious harm" is facially vague. "The claim in a facial challenge is that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone." *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018).

The Supreme Court has identified three separate rationales for invalidating vague criminal statutes under the Due Process Clause: (1) they deprive citizens of **fair notice** of what is unlawful; (2) they encourage **arbitrary enforcement** of the law by executive branch officials and arbitrary application of the law by judges and juries; and (3) they violate the **separation-of-powers doctrine** by leaving it to the judicial branch to give meaning to a statute's vague terms in authoritative judicial decisions. *See* David Kwok, *Is Vagueness Choking the White-Collar Statute*,

---

[17] "[I]n *Jones*, the Supreme Court recognized white supremacy – the political subjugation of African-Americans, including free blacks – as an essential custom for the maintenance of slavery and its continued existence as a 'relic' of slavery." *United States v. Roof*, 225 F. Supp.3d 438, 448 (D. S.C. 2016);

53 GA. L. REV. 495, 500-01 (2019); Carissa Byrne Hessick, *Vagueness Principles*, 48 ARIZ. ST. L. J. 1137, 1140-44 (2016).

Regarding the first reason, Justice Scalia, in an opinion for the Court in *Johnson v. United States*, 576 U.S. 591 (2015), stated that: "Our cases establish that the Government violates [the Due Process Clause] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes . . . ." *Id.* at 595-96 (citations omitted).

Regarding the second reason, Justice Thomas, in an opinion for the Court in *Beckles v. United States*, 580 U.S. 256 (2016), has stated:

> Laws that regulate persons or entities . . . must be sufficiently clear [so] that [executive branch officials] enforcing the law do not act in an arbitrary or discriminatory way. . . . An unconstitutionally vague law [also] invites arbitrary enforcement in this sense if it leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.

*Id.* at 266 (citations and internal quotation marks omitted).

Regarding the third reason, Justice Gorsuch, in an opinion for the Court in *United States v. Davis*, 588 U.S. 445 (2019), has written:

> In our constitutional order, a vague law is no law at all. Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress [enacts a vague law, it] hands off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct.

*Id.* at 447-48.

The statutes at issue in the present case – §§ 1589 & 1594(b)[18] – are unconstitutionally vague for all three reasons. In particular, § 1589(c)(2) is so broad, indeterminate, and ill-defined

---

[18] The defendants' due process vagueness challenge primarily is directed at the vague language of § 1589, as § 1594(b) simply provides a basis for convicting a defendant for conspiring to violate § 1589.

that it does not give an ordinary person sufficient warning that the alleged conduct of the Defendants was criminalized by those provisions. Such broad, indeterminate, and ill-defined language also encourages arbitrary enforcement by law enforcement officers, prosecutors, and juries – as evidenced by the charges in this case. And, finally, such statutory language necessarily requires courts to give sufficiently specific meaning to the indeterminate language on a case-by-case basis. For all these reasons, the statutory language is vague as applied in this case.

The language of § 1589(c)(2)[19] is comparable to the "residential clause" of 18 U.S.C. § 924(e)(2)(B)[20] and corresponding "categorical approach"[21] that the Supreme Court invalidated as vague in *Johnson v. United States*, 576 U.S. 591, 597 (2015) ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."). Both § 1589(c)(2) and the residual clause/categorical approach require a judge (in the case of the residual clause/categorical approach) or a jury (in the case of § 1589(c)(2)) to assess whether an indeterminate "abstraction" meets a statutory definition. Regarding § 1589(c)(2), a jury must consider whether a defendant committed "serious harm" in relation to a *hypothetical* "reasonable person of the same background

---

[19] That provision defines "serious harm" as including "psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

[20] The "residual clause" provides that: "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . ." 18 U.S.C. § 924(e)(2)(B) (emphasis added).

[21] The "categorical approach" used to give meaning to the residual clause "require[d] a court to picture the kind of conduct that the [predicate] crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 576 U.S. at 596.

13

and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." That vague, abstract definition is just as unconstitutional as the categorical approach, which "require[d] a court to picture the kind of conduct that the [predicate] crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 576 U.S. at 596.

In *Kozminski v. United States*, 487 U.S. 931 (1988), a case interpreting "involuntary servitude" in § 1589's sibling statute, 18 U.S.C. § 1584, the Supreme Court stated that the very type of indeterminate definition of "serious harm" that Congress later adopted in the 2008 amendment to § 1589(c) would be unconstitutionally vague:

> The Government has argued that we should adopt a broad construction of "involuntary servitude," which would prohibit the compulsion of services by any means that, from the victim's point of view, either leaves the victim with no tolerable alternative but to serve the defendant or deprives the victim of the power of choice. Under this interpretation, involuntary servitude would include compulsion through psychological coercion . . . . This interpretation would appear to criminalize a broad range of day-to-day activity. . . . *[T]he Government's interpretation would delegate to prosecutors and juries the inherently legislative task of determining what type of coercive activities are so morally reprehensible that they should be punished as crimes. It would also subject individuals to the risk of arbitrary or discriminatory prosecution and conviction*.

*Id.* at 932 (emphasis added). *See also id.* at 960 (Brennan, J., joined by Marshall, J., concurring in judgment) ("I . . . agree with the Court that criminal punishment cannot turn on a case-by-case assessment of whether the alternatives confronting an individual are sufficiently intolerable to render any continued service 'involuntary.' Such an approach either renders the test hopelessly subjective (if it relies on the victim's assessment of what is tolerable) or delegates open-ended authority to prosecutors and juries (if it relies on what a reasonable person would consider intolerable).").

Section 1589(c)'s definition of "serious harm" suffers from precisely the same problems identified by the majority and concurrence in *Kozminski*. It turns on a case-by-case assessment of whether the alternatives confronting an individual are sufficiently intolerable to render any continued service to be "forced labor." And its "reasonable person" test delegates open-ended authority to prosecutors and juries to determine what a reasonable person would consider intolerable. Considerably more legislative precision is required to pass muster under the Due Process Clause.

Finally, the vagueness defect is magnified when defendants are charged with *conspiracy* to violate § 1589 under § 1594. A conspiracy requires a criminal "meeting of the minds." *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977). If a statute is vague from a single defendant's perspective, it is doubly vague with respect to two or more defendants reaching an agreement to violate that vague law.

## CONCLUSION

Therefore, the part of § 1589(c) that criminalizes "nonphysical" harm – apart from any threat of legal sanction to deprive another person of his or her liberty – is facially unconstitutional under both the Thirteenth Amendment and Due Process Clause. This Court should dismiss the portions of the indictment that rely on the unconstitutional part of § 1589(c). This Court also should prevent the government from admitting any evidence of such alleged "nonphysical" coercion and instruct the jury in a manner that limits the jury to rendering a verdict based solely on sufficient evidence of use or threat of *physical* coercion or restraint and/or legal sanction that allegedly coerced labor and services.

Respectfully submitted,


BONJEAN LAW GROUP, PLLC
Jennifer Bonjean, Esq.
Ashley Cohen, Esq.
303 Van Brunt Street, 1st Fl.
Brooklyn, New York 11231
(718) 875-1850
jennifer@bonjeanlaw.com


AIDALA, BERTUNA & KAMINS, P.C.
Arthur L. Aidala, Esq.
Imran Ansari, Esq.
Michael Jaccarino, Esq.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
arthur@aidalalaw.com
iansari@aidalalaw.com
jaccarino@aidalalaw.com

*Counsel for Defendants*