GK/KCB/DEL/NCG/SMF
F. #2019R00029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -                                  23-CR-146 (DG)

RACHEL CHERWITZ and
NICOLE DAEDONE,

            Defendants.

– – – – – – – – – – – – – – – – – X

JOINT REQUESTS TO CHARGE

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Gillian Kassner
Kayla Bensing
Devon Lash
Nina Gupta
Sean Fern
Assistant U.S. Attorneys
    (Of Counsel)

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

REQUEST NO. 1 — General Requests (**Government Request**)................................................... 2

REQUEST NO. 2 — Indictment (**Government Request**) ........................................................... 4

REQUEST NO. 3 — Knowingly and Intentionally (**Government Request**)............................... 6

REQUEST NO. 4 — Conspiracy Generally (**Government Request**).......................................... 9

REQUEST NO. 5 — Acts and Statements of Co-Conspirators (**Government Request**) ........... 16

REQUEST NO. 6 — Forced Labor Conspiracy (**Government Request**)................................... 20

REQUEST NO. 7 — Interviews of Witnesses ............................................................................... 46

REQUEST NO. 8 — Particular Investigative Techniques Not Required / All Available Evidence
Need Not Be Produced.................................................................................................................. 47

REQUEST NO. 9 — Uncalled Witness Equally Available to Both Sides (If Applicable)
(**Government Request**)............................................................................................................. 49

REQUEST NO. 10 — Opinion of Defendant's Character (If Applicable) ................................... 51

REQUEST NO. 11 — Redactions .................................................................................................. 52

REQUEST NO. 12 — Uncharged Acts Considered for a Limited Purpose (If Applicable)
(**Government Request**)............................................................................................................. 53

REQUEST NO. 12 — Impeachment by Prior Inconsistent Statement (If Applicable)................ 56

REQUEST NO. 13 — Jury to Consider Only Defendants on Trial .............................................. 57

REQUEST NO. 14 — Expert Testimony (if applicable) .............................................................. 58

REQUEST NO. 15 — Lost or Destroyed Evidence (**Defense Request**) .................................. 59

REQUEST NO. 16 — Improper Considerations (**Defense Request**) ........................................ 60

REQUEST NO. 17 — Venue (**Defense Request**)...................................................................... 62

REQUEST NO. 18 – Interest in Outcome (**Defense Request**) .................................................. 66

REQUEST NO. 19 – Deciding What to Believe (**Defense Request**) ........................................ 68

CONCLUSION............................................................................................................................... 70

<u>PRELIMINARY STATEMENT</u>

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the parties respectfully jointly request that the Court include the following instructions in its charge to the jury, noting the areas where the parties were unable to reach agreement. In addition, the parties further request leave to offer additional instructions as they become appropriate during the course of the trial and reserve the right to seek amendment, revision or objections to the final requests to charge after both parties rest.

The government respectfully requests that copies of the indictment (the "Indictment") and the jury instructions be provided to the jurors during their deliberations.


**Defense Response**:

Defendants object to the jury being provided with a copy of the indictment. The indictment contains surplusage that is irrelevant to the charged offense. Fed. R. Crim. P. 7(d). Indeed, the government's indictment incorporates scandalous allegations that are not relevant to the crime charged and are inflammatory and prejudicial. *United States v. Elson,* 968 F. Supp. 900, 909 (S.D.N.Y. 1997). Although Defendants are not presently seeking to strike surplusage in the indictment, they object to providing the indictment to the jury. Reading the indictment to the jury runs the risk that the jury will construe the indictment as evidence of guilt. *United States v. Press,* 336 F. 2d 1003 1016 (2d Cir. 1964). Notably, this case involves a single charge, unlike a complex, multi-count indictment where an indictment may serve as a useful guide during deliberations. The indictment in this case is a series of conclusory allegations that serve only to distract and inflame the jury rather than help the jury organize its deliberations.

## REQUEST NO. 1 — General Requests **(Government Request)**

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects.

a.     The Function of the Jury and Role of the Court;

b.     Equality of the Parties Before the Court;

c.     Burden of Proof and Reasonable Doubt;

d.     Presumption of Innocence;

e.     No Inference to Be Drawn from Defendant's Failure to Testify (if applicable);

f.     Testimony of Defendant (if applicable);

g.     Direct and Circumstantial Evidence;

h.     Function of the Indictment and What Is Not Evidence;

i.     Permissible Inferences Drawn from the Evidence;

j.     Multiple Defendants;

f.     Transcripts (if applicable);

k.     Charts and Summaries;

l.     Stipulations and Objections;

m.     Dates Approximate;

n.     Meaning of "And" in the Indictment;

o.     Credibility of Witnesses and Discrepancies in Testimony;

p.     Testimony of Law Enforcement Witnesses;

q.     Deliberations;

r.     Jury Communications with Lawyers and the Court;

s.     Right to See Exhibits and Have Testimony Read During Deliberations;

t.      Questioning Wisdom of Law and Basing Verdict on Sympathy or Prejudice Prohibited;

u.      Punishment Not the Province of the Jury; and

s.      Verdict Must be Unanimous.

**Defense Response and Additional General Requests**:

Defendant generally agrees that these instructions should be given but also reserves the right to object to the actual proposed instructions.

<u>REQUEST NO. 2 — Indictment</u> (**Government Request**)

The defendant is formally charged in an indictment. As I instructed you at the outset of this case, an indictment is a charge or accusation. The indictment is merely a statement of charges and not itself evidence. The Indictment in this case contains one count, and charges the Defendants with Forced Labor Conspiracy. Any verdict you return on this count must be unanimous.

**Defense Response**:

This instruction is inadequate as it fails to explain to the jury that an indictment is *not* evidence and not proof of guilt. It is evidence of nothing. In *United States v. Maxwell,* 2021 U.S. Dist. LEXIS 245288, *15 (E.D.N.Y. Dec. 19, 2021) and *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021), the courts understood the importance of instructing the jury on this concept.

As set out below, Defendants propose an instruction consistent with the instruction given in *Maxwell.* There the Court instructed the jury in the following manner.

The Defendant, Ghislaine Maxwell, has been formally charged in what is called an "indictment." As I instructed you at the outset of this trial, the Indictment is simply a charge or accusation. It is not evidence. It is not proof of Ms. Maxwell's guilt. It creates no presumption and permits no inference that Ms. Maxwell is guilty. Ms. Maxwell begins trial with an absolutely clean slate and without any evidence against her. You must give no weight to the fact that an Indictment has been returned against Ms. Maxwell.

The same instruction was given in *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021). This instruction incorporates fundamental tenets of the criminal justice process, namely that an indictment is not evidence or proof, the Defendant enjoys presumption of innocence and the government bears the burden of proof.

### INDICTMENT (Defense Request)

The defendant is formally charged in an indictment. As I instructed you at the outset of this case, an indictment is a charge or accusation. An indictment is not evidence of anything, and you should not give any weight to the fact that the defendants have been indicted

4

in making your decision in this case. The indictment in this case contains one count and charges the Defendants with Conspiracy to Commit Forced Labor. To convict a defendant of forced labor conspiracy, you must unanimously agree that the government has proven beyond a reasonable doubt each and every element of the offense. Any verdict you return on this count must also be unanimous.

    <u>Authority:</u>  *United States v. Maxwell,* 2021 U.S. Dist. LEXIS 245288, *15 (E.D.N.Y. Dec. 19, 2021); *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021)

**Government Reply**:

    The government objects to the inclusion of the defendants' proposed language: "To convict a defendant of forced labor conspiracy, you must unanimously agree that the government has proven beyond a reasonable doubt each and every element of the offense," in the Court's instruction on the Indictment. The government's proposed instruction includes that the jury's verdict must be unanimous and the Court will instruct the jury on the burden of proof, along with other instructions as appropriate, elsewhere in the jury charge.

<u>REQUEST NO. 3 — Knowingly and Intentionally</u> (**Government Request**)

Because the charge implicates the concepts of knowledge and intent, I will tell you now about these concepts before addressing each of the elements of the Count charged in the Indictment.

A person acts "knowingly" when she acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether a Defendant acted knowingly may be proven by her conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when she acts deliberately and purposefully. That is, a Defendant's act must have been the product of a conscious, objective decision rather than the product of a mistake or accident.

These issues of knowledge and intent require you to make a determination about a defendant's state of mind, something that rarely can be proved directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to a defendant's state of mind. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from her words and actions in given circumstances. You are asked to do the same here.

<u>Authority</u>: Adapted from the charge of the Hon. Diane Gujarati, <u>United States v. Acevedo</u>, 21-CR-162 (DG), ECF No. 75 (E.D.N.Y.) ("<u>Acevedo</u>"); the charge of the Hon. Hector Gonzalez, <u>United States v. Zottola, et al.</u>, 18-CR-609 (HG), ECF No. 550 (E.D.N.Y.) ("<u>Zottola</u>"); the charge of the Hon. Raymond J. Dearie, <u>United States v. Thomas</u>, 20-CR-01 (RJD), ECF No. 110 (E.D.N.Y.) ("<u>Thomas</u>"); and Sand, et al., <u>Modern Federal Jury Instructions</u> ("Sand"), Instrs. 3A-1, 3A-4.

**Defense Response**:

The government's proposed jury instruction as to knowledge and intent conflates the standards of knowledge and intent. As the District Courts in *Kelly* and *Raniere* understood, intent requires the government to show that the Defendants possessed a "specific intent" to do

something the law forbids. This language is completely omitted from the government's proposed objection. The government clearly seeks to mislead the jury into believing that the government need only prove some intent to *act* with purpose rather than to act with a *specific* purpose to violate a *specific* law. In the context of this case which is a conspiracy, the government's proposed instruction is an inaccurate statement of the law. *United States v. Samaria,* 239 F. 3d 228, 234 (2d Cir. 2001); *United States v. Wallace,* 85 F. 3d 1063, 1068 (2d Cir. 1996) (defining unlawful intent in conspiracies as the "specific intent to achieve the object [of the conspiracy]")

Defendants have no objection to the government's proposed language that a Defendant must act deliberately and purposefully but that statement alone is insufficient. It must be preceded by the instruction the intent must be a specific intent to do something the law forbids. (*Id.*)

## KNOWLEDGE AND INTENT (Defense Request)

A person acts knowingly if she acts voluntarily and intentionally, not because of mistake accident or other innocent reason. A person acts intentionally if she acts with the specific intent to do something the law forbids.

These issues of knowledge and intent require you to make a determination about the defendant's state of mind, something that can rarely be proven directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to the defendant's state of mind. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from her words and actions in given circumstances. You are asked to do the same here.

Authority: *United States v. Kelly,* 19-CR-286 (E.D.N.Y. Sept. 27, 2021) [Dkt. No. 303]; *United States v. Raniere,* 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]

**Government Reply**:

The government objects to the defendants' narrowed request to explain the concepts of "knowledge and intent" to the jury. Though the defendants cite to <u>Kelly</u> and <u>Raniere</u> to support its requested charge, the instructions as to knowledge and intent were more fulsome in those charges, including, for instance, in <u>Kelly</u>, the instruction that a "person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the specific intent to do whatever it is the law forbids." <u>United States v. Kelly</u>, 19-CR-286 (AMD), ECF No. 303, at 19 (E.D.N.Y.). The charge in <u>Raniere</u>, far from supporting the defendants' request, tracks the government's request as

to knowledge and intent, and does not mention the concept of "specific intent." <u>See United States v. Raniere</u>, 18-CR-204 (NGG), ECF No. 728, at 28-29 (E.D.N.Y.) ("A person acts "knowingly" when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness. Whether a defendant acted knowingly may be proved by his conduct and by all of the facts and circumstances surrounding the case.").  The Court should adopt the government's proposed instruction.

<u>REQUEST NO. 4 — Conspiracy Generally</u> (**Government Request**)

Because the government alleges that the defendants conspired to commit forced labor, I will instruct you about the concept of conspiracies in general.

A conspiracy is a kind of criminal partnership—an agreement by two or more persons to accomplish some unlawful purpose. A conspiracy to commit a crime is an offense distinct from the underlying crime that the conspirators agreed to commit. In order to prove the crime of conspiracy, the government must establish the following two elements of the crime:

<u>First</u>, that two or more persons entered into the particular unlawful agreement; and <u>second</u>, that the defendant knowingly and intentionally became a member of the conspiracy.

The first element that the government must prove to establish the offense of conspiracy is that two or more persons entered the unlawful agreement that is charged in the Indictment. In other words, one cannot commit the crime of conspiracy by oneself. Rather, the proof must convince you that at least two persons had joined together in a common criminal scheme.

In order for the government to satisfy this element, however, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design.

You may, of course, find that the existence of an agreement to disobey or violate the law has been established by direct proof. But because conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

The second element is that an individual knowingly and intentionally became a member of the charged conspiracy.

The individual's knowledge is a matter of inference from the facts proven. I instruct you that to become a member of the conspiracy, the individual need not have known the identities of each and every other member of the conspiracy, nor need she have been apprised of all of their activities. Moreover, the individual need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on her part. Furthermore, the individual need not have joined in all of the conspiracy's unlawful objectives.

In addition, a conspirator's liability is not measured by the extent or duration of her participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that an individual's mere presence at the scene of an alleged crime does not, by itself, make her a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal herself. Mere similarity of conduct or the fact that they may have assembled together

and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge, without participation, in the unlawful plan is not sufficient. Furthermore, the fact that a person, without any knowledge that a crime is being committed, merely happens to act in a way that furthers the purposes or objectives of the conspiracy does not make that person a member. More is required under the law. What is necessary is that the individual must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. She thereby became a knowing and unwilling participant in the unlawful agreement—that is to say, a conspirator.

Authority: Adapted from <u>Acevedo</u>; <u>Thomas</u>; <u>Raniere.</u>

**Defense Response:**

The instruction is misleading as it does not sufficiently explain that the jury must find that that Defendants entered into a *charged* unlawful agreement, not any unlawful agreement. Accordingly, the charged unlawful agreement should be identified in the instruction itself. Specifically, the instruction that "two or more persons entered into the particular unlawful agreement" is vague and misleading. *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425 at pgs. 27-33] As the court in *Ashburn* understood, the jury must instruct that the "particular unlawful agreement" must be the one *charged* in the indictment. In *Ashburn,* and in most conspiracy cases, the court's conspiracy instruction *identifies* the charged conspiracy. Hence, Defendants proposed language specifying the charged conduct is a more accurate statement of the law and reduces the risk that the jury will find a conspiracy based on *any* agreement it deems "unlawful" or one that simply sounds pernicious. The need for this specificity is particularly important where the conspiracy alleged spans over a decade. The evidence might show all types of implicit agreements between defendants and alleged co-conspirators that have nothing to do with the charged conspiracy. Where the government chooses to charge a broad scale conspiracy, there is a heightened need for instructions that guide the jury

on what its job is and what it is not. Thus, it is imperative that the jury be reminded that its task it to determine whether the defendants entered in *charged* unlawful agreement.

Accordingly, the instruction itself should identify the charged unlawful agreement, so the jury understands what it is being asked to decide. Defendant's proposed instruction below appropriately summarizes the charged unlawful agreement with the agreement commencing in 2009 (not 2006 as charged in the indictment) As the government seems to acknowledge in its proposed language in the forced labor instruction, there was no cognizable crime for conspiracy to commit forced labor until June 2009. Rather, section 1594(a) recognizes an "attempt" to commit forced labor but not conspiracy to commit forced labor. Any application of the conspiracy statute to conduct that preceded June 2009 would violate the *ex post facto* clause. *United States v. Monaco,* 194 F. 3d 381, 386 (2d Cir. 1999) (holding that if it is possible that a jury could convict exclusively on the pre-enactment conduct, an *ex post facto* violation would occur).

Third, the instruction incorporates cherry-picked statements of law that over-emphasize what the government is *not* required to prove, rather than what the government is required to prove thereby shifting the burden of proof to the Defendants. By including select statements that highlight what the government need not establish, the government has reduced its burden of proof. For example, Defendant objects to the paragraph that repeats the concept that evidence can be direct or circumstantial. The jury is already instructed on direct and circumstantial evidence. It is unnecessary to repeat in this instruction that government may prove its case through circumstantial evidence and then explain why direct evidence might be lacking. There is no reason why there couldn't be direct evidence of an agreement and an instruction that tells the jury that it should not expect it because "conspiracies" are innately secret is heavy-handed *and* inaccurate because this is not a case where anything was done secretly. If there was an agreement, there is no reason to believe it would not have been discussed and even video-recorded.

Fourth, as in *Ashburn,* the jury should be instructed that the government must prove that the minds of at least "two of the alleged conspirators met in an understanding." That language is not included in this instruction.

The final paragraph of the government's instruction that begins with "in sum" is redundant, confusing, contrary to the law, and finds no support in any instructions including *Acevedo.*

### CONSPIRACY GENERALLY (Defense Request)

The Defendants are charged with conspiring to commit forced labor in violation of

Section 1594(b) and 1589(a) and (b) of Title 18 of the United States Code. A conspiracy is a

kind of criminal partnership, an agreement of two or more persons to commit one or more

crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed. The essence of the charge of conspiracy is an understanding or agreement between or among two or more persons that they will act together to accomplish a common objective that they know is unlawful.

In order for each Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in 2009 and ending in May 2018, the Defendant and at least one other person made an agreement to commit the crime of forced labor; and

Second, the Defendant knowingly and intentionally became a member of the conspiracy knowing with the intent to accomplish the unlawful purpose.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped on another. You must find that there was a plan to commit forced labor as an object of the conspiracy with all of you agreeing unanimously that the conspirators agreed to commit the offense of forced labor, and only forced labor.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a coconspirator. Similarly, a

person does not become a conspirator merely by associating with one or more persons who are conspirators, nor by merely knowing that the conspiracy exists.

You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, they must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

Adapted from: *United States v. Kartan, et al.,* 16-CR-217 (E.D. Cal. March 14, 2019) [Dkt No. 178]; *United States v. Percoco,* No. 16-CR-776 (VEC), Dkt. 516 at 21-23 (S.D.N.Y. Feb. 28, 2018); *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Reply**:

As an initial matter, the defendants provide no basis for objecting to the government's requested conspiracy charge, which is routinely given in this Circuit, as evidenced by the government's authority supporting the charge.

The defendants claim the government's proposed charge is misleading because it does not explain that to be found guilty, the defendants must have entered into the charged conspiracy. However, the first sentence of the government's proposed instruction states: "Because the government alleges that the defendants conspired to commit forced labor, I will instruct you about the concept of conspiracies in general." The government's proposed charge then goes on to indicate that the "first element that the government must prove to establish the offense of conspiracy is that two or more persons entered the unlawful agreement that is charged in the Indictment." Later, the instructions references "the charged conspiracy." Thus, the defendants' claim that the government's proposed charge does not "sufficiently explain that the jury must find that the Defendants entered into a *charged* unlawful agreement" is frivolous. The purpose of the proposed instruction is to explain the concept of a criminal conspiracy to a jury. This explanation is followed by the government's Request No. 6 (Forced Labor Conspiracy) which further defines and explain the charged conspiracy and its object. These inclusions address the defendants' concerns.

The defendants also claim that the instruction is flawed because it does not include that at least "two of the alleged conspirators met in an understanding." The instruction, however, includes the following statement: "What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design."

The defendants also object to the final paragraph beginning with "in sum." This language is taken directly from the court's instruction in <u>Raniere</u> and simply attempts to plainly summarize the information conveyed throughout the instruction.

The defendants' proposed formulation is not similarly supported by precedent. In support of their proposal, the defendants cite to an out-of-district case and <u>Percoco</u> and <u>Ashburn</u>. But <u>Percoco</u> and <u>Ashburn</u> are not clear precedent for the defendants' proposed requests, as much of the defendants' proposed language is not in fact found in those requests to charge. Indeed, the charge in <u>Ashburn</u> largely includes the language in the government's proposed conspiracy instruction, providing yet another example supporting the government's proposed charge. <u>See United States v. Ashburn</u>, 11-CR-303 (NGG), ECF No. 425, at 28-32 (E.D.N.Y.).

Further, much of the defendants' proposed novel language would only serve to inject confusion into deliberations. For example, the defendants seek to have the Court charge the jury that "You must find that there was a plan to commit forced labor as an object of the conspiracy with all of you agreeing unanimously that the conspirators agreed to commit the offense of forced labor, and only forced labor." Such an instruction risks leaving the jury confused if, for example, the jury determined that the defendants conspired to commit forced labor and some other crime. The only relevant consideration for the jury is their determination of the forced labor conspiracy charge before them, and the Court should reject the defendants' attempt to create confusion.

Further, some of the defendants' proposed language misstates the law or is otherwise confusing. For example, the defendants request that the Court charge the jury with the following: "You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were." The phrasing, for which the defendants cite no precedent in this Circuit, misstates the government's burden. As the Second Circuit has stated, to establish a conspiracy, "the Government must show that two or more persons entered into an agreement to commit the substantive offense as charged." <u>United States v. Zhou</u>, 428 F.3d 361, 370 (2d Cir. 2005). The government need only establish that two or more persons entered into a particular unlawful agreement, and that the defendant knowingly and intentionally became a member of it—not "who at least some of its members were." <u>See id.</u> Indeed, the law is clear that an individual need not have known the identities of each and every other member of the conspiracy. <u>See, e.g.</u>, <u>United States v. Cohen</u>, 427 F.3d 164, 171-72 (2d Cir. 2005) ("Just as an individual need not know the identities of all coconspirators in order to be found guilty of being a member of the conspiracy, the jury need not determine the identity of all co-conspirators in order to find that the conspiracy in fact existed." (internal citations omitted)).

Finally, the defendants' objection as to a purported violation of the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause is addressed below, in connection with the government's requests to charge the jury as to forced labor.

Accordingly, the government objects to the entirety of the defendants' proposed charge.

REQUEST NO. 5 — Acts and Statements of Co-Conspirators (**Government Request**)

A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

It is your function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendants were members of that conspiracy remains with the government.

Authority: Adapted from Acevedo; Sand, Instr. 19-9.

**Defense Response:**

The government's request for an instruction related to "Acts and Statements of Co-Conspirators." is objectionable and unsupported by any authority, notwithstanding that a version of this instruction was used in *Acevedo.* This instruction leads to the likelihood that jurors will conclude that Defendants are responsible for every act committed by any person associated with OneTaste over the course of 12 years. As a matter of law, a juror must first decide whether the defendant was a member of the conspiracy and then they must decide whether the statements of acts of the alleged co-conspirator were made during the existence of and in furtherance of the conspiracy. *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425] *United States v. Zhong,* 16-614 (E.D.N.Y.) (AMD) [Dkt. No. 236 at pg. 16] The jury may *not* consider the statements and actions of any individual associated with OneTaste. Rather, the jury must first determine whether the individual is, in fact, a co-conspirator before they can be considered agents of the Defendants and before their statements and actions can be charged to the Defendants. Defendants object to this instruction altogether since it will invariably lead to the jury attributing all negative behavior of every OneTaste employee or associate over the course of 12 years to the defendants whether those individuals are, in fact, co-conspirators *in the charged offense.* For the instruction to pass constitutional muster, a jury must first be instructed that before the statements or actions of another can be imputed to the Defendants, it must find that the

16

person who made the statements or engaged in the conduct was in fact a co-conspirator *in the charged offense*. Defendants further would demand a special verdict form requiring the jury to unanimously conclude that each individual that the government claims is a co-conspirator is found to be a co-conspirator.

Moreover, for statements of unindicted conspirators to be admitted at trial, this Court must find by a preponderance of the evidence that there was a conspiracy, that the declarant was a member of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Gupta,* 747 F. 3d 111, 123 (2d Cir. 2014). Defendants have no idea what co-conspirator statements or conduct it wishes to admit but the government must identify the statements and conduct of unindicted co-conspirators specifically so that the Court can make a determination about relevancy and admissibility of those statements.


**Defense Request:**

## CO-CONSPIRATOR ACTS AND STATEMENTS (Defense Request)

The charge against the defendants allege that they conspired to violate the forced labor statute. Because of that, I admitted into evidence certain acts and statements of other people who the government alleges were co-conspirators of the defendant.

The reason we allow this evidence has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to do something illegal, they each became an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, and statements of any member of the conspiracy and in furtherance of the purpose of the conspiracy, are deemed to be the acts of all the members, and all of the members are responsible for each other's acts, declarations, and statements. Thus, if you find beyond a reasonable doubt that the defendant was a member of a criminal conspiracy charged, then you may also consider any of the actions or statements of people you find to be members of that conspiracy. However, before you may consider the

statements of a co-conspirator in evaluating the defendant's guilt or innocence, you must first determine that the acts and statements were made during the existence, and in furtherance of the unlawful scheme. If the acts were done or the statements made by someone who was not a member of this conspiracy, or if they were not done or said in furtherance of that conspiracy, you may not consider them as evidence against the defendant.

> *Authority*: *United States v. Zhong,* 16-614 (E.D.N.Y.) (AMD) [Dkt. No. 236 at pg. 16]
> *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425 at pg. 33]

**Government Reply:**

The defendants claim the government's proposed request is unsupported by any authority. Not so. See e.g., Sand Instr. 19-19 ("You will recall that I have admitted into evidence against the defendants the declarations and statements of others because these declarations and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial. The reasonably foreseeable declarations and statements of any member of a conspiracy made in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be those of all of the members. It is the jury's function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendants were members of that conspiracy remains with the government.") (citing Anderson v. United States, 417 U.S. 211, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1973)); see also Raniere, 18-CR-204 (NGG), ECF 728, at 37-38 ("The reason for allowing this evidence to be received against the Defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.").

The defendants' objections misstate the language of the instruction, which provides the jury may consider reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy.

The defendants additionally "demand" a special verdict form requiring the jury to unanimously conclude that each individual that the government claims is a co-conspirator is found to be a co-conspirator in the charged conspiracy. The defendants cite to no precedent in this Circuit or any other for such a request. Indeed (as the defendants appear to acknowledge),

the existence of a conspiracy and the admissibility of co-conspirator statements are preliminary questions of fact that must be resolved by the district court.  See Bourjaily v. United States, 483 U.S. 171, 175 (1987).  "Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations." Id.  The government "[does] not have to prove the identities of those named [as co-conspirators] in order to secure a conviction" of the defendants "for participating in the conspiracy alleged in the indictment."  United States v. Dove, 884 F.3d 138, 147 (2d Cir. 2018) (also finding the government "was not required to demonstrate the precise details or size of the conspiracy, but only to create a permissible inference that [the defendant] was aware of his role in a larger scheme") (citing United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000)).  The co-conspirators are not on trial; the defendants are.

        The government does not object to the defendants' proposed formulation of the instruction, however, except that the government respectfully requests that, as did the courts in Zhong and Ashburn, the following italicized sentence be added just before the sentencing beginning "However, before you may consider the statements or acts of a co-conspirator . . .," as follows:  "*This is the case even if those actions or statements were made when the defendants weren't there and without their knowledge.*  However, before you may consider the statements or acts of a co-conspirator . . . ."  That sentence is included in both Zhong and Ashburn; the government requests that if the defendants' formulation of this instruction is given, that it be given in its entirety.

<u>REQUEST NO. 6 — Forced Labor Conspiracy</u> (**Government Request**)

    The Indictment charges the Defendants with conspiring to commit forced labor.

The Indictment reads as follows:

    In or about and between 2006 and May 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLE DAEDONE and RACHEL CHERWITZ, together with others, did knowingly and intentionally conspire to:

    (a) provide and obtain the labor and services of one or more persons by means of, and by a combination of means of: (i) force, threats of force, physical restraint and threats of physical restraint to a person; (ii) serious harm and threats of serious harm to a person; (iii) the abuse and threatened abuse of law and legal process; (iv) one or more schemes, plans, and patterns intended to cause a person to believe that, if he or she did not perform such labor and services, a person would suffer serious harm and physical restraint, contrary to Title 18, United States Code, Section 1589(a); and

    (b) benefit, financially and by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any such means, knowing, and in reckless disregard of the fact, that said venture had engaged in the providing and obtaining of labor and services by any such means, contrary to Title 18, United States Code, Section 1589(b).

    To determine whether the government has proven beyond a reasonable doubt that the defendant engaged in the forced labor conspiracy charged in the Indictment, you need to know about forced labor, the crime alleged to be the purpose of the charged conspiracy. The government need not prove that the Defendants actually committed forced labor, but in order for you to find the Defendants guilty of the alleged conspiracy, the government must prove that each Defendant conspired with at least one other person to commit forced labor. The relevant statute for the underlying crime of forced labor provides, in pertinent part:

(a) Whoever knowingly . . . obtains the labor or services of another person—by any one of, or by any combination of, the following means—

(1) by means of . . . physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint [shall be guilty of the crime of forced labor]; or

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means [I just described in subsection (a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, [shall be guilty of the crime of forced labor].

There are two alternative means by which a defendant may violate the forced labor statute. In other words, the statute sets forth two alternative ways that the government can prove this crime: (1) by knowingly providing or obtaining labor or services by prohibited means; or (2) by knowingly benefitting from participating in a venture that she knew or recklessly disregarded was engaged in providing or obtaining forced labor or services by prohibited means. I will explain both of these ways of proving forced labor to you.

Under the first way of proving forced labor, the government can prove the offense of forced labor by proving each of the following three elements beyond a reasonable doubt:

First,     The defendant obtained the labor or services of one or more persons;

      <u>Second</u>,    The defendant did so through one of the following prohibited means: (a) through means or threats of serious harm to, or physical restraint against, any other person; or (b) means of the abuse or threatened abuse of law or legal process; or (c) through a scheme, plan or pattern intended to cause any person to believe that non-performance would result in serious harm to, or physical restraint against, any other person; and

      <u>Third</u>,    The defendant acted knowingly.

The <u>first element</u> is that the defendant obtained the labor or services of another person. To "obtain" means to acquire, control, or possess, even if only for a short period. "Labor" means the expenditure of physical or mental effort. "Services" means conduct or performance that assists or benefits someone. The government does not have to prove that any person performed "work" for the defendant in the economic sense, although that would satisfy this element. Labor or services can include, but is not limited to, sexual services. All the government must prove is that any person provided labor or services as I just defined them.

As to the <u>second element</u>, if you find that the defendant obtained the labor or services of another person, then you must determine whether the defendant did so through one of the prohibited means, that is, either through means or threats of serious harm to, or physical restraint against, a person; through means of the abuse or threatened abuse of law or legal process; or through a scheme, plan or pattern intended to cause the person to believe that serious harm or physical restraint would result if she did not perform the labor or services required of her. In order to find that the second element has been satisfied, you must find beyond a reasonable doubt that at least one of the prohibited means I just mentioned was used to obtain any person's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element has been satisfied. The term "serious harm" includes

both physical and non-physical types of harm, including psychological, financial, or reputational harm. A threat of serious harm, therefore, need not involve any threat of physical violence. It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm. In considering whether a threat of serious harm would be sufficient to compel or coerce an alleged victim's services, you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any. In this regard, you may find that not all persons are of the same courage or firmness. You may consider, for example, the alleged victim's age, background, physical and mental condition, experience, education, socioeconomic status and any inequalities between the alleged victim and the defendant with respect to these considerations, including their relative stations in life, among other things. Simply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services.

The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the victim

to reasonably believe that she or any other person would suffer serious harm if she refused to continue providing labor or services.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any alleged victim reasonably to believe that she had no choice but to provide labor or services to the defendant. In making that determination, you may consider the cumulative effect on the alleged victim of the defendant's conduct.

A few final things about this second element: To prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against the alleged victim to particular labor or service tasks performed by her. If the alleged victim was threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will and compelled her service, that is sufficient to establish the second element of the offense of forced labor. In considering whether a defendant created a climate of fear or whether a threat would be sufficient to compel or coerce an alleged victim's services, you may consider the totality of the defendant's conduct, including the surrounding circumstances, such as an atmosphere of verbal abuse and insults, isolation, poor working and living conditions, denial of adequate food and rest, withholding of pay, or any combination of these conditions, and any other conduct or technique the defendant used to intimidate the alleged victim to compel her to provide labor or services. If that person was threatened with or suffered certain consequences in connection with labor or services she rendered, either as punishment or as part of a climate of fear that overcame her will and compelled her labor services, that may be sufficient to establish the second element of the first way of proving the offense of forced labor.

The government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to try to escape.

Finally, in considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the labor. If a person willingly begins service or labor, but later desires to stop, and is then forced to remain and perform the labor or services against her will by threats of serious harm, or by a scheme, plan or pattern, intended to cause her to believe that non-performance will result in serious harm to her or another person, then her service becomes involuntary. Also, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor. In other words, if a person is compelled to labor against her will by any one of the means prohibited by the forced labor statute, such service is involuntary even if she is paid or compensated for the work.

With regard to the <u>third element</u>, the government must prove that a defendant acted knowingly, a concept that I have already explained to you.

As I mentioned to you, the forced labor statute sets forth an alternative way that the government can prove this crime. The second way is by proving that a defendant knowingly benefitted from participating in a venture that she knew or recklessly disregarded was engaged in providing or obtaining forced labor or services by prohibited means. The elements of the second way that the government can prove the offense of forced labor are:

<table>
<tr><td><u>First</u>,</td><td>The defendant knowingly benefited financially or by receiving anything of value from participation in a venture;</td></tr>
<tr><td><u>Second</u>,</td><td>The venture was engaged in providing or obtaining labor or services through any one of, or any combination of, the prohibited means that I previously identified; and</td></tr>
<tr><td><u>Third</u>,</td><td>The defendant knew or recklessly disregarded the fact that the venture was engaged in providing or obtaining labor or services by any of these prohibited means.</td></tr>
</table>

Under this second theory of forced labor, the government does not need to prove that the defendant herself engaged in providing or obtaining the labor or services of a person. The government need only prove that there was a venture that engaged in one of the prohibited means, that the defendant knew or recklessly disregarded the fact that the venture was involved in forced labor, and that she knowingly participated in some way and benefitted financially or by receiving a thing of value from that venture.

As to the <u>first element</u>, a "venture" is two or more persons associated in fact, whether or not their association forms a legal entity. It is sufficient to find that the defendant played any role in the venture, even if that role was minor, and even if that role was not related to actually obtaining a person's labor or services. In order to be found guilty, the defendant needs to have knowingly benefitted financially or received something of value from participation in the venture. A thing of value need not involve monetary exchange and need not have any financial component, though it can. I have already instructed you on the definition of knowingly and you should apply that instruction here.

As to the <u>second element</u>, I have already instructed you previously on the prohibited means of providing or obtaining labor or services. You should apply those instructions here.

As to the <u>third element</u>, the government must prove, beyond a reasonable doubt, that the defendant knew or recklessly disregarded the fact that the venture was providing or obtaining labor or services by any of the four prohibited means. I previously instructed you on knowledge and you should apply that definition here. "Reckless disregard" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor.

If you find that the government has met its burden of proving beyond a reasonable doubt each of the three elements of forced labor under the second way of proving forced labor, then you will have concluded that the defendant committed forced labor. The government does not need to prove both theories; however, the government must prove every element under the first theory or every element under the second theory beyond a reasonable doubt in order to prove the defendant you are considering is guilty.

I remind you that the government need not prove that the defendants actually committed forced labor, but in order for you to find the defendant you are considering guilty, the government must prove that the defendant you are considering conspired with at least one other person to commit forced labor.

The Indictment charges each defendant with Conspiracy to Commit Forced Labor, in violation of Section 1594. Title 18, United States Code, Section 1594 became law on June 21, 2009. Therefore, to convict either defendant of this count, you must find beyond a reasonable doubt that the conspiracy to commit forced labor existed on or after June 21, 2009. A defendant cannot be found guilty by you solely on evidence of acts that occurred prior to June 21, 2009.

You heard evidence that the defendants participated in conduct that predates June 21, 2009.  Such evidence was introduced simply to demonstrate the conspiracy's genesis, its purpose, and its operation over time as well as explain the intent and purpose of the conspirators' later acts.

<u>Authority</u>

Adapted from the charges in <u>United States v. Raniere,</u> 18-CR-204 (NGG), ECF No. 728 (E.D.N.Y.) ("<u>Raniere</u>"); <u>United States v. Kelly</u>, 19-CR-286 (AMD), ECF No. 303 (E.D.N.Y.) ("<u>Kelly</u>"); <u>United States v. Zhong</u>, 16-CR-614 (AMD) ECF No. 236 (E.D.N.Y.); <u>United States v. Cros-Toure</u>, No. 4:18-CR-230 (N.D. Tex. Jan. 10, 2019), ECF No. 112 at 10 (similar limiting charge as to pre-enactment conduct given where indictment alleged a violation of 18 U.S.C. § 1594(b) from 2000 to 2016); <u>United States v. Majeed</u>, No. 2:21-CR-20060 (D. Kan. Sept. 16, 2024), ECF No. 475 at 34 (similar); Sand, Instr. 47A-02; <u>see also</u> <u>United States v. Kaufman</u>, 546 U.S. 1242, 1261-62 (10th Cir. 2008) (forced labor statute applies to coerced acts other than "work in an economic sense"); <u>United States v. Ghavami</u>, No. 10-CR-1217 (KBW), 2012 WL 2878126, at *12 (S.D.N.Y. July 13, 2012) (continuing offenses, such as conspiracy to commit wire fraud, do not violate the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause if the criminal behavior continues beyond the effective date of the relevant statute).

**Defense Response**:

**A.**     **Defense Objections Related § 1589(a) Portion of Instruction**

First, the instruction is objectionable as it unnecessarily repeats the language of the statute. In the paragraph describing the first element of § 1589(a), Defendants object to the statement "**Labor or services can include, but is not limited to, sexual services.**" This statement emphasizes a particular type of "labor or service" which signals to the jury that sex was used as a "labor or service" in this case. The jury should be instructed on the definition of "labor or services" without the court providing examples of "labor or services." The government is free argue to the jury that the evidence showed that "sex" was used as a "labor or service" if the evidence shows as much. The court's instruction should not help the government make its case to the jury.

Second, the paragraph defining the second element of §1589(a) misstates the definition of "serious harm" in an effort to reduce its burden of proof and turn an objective standard into a subjective one. Serious harm, for purposes of §1589(a)(2) is defined as "[a]ny harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue to performing labor or service in order to avoid incurring that harm." *See Muchira v. Al-Rawaf,* 850 F. 3d 605,

618 (4th Cir. 2017). Section 1589 was "intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *Id*. The harm or threat of harm, "considered from the vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to *compel* that person to *remain"* in her condition of servitude when she otherwise would have left. *Id*. "Part of a fair reading of statutory text is recognizing that Congress legislates against the backdrop of certain unexpressed presumptions." *United States v. Toviave,* 761 F. 3d 623, 628 (6th Cir. 2014) Section 1589, the forced labor statute, was "passed to implement the Thirteenth Amendment's [prohibition] against slavery or involuntary servitude." *United States v. Toviave,* 761 F. 3d 623, 629 (6th Cir. 2014). *See Toviave,* 761 F. 3d at 626. (describing prostitution, forced sweatshop work, and forced domestic service as "paradigmatic forced labor cases.")

Ignoring the intent of Congress and the plain language of the statute, the government asks this Court to instruct the jury that serious harm "**includes improper threats of consequences, whether physical or nonphysical**" This language finds no support in the law or the statute itself. The statute requires "threats of serious harm" not "threats of consequences." In *Muchira,* the court discusses the "threat[en] of *dire* circumstances by means other than overt violence." By changing this language, the proposed instruction dilutes the "serious harm or threats of serious harm" standard and further removes the requirement that Defendants, or a co-conspirator, either made or took action to threaten serious harm. Defendants also object to the government's language regarding "**climate of fear**" and any instruction that tells the jury that it can consider whether a "**climate of fear**" overcame the person's will. The "climate of fear" language permits the jury to hold Defendants responsible for acts of which they are not legally responsible and creates a scenario where Defendants are held "strictly liable" for the conduct of others who may or may not be co-conspirators. This paragraph is a gross misstatement of the law and again attempts to reduce the government's burden of proving threats of *serious* harm.

Importantly, there is nothing improper about threatening adverse consequences. For example, the First Amendment's religion clause permits a church to warn that it will stop associating with members who do not act in accordance with church doctrine. *Headley v. Church of Scientology, Int'l,* 687 F. 3d 1173*,*1180 (9th Cir. 2012). The government's proposed instruction conflates "improper threats or coercion and permissible warnings of adverse but legitimate consequences." *Id. See also United States v. Bradley,* 390 F. 3d 145, 151 (1st Cir. 2004).

Moreover, throughout the government's proposed instruction, the government removes the word "serious" from "harm," misleading the jury into believing that any threat of "harm" no matter how inconsequential is sufficient. This is not the law. The threat of harm must be a serious one. By reducing the threat of "serious harm" required by the statute to simple "consequences," the government is afforded free reign to convert any employment dispute over wages into a forced labor case.

Defendants strongly object to the following proposed language which is inconsistent with the statute's definition of "serious harm." "**you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any.**" and "**Simply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the**

**defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services**." The forced labor statute states quite the opposite. Serious harm contains a "reasonable person" standard, not a specific person with special vulnerabilities. Contrary to the proposed language, the jury must find that the defendant's actions are sufficient to compel *a reasonable person.* 18 U.S.C. § 1589(c)(2). The "serious harm" definition is unquestionably an objective one and does not permit the jury to consider the specific vulnerabilities of an individual.

Defendants object to any instruction regarding "abuse or threatened abuse of law or legal process" unless there is actually evidence that Defendants used the legal process in a manner "for which the law was not designed." The mere threat of litigation is not an abuse of the legal process. The government's discovery fails to show any evidence whatsoever that Defendants have used the legal process in a manner "for which the law was not designed." **To be clear, Defendants object to any instruction related to this theory but proposes language below to the extent the Court decides to instruct pursuant to this theory.**

Defendants object to the paragraph that instructs that to prove forced labor "**the government does not need to link each of the threats allegedly made or actions allegedly take against the alleged victim to particular labor or service tasks performed by her . . .**" This Court should instruct the jury with the "by means of" language proposed in Defendants' instruction where the statute requires the government to prove that the prohibited means *caused* the person to provide the labor or services. To sustain a conviction under 18 U.S.C. § 1589, it is not enough that there be a connection between unlawful means of the defendant and the labor or services that person provides, the means must *cause* the person to provide those services. *United States v. Kalu,* 791 F. 3d 1194, 1211 (10th Cir. 2015).

Defendants further object to the paragraph that instructs "**the government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to try to escape.**" This language is inappropriate and inapplicable where no evidence exists to suggest that any person's physical liberty was restrained in any way either through physical or non-physical means. If this Court includes this language, it must use the language proposed in Defendant's instruction which makes it clear that the instruction references physically "leaving" or "escaping" captivity – not merely refraining from associating with an organization.

Defendants object to the portion of the instruction that begins with the words "a few final things about this second element . . ." The language offered by the government is heavy-handed and designed to reduce the government's burden of proof, confuse the jury and vitiate the government's duty to prove that Defendants acted with the required mental state

**B.**     <u>Defense Objection to § 1589(b) Portion of Instruction</u>

At the outset, the court should not instruct the jury in connection with § 1589(b) as this provision was not in effect until 2009. Thus, if a jury were able convict Defendants for conspiring to violate § 1589(b) based on pre-enactment conduct, an Ex Post Facto violation would occur. *Monaco, supra.* The government proposes language to address this Ex Post Facto problem. The language may resolve the issue but should be incorporated at the beginning of the instruction.

Additionally, as a matter of law, Defendants cannot be guilty of conspiring to violate § 1589(b) where conspiracy requires the government to prove that Defendants acted with a specific intent to commit the offense of forced labor but § 1589(b) states that a Defendant can commit the crime of forced labor through a venture with a reckless state of mind. This instruction all but ensures that Defendants can be convicted for merely acting recklessly even though conspiracy requires a higher *mens rea*. A defendant cannot agree to commit act recklessly. As such, Defendants simply cannot, as a matter of law, conspire to violate § 1589(b) and that alternative instruction must be excised from the instruction altogether.

In *United States v. Feola*, the Supreme Court considered requisite mental states for conspiracies involving offenses with "result" and "attendant fact" elements and held that no enhanced mental state for an attendant fact is required to sustain a conspiracy to assault a federal officer conviction. 420 U.S. 671, 693–94 (1975). As applied to the facts of that case, the Court held that individuals convicted of conspiracy to assault a federal officer need not have known that their victim was a federal officer. *Id.* at 695–96. It was sufficient that the defendants knowingly conspired to assault someone. In other words, "the parties to the conspiracy agreed to commit an act that was criminal, regardless of such extraneous but jurisdictionally fascinating factors as who the victim happened to be." *United States v. Miltof*, 165 F. Supp. 2d 558, 567 (S.D.N.Y. 2001) (discussing *Feola* and statutes with similar "attendant fact" elements). Importantly, in that case, the act of assault was itself a criminal act; it was not converted from innocent act to criminal act by virtue of the "attendant fact."

Critically, the *Feola* Court explicitly left open the question of "whether it is fair to punish parties to an agreement to engage intentionally in apparently innocent conduct where the unintended result of engaging in that conduct is the violation of a criminal statute." *Feola,* 470 U.S. at 691. Here, the structure of the forced labor conspiracy statute allows for a conviction where Defendants agreed to benefit from participating in *some* venture, which, on its face, constitutes "apparently innocent" conduct, *id.*, without knowledge of an essential objective of the conspiracy: violation of the prohibition on forced labor.

The related sex trafficking statute underscores this point. A conspiracy to commit sex trafficking requires that "[o]ne or more persons knowingly and willfully conspire[ed] and agreed together with each other to," *United States v. Vanier*, No. S1 18-CR-873, 2021 WL 5989773, *10 (S.D.N.Y. Dec. 17, 2021), knowingly

        (2) benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing . . . or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

18 U.S.C. §§ 1594(c), 1591(b).

The "result" element of the sex trafficking statute is that a defendant must knowingly benefit from participation in a venture that caused a commercial sex act by prohibited means. The "attendant fact" element is the fact that the defendant can know or be in reckless disregard of the fact that the primary offender caused a commercial sex act by prohibited means—by force, threat of force, or with a victim under the age of 18.

Analogous to the assault of the federal officer statute, courts have held that a reckless mental state may support the "attendant fact" element of a sex trafficking conspiracy. *United States v. Anthony*, 942 F.3d 955, 961 n.1 (10th Cir. 2019); *United States v. Wilson*, No. 10-60102, 2010 WL 2991561, *5 (S.D. Fla. July 27, 2010); *see also United States v. Groce*, 891 F.3d 260, 268 (7th Cir. 2018) ("Two states of mind support sex trafficking: knowledge or reckless disregard."). That is to say that a member of a sex trafficking conspiracy who agreed to benefit from a commercial sex act need not have known that the primary offender accomplished the commercial sex act by prohibited means.

In the sex trafficking context, just as in the *Feola* case, without the "attendant fact" element—meaning, without the use of force, the threat of force, or victim being under the age of 18—a crime still occurs: prostitution. In the assault of a federal officer context, without the attendant fact of the victim being a federal officer, a crime still occurs: assault. A defendant who conspired to benefit from a commercial sex act or to assault someone without the attendant facts has still conspired to commit a crime. In other words, no conspirators agreeing to benefit from a commercial sex act or from assaulting someone, regardless of their awareness of the requisite attendant facts, are engaging in "apparently innocent conduct." *Feola*, 420 U.S. at 690.

In contrast here, without forced labor, there is ostensibly no illegal conduct involved. Under the Forced Labor statute, any agreement to benefit from a venture without the attendant fact is simply the operation of any normal business. The act of two or more people agreeing to start a for-profit business that involves hiring others to perform labor is, plainly, "apparently innocent conduct." It is only the knowledge that this labor is to be forced that converts it into a potentially criminal act. Indeed, in the civil enforcement context, a forced labor conspiracy requires an agreement to "violate the prohibition on forced labor." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (citing *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014)). Without knowledge of forced labor occurring, Defendants cannot have conspired to benefit from such labor. To hold otherwise is the equivalent of saying that Defendants agreed to benefit from apparently innocent conduct with the unintended result of engaging in criminal conduct. *Feola*, 420 U.S. at 691.

One cannot conspire to cause an unintended result. *Mitlof*, 165 F. Supp. 2d at 563–64 (citing Robert La Fave, Criminal Law, Section 580–581, 583 (3d ed. 2000)). Meaning that "[w]hen

recklessness or negligence suffices for the actor's culpability, with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime." *Id.* Similarly, the unintended result of benefitting from forced labor—based in a lack of awareness of forced labor—cannot support a conspiracy conviction when the underlying conduct without that attendant fact is not a crime.

"The gist of the crime of conspiracy . . . is the agreement . . . to commit one or more unlawful acts." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (quoting *Braverman v. United States*, 317 U.S. 49, 53 (1942)). Without awareness of the attendant fact of forced labor, there could be no unlawful agreement to benefit from forced labor in violation of Section 1594(b) because Defendants would not have known the essential objective of the conspiracy—an agreement to commit an unlawful act. Therefore, a jury instruction that allows for a forced labor conspiracy conviction based on unknowing, reckless conduct violates Due Process.

### FORCED LABOR – ELEMENTS (Defense Request)

In order to determine whether Defendants committed the offense of forced labor conspiracy, you must understand the offense of forced labor, Although the government need not prove that Defendants actually committed forced labor, but the government must prove beyond a reasonable doubt that each Defendant conspired with one other person to commit forced labor. You need to know about the crime of forced labor.

The relevant statute for the underlying crime of forced labor provides, in pertinent part:

Whoever knowingly . . . obtains the labor or services of a person –

(1) by means of threats of serious harm to, or physical restraint against, that person or another person;

(2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or

(3) by means of the abuse or threatened abuse of law or the legal process.

To prove forced labor, the government must prove beyond a reasonable that:

<u>First:</u>     The defendant obtained the labor or services of one or more persons; and

  <u>Second:</u>  The defendant did so through: (a) threats of serious harm, or physical restraint against that person or persons; or (b) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (c) by means of the abuse or threatened abuse of law or the legal process; and

  <u>Third:</u> The Defendant acted knowingly.

18 U.S.C. § 1589 (2006).

  In connection with the first element: The word "obtain" means to acquire, to procure or to success in gaining the possession of something as a result of some plan, endeavor or general course.

  The word "labor" means work or performance of any particular tasks or set tasks, and it includes any form of physical or mental effort to exertion to perform such work or tasks.

  The word "services" means any conduct, work or duty performed for the benefit of another person or thing.

  In connection with the second element: The term "physical restraint" means confinement by force and against the will of the alleged victim.

  The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is, sufficiently serious, under all surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

  In determining whether a particular type or certain degree of threatened harm was sufficient to obtain each alleged victim's labor or services, you should consider that victim's

individual circumstances, including each individual's age, intelligence, education, experience, background, social isolation, social status, and any reasonable means of escape or terminating the relationship. The defendant must intend that the person believe that serious harm would befall one who refused to work.  This distinction is important, because it means that the government must do more than prove that a specific witness felt like he or she was facing a threat of serious harm from a Defendant. Instead, the government must prove that the threat of serious harm was sufficient that a reasonable person, albeit one with the same background and circumstances as the actual witness, would feel sufficient pressure to remain in a situation where their labor was forced. In determining whether the defendant made a threat of serious harm that could reasonably be believed by the witness, you should consider the witness's particular station in life, physical and mental condition, age, education, training, experience, and intelligence. A threat of serious harm must be sufficient in kind or degree to completely overcome the will of an ordinary person having the same general station in life as that of other witnesses who participated in OneTaste, causing a reasonable belief that there was no reasonable choice except to provide labor and services to a Defendant. You must determine whether the alleged victim's will was completely overcome at the time she provided the service or labor, not whether she later believed in hindsight that her will was overcome.

In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that (1) adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits

individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. A "scheme" is a plan or program of action, especially a crafty or secret one. A "plan" is a method for achieving an end or a detailed formulation of a program of action. A "pattern is a form or model proposed for imitation or a discernible coherent system based on the intended interrelationships of component parts.

The term "abuse or threatened abuse of law or legal process," means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

In terms of the third element that the government must prove beyond a reasonable doubt that the defendant acted knowingly.

An act is done knowingly when it is done purposefully and intentionally, as opposed to mistakenly or inadvertently.

A few final words about the offense of forced labor.

To prove forced labor, the government does not need to prove physical restraint – such as the use of chains, barbed wire or locked doors – in order to establish the offense of forced labor. The fact that a person may had had an opportunity to escape her confinement is irrelevant if a defendant placed her in such fear or circumstances that she did not reasonably believe she was free to leave her confinement. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape. On the other hand, if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied.

In considering whether service performed by someone was involuntary you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the work. If a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against her will by force, threats of serious harm, or abuse of law, or by scheme, plan or pattern, intended to cause her believe that non-performance will result in serious harm to her or another person then her service becomes involuntary.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any alleged victim reasonably to believe that she had no choice but to provide labor or services to the defendant. In making that determination, you may consider the cumulative effect on the alleged victim of the defendant's conduct. However, as stated above you must also consider whether such effect on the witness was reasonable, and whether the conduct of the Defendant was used as a means of obtaining labor, or for some other reason.

*United States v. Kartan, et al.,* 16-CR-217 (E.D. Cal. March 14, 2019) [Dkt No. 178]
*United States v. Marcus,* 05-CR-457 (E.D.N.Y. Dec. 21, 2007) [Dkt. No. 202]
*United States v. Calimlin,* 538 F. 3d 706, 711 (7th Cir. 2008)
*United States v. Zhong*, 26 F.4th 536, 550 (2d. Cir. 2022)("Whether an employer's threatened consequences are 'legitimate' and therefore do not qualify as 'serious harm' will depend on the surrounding circumstances in each case" and a "decision whether to give an 'adverse but legitimate' consequences instruction therefore lies within the district court's discretion.". *See also*, *Muchira*, 850 F.3d at 624 and *Headley v. Church of Scientology*, 687 F.3d 1173, 1180 (9th Cir. 2012) (The Court must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences).

**Government Reply**:

The defendants object to the government's proposed instruction in two parts: first, as to the instructions related to Section 1589(a) and then as related to Section 1589(b). The defendants also propose their own instruction for the Court's consideration. As discussed below, the Court should reject the defendants' specific objections, which variously misstate the law or

the language of the proposed instruction.  Furthermore, as discussed below, the defendants' proposed charge should be rejected in its entirety.

## A.      Government Reply to Defense Objections Related § 1589(a) Portion of Instruction

The defendants object to the inclusion of the phrase "Labor or services can include, but is not limited to, sexual services."  This sentence is drawn directly from the court's instructions in <u>Kelly</u>.  The defendants have no legal objection to the inclusion of the sentence; they argue instead that it constitutes improper vouching of the government's evidence.  Not so. To the contrary, the inclusion of such language is necessary to clarify for the jury that certain services which might appear as if they would not qualify due to their potentially illegal nature— such as sexual services—do constitute labor and services under the statute.

The defendants additionally object to the statement that serious harm "includes improper threats of consequences, whether physical or nonphysical."  This sentence is also drawn directly from the court's instructions in <u>Kelly</u>.  In their objection, the defendants ignore the remainder of the instruction, which provides that serious harm "includes improper threats of consequences, whether physical or nonphysical, *that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm.*"  This is entirely consistent with the requirements set out under the statute and does not run afoul of the First Amendment.  Indeed, in support of their objection, the defendants indicate that the government is "conflat[ing] improper threats or coercion and permissible warnings of adverse but legitimate consequences," <u>supra</u> at 28.  The argument makes no sense, as the government's own proposed instruction also uses the phrase "<u>improper</u> threats," just as the defendants acknowledge is appropriate.

The defendants object to the inclusion of the phrase "climate of fear."  This sentence is also drawn directly from the court's instructions in <u>Kelly</u>.  The defendants argue that the inclusion of such language effectively imposes strict liability on the defendants for the actions of others who "may or may not be co-conspirators."  That is not the case.  The proposed instruction specifically instructs the jury to consider "whether <u>a defendant created</u> a climate of fear" based on consideration of "the totality of the defendants' conduct, including the surrounding circumstances . . ."  The instruction is necessary to make clear to the jury that implied threats that exist based on the totality of the surrounding circumstances, as well as direct threats, can both support a finding of criminal liability.

The defendants object to the use of the term "harm" without inclusion of the adjective "serious."  The government submits that the context provided for the term "harm" includes sufficient references to the word "serious" to render the standard clear.  <u>See, e.g.</u>, Government Proposed Instruction No. 6 ("The term "serious harm" includes both physical and non-physical types of harm, including psychological, financial, or reputational harm" . . . "A threat of serious harm, therefore, need not involve any threat of physical violence.  It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background

and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm.").

The defendants object to the language providing, "you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any," and "[s]imply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services" and assert that the "serious harm" definition "is unquestionably an objective one and does not permit the jury to consider the specific vulnerabilities of an individual." The defendants are incorrect as a matter of law. The appropriate standard is <u>hybrid</u>. 18 U.S.C. § 1589(c)(2) (defining the term "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person *of the same background and in the same circumstances* to perform or to continue performing labor or services in order to avoid incurring that harm."). The government's proposed formulation also includes language making clear the objective component, including with reference to "a reasonable person," and is consistent with Second Circuit law.

The defendants object to any instruction regarding "abuse or threatened abuse of law or legal process" absent relevant evidence on this subject. The government respectfully proposes evaluating at the charging conference whether inclusion of this instruction is appropriate in light of the evidence presented at trial.

The defendants object to the instruction that "the government does not need to link each of the threats allegedly made or actions allegedly take against the alleged victim to particular labor or service tasks performed by her . . ." This section is drawn directly from the Court's instructions in <u>Kelly</u> and <u>Raniere</u>. The defendants argue that the government is required to establish that the unlawful means employed by the defendants *caused* victims to perform labor and services, citing <u>United States v. Kalu</u>, 791 F. 3d 1194, 1211 (10th Cir. 2015). However, the remainder of the government's proposed instruction makes clear that if the victim was "threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will *and compelled her service,* that is sufficient to establish the second element of the offense of forced labor." The language "and compelled her service" makes clear that the unlawful means compelled the performance of labor and services.

The defendants further object to the paragraph providing that "the government also need not prove physical restraint" based on the argument that there is no evidence to suggest that any person's physical liberty was restricted in this case. However, it is precisely for that reason that the language is necessary. This section is drawn directly from the district courts' instructions in <u>Kelly</u> and <u>Raniere</u> and the defendants cite no legal basis to exclude it.

The defendants object to the paragraph beginning with "A few final things about this second element," vaguely claiming that it is "heavy-handed and designed to reduce the government's burden of proof" and confuse the jury. However, the defendants fail to specify the problematic language and how it reduces the government's burden and confuses the jury. The

government respectfully submits that such language, which is generally consistent with the Court's instructions in <u>Kelly</u> and <u>Raniere</u>, is appropriate.

**B.**     <u>Government Reply to Defense Objections Related § 1589(b) Portion of Instruction</u>

       The defendants raise two primary arguments in connection with Section 1589(b): first, that the Court should not charge the jury on Section 1589(b) because this provision was not in effect between 2006 and 2008 (during the first two years of the charged conspiracy); and second, because this section contains a conflicting reckless component. The Court should reject both arguments.

       **1.**    <u>The Court Should Charge the Jury on Section 1589(b)</u>

       The relevant statute, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), took effect on June 21, 2009. <u>See</u> Pub. L. No. 110-457, 122 Stat. 5044 (2008). The TVPRA codified two provisions relevant to the Indictment. First, the TVPRA modified 18 U.S.C. § 1589(a) to enumerate additional, specific means by which a defendant can violate the statute. <u>See id.</u> at 5068. Second, the TVPRA modified 18 U.S.C. § 1594 by creating the criminal offense of conspiracy to violate § 1589. <u>See id.</u> at 5070. As the Government expects to prove at trial, the charged conspiracy both predates and post-dates the TVPRA.

       The <u>Ex Post Facto</u> Clause prohibits Congress from passing a law that "(1) makes an act a crime that was legal when committed; (2) make a crime greater than it was when it was committed; (3) increases the punishment for a crime after it has been committed; or (4) deprives the accused of a legal defense that was available at the time the crime was committed." <u>United States v. Harris</u>, 79 F.3d 223, 228 (2d Cir. 1996). The <u>Ex Post Facto</u> Clause's provisions extend to judicial proceedings as a matter of due process. <u>See</u> <u>United States v. Marcus</u>, 560 U.S. 258, 264 (2010); <u>Harris</u>, 79 F.3d at 228-29.

       "[I]t is well-settled that when a statute is concerned with a continuing offense," such as conspiracy, "the <u>Ex Post Facto</u> clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute." <u>United States v. Monaco</u>, 194 F.3d 381, 386 (2d Cir. 1999); <u>see also</u> <u>United States v. Mermelstein</u>, 487 F. Supp. 2d 242, 253 (E.D.N.Y. 2007) (continuing offenses, such as health care and bank fraud, do not violate the <u>Ex Post Facto</u> Clause if the criminal behavior continues beyond the effective date of the relevant statute); <u>United States v. Ghavami</u>, No. 10-CR-1217 (KBW), 2012 WL 2878126, at *12 (S.D.N.Y. July 13, 2012) (same, as to conspiracy to commit wire fraud); <u>Rivera v. United States</u>, No. 09-CR-619 (JMA), 2024 WL 3985677, at *19 (E.D.N.Y. Aug. 29, 2024) (same, as to forced labor conspiracy).

       No due process violation occurs unless a defendant is convicted solely on conduct prior to the enactment of the applicable criminal statute. <u>See</u> <u>Marcus</u>, 560 U.S. at 264. Thus, conduct that occurred prior to the date of the charging statute's enactment is admissible for limited purposes only. "When it is shown that a conspiracy straddled the enactment of a statute, the government may introduce pre-enactment evidence to demonstrate the conspiracy's genesis,

its purpose, and its operation over time." Monaco, 194 F.3d at 386. Pre-enactment evidence is also admissible "to prove the intent and purpose of the conspirators' later acts." United States v. Ferrara, 458 F.2d 868, 874 (2d Cir. 1972).

Ultimately, "[a] conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto clause unless it was possible for the jury, following the court's instructions, to convict exclusively on pre-enactment conduct." Monaco, 194 F.3d at 386 (emphasis in original). In that regard, carefully crafted limiting instructions, which can eliminate the risk that a jury will convict solely based on pre-enactment conduct, are "a first line of defense against the risk of unfair prejudice." Ghavami, 2012 WL 2878126, at *13; see also Marcus, 560 U.S. at 263-64 ("The error at issue in this case created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct. A judge might have minimized, if not eliminated, this risk by giving the jury a proper instruction.").

The defendants' argument that the government's proposed jury instructions violate the Ex Post Facto Clause fail because the charged conspiracy straddled the enactment of the relevant portions of 18 U.S.C. §§ 1589 and 1594, as is proper. Harris, 79 F.3d at 229 ("It is well settled that when a statute is concerned with a continuing offense, the Ex Post Facto Clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute."); United States v. Duncan, 42 F.3d 97, 104 (2d Cir. 1994) (stating that "according to our precedents, continuing offenses such as conspiracy . . . do not run afoul of the Ex Post Facto Clause if the criminal offenses continue after the relevant statute becomes effective"). Because conspiracy is a continuing offense, the Indictment does not violate the Ex Post Facto Clause: the Indictment alleges a multi-year conspiracy that predated the TVPRA and continued long after its enactment. As the government expects to demonstrate at trial, the conspiracy continued long after June 21, 2009. Consequently, the government's proposed jury instructions as to §§ 1589 and 1594 are proper.

Nonetheless, in light of the defendants' objections, the government added a proposed limiting instruction at the end of the charge that, to convict the defendants, it must find that the conspiracy continued after June 21, 2009, during the post-enactment period alleged in the Indictment in order to eliminate any risk that the jury's verdict could be based on pre-enactment conduct. See Ghavami, 2012 WL 2878126, at *13; Marcus, 560 U.S. at 263-64. The portion of the government's proposed instruction reads:

> The Indictment charges each defendant with Conspiracy to Commit Forced Labor, in violation of Section 1594. Title 18, United States Code, Section 1594 became law on June 21, 2009. Therefore, to convict either defendant of this count, you must find beyond a reasonable doubt that the conspiracy to commit forced labor existed on or after June 21, 2009. A defendant cannot be found guilty by you solely on evidence of acts that occurred prior to June 21, 2009. You heard evidence that the defendants participated in conduct that predates June 21, 2009. Such evidence was introduced simply to demonstrate the conspiracy's genesis, its purpose, and its operation

41

over time as well as explain the intent and purpose of the conspirators' later acts.

<u>See</u> Government Proposed Instruction No. 6.

## 2.   **The Court Should Reject the Defendants' Recklessness Argument**

The defendants' claim that they cannot be guilty of conspiring to violate 18 U.S.C. § 1589(b) because it contains a recklessness component fails because Second Circuit case law squarely supports that a defendant can willfully join a conspiracy while recklessly disregarding the object of that conspiracy.

In <u>United States v. Lange</u>, 834 F.3d 58, 76 (2d Cir. 2016), the Second Circuit held that "[o]n a charge of conspiracy, the Government must prove (1) knowing participation or membership in the scheme charged and (2) some knowledge of the unlawful aims and objectives of the scheme." <u>Id.</u>  And though conscious avoidance "may not be used to support a finding as to the former, <u>i.e.</u>, intent to participate in a conspiracy, [] it may be used to support a finding with respect to the latter, <u>i.e.</u>, knowledge of the conspiracy's unlawful goals." <u>Id.</u> (citing cases).  The Second Circuit has thus clearly held that although joining an agreement to commit an illegal object requires knowledge or intent, the <u>mens rea</u> of the illegal object itself can be satisfied through conscious avoidance or its equivalent—here, reckless disregard.  <u>Compare</u> <u>supra</u> at 26 (proposing jury instructions defining "reckless disregard" as meaning "deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor"); <u>with</u> <u>Lange</u>, 834 F.3d at 76 (defining "conscious avoidance" as "that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact").

For example, a defendant can conspire to commit wire and securities fraud where he consciously avoids accessing material nonpublic information to trade on the stock market. <u>See</u> <u>United States v. Khalupsky</u>, 5 F.4th 279, 297 (2d Cir. 2021) (holding the same, and specifically holding that "conscious avoidance may satisfy the defendant's knowledge of the conspiracy's unlawful goals," even where "it may not be used to support the defendant's prerequisite knowing participation or membership in the scheme charged").  Here, the defendants can conspire to commit forced labor by knowingly benefiting from participation in a venture engaged in forced labor, either knowing or in reckless disregard of the venture's engagement in forced labor.  18 U.S.C. §§ 1589; 1594 (criminalizing conspiring to violate 18 U.S.C. § 1589, thus inclusive of 1589(b)).

Thus, far from "all but ensuring that Defendants can be convicted for merely acting recklessly even though conspiracy requires a <u>mens rea</u>," the government's proposed jury instructions as to conspiracy make it clear that the defendants must have "knowingly and intentionally" become members of the conspiracy entered into an agreement to accomplish its "unlawful purpose."  <u>See</u> <u>supra</u> at 9.  That the illegal object itself—here, forced labor as prohibited by 18 U.S.C. § 1589(b)—can itself be satisfied through reckless disregard does not negate in any way what the jury must find as to conspiracy.

The cases cited by the defendants support this conclusion. In United States v. Feola, for example, the Supreme Court analyzed cases in which it repeatedly "declined to require a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense." 420 U.S. 671, 688 (1975). Feola left open the question of "whether it is fair to punish parties to an agreement to engage intentionally in apparently innocent conduct where the unintended result of engaging in that conduct is the violation of a criminal statute"—the example being running a traffic light "of whose existence one is ignorant." Id. at 691. The defendants urge that 1589(b)'s proscription of "knowingly benefit[ting] . . . from participation in a venture" is akin to "apparently innocent conduct" and "simply the operation of any normal business." See supra at 30 (defendants arguing that "the structure of the forced labor conspiracy statute allows for a conviction where Defendants agreed to benefit from participating in some venture, which, on its face, constitutes 'apparently innocent' conduct"). But the defendants ignore the text of 18 U.S.C. § 1589(b), which does not just prohibit knowingly benefitting from any venture or "normal business," but rather, prohibits knowingly benefiting from a venture that has engaged in forced labor and, thus, is "in and of [itself a] criminal act[]." United States v. Mitlof, 165 F. Supp. 2d 558, 566 (S.D.N.Y. 2001) (citing cases). That the object of the defendants' conspiracy requires that the defendants knowingly benefit from that criminal venture, knowing or recklessly disregarding that the venture engaged in forced labor, is precisely the type of knowledge of the conspiracy's unlawful goals that the Second Circuit has held can be satisfied through conscious avoidance or its equivalent and neither runs afoul of Feola or Mitlof.

Indeed, the defendants' arguments as to 18 U.S.C. § 1591 make little sense, as that statute makes plain that recklessness wholly satisfies the criminal aspect of that charge. Specifically, 18 U.S.C. § 1591(b) prohibits "knowingly benefitting" . . . from participation in a venture" that has "recruit[ed], entice[d] . . . or solicit[ed] by any means a person" "knowing . . . or in reckless disregard of the fact, that means of force, threats of force, fraud [and] coercion . . . will be used to cause the person to engage in a commercial sex act." Id. Thus, the elements of the offense, as defined by Sand, are (1) knowingly recruiting, enticing, or soliciting a person by any means (not inherently criminal); (2) knowing or recklessly disregarding that force, fraud, or coercion would be used with respect to that person (criminal, but proved with reference to recklessness); (3) that the defendant knew or was in reckless disregard of the fact that the person would be engaged in a commercial sex act (criminal, but proved with reference to recklessness); and (4) that the defendant's conduct was in or affecting interstate or foreign commerce. Sand, Instr. 47A.03.

Accordingly, instructing the jury as to 18 U.S.C. § 1589(b) is appropriate and, indeed, required in light of Congress's decision to criminalize conspiracy to commit the same and binding Second Circuit case law making plain that recklessness may be used to support a finding with respect to knowledge of a conspiracy's unlawful goals.

## C.     Government Reply to Defense's Proposed Forced Labor Charge

The defendants' proposed request to charge should be rejected in its entirety, as it omits certain relevant statutory language, amends the definitions of various relevant statutory language, and propose additional language unsupported by the precedent to which they cite.

43

The defendants' citations do not support their proposed requests. For instance, the defendants rely on <u>United States v. Marcus</u>, 05-CR-457 (ARR), ECF No. 202, at 19-23 (E.D.N.Y.). However, the instructions in <u>Marcus</u> differ from the defendants' proposed instructions in various ways, including in the definition of "obtain"; in not providing the defendants' proposed definitions of "labor," "services" or "physical restraint"; and in not including the defendants' proposed language that "if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied." Further, <u>Marcus</u> includes much of the government's proposed language that the defendants have omitted from their proposed requests to charge, such as, among other things, that "whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor,"; and that "[t]o prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against the alleged victim to particular labor" performed by her. <u>Id.</u>

Nor do the defendants' out-of-Circuit precedent provide additional significant support for the defendants' proposed formulation, as much of the requested language still cannot be located in those requests. <u>See</u> <u>United States v. Kartan</u>, 16-CR-217, ECF No. 178 (E.D. Cal.) (<u>not</u> instructing the jury, for example, as to the defendants' proposed language that "if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied"). Although <u>Kartan</u> does contain the defendants' proposed definitions of "obtain," "labor" and "services"—presumably the definitions adopted by the Ninth Circuit—that precedent has little weight here, where the Second Circuit has defined such terms. <u>See, e.g.</u>, <u>United States v. Raniere</u>, No. 20-CR-3520, 2022 WL 17544087, at *2 (2d Cir. Dec. 9, 2022) (defining labor). Indeed, much of the defendants' proposed language seems to come from no precedent whatsoever—this Court should decline to adopt its novel formulation, which are often inaccurate statements of the law. For example, the defendants propose that the Court instruct the jury that "[y]ou must determine whether the alleged victim's will was completely overcome at the time she provided the service or labor, not whether she later believed in hindsight that her will was overcome." Such instruction would be completely ungrounded in the applicable statutory language and the defendants cite no precedent whatsoever for it.

The defendants also ask the Court to include the following instruction:

> In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that (1) adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

In doing so, the defendants attempt to rely on the Second Circuit's dicta in United States v. Zhong 26 F.4th 536, 550 (2d. Cir. 2022).  In Zhong, the Second Circuit affirmed the district court's denial of an "adverse but legitimate consequences" instruction to the jury.  There, the defendant argued that the workers had voluntarily joined the defendant's company's employment and therefore the consequences of a "voluntarily entered into employment agreement are always legitimate."  Id.  The Circuit explained, "That assumption is inconsistent with case law recognizing that a victim's initial willingness to perform certain labor does not preclude the possibility that the victim's continued labor may become forced."  Id.  Thus, the Court should not provide that instruction and should instead rely on the government's proposed instructions, which are less confusing and supported by precedent.  Nor should the Court ask the jurors to make a legal determination as to what language is protected by the First Amendment, for which the defendants, again, provide no legal supporting legal authority that such a legal determination should be posited to the jury.

Most crucially, the defendants have omitted some of the language of 18 U.S.C. § 1589(a) and all of the language of 18 U.S.C. § 1589(b), and have not proposed any instruction as to the same, instead citing to the version of 18 U.S.C. § 1589 that was enacted in 2006, rather than the versions of 18 U.S.C. § 1594 and 18 U.S.C. § 1589 in effect from December 23, 2008 through present.  Accordingly, this Court should decline to adopt the defendants' novel formulation of the forced labor jury charge, which strays from precedent and statutory language.

There was testimony at trial that attorneys for the government and the defendant interviewed witnesses when preparing for trial. You should not draw any unfavorable inference from that testimony. To the contrary, you should understand that the attorneys are obligated to prepare their case thoroughly as possible and, in the discharge of that responsibility, properly interview witnesses before this trial began and as necessary throughout the course of the trial.

Authority

Adapted from Thomas; Raniere; Zottola.

<u>REQUEST NO. 8 — Particular Investigative Techniques Not Required / All Available Evidence
Need Not Be Produced</u>

Although the government bears the burden of proof, and although a reasonable doubt can arise from lack of evidence, you are instructed that there is no legal requirement that the government use any specific investigative techniques or pursue every investigative lead to prove its case. Therefore, although you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques. The government and its investigative techniques are not on trial.

In this regard, I also charge you that all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in this case, need not be called as witnesses. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.

<u>Authority</u>

Adapted from <u>Acevedo</u>; <u>Thomas</u>; <u>Kelly</u>; Sand, Instr. 4-4; <u>United States v. Saldarriaga</u>, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam); <u>United States v. Knox</u>, 687 F. App'x 51, 54-55 (2d Cir. Apr. 14, 2017) (summary order).

**Defense Response:**

Defendants object to this instruction generally and specifically to the following language: "**The government and its investigative techniques are not on trial.**" While Defendants have no intention of arguing that the government is required to use a "specific investigative technique" they may very well challenge the veracity of evidence and witness testimony based on interview techniques used by the government and its agents, just as a defendant may challenge the voluntariness of a statement based on the tactics employed by a government interrogator. It is hardly worth stating that the government is not on trial since that point is obvious. The jury does not need to be told the government is not "on trial." The colloquial statement runs of the risk of misinforming the jury that it may not consider the credibility and veracity of government evidence if appropriate based on government tactics used in obtaining that evidence.

**Government Reply**:

The precise language the defendants object to is commonly charged in this District and Circuit. The government's motives are not relevant to defendants' innocence or guilt of the charges at issue. As the government argued at length in its motions in limine, by arguing the government committed misconduct during its investigation or that the defendant was improperly targeted, the defense seeks a verdict of jury nullification. This is improper. See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper"); United States v. Webb, No. 15-CR-252 (PKC), ECF No. 1275, Trial Transcript at 3630:09-3632:12 ("[M]aking argument in the vein of selective prosecution or the government's motive in conducting its investigation; for example, not getting certain evidence or pursuing certain leads and potentially focusing on certain defendants is . . . inappropriate" at trial.). Indeed, the defendants' very example—that they "may challenge the voluntariness of a statement based on the tactics employed by a government interrogator"—evidences their continuing misunderstanding of this "obvious" principle. The voluntariness of a defendant's statement is precisely the kind of legal issue that gets litigated pretrial before the Court, not before the jury. The government maintains that the language of its proposed charge is not only legally sound and routinely given, but also particularly necessary in light of statements the defendants continue to make about how they intend to try this case, including with reference to improper legal arguments about the government's conduct.

<u>REQUEST NO. 9 — Uncalled Witness Equally Available to Both Sides (If Applicable)</u>
(**Government Request**)

Both the government and the defense have the same power to subpoena witnesses to testify on their behalf.  If a potential witness could have been called by the government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both.

On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. The burden of proof to prove the charges beyond a reasonable doubt remains with the government throughout the trial.

<u>Authority</u>

Adapted from <u>Raniere</u>; Sand, Instr. 6-7; <u>see generally</u> <u>United States v. Erb</u>, 543 F.2d 438, 444-45 (2d Cir.) (discussing propriety of missing witness charges), <u>cert. denied</u>, 429 U.S. 981 (1976)).

**Defense Response:**

        This instruction should be omitted where it is untrue and leaves the jury with the false impression that the parties have the power to obtain the presence of any witness they seek to present. This is decidedly not the case. Defendants have no ability to obtain the presence of certain witnesses outside the jurisdiction of the Court.

        If this Court gives this instruction Defendant proposes the following last paragraph:

"I remind you, however, that because the law presumes the Defendant to be innocent, the burden

of proving her guilt beyond a reasonable doubt is on the Government throughout the trial. The

Defendant ever has the burden of proving his innocence or producing any evidence or calling

any witnesses at all."

**Government Reply**:

        The government objects to the defendants' edits to the proposed charge, as the government maintains that its proposed formulation is clearer. Furthermore, the proposed charge does not indicate that the government and the defense have the power to subpoena any witness, it indicates that they have the same power to subpoena witnesses, which is an accurate statement of the law.

<u>REQUEST NO. 10 — Opinion of Defendant's Character (If Applicable)</u>

The defendant(s) have called witnesses who have given their opinion of her good character. This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine.

You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendants are guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including testimony about the defendant's good character, you find a reasonable doubt has been created, you must acquit her of the charges.

On the other hand, if after considering all the evidence, including that of the defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe her to be a person of good character.

<u>Authority</u>

Adapted from Sand, Instr. No. 5-6.

<u>REQUEST NO. 11 — Redactions</u>

Among the exhibits received in evidence, there are some documents that are redacted.  "Redacted" means that part of the document was taken out.  You are to concern yourself only with the part of the document that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been redacted.

<u>Authority</u>

Adapted from the jury charge in <u>United States v. Cespedes-Pena</u>, No. 14-CR-520 (KMW), ECF No. 51 (S.D.N.Y.).

<u>REQUEST NO. 12 — Uncharged Acts Considered for a Limited Purpose (If Applicable)</u>
(**Government Request**)

You have heard evidence that the defendants engaged in conduct, including crimes, other than the crimes charged in the Indictment. The defendant is not on trial for committing any acts not charged in the Indictment or for acts committed outside the time period charged in the Indictment. Consequently, you may not consider evidence of those other acts as a substitute for evidence that the defendant committed the crimes charged in this case. Nor may you consider evidence of those other acts as proof that the defendant has a criminal propensity; that is, you may not conclude that she likely committed the crimes charged in the Indictment because she was predisposed to criminal conduct.

Instead, you may consider evidence of uncharged conduct by the defendant for limited purposes, and you may consider it only for the following limited purposes, which I will now describe. You may only consider evidence of uncharged conduct:

- As evidence of the existence of the charged conspiracy;

- As evidence of the development of relationships of mutual trust between the defendant and others with whom she is charged with carrying out the charged conspiracy;

- As evidence of conduct that is inextricably intertwined with evidence of the charged crime;

- As evidence enabling you to understand the complete story of the charged crime;

- As evidence of motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or a modus operandi formed by the defendant and her accomplices to commit the charged crimes; and

- As evidence corroborating the testimony of other government witnesses.

Evidence of uncharged conduct by the defendant may not be considered by you for any purpose other than the ones I have just listed.

Authority

Adapted from <u>Kelly</u>; <u>Raniere</u>.

**Defense Response**:

Defendants object to the instruction as it fails to identify the uncharged acts that the jury may be asked to consider. A jury cannot be left to wonder what it can and cannot consider and for what purpose. A jury must be instructed consistent with F.R.E. 404(b) about what uncharged acts it may consider in its deliberations and specifically for what purpose it may consider the evidence. An instruction that tells the jury that it can consider any uncharged bad act evidence "as evidence of the conspiracy" or "to understand the complete story of the crime" is non-sensical and belies the purpose of F.R.E. 404(b) and F.R.E. 403. The law demands more than contriving pretextual grounds for rank propensity evidence.

The government must be required to proffer specific bad act evidence, explain why such evidence is relevant (meaning what issue in dispute does it shed light on), identify a specific non-propensity purpose for its admission, and further defend the instruction pursuant to F.R.E. 403. If this Court then permits such evidence, it must be identified in this instruction along with an explanation for its purpose.

The government criticizes Defendants' proposed instruction because it fails to identify the purpose of the uncharged bad act evidence in its proposed (admittedly incomplete as of yet) instruction. The government's gripe evinces its fundamental misapprehension of how it may use bad act evidence. It should be obvious that Defendants do not at this point know what other bad act evidence the government proposes to introduce, nor do they know for what limited purpose the government intends to offer such evidence.

Defendants reserve the right to object to this instruction, and all others, after the close of the case when the parties know what other bad evidence this Court permitted into evidence and for what purpose.

## EVIDENCE OF OTHER BAD ACTS (Defense Request)

You have heard evidence that the Defendants may have engaged in conduct, other than the crime charged in the indictment. The Defendant is not on trial for committing any acts not charged in the indictment. Consequently, you may not consider evidence of those other acts as a substitute for proof that the Defendant committed the crimes charged. Nor may you consider

54

evidence of these other acts as proof that the Defendants has a criminal propensity, that is, that they likely committed the crime charged in the indictment because they were predisposed to criminal conduct.

As I have charged you during the trial, the evidence of uncharged conduct by the Defendant is admitted for limited purposes, and you may consider it only for those limited purposes. The purposes for which such evidence is admitted are as follows [] [as applicable]

*United States v. Raniere,* 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]

**Government Reply:**

The government objects to the defendants' narrowed and incomplete request to instruct on uncharged acts. The defendants merely take the government's proposed instruction, which was drawn directly from the final charge in <u>Raniere</u>, and makes small changes to the language without providing authority for their proposed changes. Moreover, the defendants request—also without legal precedent—that Court explain each admissible bad act and the Court's pretrial (and legal) determination for its admissibility.

For instance, in the first sentence of the government's instruction, the defendants seek to add the language underlined and delete the language in italics: "You have heard evidence that the defendants <u>may have</u> engaged in conduct, *including crimes*, other than the crimes charged in the Indictment." The government's proposed language ("You have heard evidence that the defendant engaged in conduct, including crimes, other than the crimes charged in the Indictment.") is language taken verbatim from <u>Raniere</u>. The defendants offer no basis for their proposed changes and, confusingly, also cite to <u>Raniere</u>.

The defendants also claim the government must identify within the instruction the specific bad act admitted and an explanation for its purpose. As a preliminary matter, the government has previously outlined in its motion <u>in</u> <u>limine</u> the evidence it seeks to offer at trial which is admissible either because it is direct evidence of or inextricably intertwined with the evidence of the charged offense, and in the alternative, under Rule 404(b). <u>See</u> ECF 170, pp. 2-37, 61-77. The defendants, however, cite to no legal authority which requires the Court to instruct the jury as they propose. To be clear, the district court did not instruct the jury as the defendants propose in <u>Raniere</u>, the only case on which the defendants rely. <u>United States v. Raniere</u>, 18-CR-204 (NGG), Dkt. No. 728 at 22-24 (E.D.N.Y. June 18, 2019). Accordingly, the Court should reject the defendant's proposed instruction.

<u>REQUEST NO. 12 — Impeachment by Prior Inconsistent Statement (If Applicable)</u>

You have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony. Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his/her trial testimony, you may consider that fact in deciding how much of his/her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight should be given to the inconsistent statement in determining whether to believe all, part, or none of the witness's testimony.

<u>Authority</u>

Adapted from <u>Zottola</u>.

<u>REQUEST NO. 13 — Jury to Consider Only Defendants on Trial</u>

You have heard evidence about the involvement of certain other people in the crime charged in the Indictment.  That these other individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these other people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.  Your concern is solely the defendants on trial before you.

<u>Authority</u>

Adapted from <u>Acevedo</u>; <u>Sand</u>, Instr. 2-18.

<u>REQUEST NO. 14 — Expert Testimony (if applicable)</u>

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, the opinion given, the witness's reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the other evidence before you.  You should not, however, accept a witness's testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

<u>Authority</u>

Adapted from <u>Acevedo</u>; L. Sand, <u>et</u> <u>al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 7-21.

<u>REQUEST NO. 15 — Lost or Destroyed Evidence (**Defense Request**)</u>

If you find that the government intentionally destroyed or failed to preserve

[evidence] that the government knew or should have known would be evidence in this case, you

may infer, but are not required to infer, that this evidence was unfavorable to the government.


Model Jury Instruction 4.19 for the United States Court of Appeals for the Ninth Circuit

**Government Response**:

The government objects to the inclusion of this instruction. Although the defendants do not identify the particular piece of evidence believed to have been intentionally destroyed, the government anticipates that the defendants seek this request based on Jane Doe 1's email account that was previously the subject of a motion to dismiss on grounds of spoliation (the "Email Account"). <u>See</u> ECF Dkt. Nos. 96, 99, 100, 105, 113, 118, 141. In denying the defendants' spoliation motion, the Court has already determined that the defendants did not make the necessary showing that would permit for such an instruction.

A party seeking an adverse inference instruction based on the destruction of evidence must establish the following: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>United States v. Garcia</u>, 596 F. App'x 24, 26 (2d Cir. 2015); <u>United States v. Helbrans</u>, No. 19-CR-497 (NSR), 2021 WL 3595720, at *4 (S.D.N.Y. Aug. 13, 2021); <u>see also</u> <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002); cf. ECF 118 at 25-26 (standard for spoliation motion to dismiss).

The Court already determined—in the context of rejecting the defendants' motion to dismiss—that the defendants cannot show "any purported loss with respect to the Email Account is chargeable to the Government." <u>See</u> September 27, 2024 Tr. at 27, <u>United States v. Cherwitz et al.</u>, 23-CR-146 (DG). Nor did the defendants show the government acted in "bad faith." <u>Id.</u> Accordingly, the defendants cannot demonstrate the requested instruction is warranted here.

<u>REQUEST NO. 16 — Improper Considerations (**Defense Request**)</u>

Your verdict must be based solely upon the evidence developed at trial, or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendants' race, religion, spiritual beliefs, sexual orientation, sexual history, ethnic background, sex, or age. All persons are entitled to the presumption of innocence and the government has the same burden of proof.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case. Despite any reactions you may have based on the conduct described during the witnesses' testimony and the nature of any images you may view, it is imperative that your reactions to the testimony and an any images do not interfere with your ability to be a fair and impartial juror.

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, entered into or influence your deliberations. The duty of imposing sentence rests exclusively on the court. Your function is to weigh the evidence in the case to determine, solely upon the basis of the evidence, whether or not the defendants are guilty beyond a reasonable doubt of the crime charged.

*United States v. Marcus,* 05 CR 4577 (ARR) (E.D.N.Y. Feb. 21, 2007) [Dkt. No. 202]

**Government Response:**

The government objects to the defendants' proposed instruction, as these requests are already included in the Court's usual charges.

For instance, in instructing on punishment, the Court has stated, "The question of possible punishment of the Defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing a sentence rests exclusively with the Court.

Your function is to weigh the evidence in the case and to determine whether or not the Defendant is guilty beyond a reasonable doubt, solely upon the basis of the evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the Defendant, if he is convicted, to influence your verdict in any way or to enter into your deliberations at all." May 8, 2023 Tr. at 2174, <u>United States v. Acevedo</u>, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on bias, which the government requested as "basing verdict on sympathy or prejudice prohibited," the Court has stated, "I remind you that each of you has undertaken a solemn obligation, a sworn obligation, to decide this case solely on the evidence. You must carefully and impartially consider the evidence, follow the law as I state it, and reach a just verdict, regardless of the consequences. You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Government or Defendant." May 8, 2023 Tr. at 2173-74, <u>United States v. Acevedo</u>, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on the role of the court, the Court has explained: "It would violate your sworn duty to base a verdict on any other view of the law than the one I will give to you. This means you must follow my instructions regardless of any opinion that you may have as to what the law might or should be, and regardless of whether any attorney has stated a legal principle differently from how I might state it now." May 8, 2023 Tr. at 2115, <u>United States v. Acevedo</u>, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on the presumption of innocence, the Court has said, "The law presumes the Defendant to be innocent and never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence." May 8, 2023 Tr. at 2117, <u>United States v. Acevedo</u>, No. 21-CR-162 (DG) (E.D.N.Y.).

Accordingly, as these instructions will already be included in instructions elsewhere in the jury charge, the Court should deny the defendants' motion for an unnecessary and repetitive charge.

REQUEST NO. 17 — Venue (**Defense Request**)

Venue refers to the location of the charged crime. The indictment alleges that the crime charged occurred in whole or in part in this judicial district, which is the Eastern District of New York. This district includes Brooklyn, Queens, Staten Island, Nassau, and Suffolk counties on Long Island, and the waters surrounding Manhattan. The establish venue for a crime in the district, the government most prove that some act in furtherance of the crime happened in the Eastern District of New York and that Defendant was either present in the venue or that the defendant had knowledge or could reasonably foresee that the act would occur in the venue.

While the Government's burden as to everything else in the case is proof beyond a reasonable doubt, a standard that I have already explained to you, venue need only be proved by a preponderance of the evidence, that is, it is more likely than not that some act in furtherance of the crimes occurred in Brooklyn, Queens, Staten Island, Nassau, and Suffolk counties on Long Island, and the waters surrounding Manhattan. I emphasize that his lesser standard only applies when considering the question of venue.

*United States v. Kelly*, 19-CR-286 (E.D.N.Y. Sept. 27, 2021) [Dkt. No. 303]
*United States v. Raniere*, 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]
*United States v. Shavkat-Abdullaev*, 761 Fed. Appx. 78, 84 (2d Cir. 2019)

**Government Response**:

The government objects to the defendants' venue instruction as overly narrow. Accordingly, the government proposes an alternative instruction that provides additional bases upon which the jury can legally find venue in the charging district, with supporting case citations.

VENUE (**Government Request**)

In addition to the foregoing elements of each offense, you must consider whether any act in furtherance of the crime charged occurred within the Eastern District of New York.

The Eastern District of New York includes Brooklyn, Queens, Staten Island, and Nassau and Suffolk Counties.  In addition, the EDNY includes the waters surrounding these counties and Manhattan, as well as the air space above the district.  Travel over or through the district or waters, or the passage of a wire over or through the district or waters, is sufficient to establish venue.[1]

Venue need only be proven by a preponderance of the evidence—meaning, simply, that it is more likely than not.

To satisfy the venue requirement, the government need not prove that the defendants themselves were present here.  To establish that venue for a charged crime is appropriate in this district, the government must prove that some act in furtherance of the conspiracy occurred here, in the Eastern District of New York.  This means that with respect to the conspiracy charged, even if other acts were committed outside this district or if the crime was completed elsewhere, venue is established in the Eastern District of New York so long as some act in furtherance of the conspiracy took place in this district.  In a conspiracy, such as the one charged in this case, actions of co-conspirators, as well as actions caused by co-conspirators, may be sufficient to confer venue if it was reasonably foreseeable to the defendants that the acts would occur in the Eastern District of New York.[2]

---

[1]     See 28 U.S.C. § 112(c); see also United States v. Kirk Tang Yuk, 885 F.3d 57, 71 (2d Cir. 2018) (finding the evidence of travel over the concurrent waters "undoubtedly sufficient" to support venue); United States v. Rutigliano, 790 F.3d 389 (2d Cir. 2015) (venue proper where wire in furtherance of scheme traveled through or over waters of Eastern District of New York, which are statutorily defined to be part of the Southern District)

[2]     See United States v. Kim, 246 F.3d 186, 193 (2d Cir. 2001); United States v. Naranjo, 14 F.3d 145, 147 (2d Cir. 1994); see also United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in any district in which an overt act in furtherance of [a] conspiracy was committed by any of the coconspirators.").

In determining whether some act in furtherance of the crime you are considering occurred in the Eastern District of New York, you may consider a number of things. Venue can be conferred based on physical presence or conduct, and passing through a district, including through or over waters, is sufficient to confer venue.[3] Venue can be based on using airports within the district to attend meetings or events, if the meetings or events were in furtherance of the conspiracy.[4] Venue can also be based on electronic communications—including email communications, telephone calls, and electronic transfers of funds such as banking transfers— going to, coming from, or passing through a district.[5] The government need not prove all of these bases of venue; any one is sufficient.

If you find that the government has failed to prove that any act in furtherance of the conspiracy charged occurred within this district, then you must find the defendant not guilty on the charge that you are considering.

---

[3]  See Kirk Tang Yuk, 885 F.3d at 71-72; United States v. Tzolov, 642 F.3d 314, 320 (2d Cir. 2011); United States v. Duque, 124 F. App'x 447, 449 (2d Cir. 2005).

[4]  Tzolov, 642 F.3d at 320.

[5]  See United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016); United States v. Abdallah, 528 F. App'x 79, 83 (2d Cir. 2013); United States v. Ohle, 441 F. App'x 798, 802 (2d Cir. 2011); United States v. Christo, 413 F. App'x 375, 376 (2d Cir. 2011); United States v. Royer, 549 F.3d 886, 895 (2d Cir. 2008); United States v. Brown, 293 F. App'x 826, 829 (2d Cir. 2008); United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007); United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982); Kim, 246 F.3d at 192-93; United States v. Teman, 465 F. Supp. 3d 277, 314 (S.D.N.Y. 2020); United States v. Kenner, 2019 WL 6498699, at *9 (E.D.N.Y. Dec. 3, 2019); United States v. Kubitshuk, 2017 WL 3531553, at *4 (S.D.N.Y. Aug. 17, 2017)); United States v. Peterson, 357 F. Supp. 2d 748, 752 (S.D.N.Y. 2005); United States v. Goldberg, 830 F.2d 459, 465 (3d Cir. 1987).

As I have instructed you, for all other elements in this case you have to find the government has proven that element beyond a reasonable doubt, not by a preponderance of the evidence.[6] Preponderance of the evidence only applies to venue.

<u>Authority</u>

Adapted from jury charge in <u>United States v. Carlos Watson and Ozy Media, Inc.</u>, No. 23-CR-82 (EK) (E.D.N.Y. 2024).

---

[6]    See <u>United States v. Gonzalez</u>, 922 F.2d 1044, 1054-55 (2d Cir. 1991) (affirming that venue is governed by a preponderance standard).

REQUEST NO. 18 – Interest in Outcome **(Defense Request)**

In evaluating the credibility of a witness, you should take into account any evidence that the witness may benefit in some way from the outcome of the case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care. This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected his or her testimony.

Authority: *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Response**:

The government objects to the defendants' interest in outcome instruction as overly narrow. Accordingly, the government proposes an alternative instruction that provides additional bases upon which a witness may be interested in the outcome of a trial, which is in line with recent Second Circuit precedent.

INTERESTED WITNESS (Government Request)

If a witness is interested in the outcome of the trial on one side or the other, you may consider such interest in determining how much credit or weight you will give to his or her testimony. A witness is an interested witness when by reason of relationship, friendship, antagonism, or prejudice in favor of or against one side or the other, his or her testimony, in your judgment, is biased or likely to be biased toward the side which he or she favors. In determining the credibility of a witness, you may consider whether such witness has any bias or prejudice for or against any party in the case. In determining the credibility and weight to be given to the

testimony of a witness, you should take into account such bias or prejudice. Evidence that a witness is biased or prejudiced for or against a party requires you to view the witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny. Keep in mind, however, that you should not reject the testimony of an interested witness merely because of such interest. Nor should you accept the testimony of a witness merely because of such disinterest. It is your duty in the case of all witnesses to accept such of the testimony as you believe to be truthful and to reject only such testimony as you believe to be false. As I said, interest and disinterest are merely factors you may consider in evaluating credibility.

<u>Authority</u>

Adapted from jury charge in <u>United States v. Shujun Wang</u>, No. 22-CR-230 (DC), ECF No. 103 (E.D.N.Y. 2024); <u>United States v. Jenkins</u>, 43 F.4th 300 (2d Cir. 2022).

REQUEST NO. 19 – Deciding What to Believe **(Defense Request)**

In deciding what the facts are, you must decide which testimony to believe, which testimony not to believe, and how much weight to give to the testimony of each witness. In making those decisions, there are a number of factors you may take into account, including the following:

a.   Did the witness seem to be honest?

b.   Did the witness have any particular reason not to tell the truth?

c.   Did the witness have a personal interest in the outcome of the case?

d.   Did the witness seem to have a good memory?

e.   Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

f.   Did the witness appear to understand the questions clearly and answer them directly?

g.   Was what the witness said supported by other evidence?

h.   Did the witness's testimony differ from the testimony of other witnesses?

People sometimes forget things. A contradiction may be an innocent lapse of memory or it may be an intentional falsehood. Consider, therefore, whether the contradiction has to do with an important fact or only a small detail. In addition, different people observing an event may remember it differently and therefore testify about it differently.

Ultimately, you may consider the factors I have just discussed as well as other relevant factors in deciding how much weight to give to testimony.

Finally, if you find that a witness has lied to you about any matter, however insignificant, you may choose to disregard that witness's testimony in part or in whole.

Authority:  *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Response**:

   The government objects to the defendants' proposed "Deciding What to Believe" instruction. The government maintains that the Court's providing its usual instructions as to the "Credibility of Witnesses and Discrepancies in Testimony" is sufficient.

<u>CONCLUSION</u>

The parties respectfully requests that the Court include the foregoing in its instructions to the jury.  In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:  Brooklyn, New York
          December 9, 2024

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:          /s/
          Gillian Kassner
          Kayla Bensing
          Devon Lash
          Nina Gupta
          Sean Fern
          Assistant U.S. Attorneys
          (718) 254-7000