

U.S. Department of Justice

United States Attorney
Eastern District of New York

AB:GK/KCB/NCG/SF
F. #2018R01041

271 Cadman Plaza East
Brooklyn, New York 11201

January 31, 2025

By ECF

The Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Cherwitz et al.
               Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully submits this letter in response to the Court's January 24, 2025 order and to notify the Court regarding potential conflicts of interest involving counsel for defendants Rachel Cherwitz and Nicole Daedone in the above-captioned case, and to request a hearing under United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).

      First, the government notifies the Court of a potential conflict involving the attorneys representing the defendant, Rachel Cherwitz. Specifically, Celia Cohen, Esq. and Michael Robotti, Esq. of Ballard Spahr LLP recently filed notices of appearance to represent Cherwitz. OneTaste, Inc. ("OneTaste") is paying Cherwitz's legal fees.

      Second, the government notifies the Court of potential conflicts involving an attorney representing the defendant, Nicole Daedone. Specifically, Rachel Caine, Esq. recently filed a motion to appear pro hac vice to represent Daedone, which the Court granted. ECF Dkt No. 263. Ms. Caine is in-house counsel for OneTaste and is a potential fact witness in this case, as Ms. Caine knows about and has participated in conversations with government and potential defense witnesses, and the government currently plans to call a custodian for OneTaste to testify at trial regarding the authenticity of documents with which Ms. Caine is likely familiar (and, in some cases, is a participant to). Therefore, the government moves this Court to disqualify Ms. Caine from representing the defendant Daedone in this case, or alternatively, confirm that Ms. Caine will not participate in the trial so that any potential conflict as to Ms. Caine can be waived.

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court, in its discretion, may conduct the appropriate inquiry pursuant to Curcio. See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United

States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). In light of the change of the attorneys representing Cherwitz and the addition of an attorney representing Daedone, the government submits that a Curcio hearing would be appropriate.

At the January 24, 2025 status conference, the defendants did not oppose any additional Curcio hearing on these subjects. On January 29, 2025, the government requested additional information from Ms. Bonjean, counsel for Daedone, regarding the scope of Ms. Caine's participation in the forthcoming trial. Ms. Bonjean has not responded.

I. Background as to Counsel for Rachel Cherwitz

On or about January 6 and January 7, 2025, this Court held Curcio hearings to address potential conflicts of interest as to the defendant Cherwitz regarding her then-attorneys and was represented at those hearings by Ms. Cohen, who was then acting as Cherwitz's independent counsel to advise Cherwitz as to potential conflicts related to Cherwitz's then-representation. Dkt. Entries 1/06/2025; 1/07/2025. Following those hearings, Cherwitz's then-counsel moved to withdraw, which this Court granted. ECF Dkt. No. 256. On January 15, 2025, Ms. Cohen and Mr. Robotti filed their notices of appearance for Cherwitz. Cherwitz's legal fees continue to be paid by OneTaste. See ECF Dkt. No. 151 (government's Curcio letter noting that OneTaste paid Cherwitz's legal fees as to her prior counsel). Cherwitz previously waived any conflict resulting from her legal fees being paid by OneTaste. See ECF Dkt. No. 161.

II. Background as to Counsel for Nicole Daedone

Counsel for Nicole Daedone previously requested that Rachel Caine, Esq., in-house counsel for OneTaste, be added to the Protective Order in this case to access and review discovery. At a hearing regarding the Protective Order before the Honorable Robert M. Levy, counsel for Daedone represented that counsel for OneTaste, including Rachel Caine, was an essential member of the defense team for Daedone. See ECF No. 201-1, ¶ 2 (defining "Defense Staff" to include Kevin Williams and Rachel Caine); Nov. 15, 2024 Tr. at 22, 34-36 (defense counsel describing necessity for Daedone's criminal defense of working with attorneys for OneTaste). At that hearing, the government noted that Rachel Caine was a potential witness in the case because she was at OneTaste at the time of relevant events. Id. at 38.

On January 27, 2025, Ms. Caine filed a formal request to be admitted to practice before this Court pro hac vice to represent Nicole Daedone in this case. ECF No. 263. In her sworn affidavit, Ms. Caine represented herself to be counsel for Ms. Daedone, and her signature block included her email address at a OneTaste domain, rachel.caine@onetaste.us. Id.

III. Applicable Law

A. Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of her own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d

Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

### 1. Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). The Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

### 2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio, 680 F.2d 881. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786

3

F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea"). In cases where, as here, multiple conflicts have been raised, the district court must consider the conflicts in totality, and not in isolation. See Levy, 25 F.3d at 157.

B. Third-Party Payment of Legal Fees

A conflict may arise when an attorney is paid by a third party, rather than by his or her own client. "[B]enefactor payments . . . may subject an attorney to undesirable outside influence and raise[] an ethical question as to whether the attorney's loyalties are with the client or the payor." Locascio, 6 F.3d at 932 (quoting In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 n.6 (2d Cir. 1986) (en banc)); see also United States v. Arakelian, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing Curcio-related inquiry related to potential benefactor payments).

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107); see also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" Duran-Benitez, 110 F. Supp. 2d at 152 (quoting

Wood, 450 U.S. at 269). In such situations, the Supreme Court wrote in Wood, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." Wood, 450 U.S. at 269; see also In re: Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248 n.6 (noting that when "the third party is the head of a criminal enterprise of which the clients are members... an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

 C. In-House Attorneys Representing Individual Officers

It is well-settled that an in-house lawyer to an organization represents that organization and therefore owes a duty to act in accordance with the interests of the organization. See Evans v. Artek Sys. Corp., 715 F.2d 788, 792 (2d Cir. 1983) ("A 'corporate attorney' – whether an in-house lawyer or a law firm that serves as counsel to the company – owes a duty to act in accordance with the interests of the corporate entity itself. His client is the corporation."). A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the rules governing conflicts of interest. Model Rules of Professional Conduct 1.13(g). If, however,

> a lawyer for an organization knows that the officer [or] employee . . . is engaged in action, intends to act or refuses to act in a manner related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization.

Id. 1.13(b). If there is a potential conflict of interest between representing an organization and individual, the organization's consent to the concurrent representation is required and must be given by an appropriate official of the organization, other than the individual who is to be represented. Id. 1.13(g).

 D. Attorneys as Unsworn Witnesses

A lawyer is generally barred from acting as both an advocate and a witness in the same proceeding. Model Rules of Professional Conduct Rule 3.7(a); Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir. 1995). In particular, when a witness is expected to testify about a conversation with counsel where counsel's statements can be interpreted in a way that implicates the client, a conflict of interest exists if the lawyer ought to be a rebutting witness, "either to deny the conversation, or to provide an innocent explanation for the jury to consider." United States v. Cunningham, 672 F.2d 1064, 1074 (2d Cir. 1982) (approving disqualification of lawyer and his firm if district judge determined on remand that testimony of witness is admissible). Whether or not the lawyer actually testifies, by trying to impeach the witness during cross-examination and by arguing in summation about what the conversation means, the lawyer becomes an unsworn witness. United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986). "The risk that [a lawyer will] become a witness at trial [is] enough alone to . . . reach this determination [to disqualify] under an abuse of discretion standard," Jones, 381 F.3d at 121,

5

provided that the testimony at issue is squarely relevant. United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985).

The Second Circuit has explained that agreeing "to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances." United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998) (reversing conviction for failure to hold Curcio hearing to determine if defendant consented to limiting cross-examination). A stipulation may be used to avoid disqualification of an advocate-witness. Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009) (conflict negated by stipulation that obviated need for defense counsel's testimony). "A Curcio hearing is required whenever a defendant would forego important testimony by his attorney because of his attorney's continued representation of him." Kliti, 156 F.3d at 155.

In Kliti, the Second Circuit vacated a conviction and ordered a new trial where it became apparent during the trial that the defense attorney could have been called as a fact witness to support his client's defense, but was not permitted to testify and where no Curcio waiver was secured from the defendant. See Kliti, 156 F.3d at 155-57. Specifically, during the government's direct case in Kliti, the government called an accomplice witness to provide evidence of the defendant's participation in the charged counterfeit check scheme. See id. at 155. During the course of cross-examination, the accomplice witness denied ever telling Kliti, his attorney Sarikas and a third party that Kliti had "absolutely nothing to do with" the counterfeit check scheme. Id. at 155-56. Defense counsel explained to the Court, out of the jury's presence, that the accomplice witness had, in fact, made that statement. See id. at 155. However, because Kliti chose not to testify at trial and because the third party invoked his Fifth Amendment privilege and refused to testify, Sarikas was the only other witness who could be called to refute the accomplice's version of events. See id. at 155-56. At that point, Sarikas was "in a clear conflict because he was faced with the choice of (1) testifying on behalf of his client, which would result in his disqualification, or (2) not presenting evidence of the exculpatory statement." Id. at 156 (footnote omitted). A Curcio hearing was neither asked for nor undertaken, Sarikas did not testify, and the defendant was convicted.

The Second Circuit vacated the conviction. According to the Court, under the above-described circumstances, the district court

> was obligated to question Kliti, in accordance with Curcio, to determine whether he was willing to waive his right to a conflict-free lawyer and to forgo confronting [the accomplice witness] with the exculpatory statement through the testimony of Sarikas. The [district] court should have explained to Kliti that Sarikas could not be a witness — sworn or unsworn — while Sarikas was representing Kliti, but that if Kliti were represented by another attorney, that attorney would be able to call Sarikas as a witness and have him testify about the statement.

Id. at 156-57 (citing United States v. Dennis, 843 F.2d 652, 656 (2d Cir. 1998); Cunningham, 672 F.2d at 1075)).

6

Where defense counsel is entangled in the facts of the defendant's case such that she should either be available as a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused," it is counsel's ethical duty to withdraw, and upon failing to do so, counsel should be disqualified, regardless of the defendant's expressed willingness to waive. Locascio, 6 F.3d at 931-34. Because the government, not the defendant, is prejudiced, "waiver . . . by the defendant is ineffective in curing the impropriety in such situations." Id. at 931, 934; see also United States v. Liszewski, No. 06 CR 130 (NGG), 2006 WL 2376382, at *3 (E.D.N.Y. Aug. 16, 2006).

IV.     The Government's Proposal with Respect to Defendant Cherwitz

As described above, the government has identified a potential conflict facing counsel for Cherwitz in this case because Cherwitz's legal fees are being paid by OneTaste, a third party. See United States v. Raniere, 18-CR-204 (NGG), ECF Dkt. No. 266 (observing that a potential conflict arises where the choice of defense strategy may influence decisions on the part of those who are paying for legal fees). While a previous Curcio hearing in this matter addressed the payment of Cherwitz's legal fees by OneTaste, Cherwitz has not yet explicitly waived a potential conflict for present counsel as to payment of legal fees by OneTaste. Accordingly, in an abundance of caution, the government submits that a Curcio inquiry is appropriate to determine whether Cherwitz is willing and able to make a knowing and voluntary waiver of the specific potential conflict with OneTaste. The government also requests that Cherwitz have the opportunity, if she wishes, to retain independent counsel, given that her prior independent counsel now represents her in connection with this case.[1] The government thus proposes that the Court advise her as it did previously with respect to this conflict, as noted below.

> I am advised that your attorneys are being paid by OneTaste, Inc. ("OneTaste"), a company that has at least some connection with the facts of your case and may even be a subject of the government's investigation.
>
> Before we proceed, I must ask you some questions about this arrangement. Are you satisfied with the services of your attorneys thus far in the case?
>
> Has anyone induced, threatened or made promises to you concerning your choice of counsel in this case?
>
> Is it correct that OneTaste is paying your attorneys? How long has that been the case? Is anyone else paying your attorneys to represent you?

---

[1] The Court could appoint such counsel in the event that OneTaste would otherwise pay the legal fees of any retained independent counsel.

Do you have an understanding whether, in the future, OneTaste will continue to pay, indemnify, or reimburse your legal fees in this case? What is your understanding?

To your understanding, are there any explicit or implicit conditions on OneTaste's agreement to pay your legal fees regarding actions you and your attorneys must or may not take or arguments you or your attorneys must or may not make?

I am going to describe to you some potential risks raised by this payment arrangement. By describing these potential risks, in no way am I suggesting that your lawyers are conflicted or that their defense of you has or will be impacted in the ways I am about to describe. Instead, I am pointing out to you a series of entirely hypothetical ways this arrangement can potentially raise conflicts of interest for counsel.

When an attorney is paid by a third party like OneTaste, an attorney could be influenced by the third party, even subconsciously, in connection with their representation of you, that is, they could be influenced to advise you to do things that are in the third party's best interests and not in your best interests.

For instance, if OneTaste or members of OneTaste leadership are involved in the alleged crime, OneTaste may have a vested interest in having your lawyers advise you to accept sole responsibility for the unlawful scheme or to minimize OneTaste's involvement with or knowledge of the scheme. Do you understand that?

Similarly, if a trial in this case could cast a negative light on OneTaste, or, alternatively, if a guilty plea in this case could cast a negative light on OneTaste, or if certain arguments in this case could help or hurt OneTaste, OneTaste may have a vested interest in having your lawyers advise you to make your decision about what to do and what arguments to make to best serve OneTaste's interests, rather than your own. Do you understand that?

OneTaste may have a vested interest in having your lawyers advise you not to seek to cooperate with the government, even if that might be in your interest, where your cooperation might directly or indirectly affect OneTaste. Do you understand that?

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorneys' ability to represent you might be affected by the fact that they have been paid

8

by OneTaste. No one can foresee every possible conflict of interest. Do you understand that?

Do you have any questions about what I have explained to you so far? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorney, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorneys?

Without discussing the substance of any written communications between you and your attorneys, can you please confirm whether you have signed any documents memorializing your understanding of the potential conflicts of interest and your desire nonetheless to proceed with your current attorneys as your counsel?

You also have the right to consult with an independent attorney, and if necessary to the Court can appoint independent counsel at no cost to you, who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney. Do you understand that? Have you consulted with an independent attorney? Do you wish to have the Court appoint an independent attorney?

You also have the right to be represented by counsel, and if necessary to have the Court appoint counsel at no cost to you, during plea negotiations, at trial and at every other stage of the proceeding. Do you understand that?

If you proceed to trial with your current counsel and you are convicted at trial, do you understand that you will not make and cannot make any argument on appeal or otherwise attack the conviction based the potential conflict we have discussed here today?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do. Is there anything that the Court has said that you wish to have explained further?

V.  The Government's Motion to Disqualify Rachel Caine as Trial Counsel to Nicole Daedone

The government respectfully submits that Ms. Caine should be disqualified from serving as trial counsel to the defendant Daedone.

First, as noted above, to the government's knowledge, Rachel Caine is in-house counsel for OneTaste, and Daedone is the former CEO of OneTaste. Whatever alignment of interests might exist now between OneTaste and Daedone, their interests could diverge. To the extent Daedone's interests are incompatible with the duties Ms. Caine owes to OneTaste, Ms. Caine would be precluded from pursuing certain lines of defense on Daedone's behalf. For example, Daedone could theoretically pursue an advice-of-counsel defense[2] and waive privilege, thereby placing Ms. Caine's advice at issue in the case and converting counsel into a potential fact witness. And although a potential conflict stemming from in-house counsel of an organization representing a former officer of the organization may be waivable, see Model Rules of Professional Conduct 1.13(g), as noted above, Ms. Caine is also a potential fact witness in this case independent from her role as an attorney.

Second, as the defense has repeatedly noted, Ms. Caine has institutional knowledge regarding the case due to her knowledge of and personal involvement with potential witnesses. See Nov. 15, 2024 Tr. at 36 (counsel noting she requires Ms. Caine's institutional knowledge as to witnesses and stating "if I can't consult Mr. Williams or Rachel Caine, who are counsel for OneTaste, I can't do my job."). Likewise, the government has previously noted that Ms. Caine is a potential witness. Id. at 38. Indeed, Rachel Caine's name appears on at least 72 potential government exhibits, including exhibits that do not concern legal services, such as sales communications. Throughout her time at OneTaste, Ms. Caine interacted with government witnesses and potential defense witnesses and was present for key events. While the government does not intend to call Ms. Caine as a witness, the possibility remains that should witnesses provide testimony regarding certain events that is inconsistent with Ms. Caine's recollection of those events, Ms. Caine could herself become a witness. See Jones, 381 F.3d at 121 ("The risk that [a lawyer will] become a witness at trial [is] enough alone to . . . reach this determination [to disqualify] under an abuse of discretion standard."). Additionally, the government may call a custodian from OneTaste to testify as to the authenticity of certain documents. Due to her role as in-house counsel to OneTaste, Ms. Caine may have information regarding the authenticity of these documents.

Based on the facts set forth above, the government respectfully submits that Ms. Caine should be disqualified from serving as trial counsel to Daedone, meaning that she must be

---

[2] At present, the government has no indication that the defendant will pursue such a defense or that such a defense is legally available. Moreover, even if the defendant sought to pursue such a defense, at this juncture, it is not clear to the government that the defendant could do so without first obtaining a waiver from OneTaste, which may be the privilege-holder of advice rendered during Daedone's time at OneTaste. The government reserves the right to challenge the propriety of the assertion of any such defense at an appropriate time, if necessary.

required to confirm on the record that she will not be present at counsel table at trial or conduct any direct or cross-examinations of witnesses, or deliver any jury addresses.

In the event that the Court determines that (i) Ms. Caine is not serving as trial counsel to Daedone; (ii) OneTaste consents to Ms. Caine's representation of Daedone; and (iii) Daedone can waive the potential conflicts of interest, the government proposes that the Court advise the defendant Daedone as follows:

> Ms. Caine, who recently filed a motion to appear as counsel in this case to represent you, also represents OneTaste. As your attorney, Ms. Caine has certain ethical obligations to you, including absolute duties of loyalty and confidentiality. However, she also has these obligations to OneTaste. For example, Ms. Caine may not investigate leads, introduce evidence, or make arguments on your behalf that might tend to incriminate OneTaste, or otherwise be contrary to OneTaste's interests. Do you understand this?

> There is a possibility that your interests with OneTaste will diverge, before, during or even after trial, that could create a conflict between Ms. Caine's loyalties to you and to OneTaste. Do you understand this?

> Ms. Caine may have provided legal advice to OneTaste while you were CEO of OneTaste. Under most circumstances, the law protects your communications with your lawyers from being disclosed to anyone else unless you choose to disclose them. This is what is known as the "attorney-client privilege." Certain decisions you make, however, can result in a waiver of that privilege, and the government would be entitled to know about some of your communications with your attorneys. For example, if you call Ms. Caine to testify about advice that she gave you while at OneTaste, this is one instance that would result in a waiver of at least some aspects of your attorney-client privilege. It would be up to the Court to determine what communications or information may be disclosed because of your waiver of attorney-client privilege. Moreover, the privilege relating to this advice may belong to OneTaste, and therefore OneTaste would be entitled to waive or maintain the privilege, even if you took a contrary position. Do you understand that?

> I am advised that the government anticipates that witnesses might testify at trial regarding events at which your attorney Ms. Caine was also present. After hearing these witnesses' testimony at trial, you might wish to call Ms. Caine as a witness on your behalf to contradict that testimony. It is a conflict of interest for

Ms. Caine to be a witness on your behalf and serve as your attorney at trial.

There may be other issues, in addition to the ones that I've just described. No one can foresee every possible conflict of interest. Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with Ms. Caine, you will be giving up that right. Do you understand that?

Because you have another lawyer representing you during the trial, if a conflict of interest were to arise during trial, Ms. Caine may be disqualified from representing you, and you would not be permitted to delay the remainder of the trial. Do you understand that?

Have you discussed these issues with Ms. Caine?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with Ms. Caine. You are also represented by Ms. Bonjean. Do you understand that?

Have you discussed these issues with Ms. Bonjean?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyers or with another lawyer, including a lawyer appointed by the Court if necessary, before you advise the Court what you wish to do.

If you have had enough time to consider the issues I have advised you on today, do you wish to waive the potential conflicts posed by Ms. Caine representing you?

VI. Conclusion

For the foregoing reasons, the Court should notify the defendant Cherwitz of the potential conflict raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant regarding her right to conflict-free representation and determine if she can waive those rights, and whether the Court, in its discretion, should accept that waiver.

Additionally, the Court should disqualify Ms. Caine from serving as trial counsel to the defendant Daedone. In the alternative, the Court should confirm that Ms. Caine does not intend to represent Daedone as trial counsel and conduct an appropriate inquiry pursuant to Curcio to determine if Daedone can waive her rights as to the potential conflicts set forth above, and whether the Court, in its discretion, should accept that waiver.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:   /s/
Gillian Kassner
Kayla C. Bensing
Nina C. Gupta
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000