**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

February 25, 2025

**TO BE FILED UNDER SEAL**

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

Defendants Rachel Cherwitz and Nicole Daedone respectfully move this Court to issue the attached subpoena *duces tecum* directed to the New York Office of Victim Services ("OVS"), requiring OVS to produce specified records to defense counsel within 21 days of service. For the reasons set forth below, the Court should grant this motion.

I.   Background

On April 3, 2023, a federal grand jury returned an indictment charging defendants with one count of conspiracy to commit forced labor, in violation of 18 U.S.C. § 1594(b). Indictment, Dkt. No. 1. The indictment alleges criminal conduct during defendants' employment at OneTaste, Inc. ("OneTaste") in San Francisco between 2006 and 2018. *See id.* The prosecution intends to call several former OneTaste employees as witnesses at trial, which is scheduled to commence on May 5, 2025. The government has identified 64 potential witnesses, *see* Nov. 8, 2024 Gov. Letter re: Witness List, Dkt. No. 195, many of whom have applied for and either received or expect to receive compensation from OVS through the Federal Bureau of Investigation ("FBI").

The government has produced limited discovery related to OVS compensation, including ███████

Honorable Diane Gujarati
February 25, 2025
Page 2

██████████████████████████████████████████[1]  *See, e.g.*, 3500-AYB-82; 3500-MW-11; 3500-LC-2; 3500-AW-11; 3500-TD-35; 3500-MW-5.  Following the government's incomplete production of documents related to OVS and victim compensation, the parties met and conferred on February 5, 2025.  During that call, defendants requested all relevant communications with Ms. Jackson, all OVS witness applications, proof of expenses or backup information to justify the expenses submitted to OVS, and all payments made to witnesses.  The government responded that (1) it is only required to produce OVS applications that contain witness statements and, therefore, all such applications have been produced; (2) it is not required to provide any information in OVS's possession, including the backup for any payments, because OVS is a state agency; and (3) it will only produce the total amount paid to each witness.

Following the meet and confer, defendants renewed their requests via an email dated February 13, 2025, and the government responded on February 18, 2025 that (1) absent any substantive witness statements, the OVS applications are not discoverable, as it previously disclosed the names of individuals who have sought and/or received compensation; (2) it is not sure what the defense means by "backup material for victim compensation";[2] and (3) it has produced the materials in its possession that contain substantive statements by potential government witnesses.

II.     Materials Sought

Defendants request complete information concerning witness compensation, which constitutes § 3500, *Giglio*, and *Brady* material.  The government refuses to provide any additional information, despite the fact that the applications require the witnesses to answer various questions, including why they waited to submit the application, if they sought medical attention, and which health professionals treated them.  In addition, the government refuses to provide any backup material for the claimed compensation, including receipts and other proof of services.  Furthermore, information concerning witness meetings with the FBI, during which witnesses were told that they could obtain money if they testified, and the steps those

---

[1] During a February 5, 2025 meet and confer, the defense advised the government that some of the produced text messages appear to be in the midst of conversations.  The defense noted that in one instance, ████████████████████████████████████████████████████████████████████████████████  On February 18, 2025, the government advised the defense that it is looking into this issue, and will revert back.

[2] Defense counsel made it clear during the February 5, 2025 meet and confer that "backup material" refers to the proof that witnesses must provide to OVS to receive payment.

Honorable Diane Gujarati
February 25, 2025
Page 3

witnesses subsequently took to claim compensation, is *Brady/Giglio* information to which the defense is entitled. At a minimum, the defense should receive information concerning how the witnesses justified the amount of money requested, and whether the requested amount could arguably be tied to either of the defendants' actions in this case. For example, in its January 7, 2025 *Giglio* letter, the government disclosed—without any further explanation—that government witness ███████████████████████, but it has not produced ███████ application or any supporting documentation for this large payment. *See* Jan. 7, 2025 Gov. Letter re: *Giglio*. This payment, with nothing more, raises serious concerns about the proper administration of victim services funds.

Furthermore, the incomplete materials the government provided reveal that another witness ████████████████████████████████████████, despite having no employment relationship and only a brief customer relationship in 2013 with OneTaste. *See* 3500-KG-06 at 7. Again, her victim services application and eligibility justification remain conspicuously absent. In addition, on February 20, 2025, defendants learned through their own investigation that yet another witness has received undisclosed payments from a California agency—information that the government failed to disclose. And, per the § 3500 material, ████████████████████████████████████████████████████████████████████. *See, e.g.*, 3500-AW-11 at 6; 3500-CG-1 at 1; 3500-MN-23 at 5; 3500-RG-7 at 1; 3500-RW-29 at 1. As discussed below, these communications are crucial as they pertain to the investigation's integrity.[3]

The limited information produced to defendants thus far indicates that there are questionable eligibility determinations, and a potential misuse of the victim services system by various witnesses.[4] The government should be producing OVS material, considering that the witnesses' OVS requests are based on this federal case, and because the FBI is both

---

[3] To the extent that any other state agencies, besides New York, have been involved in compensating the victims, the defendants may separately request subpoenas for that information as well.

[4] Defendants are aware of two witnesses who have misrepresentations in their applications as to their participation at OneTaste. In her application to OVS, █████████████████████████████████████████████████████. 3500-AYB-82. In addition, through the California civil action, *see OneTaste v. Blanck*, Case No. 22STCV3309 (L.A., Cal. Super. Ct.), the defense has learned that ██████████████ time at OneTaste was misrepresented to the California Victim Compensation Board as being from 2015 to 2018 rather than from 2012 to 2014.

Honorable Diane Gujarati
February 25, 2025
Page 4

encouraging witnesses to apply for compensation and coordinating with OVS on their behalf. But it has refused to do so.

The government's persistent failure to provide basic documentation, while claiming that such information belongs to the state and is not discoverable, raises serious concerns about this investigation's integrity, including the government's failure to ensure that victims are being appropriately compensated for harm directly caused by defendants' alleged actions (as opposed to effectively being paid to testify in this case). Indeed, the combination of undocumented payments, the failure to disclose disbursements, and questionable eligibility determinations raises serious concerns about whether the government is improperly paying these witnesses to encourage favorable testimony. The government's refusal to provide basic documentation despite repeated requests is preventing the defendants from uncovering the full scope of these improper payments, and potentially permitting the witnesses to fraudulently receive payments to which they are not entitled. This motion seeks to compel full discovery and expose the government's efforts to use victim services funds for improper purposes.

Accordingly, defendants move this Court to issue the attached subpoena *duces tecum* directed to OVS for information related to benefits witnesses have received from OVS since the investigation in this case began in 2018. The subpoena seeks all OVS records related to 15 specific witnesses, whom the defense believes have applied for and either have received or are expecting to receive services from OVS based on the government's disclosures.

III.     <u>Legal Standard</u>

Rule 17(c) early-return subpoenas serve to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The Supreme Court's seminal decision in *United States v. Nixon*, established that early-return subpoenas are appropriate when the moving party demonstrates: (1) relevancy; (2) admissibility; and (3) specificity. 418 U.S. 683, 699–700 (1974). Courts in the Second Circuit have consistently applied this test for early-return pretrial subpoenas. *See, e.g.*, *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (citing *Nixon*, 418 U.S. at 700), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018); *United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *1 (S.D.N.Y. Oct. 23, 2017).

Rule 17(c) subpoenas are proper for both direct evidence and impeachment material. Where such a subpoena seeks direct evidence, the Court may order production to defense counsel; where it seeks impeachment material prior to trial, the Court should order production to the Court. *See United States v. Hatfield*, No. 06-CR-0550 (JS), 2009 WL 2030350, at *2 (E.D.N.Y. July 14, 2009) (stating Rule 17 "is clearly permissive, and not mandatory" and does

Honorable Diane Gujarati
February 25, 2025
Page 5

not require subpoenas to be returned to the court (citing *Khouj v. Darui,* 248 F.R.D. 729, 731 (D.D. C. 2008))).

Although several district courts in the Second Circuit have held that a Rule 17(c)(1) early-return subpoena cannot be used to obtain evidence or information before trial that *solely* will be used for impeachment at trial,[5] a defendant seeking such impeachment evidence nevertheless may still subpoena such evidence or information before trial and examine it *after* a witness subject to such impeachment has testified for the prosecution at trial:

> Rule 17(c) permits a defendant to subpoena materials that may be used to impeach a witness for the prosecution. *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir.1980) (citing *United States v. Liddy*, 354 F.Supp. 208, 210, 212 (D.D.C.1972)) (denying motion to quash Rule 17(c) subpoena for statements in "all documents, notes, tape recordings and writings" in witness' possession that "may be admissible as impeachment evidence"); *United States v. Carter*, 15 F.R.D. 367 (D.D.C.1954)). "However, because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial, impeachment statements, although subject to subpoena under rule 17(c), generally are not subject to production and inspection by the moving party prior to trial." *United States v. Cuthbertson*, 630 F.2d at 144 (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)). "Statements made by prospective witnesses...may ripen into evidentiary material for purposes of impeachment...only if and when[ ] the witness who has made the statement takes the stand and testifies. The defendant only then is entitled to inspect [these] statements...." *United States v. Palermo*, 21 F.R.D. 11, 13 (S.D.N.Y.1957) (citing cases).
>
> The government argues that the Court's ruling in *United States v. Nixon*, 418 U.S. at 701–02, precludes defendants from subpoenaing material for impeachment purposes prior to trial. (Govt's. Motion to Quash at 4). The Court in *Nixon* pronounced that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Id.* However, courts have held that the *Nixon* test does not apply "where, as here, the district court has modified the subpoena to preclude any pretrial production to or inspection by the moving party." *United States v. Cuthbertson*, 630 F.2d

---

[5] *See, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995); *but see United States v. Shinderman*, 432 F. Supp. 2d 157, 160 (D. Me. 2006) (disagreeing with *Cherry* and holding that impeachment evidence is subject to a Rule 17(c)(1) early-return subpoena).

Honorable Diane Gujarati
February 25, 2025
Page 6

> at 145. Indeed, in support of its statement, the *Nixon* court itself cited *United States v. Carter*, 15 F.R.D. at 371, which allowed the defendants to inspect government witnesses' prior statements, obtained by Rule 17(c) subpoena, after those witnesses in fact testified at trial.

*United States v. James*, No. 02 CR 0778 (SJ), 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (alterations in original).

IV.   Argument

Defendants' proposed early-return subpoena to OVS satisfies all of the relevant requirements. The Court should so-order it.

   A.   The Requested Records Are Relevant

The requested records are highly relevant for two reasons: (1) they are evidence that calls into question the integrity of the investigation[6]—particularly when considered together with other such evidence (e.g., the fake journal evidence and the case agent's deliberate violations of the attorney-client privilege); and (2) they provide information that can impeach the credibility of the prosecution's witnesses who received benefits from OVS. Assuming *arguendo* that this Court were to deem any such records as solely "impeachment" evidence, this Court still should grant this motion (while limiting the defense's review of the records until after any prosecution witness who received benefits from OVS has testified at trial).

   B.   The Records Are Admissible

The requested records are admissible as substantive evidence because they support the defense's challenge to the "integrity" of the investigation in this case. *Kyles*, 514 U.S. at 449. At the very least, the records will provide a basis to impeach the prosecution witnesses who received benefits from OVS on the ground that they were motivated to cooperate with the government, at least in part, in order to receive valuable benefits from OVS—a fundamental right which defendants possess under the Sixth Amendment's Confrontation Clause. *See, e.g.*, *Cotto v. Herbert*, 331 F.3d 217, 248–49 (2d Cir. 2003) ("[T]he exposure of a witness'

---

[6] *See Kyles v. Whitley*, 514 U.S. 419, 449 n.19 (1995) (stating that various pieces of undisclosed evidence were relevant *Brady* evidence because they would have enabled defendant to attack "integrity" of investigation, such as evidence undermining the "process by which the police gathered evidence and assembled the case"); *see also United States v. Aleck*, No. 3:16-cr-00065-MMD-VPC, 2017 WL 4799787, at *3 (D. Nev. Oct. 24, 2017) ("The Court agrees and finds that any information relating to Hernandez's integrity and ethics as a law enforcement officer is material to assist in the attack on the integrity of the investigation.").

Honorable Diane Gujarati
February 25, 2025
Page 7

motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.... The motivation of a witness in testifying, including her possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination." (citations and internal quotation marks omitted)).

Based on the limited communications the government has disclosed to date, defendants have a well-founded belief that the government is leveraging witnesses' financial motivations to secure their cooperation. For example, the following is a text exchange showing such:



3500-MW-5-010–11.

C.  The Request Is Specific

This motion seeks a narrow category of records related to the payments and services that OVS provided to the prosecution witnesses (which worked in coordination with FBI officials in this case). The temporal and subject-matter limitations of the requested records demonstrate this is not a "fishing expedition," but rather a targeted request for specific, relevant evidence.

Honorable Diane Gujarati
February 25, 2025
Page 8

        D.        The Materials Are Not Otherwise Available

These records cannot be obtained through normal discovery channels. According to the government, they are in the possession of third parties (as opposed to the prosecution team). Thus, the government claims they are not subject to Rule 16 and constitutional discovery obligations.

V.        Conclusion

For these reasons, defendants respectfully request that the Court: (1) so-order the attached Rule 17(c) subpoena requiring production within 21 days; (2) direct that materials be produced to defense counsel; and (3) grant such other relief as the Court deems appropriate.

        Respectfully submitted,

        Celia Cohen

        Michael P. Robotti