

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR:KCB/GK/NG/SMF
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 12, 2025

By ECF and Email

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Cherwitz, et al.
     Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

  The government respectfully submits this letter in opposition to defendants' motion to issue a Rule 17 subpoena to the New York Office of Victim Services ("OVS"). ECF Dkt. No. 284 (the "Motion" or "Def. Mot."). In the Motion, defense counsel primarily seeks discovery relating to compensation that potential government witnesses sought or obtained from OVS, a New York State agency that provides services and support to crime victims. The Court should deny the Motion, as the draft subpoena plainly fails to comport with the provisions of Rule 17(c) and the pertinent case law. In the alternative, if the Court determines that the Rule 17 subpoena may be issued, the Court must first require that the defendants give adequate notice to the identified victims to give them an opportunity to object.

I. Background

  On January 7, 2025, the government sent a letter to defense counsel in which it disclosed, in relevant part, that Special Agents of the Federal Bureau of Investigation ("FBI") provided individuals identified as potential victims of the charged forced labor conspiracy with information regarding benefits that may be available to them. In addition, a Victim Assistance Specialist of the FBI informed various witnesses that they may be eligible to recover compensation from various state victim compensation programs and assisted them in filling out applications for the same. To date, to the government's knowledge, only one witness has received any compensation from any state program. The government disclosed the identity of that witness and the amount she received and noted that she received the funds from OVS as reimbursement for therapy services she received. The government further noted that it would supplement its disclosure with any new information in advance of trial.

The government has additionally produced within its 18 U.S.C. § 3500 disclosures a limited set of documents relating to witness submissions to OVS that were within the government's possession and contained substantive witness statements relating to the subject matter of the witnesses' anticipated testimony.[1]  The government has likewise produced substantive communications between its anticipated witnesses and members of the FBI and the U.S. Attorney's Office victim witness specialists regarding the same.

The government additionally noted in its January 7, 2025 disclosure letter that it has not made any promises to any witness regarding restitution in this case.

II.     The Court Should Deny Defendants' Motion

   A.     Applicable Law

   Rule 17(c) of the Federal Rules of Criminal Procedure provides that:

   [a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1); see also United States v. Pierre, No. 22-CR-19 (PGG), 2023 WL 7004460, at *15 (S.D.N.Y. Oct. 24, 2023).  "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues."  United States v. Nixon, 418 U.S. 683, 702 (1974).

   Rule 17(c) "was not intended to provide a means of discovery for criminal cases."  Nixon, 418 U.S. at 700; see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) (same).  Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial."  United States v. Louis, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005).  Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in Nixon, namely of "specifically identifying the materials sought and showing that they are relevant and admissible."  United States v. Brown, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); see also United States v. RW Professional Leasing Services Corp., 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing Nixon, 418 U.S. at 699-700); Louis, 2005 WL 180885, at *5 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (internal quotations omitted)).

---

[1] The government did not produce any internal forms that do not constitute 18 U.S.C. § 3500 material.

2

A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" Nixon, 418 U.S. at 700. Indeed, precisely because the rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 162 (emphasis added); see also Nixon, 418 U.S. at 699-700 (requiring a showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general 'fishing expedition'"). Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. United States v. Yian, No. 94-R-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995); see also United States v. Binday, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) (noting "an impermissible discovery motive is much more likely to underlie a subpoena calling for a return well in advance of trial than one issued for return the date trial is set to begin"); Pierre, 2023 WL 7004460, at *15 (same).

B. The Draft Subpoena Constitutes an Improper Fishing Expedition

The Court should deny the Motion, as the draft subpoena constitutes an improper fishing expedition into an independent state agency for impeachment material and fails to comport with the provisions of Rule 17(c) and the Nixon standard. See 418 U.S. at 699-700.

As a threshold matter, the draft subpoena fails to meet Nixon's specificity standard. Among other things, it seeks "[a]ll documents" related to 15 named individuals, without any reference to the instant case or the defendants. Courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon." United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, 515 (S.D.N.Y. 2013); see also United States v. Barnes, 2008 U.S. Dist. Lexis 125298, at *11 (S.D.N.Y. Apr. 1, 2008) (quashing motion that "blindly seeks 'all' documents and records that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); RW Professional Leasing Services Corp., 228 F.R.D. at 163-64 (rejecting as "overbroad and totally unreasonable" various requests calling for production of "[a]ll documents" noting it was likely to result in a "massive search for countless documents"); United States v. Lopez, No. 15-CR-252 (PKC), 2021 WL 4033886, at *2 (E.D.N.Y. Sept. 3, 2021) (quashing subpoena as overbroad, noting that use of the terms "all" and "any" undermined specificity, and reaffirming that "Rule 17(c) subpoenas are not tools of discovery" (internal quotation marks omitted)).

Furthermore, the draft subpoena does not seek admissible evidence, and the defendants fail to show that the documents requested are "evidentiary and relevant." Nixon, 418 U.S. at 699-700. The defendants primarily argue that they are entitled to all information

3

concerning compensation sought by victims from state funds to investigate "serious concerns about the proper administration of victim services funds" and "questionable eligibility determinations" by the OVS. Def. Mot. at 3. However, those issues are wholly irrelevant to the issues that will be the subject of the upcoming trial. Indeed, it cannot be meaningfully disputed that the "proper administration of victim services funds" by a state agency—which operates independently from the federal government—as well as the "integrity of the [government's] investigation," Def. Mot. at 3 & 6, are not matters that will be property before the jury. Fed. R. Evid. 401 & 403. Insofar as the defendants seek these materials to investigate "potential misuse of the victim services system by various witnesses," the request is speculative and does not meet Nixon's specificity standard, among other deficiencies.

Although some courts have determined that Rule 17(c) subpoenas may be used to obtain materials to be used for impeachment, see United States v. Seabrook, No. 16-CR-467, 2017 WL 4838311, at *1-2 (S.D.N.Y. Oct. 23, 2017), the defendants have not identified how any of the requested material could be admissible for that purpose under Rules 608 or 613 of the Federal Rules of Evidence—which govern the admissibility of evidence pertaining to a witness's character for truthfulness or untruthfulness and prior inconsistent statements—or any other evidentiary rule. See Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement."). In any event, "the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant after a witness has testified." United States v. Maxwell, No. 20-CR-330 (AJN), 2021 WL 2292773, at *1 (S.D.N.Y. June 4, 2021) (citing cases). Furthermore, such materials are also not necessary to establish any bias of anticipated government witnesses, as the government has already disclosed to the defense the names of individuals who have submitted requests for compensation from OVS, as well as the one individual who received compensation and the amount she received. The defense is therefore in possession of all of the information it needs to cross-examine witnesses regarding their request and/or receipt of such funds insofar as it may relate to their potential bias.[2]

As the defense makes clear, the purpose of the proposed subpoena is to conduct an investigation into whether potential government witnesses received "improper payments" of state funds and/or "fraudulently receive[d] payments to which they are not entitled" from an

---

[2] In addition, at present, the government does not intend to call several individuals currently listed in the defendants' proposed subpoena; ███████████████████ ███████████████████████████████████████████████████████████ there is no conceivable basis for requesting materials pertaining to those individuals.

4

independent state agency. The defendants' improper efforts to use a Rule 17 subpoena to obtain such information is precisely the kind of fishing expedition that Nixon explicitly precludes.

      C.      The Defendants Must Comply with Rule 17(c)(3)'s Notice Requirements

If the Court determines that the draft Rule 17 subpoena may be issued, prior to permitting service of the subpoena, the Court must first require that the defendants notify the identified victims and permit them adequate time to move to quash or modify it.

Rule 17(c)(3) provides, in relevant part:

> After a . . . indictment . . . is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object."

See also United States v. Pedraza, No. 3:17-CR-00114 (VAB), 2018 WL 6697992, at *1 (D. Conn. Dec. 20, 2018) ("A movant must obtain a court order to serve a subpoena on a third party for production of personal or confidential information about an alleged victim."); United States v. Levin, No. 17-CR-55, 2019 WL 2097912, at *2 (W.D.N.Y. May 14, 2019).

As set forth in United States v. Ray, 337 F.R.D. 561 (S.D.N.Y. 2020), after a court determines that a Rule 17 subpoena should be issued, "if a subpoena calls for personal or confidential information of a victim, the court must require that the party requesting to serve the subpoena have given notice to the victim—and in ample time for the victim to move to quash or modify—before the subpoena is served. It is not sufficient to place the responsibility on the receiving party or just to demand reasonable efforts to provide notice." Importantly, in Ray, the court noted that, "other than in exceptional circumstances, the requesting party must demonstrate that notice was given before a court can permit service of the subpoena." Id. at 574.

Here, the draft subpoena seeks personal or confidential information about victims, including, among other things, records of victims' therapy bills, see Def. Mot. at 7. Therefore, before the Court can issue an order authorizing the service of the subpoena, the defendants must first demonstrate that notice was provided to the individuals identified in Attachment A to give them an opportunity to object.

III.    The Court Should Preclude Cross-Examination Regarding Restitution

Additionally, the Court should preclude any cross-examination regarding the government's compliance with the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA") or any restitution potentially available to witnesses in this case.

The defendants in their Motion cite to communications between an FBI Victim Assistance Specialist and a potential witness regarding the potential availability of restitution, which they characterize as evidence of a spurious allegation that "the government is leveraging

witnesses' financial motivations to secure their cooperation." Def. Mot. at 7. As a factual matter, the defendants' assertion is plainly belied by the exchange, which makes clear that the witness in question is <u>not</u> seeking to make money from her participation in the investigation, and the FBI Victim Assistance Specialist makes no promises to the witness regarding the likelihood of receiving any funds.

More broadly, cross-examination regarding the government's compliance with the CVRA or notifications to witnesses regarding the potential availability of restitution would be improper for multiple reasons. First, the government's compliance with the CVRA is both mandatory and irrelevant to the ultimate issues to be decided by the jury. Cross-examination regarding the government's witness notifications pursuant to the CVRA should therefore be precluded pursuant to Federal Rules of Evidence 401 and 403.

Further, as the government argued in its motion <u>in limine</u>, references to punishment and sentencing, including restitution, fall outside the purview of the jury and should be precluded on that basis. <u>See</u> ECF Dkt. No. 169 at 57-58; <u>United States v. Gushlak</u>, 728 F.3d 184, 193 (2d Cir. 2013) (restitution is a part of a defendant's sentence). This view accords with the general practice in the Second Circuit. <u>See, e.g.</u>, <u>Shannon v. United States</u>, 512 U.S. 573, 584 (1994) (rejecting the argument that an instruction on the sentencing consequences of the jury's verdict was required as a matter of general federal criminal practice); <u>United States v. Pabon-Cruz</u>, 391 F.3d 86, 94 (2d Cir. 2004) (defendant had no legal right to a charge informing the jury of the sentencing consequences of its decisions); <u>United States v. Inniss</u>, No. 18-CR-134 (KAM), 2019 WL 6999912, at *9 (E.D.N.Y. Dec. 20, 2019) (citing cases).

IV. <u>Sealing</u>

The government respectfully requests permission to file this letter under seal, as Footnote 2 identifies individuals who previously have not been publicly identified. The need to protect the named individuals' privacy interests outweighs the public's right to disclosure. <u>United States v. Amodeo</u>, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason to justify sealing). Accordingly, the government respectfully requests that this letter be maintained under seal, and that the government simultaneously file a public version of this letter redacting Footnote 2.

V.　Conclusion

        For the foregoing reasons, the Court should deny the defendants' motion and preclude cross-examination regarding punishment and sentencing, including restitution.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:　/s/
       Gillian Kassner
       Kayla Bensing
       Nina Gupta
       Sean Fern
       Assistant U.S. Attorneys
       (718) 254-7000

cc:　Clerk of Court (DG) (via ECF and Email)
     Counsel for Cherwitz and Daedone (via ECF and Email)