# Ballard Spahr
### LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

March 13, 2025

*By Electronic Filing*

The Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   U.S. v. Cherwitz, et al., No. 23-cr-146 (DG)

Dear Judge Gujarati:

We write to advise the Court that, just prior to the government's March 12, 2025 letter, in which it admitted that Ayries Blanck fabricated her journals and that she repeatedly lied to the government about the journals' authenticity, the government agreed that certain portions of the defendants' redacted Motion to Compel Disclosure of the Grand Jury Minutes, Dkt. No. 267, could be unredacted. Specifically, the government agreed that the January 15 fake journal entry that was already disclosed in its motion in limine could be unredacted, including the typed written and handwritten versions. It would not agree to unredact any other redactions. Accordingly, attached as Exhibit A is a copy of the Motion to Compel (Dkt. No. 267) with those portions unsealed to which the government agreed.

In light of the government's admission that the journal entries are fake, however, the defendants renew their Motion to Unseal, Dkt. No. 268. The other redactions concern additional fake journal entries and references to those fake journals from the 3500 materials. As we previously stated, fake documents, and any discussion about them, cannot be considered sensitive material warranting any protection, particularly when balanced against the defendants' right to a public trial under the Sixth Amendment. While our motion also includes two genuine journal entries from January 2015, those journal entries does not contain any personal or financial information about Ayries Blanck. And, by putting her fake journals into the public sphere via a Netflix film and claiming they were real, Blanck necessarily put her genuine journals at issue as well.

Accordingly, we respectfully request that the Court permit the entire attached letter to be publicly filed.

Respectfully,

Celia Cohen

Michael P. Robotti

# EXHIBIT A

# Ballard Spahr
LLP

- - - - - - - - - - - - - - - - - - -
1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

January 30, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

On behalf of defendant Rachel Cherwitz, we respectfully submit this letter requesting to move to compel the government to disclose the grand jury minutes pursuant to Fed. R. Crim. P. 6(e)(3)(E), to ensure that the grand jury was (1) not deceived with respect to the evidence before it, (2) not presented with information based upon stolen attorney-client privileged documents, and (3) properly instructed that the conspiracy statute under which the defendants were charged did not exist until June 2009. We seek the grand jury minutes due to the strong evidence that the grand jury presentation in this case violated the defendants' Fifth and Sixth Amendment rights. Defendant Nicole Daedone joins in this motion.

As set forth more fully below, given the government's insistence from the time of indictment until recently that Ayries Blanck's journals were written in 2015, the journals were undoubtedly improperly presented to the grand jury as contemporaneous accounts of Blanck's experiences at OneTaste. Indeed, based on a comparison of the language in the journals to the indictment, it is highly likely that the journals were a focus of the grand jury presentation. Accordingly, if the grand jury was misled into believing that the journals were contemporaneous accounts of Blanck's experiences—rather than words that were fabricated in 2022 in preparation for a Netflix film on OneTaste—dismissal of the indictment is warranted.

In addition, as set forth in the defendant's January 24, 2025 letter, because the FBI used stolen attorney-client privileged documents to build their entire prosecution, information derived from those documents was also necessarily presented to the grand jury. *See* Jan. 24, 2024 Sealed Pre-Mot. Letter, Dkt. No. 262. This separately warrants dismissal of the indictment.

Finally, the government seemingly did not recognize until late 2024 that the conspiracy statute under which it charged the defendants was not enacted until June 21, 2009, despite charging the defendants with a conspiracy beginning in 2006. Thus, it is highly doubtful the grand jury was properly instructed on the law, and the improperly obtained indictment should be dismissed for that reason too.

I.      Background on Blanck's Fake Journals

The FBI's investigation began when it first interviewed Ayries Blanck in July 2018. During the lengthy interview, which is documented in an eight-page interview report, Blanck never mentioned the existence of any journals to the FBI. In fact, Blanck did not mention these journals to the FBI until four years later, on June 1, 2022. As discussed below, the evidence establishes that Blanck's electronic journal was fabricated from 2022 to 2023 in preparation for a Netflix film on OneTaste (the "Fake Electronic Journal"). The evidence further establishes that Blanck subsequently fabricated a handwritten journal (the "Fake Handwritten Journal"), which she claimed was the source material for the Fake Electronic Journal (collectively, the "Fake Journals").[1]

A.      Blanck and Others Created the Fake Electronic Journal in 2022 and 2023

By way of background, on April 15, 2022, Ayries Blanck's sister signed a release agreement, licensing Blanck's journal entries and photos, and began working with a film producer in connection with a Netflix film about OneTaste in exchange for $25,000. *See OneTaste v. Blanck*, Case No. 22STCV3309 (L.A., Cal. Super. Ct.) (the "California Civil Action"), Aug. 20, 2024 Dep. of Autymn Blanck at pages 217–18.[2] From May 4, 2022 through May 25, 2022, the Fake Electronic Journal, which contains two typed journals (identified by the government as Journal Sets 1 and 2) was created in Google Docs. According to the government, Blanck purportedly wrote the Fake Electronic Journal, but given the information set forth below, it is apparent that the Fake Electronic Journal was a 2022 group project written in preparation for the Netflix film.

The metadata from these journals was examined during the pendency of the California Civil Action. *See* Civil Action Expert Report, Jason Frankovitz of QuandryPeak Research on Oct. 11, 2024 (The "Frankovitz Report"), Dkt. No. 242, Ex. J. This examination conclusively

---

[1] Blanck also did not mention these journals during settlement negotiations with OneTaste on December 16, 2015. *See* Ayries Blanck, Aug. 2015 Demand Ltr. OneTaste Incorporated's Opp. to Netflix, Inc.'s Anti-SLAPP Mot., Ex. 19, Case No. 23STCV27119.

[2] On October 10, 2022, OneTaste filed the California Civil Action against Ayries Blanck for breach of her settlement agreement for non-disclosure and non-disparagement of OneTaste and its officers. The California Action is currently stayed.

showed, that during the period between May 4, 2022 and May 19, 2022, the Fake Electronic Journal underwent a significant evolution in its content. For example, a comparison of just one of the entries that was dated January 15, 2015, reveals extensive, embellished edits that were all made between May 4, 2022 and May 19, 2022, while Blanck's sister's account was being used to communicate with the producer of the Netflix film.

For example, on May 4, 2022, the Google Docs version of an entry, dated January 15, 2015, in the Fake Electronic Journal reads as follows:

**January 15th**

I officially left onetaste on January first of 2015. I left and New York city and the team for good Saturday the 10th of January 2015. its been five days since I left for good. I have not written these last couple days because I have been tired, unmotivated, and pretty worn down. Nothing in me wanted to think about or write about my experience yet.

But two days later, on May 6, 2022, the Google Docs version of the same January 15 entry had been completely rewritten and embellished. In fact, the *only* words that remained from what had been written two days previously are those set forth below in bold:

**January 15th**

**I officially left on January first** and was completely gone from the community by **January 10th 2015**. It feels surreal and impossible that after almost three years of insanity it's now over. I can't feel much right now. There is a gray numbness that has swallowed me. My hands still shake as I type and I am only able to eat a small amount of cream of wheat with butter, everything else I vomit up. The paranoia lurks around me. Fearing at any moment somebody will pop out from the woodworks to drag me back. That Nicole will infiltrate my mind and break my psyche completely. The logical part of me knows this is not possible, but if I have learned anything it's that we are not logical creatures. I do not know the extent to which they broke me but I am afraid, deeply afraid for what I will find.

I left New York on a red eye flight. I was so scared that if anyone found out before I was on the plane they would find another way to pull me back and entrap me.

Finally, a few days later, on May 17, 2022, the Google Docs version of the same January 15 entry was again edited to change "cream of wheat with butter" to "soup" (perhaps to remove the brand name for the Netflix film), and it added the phrase "over the coming months." The key words changed from this third iteration have been bolded below:

**January 15th**

I officially left on January first 2015.  It feels surreal and impossible that after almost three years of insanity it's now over.  A gray numbness that has swallowed me.  My hands still shake as I type and I am only able to eat a small amoun**t**s of **soup without becoming sick.**  Paranoia lurks around me.  Fearing at any moment somebody will pop out from behind me to drag me back.  The logical part of me knows this is not possible, but if I have learned anything it's that we are not logical creatures.  I do not know the extent to which they broke me but I am afraid **of** what I will find **over the coming months.**

I left New York on a red eye flight.  I was so scared that if anyone found out before I was on the plane they would find another way to pull me back and entrap me.

On May 27, 2022, Netflix filmed Ayries Blanck's sister in Brooklyn reading the after-the-fact fabricated excerpts from the Fake Electronic Journal that were written earlier that month, but which were misleadingly portrayed as having been written seven years earlier, in 2015.  A few days later, on June 1, 2022, Blanck emailed FBI Agent McGinnis and told him, for the first time, about journals that she purportedly wrote after departing OneTaste.[3]

B.   <u>Blanck Provides the Fake Electronic Journal and the Fake Handwritten Journal to the FBI, Falsely Claiming They Were Written in 2015</u>

On March 9, 2023, Blanck provided the two typewritten documents —the Fake Electronic Journal—to the FBI via a Google Docs link, representing that she had kept these journals while she was a "member" of OneTaste in 2015.  *See* Mot. for Discovery, Dkt. No. 214, Ex. E; Gov't Opp. to Mot. for Discovery, Dkt. No. 218 at 2.[4]  According to the metadata,

---

[3] ████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

[4] ████████████████████████████████████████████
████████████████████████████████   Notably, while defendants reiterate their objection to the term "OneTaste Members" as inaccurate, misleading, and designed to prejudice (*see* Joint Mot. to Dismiss, Dkt. No. 69 at 7 n.2; Def. Reply, Dkt. No. 105 at 3–4), this characterization of Ayries Blanck being a "member" of OneTaste from January through March 2015 when she purportedly wrote these journals is contradicted by the Fake Journals themselves, which state that Blanck "officially left" OneTaste on January 1, 2015.

which was produced in connection with the California Civil Action, some of the journal entries in those documents were *further* edited on the day Blanck provided them to the FBI (March 9, 2023). For example, in the January 15 excerpt described above, the words "on a red eye" were removed before the journals were provided to the FBI (the entry had read "left New York on a red eye"), as well as the word "first" from the initial sentence.

On April 3, 2023, less than a month after receiving these journals, the grand jury returned an indictment in this case. On September 18, 2023, the government produced the Fake Electronic Journal as part of Rule 16 discovery, purportedly reflecting the dates of January 15, 2015 to March 14, 2015. In the cover letter, the government described them as "Journal entries regarding experiences at OneTaste maintained by [Ayries Blanck]." Sept. 18, 2023 Gov't Production Letter, Dkt. No. 43 at 2. The government specified in its October 11, 2024 motion *in limine* that the Fake Electronic Journal was written shortly after Blanck left OneTaste, and the journals themselves refer to 2015. *See* Dkt. No. 169 at 96.

On April 11, 2024, Ayries Blanck's sister shipped a set of physical journals to FBI Agent McGinnis, including the journal identified herein as the Fake Handwritten Journal. The government represented that the Fake Handwritten Journal was purportedly written by Blanck shortly after leaving OneTaste. *See* Dec. 10, 2024 Status Conference Tr. at 15–17. The government eventually produced the Fake Handwritten Journal to the defense in July 2024. *See* July 30, 2024 Gov't Production Letter, Dkt. No. 111 at 2.

 C. <u>Overwhelming Evidence in the California Civil Action Establishes Blanck's Journals are Fake</u>

The government continued to rely on both the Fake Electronic Journal and the Fake Handwritten Journal as the case progressed. In its October 11, 2024 motion *in limine*, *see* Dkt. No. 169 at 113, the government argued that Blanck's Fake Journals were admissible under numerous exceptions to the hearsay rules—all of which were predicated on Blanck having written the journals contemporaneously to the alleged events in 2015.

The evidence developed in the California Civil Action, however, demonstrated through the version history of the Fake Electronic Journal, that it was extensively written and modified in 2022 and 2023. As a result, the government was no longer able to claim that the Fake Electronic Journal was original and authentic. *See* Frankovitz Report, Dkt. No. 242-1 at 2–82. Indeed, Blanck admitted in a December 4, 2024 interview with the government that ███ ████████████████████████████████████████ *See* AYB-36, December 4, 2024. Later that day, the government admitted for the first time, *see* Gov't Opp. to Mot. for Discovery, Dkt. No. 218 at 2, that the very evidence it had already sought to admit pursuant to the hearsay exceptions was not created in 2015. Instead, the government claimed that the Fake Electronic Journal was transcribed from the Fake Handwritten Journal in 2022 for use in the Netflix film, and that Ayries Blanck reviewed and edited the Fake Electronic Journal prior to its use in the film (despite previously testifying under oath in the California Civil Action

that she had not looked at the Fake Handwritten Journal in 10 years, ███████████
████████████████.[5]

Specifically, the government stated as follows, with respect to the Fake Electronic Journal:

> Journal Sets 1 and 2 are not [Blanck]'s original journals; they are typewritten documents initially created by [Blanck]'s sister, who transcribed excerpted portions of [Blanck]'s handwritten journal entries and subsequently used them in connection with a documentary about OneTaste that later aired on Netflix in or around November 2022. Blanck has stated that she reviewed and edited the typewritten documents prior to their use in the documentary. The government does not at present intend to call Blanck's sister as a witness or admit Journal Sets 1 and 2 at trial.

See Gov't Opp. to Supp. Mot. *in Limine*, Dkt. No. 218 at 2.

Thus, having now admitted that the Fake Electronic Journal was not written in 2015, the government next advised (as it had to) that it would not seek to admit it. Instead, the government indicated that it would only admit the Fake Handwritten Journal that Blanck still claimed had been written in 2015. *Id.* But a quick comparison between the Fake Handwritten Journal and the Fake Electronic Journal demonstrates that Blanck's claim is patently false. The Fake Handwritten Journal matches the final typed versions of the Fake Electronic Journal—edits that occurred in May 2022 and March 2023, seven and eight years, respectively, after the Fake Handwritten Journal was purportedly written. In other words, the Fake Handwritten Journal was transcribed from the Fake Electronic Journal, not vice versa, as Blanck claims.

For example, using the same January 15 entry described above, it is obvious that the handwritten version copies verbatim all of the edits that were made on March 9, 2023 to the Fake Electronic Journal (for example, the deletion of "on a red eye" and the removal of the "first" of January), eight years after Blanck supposedly wrote the Fake Handwritten Journal. Significantly, the only difference is that the Fake Handwritten Journal, dated January 15, omits the phrase "as I type" after the words "my hands still shake." This change must have been made because whoever transcribed the Fake Electronic Journal was observant enough to realize that a handwritten journal must not talk about typing.

The comparison below, tracking the last few edits in the Fake Electronic Journal, made in 2022 and on March 9, 2023, shows they are all included in the Fake Handwritten Journal:

---

[5] *See* California Civil Action, Oct. 1–2, 2024 Dep. of Ayries Blanck; 3500-AYB-20.

*January 15 Entry of the Fake Electronic Journal (Including the Final Key Edits in Red – Made in 2022 & March 9, 2023)*

**January 15th**

I officially left ~~on~~ January ~~first~~ 2015.  It feels surreal and impossible that after almost three years of insanity it's now over.  A gray numbness that has swallowed me.  My hands still shake **as I type** and I am only able to eat a small amount**s** of **soup without becoming sick**.  Paranoia lurks around me.  Fearing at any moment somebody will pop out from behind me to drag me back.  The logical part of me knows this is not possible, but if I have learned anything it's that we are not logical creatures.  I do not know the extent to which they broke me but I am afraid of what I will find **over the coming months**.

I left New York on ~~a red-eye flight~~.  I was ~~so~~ scared that if anyone found out before I was on the plane they would find another way to pull me back and entrap me.

*January 15 Entry from the Fake Handwritten Journal (Highlighting the Matching Final Edits in Yellow):*

On top of this clear evidence of fabrication, the handwriting, language and style of the Fake Handwritten Journal does not match other known handwriting of Blanck. For instance, the above samples—neatly written with colorful prose about OneTaste—stand in stark contrast with a genuine handwritten journal entry that Blanck actually wrote in a different journal from January 15, 2015, the *very same day* that she supposedly wrote the entry above. Notably, the genuine handwritten journal set forth below, which is replete with disorderly handwriting and crossed out words, ██████████████████████ ████████████████████████████████.



<hr />

[6] The writing is transcribed as follows:

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

While no further analysis is needed to prove that the Fake Handwritten Journal is indeed fake, it is telling that Blanck's *actual* handwritten journal from 2015, bears no resemblance to the entry from the same day in the Fake Handwritten Journal, because (1) the handwriting is different, (2) the writing style is different, (3) there are no crossed out words as in her real journal, (4) the actual handwritten journals from 2015 use the "&" symbol instead of the word "and" almost every time, and (5) the Fake Journals are the only journals which allege that Blanck experienced any trauma at OneTaste; her genuine journals written on dates before and after the Fake Journals report no such thing. Moreover, the content of the entries is entirely different: Blanck's genuine handwritten journal does not say anything about OneTaste, about not eating, nor about not being able to feel. Yet, the government continues to insist that the Fake Handwritten Journal was somehow written on this same day—although Blanck claimed to be too sick to eat and shaking too much to type (or write), she supposedly wrote in two journals in one day.

This January 15 entry is just one of many similar examples demonstrating that the Fake Electronic Journal and the Fake Handwritten Journal are fabricated. Another genuine journal entry from January 27, 2015 is equally as compelling. On January 27, 2015, Blanck emailed a journal entry to herself—the very day that one of the Fake Handwritten Journal entries was purportedly dated. In the genuine journal, Ayries stated:



CHERWITZ-FIREWALL-004354; CHERWITZ-FIREWALL-004355. In contrast, in the Fake Handwritten Journal from the same date, it states:



These two entries, which were purportedly written on the same day, could not be more diametrically opposed to each other.

On January 23, 2025, during the meet and confer with the government, the defense asked the government for its basis to believe that the Fake Handwritten Journal is what the government claims it to be—*i.e.*, an authentic journal purportedly written in 2015. The government provided no such basis in response, other than to say that Blanck would testify that they were written in 2015. This is plainly insufficient under Fed. R. Evid. 803 and 901, given the wealth of evidence the defense has presented that the Fake Handwritten Journal is fake. The defense advised the government that, prior to the January 24, 2025 status conference, it intended to request an evidentiary hearing pursuant to Fed. R. Evid. 104(c) to determine the inadmissibility of the Fake Handwritten Journal.

Following the meet and confer, the government advised the defense that, "while we continue to believe that Ayries' journals are authentic and were written on the dates disclosed in materials contained in our 3500 productions, to the extent we can avoid unnecessary litigation, we do not intend to admit Ayries' journals in our case-in-chief." Jan. 23, 2025 Gov't Email to Defense. Now, in light of the overwhelming evidence that the government built its case around the Fake Journals that its star witness fabricated, the defense moves for access to the grand jury minutes to establish whether Blanck's lies misled the grand jury, irreparably tainting this indictment.

II.    The Court Should Grant the Defense Access to the Grand Jury Minutes to Determine if the Government Presented the Fake Journals

A.    Legal Standard

The Fifth Amendment's Grand Jury Clause states: "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury…." In addressing this clause, the Supreme Court has emphasized that "[t]he right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away." *Stirone v. United States*, 361 U.S. 212, 218–19 (1960); *see also United States v. Gallo*, 394 F. Supp. 310, 314 (D. Conn. 1975) (holding that "the accused has a right 'to have the grand jury make the charge on its own judgment'…[including] evaluat[ing] the credibility of witnesses"). As the Supreme Court observed:

> [the grand jury] has been regarded as a primary security to the
> innocent against hasty, malicious and oppressive persecution; it

> serves the invaluable function in our society of standing between the accuser and the accused…to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Wood v. Georgia*, 370 U.S. 375, 390 (1962). The Third Circuit also described the dangers of the potential abuse of the grand jury:

> For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

*United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979).

Given the important function of the grand jury, whereas here, there is reason to believe that the grand jury was misled or that an indictment may be otherwise invalid, Fed. R. Crim. P. 6(e)(3)(E) authorizes the Court to order disclosure of grand jury minutes "at the request of the defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." A party seeking disclosure of grand jury material must make "a strong showing of particularized need" for the material sought. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966). And, while mere "[s]peculation and surmise as to what occurred before the grand jury are not sufficient to overcome this presumption" of regularity, *see United States v. Jailall*, 2000 WL 1368055, *5 (S.D.N.Y. Sept. 20, 2000), here, the defendants have made a concrete and strong showing of need. The defendants have demonstrated a strong basis to believe that the Fake Journals formed a significant portion of the government's presentation to the grand jury and, correspondingly, that the grand jury likely relied on these journals when making its determination to indict the defendants.

Courts have previously dismissed indictments based on improper conduct before the grand jury, including a failure to correct perjured testimony, or where the grand jury is misled as to the nature of the evidence being presented. *See* Fed. R. Crim. P. (12)(b)(3)(A) (allowing for dismissal of indictment due to error in grand jury proceeding); *United States v. Estepa*, 471 F.2d 1132, 1136–38 (2d Cir. 1972); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991). It is well-settled that the grand jury must not be misled about what it is being presented.

*See Estepa*, 471 F.2d at 1136. While in the federal system an indictment may be based solely on hearsay, *if the grand jury is misled as to the nature of the hearsay evidence* before it, dismissal is warranted. *Id.* (where grand jury is misled into thinking it is getting eye-witness testimony from agent, but it is actually being given account whose hearsay nature is concealed, convictions should be reversed and indictment dismissed); *Peralta*, 763 F. Supp. at 21 (noting "quality of the evidence before the grand jury" as reason for dismissing indictment due to inconsistent testimony); *United States v. Vetere*, 663 F. Supp. 381, 387 (S.D.N.Y. 1987) (dismissing indictment for misstatements before grand jury, finding this was not "a case where an error in a record is so minute as to be legally insignificant"); *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983) ("While the factual misstatements in the agents' testimony may have been inadvertent…the fact remains that the appellants were prejudiced by the misstatements of important facts and the grand jury's independent role was impaired."); *see also United States v. Restrepo*, 547 F. App'x 34, 44–45 (2d Cir. 2013) (holding grand jury not misled as to nature of the hearsay because AUSA "ma[de] the presentation to the grand jury provid[ing] a detailed introductory statement explaining that the testifying witness would be presenting the condensed testimony of other witnesses who had already testified"); *United States v. Payton*, 363 F.2d 996, 999–1000 (2d Cir. 1966) (Friendly, J., dissenting ) (explaining that where it becomes clear that evidence upon which grand jury indicted was entirely hearsay, government must identify "the shoddy merchandise [the jurors] are getting so they can seek something better if they wish."). Accordingly, in line with these cases, if the grand jury is misled about testimony or evidence, and it impairs the grand jury's independence, the indictment must be dismissed. *Hogan*, 712 F.2d at 762.

B.    <u>The Fake Electronic Journal Was Most Likely Presented to the Grand Jury</u>

To begin with, the timing of the indictment indicates the government's likely reliance on the Fake Journals. Netflix released its film about OneTaste on November 5, 2022. The Fake Electronic Journal was featured in the film through Blanck's sister. Indeed, 24 days after the Netflix film aired and Blanck's journals were read, the government told OneTaste's counsel to "look at the media on OneTaste," in response to his question as to the factual basis for the investigation. *See* Mot. to Dismiss Letter, Dkt. No. 96 at 4. Blanck then sent the Fake Electronic Journal to FBI Agent McGinnis on March 9, 2023; less than a month later, the grand jury returned the indictment, five years after the investigation began. This timing indicates that it is highly likely that the government relied on the Fake Electronic Journal in the grand jury to secure the indictment.

A comparison of the Fake Electronic Journal to the indictment further reinforces that fact. Paragraphs 6, 7, 9, and 10 of the indictment can be specifically tied to the language in the Fake Electronic Journal. Here are a few key examples of this language:

| INDICTMENT PARAGRAPH | FAKE ELECTRONIC JOURNAL ENTRY |
| --- | --- |
| ¶6: obtained the labor and services of a group of OneTaste members by subjecting them to economic, sexual, emotional and psychological abuse; surveillance; indoctrination; and intimidation | |
| ¶7(a) recruited individuals with prior trauma | |
| ¶7(b) induced members to incur debt | |
| ¶7(c) subjected members to constant surveillance | |

| ¶7(d) demanded absolute commitment to Daedone | |
|---|---|
| ¶7(e) collected sensitive information about members | |
| ¶7(f) isolated members - limited contact and breaking up established romantic relationships | |
| ¶9 directed sexual activity | |
| ¶10 shame humiliation workplace retaliation; harassment and coercion of perceived enemies and critics | |



Notably, the other journals that the government intends to use in its case-in-chief, as outlined in its October 11, 2024 Motion *in Limine* (the journals of Jane Does 4 and 5), do not provide any of the same specific information used in the indictment. *See* Gov't Mot. *in Limine*, Dkt. No. 169 at 115–16.

It is highly implausible that the Fake Electronic Journal, which has been a pillar of the government's case since the indictment, was not presented to the grand jury. Indeed, the government spent pages arguing to the Court in its Motion *in Limine* why the Fake Electronic Journal and the Fake Handwritten Journal were admissible. *See* Gov't Mot. *in Limine*, Dkt. No. 169 at 109–15. The timing of when the government obtained the Fake Electronic Journal is particularly compelling, especially considering that the language and the themes in the Fake Electronic Journal are reflected in the indictment.

      C.    <u>The Grand Jury was Misled as to Nature of the Fake Journal</u>

As noted above, there is a strong likelihood that the information contained in the Fake Electronic Journal was presented to the grand jury as part of the government's case against the defendants. And, if in fact this strong supposition is correct, the grand jury was most certainly misled by fabricated evidence, a clear constitutional violation of the defendants' rights. The government told the defense that the Fake Electronic Journal was written in 2015 when it first produced it, and therefore it logically would have told the grand jury the same thing.[7] As discussed above, though, the evidence shows that Blanck fabricated the Fake Electronic Journal from 2022 to 2023. If it was presented to the grand jury (and it most likely was), the

---

[7] Blanck emailed the Fake Electronic Journal to FBI Agent McGinnis's personal Gmail account as a Google Doc that gave the FBI editing rights. A version of the Fake Electronic Journal produced in the California Civil Action reflected a heading, "Series One: Darkness," a cinematic title that appears to reflect the intended use of the journals for the Netflix movie. The defense will give Agent McGinnis the benefit of the doubt that Blanck removed the title, so that it was not obvious that the journals were written for a film—because if Agent McGinnis was aware at the time it was used in the grand jury and produced to the defense that the Fake Electronic Journal was not written in 2015, that would constitute severe misconduct.

grand jury was entirely misled—because they were told that the Fake Electronic Journal was contemporaneous, direct evidence of Blanck's experiences at OneTaste, when it was not.

Because the grand jury was misled as to the nature of the Fake Electronic Journal, dismissal of the indictment is warranted. *See Estepa*, 471 F.2d at 1136. In *Estepa*, the Second Circuit reversed the convictions and dismissed the indictment when it was revealed that the grand jury had been misled into thinking it was getting eye-witness testimony from an agent and was not told that the information was hearsay. *Id.* If the Second Circuit reversed in *Estepa* based on the fact that the grand jury was misled into thinking that the officer who testified was providing a first-hand account instead of hearsay, then *a fortiori*, dismissal is warranted here, when major facts were concealed from the grand jury, including that: (1) Blanck fabricated the Fake Electronic Journal in 2022 for the Netflix film (versus Blanck just deciding on her own to write them in 2022); (2) Blanck fabricated the Fake Handwritten Journal after 2022 to match the final edits to the Fake Electronic Journal; and (3) Blanck had genuine 2015 handwritten and typed journals that contradict the experiences described in the 2022 Fake Electronic Journal.

Indeed, the *Estepa* facts pale in comparison to the egregious circumstances here, where the grand jury was not just misled about hearsay, but rather was misled as to the veracity of the evidence. Adopting Judge Friendly's phraseology, the grand jurors were no doubt misled as to "the shoddy merchandise [*i.e.*, the Fake Electronic Journal] they [were] getting." *Payton*, 363 F.2d at 1000 (Friendly, J., dissenting). They were led to believe, as the government claims it believed at the time, that the Fake Electronic Journal reflected contemporaneous, genuine accounts of Blanck's experiences at OneTaste, written without the help of a television producer. We understand the government may not have necessarily known this information at the time, but now that it has come to light, the indictment must be dismissed. *See Hogan*, 712 F.2d at 762 ("While the factual misstatements in the agents' testimony may have been inadvertent, as the government now argues, the fact remains that the appellants were prejudiced by the misstatements of important facts and the grand jury's independent role was impaired.").

The Fake Handwritten Journal cannot save this indictment. The government cannot argue that there was no harm from presenting the Fake Electronic Journal to the grand jury, because it was just a transcription of the Fake Handwritten Journal, which Blanck actually wrote in 2015. The opposite is true. The Fake Handwritten Journal is a handwritten transcription of the Fake Electronic Journal, made after Blanck fabricated the latter journal in 2022 and 2023.

As set forth in detail above, the evidence is overwhelming that Blanck did not write the Fake Handwritten Journal in 2015 because, among other reasons, (1) the Fake Handwritten Journal was observably copied from the Fake Electronic Journal, which the government now concedes was typed for the Netflix film (for which Ayries' sister was paid $25,000); (2) the Fake Handwritten Journal contained the final changes that were made to the Fake Electronic

Journal on March 9, 2023, the same day that it was provided to the FBI; (3) a mere side-by-side comparison of the writing in the Fake Handwritten Journal to Blanck's genuine handwritten journals shows that they are not the same style or handwriting, and that the content of the Fake Handwritten Journal contradicts what was written in the genuine journals from the same days; and (4) the fact that Blanck did not mention the existence of the Fake Handwritten Journal to the FBI for years and did not turn it over to FBI until April 2024, six years after Blanck first met with agents.

These circumstances—not an exhaustive list—conclusively demonstrate that the Fake Handwritten Journal was written *after* the Fake Electronic Journal was created in May 2022 and finalized in March 2023. Indeed, while the government ostensibly claims that it still believes the Fake Handwritten Journal is legitimate, its decision to drop this key evidence from its case, rather than to test it at an evidentiary hearing, speaks volumes. It is fake.

Accordingly, as Blanck fabricated the Fake Handwritten Journal and the Fake Electronic Journal, when the grand jury was presumably shown or read the Fake Electronic Journal (or provided information derived therefrom), it was directly misled by the implication that it was a true, contemporaneous journal about Blanck's experiences at OneTaste.

D.     The Court Should Compel Disclosure of the Grand Jury Minutes

Because there is overwhelming evidence to believe that the grand jury was misled when it was told that the Fake Electronic Journal was written in 2015 by Ayries Blanck, the defense has more than met its burden of "a strong showing of particularized need" for the material sought. *See Sells Eng'g, Inc.*, 463 U.S. at 443. As set forth above, the Fake Electronic Journal tracks the indictment in detail, thus demonstrating that it was used during the grand jury presentation. If it was in fact used, then the grand jury was necessarily misled as to the nature of the evidence and the defendants' constitutional rights were violated by the return of an indictment based on false evidence. We request that the Court order the government to disclose the grand jury minutes to protect the defendants' constitutional rights. The Court Should Compel Disclosure of the Grand Jury Minutes to Determine if the Government Relied on the Stolen Privileged Documents.

As set forth in the defendants' January 24, 2025 pre-motion letter for a *Kastigar* hearing and to dismiss the indictment, the FBI's use of the privileged documents stolen by Mitch Aidelbaum (the "Stolen Privileged Documents") through an act of corporate espionage has tainted this entire prosecution beyond repair. *See* Jan. 24, 2025 Pre-Mot. Letter, Dkt. No. 261 at 7–9. The FBI obtained the Stolen Privileged Documents from Aidelbaum in January 2021. *See id.* As explained in the defendants' letter, the government acknowledges that the agents began to use the Stolen Privileged Documents immediately after they obtained them from Aidelbaum. *Id.* at 10. In particular, it admits that, five days after the Aidelbaum interview, an agent sent a "bullet point list of information . . . associated with [Aidelbaum],"

which appears to be derived from the Stolen Privileged Documents. *See* Sept. 20, 2024 Gov't Letter, Dkt. No. 154 at 3.[8] Thereafter, the agents interviewed more than 20 witnesses identified in those documents, and it interviewed them about non-public events discussed therein. Because the government used privileged information to build its entire case against the defendants, information derived from the Stolen Privileged Documents necessarily would have been presented to the grand jury in some fashion in 2023, even if the documents themselves were not introduced.

Thus, for the same reasons described with respect to the government's likely use of the Fake Electronic Journal in the grand jury, this Court also should grant the defendants' access to the grand jury minutes to determine if it used information derived from the Stolen Privileged Documents to obtain the indictment. *See* Fed. R. Crim. P. 6(e)(3)(E); *Sells Eng'g, Inc.*, 463 U.S. at 443. The defendants have demonstrated "a strong showing of particularized need" for the minutes. And, if the minutes show that the government used information derived from the Stolen Privileged Documents, the Court should dismiss the indictment.

III.  The Court Should Compel Disclosure of the Grand Jury Minutes to Determine if the Government Improperly Instructed the Grand Jury on the Law

The Court should also compel disclosure of the grand jury minutes to confirm that the grand jury was properly instructed on the law concerning the charged conspiracy. Specifically, the government should have instructed the grand jury that the conspiracy statute, under which the defendants were charged, was not enacted until June 2009, three years after the defendants are alleged to have conspired to commit forced labor. *See* 18 U.S.C. §§1594(b), 1594(d).[9]

---

[8] Defendants have repeatedly asked the government to produce this email to understand the use and matriculation of the Stolen Privileged Documents through FBI and EDNY systems. Following the most recent meet and confer, the government once again refused to produce this email, despite the fact that it could demonstrate that the government was or was not privy to privileged information. It stated: "It's our position that this email and its attachment, which is internal between two agents, is not discoverable, as we do not intend to call either agent in our case-in-chief." Jan. 23, 2025 Gov't Email to Defense.

[9] As the government explained in the Joint Proposed Jury Instructions, Dkt. No. 223, the relevant statute, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), took effect on June 21, 2009. *See* Pub. L. No. 110-457, 122 Stat. 5044 (2008). The TVPRA codified two provisions relevant to the indictment. First, the TVPRA modified 18 U.S.C. § 1589(a) to enumerate additional, specific means by which a defendant can violate the statute, including adding a definition of "serious harm" in subsection

Notably, the defendants are charged in this case with a forced labor conspiracy only—there are no substantive forced labor charges. Thus, the government is effectively arguing that, in 2006, Ms. Daedone and an unindicted coconspirator unlawfully agreed to engage in forced labor, and that Ms. Cherwitz entered into the same unlawful agreement in 2007. But no statute criminalized such an agreement at that time; the relevant statute had not yet come into effect. The government was obligated to explain this distinction to the grand jury, because the pre-June 2009 charges violate the Ex Post Facto Clause.

It is highly doubtful that the government properly instructed the grand jury on the Ex Post Facto issue. The government apparently did not realize that it had violated the Ex Post Facto Clause until defense counsel raised it in an email on November 17, 2024 in connection with the jury instructions. The government's initial draft of the proposed jury instructions did not mention anything about the timing of the statute.

In its response to defendants' concern about the timing of the statute in their objection to the proposed jury instructions, the government claimed that it expects to prove at trial that the charged conspiracy both predates and post-dates the TVPRA, and therefore, it does not violate the Ex Post Facto Clause. *See* Gov't's Proposed Jury Instructions, Dkt. No. 223 at 40–41. The government acknowledged, however, that a due process violation could occur if a defendant is convicted solely on conduct prior to the enactment of the applicable criminal statute. *Id.* (citing *United States v. Marcus*, 560 U.S. 258, 264 (2010)). Thus, it argued, conduct that occurred prior to the date of the charging statute's enactment is admissible for limited purposes only. *See id.* "When it is shown that a conspiracy straddled the enactment of a statute, the government may introduce pre-enactment evidence to demonstrate the conspiracy's genesis, its purpose, and its operation over time." *Id.* (citing *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)). It further claimed that pre-enactment evidence is also admissible "to prove the intent and purpose of the conspirators' later acts." *Id.* (citing *United States v. Ferrara*, 458 F.2d 868, 874 (2d Cir. 1972)). Recognizing that this was an issue, though, the government added a proposed limiting instruction at the end of the charge that, to convict the defendants, it must find that the conspiracy continued after June 21, 2009, during the post-enactment period alleged in the indictment in order to eliminate any risk that the jury's verdict could be based on pre-enactment conduct. *Id.* (citing *United States v. Ghavami*, 2012 WL 2878126, at *13 (S.D.N.Y. July 13, 2012)); *Marcus*, 560 U.S. at 263–64. This limiting instruction proposed by the government was necessary to avoid a due process violation at trial.

---

(c)(2). *See id*. at 5068. Second, the TVPRA modified 18 U.S.C. § 1594 by creating the criminal offense of conspiracy to violate § 1589. *See id.* at 5070.

Based on the fact that the government had not considered this issue prior to the defense raising it in November 2024, it seems highly improbable that this limiting instruction was presented to the grand jury. The grand jury would not have necessarily returned an indictment for a conspiracy charge going back to 2006 if it understood that the law did not exist at that time.

What makes this issue particularly egregious here is that the crime charged is solely a conspiracy without any substantive acts; therefore, there is no conduct that the government can rely on prior to 2009. In fact, in support of its argument in the proposed jury instructions that the government may introduce pre-enactment evidence to demonstrate a continued offense, the government cites no cases in which only a conspiracy was charged.

Indeed, the government contends that one of the cases it cited, *Rivera v. United States*, 2024 WL 3985677, at *19 (E.D.N.Y. Aug. 29, 2024), a forced labor case, demonstrates that a court upheld a forced labor conspiracy charge that straddled the enactment of the statute. There, however, the government charged five forced labor substantive counts in addition to the conspiracy charge; thus, the actual forced labor conduct—which was criminal before enactment of the conspiracy statute—could be considered in connection with the later charged conspiracy. *Id.* In contrast, here, there are no substantive acts of forced labor charged before enactment to which the later charged conspiracy could relate back. And, the later charged conspiracy cannot relate back to a pre-enactment conspiracy, since an agreement to commit forced labor was not a crime at that time.

Regardless, though, the grand jury should have been instructed that the statute was enacted in 2009, and to find probable cause for a conspiracy from 2006 through 2011, it must specifically find that the conspiracy continued after June 21, 2009. A failure to provide this instruction on the law constitutes an error in the grand jury proceeding, and it is therefore an additional ground for dismissal. Accordingly, to protect the defendants' Fifth and Sixth Amendment rights, the Court should compel disclosure of the grand jury minutes to determine if the proper instruction was provided.

IV.     Conclusion

      For the foregoing reasons, the Court should set a briefing schedule on the defendants' motion to compel the government to disclose the grand jury minutes.  If the grand jury minutes reveal that the government presented information derived from the Fake Electronic Journal and/or the Stolen Privileged Documents to the grand jury, or that the government failed to instruct the grand jury on the June 2009 enactment of the conspiracy statute, the Court should dismiss the indictment.

      Respectfully submitted,

Celia Cohen

Michael P. Robotti