# Ballard Spahr

---

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

March 23, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Gujarati:

      Pursuant to Your Honor's March 19 Order, defendants respectfully request that the Court grant a hearing regarding the fabricated evidence created by Ayries Blanck—evidence the government intended to present at the trial scheduled for January 13, 2025. Defendants also request leave to file full motions to: (1) unseal the grand jury minutes; (2) dismiss the indictment based on the government's misleading the grand jury; and (3) dismiss the indictment as a due process violation.

      The need for a hearing and these motions cannot be overstated. Had Ms. Cherwitz's counsel not been replaced on the eve of trial—and the trial not continued—the government would have introduced Blanck's perjured testimony and falsified exhibits. Blanck lied and created evidence designed to secure a wrongful conviction. Although the government has now admitted as much, its delayed admission is its own fault. The government insists it "repeatedly pressed" Blanck for the truth, but the prosecutors did not uncover the truth. The defense did.

      When Blanck's fraud could no longer be hidden, the government conceded that Blanck fabricated evidence. The admission was delayed, diluted, and delivered when deception became unsustainable. Rather than seek truth, prosecutors pursued conviction. Now, having run out of alternatives, the government admits Blanck's planned perjury. We are aware of no case in which the government has confessed on the eve of trial that its key witness manufactured evidence intended to frame defendants. Yet, rather than acknowledging its case's collapse and joining the defense in pursuit of the truth, the government opposes further scrutiny. While the Court previously denied requests for a hearing and similar motions, it now has additional facts that make it apparent that these motions should have been granted.

I.     <u>The Court Should Grant a Hearing Based on Agent McGinnis's Blatant Misconduct</u>

Agent McGinnis's extreme misconduct can no longer be ignored or considered speculative in light of new evidence demonstrating McGinnis knew Blanck fabricated the journals and concealed this fact. McGinnis's repeated misconduct here has stripped him of the right of deference courts typically provide to the government. The misconduct is apparent, and a hearing is necessary to uncover the full extent to which his improper behavior has tainted this case. The government's recent admissions shed further light on the following misconduct.

    A.     <u>Chain of Custody and Journal Fabrication</u>

Chain of custody records produced on March 13, 2025, show McGinnis had the Fake Handwritten Journal in his possession as early as April 15, 2024. Yet, he did not submit it into evidence until May 21—more than five weeks later. On May 29, McGinnis falsely reported that Blanck's sister, Autymn Blanck, had only recently provided the journals, concealing that he had held them for over a month. *See* 3500-AYB-50. The government continued to rely on Blanck's testimony and misrepresentations until March 12, 2025, when it finally admitted she lied—only after overwhelming evidence left no other option. Further chain of custody issues deepen the concern: (1) Autymn testified that she provided six to eight journals, but only three were logged into evidence; and (2) McGinnis claimed all three were paperback journals, but the actual evidence includes two paperback and one leather-bound journal. These discrepancies cast serious doubt on the reliability of McGinnis's submissions and the journal materials' authenticity.

    B.     <u>McGinnis's Mishandling of Digital Evidence</u>

McGinnis directed Blanck to delete her email account. On the day she learned from journalist Ellen Huet that OneTaste had sued her —Blanck contacted McGinnis to request permission to delete her email. McGinnis immediately agreed. *See* Dkt. No. 96-1. He later claimed the deletion was advised because Blanck was being "harassed by OT associates." In fact, as set forth in their declarations, those individuals were longtime friends, Summer Engman and Louisa West, and were confronting her about inconsistencies in her public claims. The Court can no longer take McGinnis's explanations as the truth; instead, a hearing is necessary to determine if the destruction of this account was designed to conceal communications between Blanck, McGinnis, and possibly the producer of the Netflix film regarding the Fake Electronic Journal.

Furthermore, on March 9, 2023—the day Blanck finalized editing the journals—she sent an email in Gmail's "Confidential Mode" to McGinnis. Confidential mode grants access via a secure link. The content of that link, however, was not preserved. Notably, the confidential email was sent only one minute after Blanck sent the Fake Electronic Journal. Its timing, secrecy, and the agent's failure to preserve a copy of the content suggest an intent to conceal issues related to the Fake Electronic Journal.

Finally, when Autymn received a subpoena in the civil case against Ayries, McGinnis instructed Autymn and her attorney to send Ayries's handwritten journals to him, because

"what [Autymn] d[idn]'t have, [she] d[id]n't have to give over." *See* Dkt. No. 227-1 at 13. Thereafter, Autymn's attorneys advised OneTaste's counsel that she did not have any journals. In fact, Autymn did not have her sister's journals because McGinnis hid them. Overall, these events demonstrate a pattern of concealment that warrants a hearing and supports the dismissal of the indictment under Rule 12(b)(3).

II.     Motion to Unseal the Grand Jury Minutes

The government claims in its March 12, 2025 letter that it "did not rely on the Typewritten Journals in drafting the Indictment." Dkt. No. 297 at 3 n.3. Notably, the government does not deny—and thereby implicitly admits—it presented information about the Fake Electronic Journal to the grand jury. Blanck was interviewed six times before indictment—more than any other witness. The government received the Fake Electronic Journal a month before the indictment. In its motion *in limine*, *see* Dkt. No. 169, the government references Blanck 56 times—more than twice as many references than any other individual. There is therefore reason to believe the grand jury was misled. Under Fed. R. Crim. P. 6(e)(3)(E), this Court may order unsealing where "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Defendants have made a strong showing of particularized need. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).

III.    Motion to Dismiss Based on Grand Jury Misconduct and Due Process Violations

Because the grand jury was misled to believe that Blanck provided credible information and her journals were authentic, the indictment should be dismissed. *See United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983); *United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984); *United States v. Guillette*, 547 F.2d 743, 752–53 (2d Cir. 1976); *United States v. Vetere*, 663 F. Supp. 381, 386–87 (S.D.N.Y. 1987). Additionally, the use—or attempted use—of fabricated evidence to build a criminal prosecution violates due process. As the Second Circuit noted in *Barnes v. City of New York*, the mere act of being falsely charged imposes grave consequences; "non-custodial collateral consequences" trigger constitutional protections, even if the fabricated evidence is never introduced at trial. 68 F.4th 123, 130 (2d Cir. 2023) (internal quotation marks omitted). Given McGinnis's severe misconduct, dismissal is warranted. *See United States v. Walters*, 910 F.3d 11, 27 (2d Cir. 2018); *United States v. Sabri*, 973 F. Supp. 134, 146 (W.D.N.Y. 1996); *United States v. Nejad*, 487 F. Supp. 3d 206, 211 (S.D.N.Y. 2020); *Kyles v. Whitley*, 514 U.S. 419, 449 n.19 (1995).

In sum, the Court should grant a hearing on the overwhelming evidence that the government's case relied on falsehoods, and that McGinnis mishandled evidence, concealed exculpatory material, directed the deletion of potential evidence, and violated the attorney-client privilege. In the alternative, the Court should dismiss the indictment.

                Respectfully submitted,

                Celia Cohen

                Michael P. Robotti