# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

April 1, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

  The defendants Rachel Cherwitz and Nicole Daedone respectfully submit this letter as a supplement to the joint requests to charge filed on December 9, 2024.  *See* Joint Requests to Charge, Dkt. No. 223.  Specifically, defendants provide additional authority for their proposed instructions for the "serious harm" element of forced labor.  *See id.* at 33–37.  Further, the defendants propose including additional instructions regarding employer warnings of adverse but legitimate consequences.  Given that these instructions are vital to the defense and correct as a matter of law, the defendants respectfully request that the Court issue a pre-trial ruling on these instructions.

I. Serious Harm Instruction

  In light of the government's recent decision not to call Ayries Blanck at trial, and based on a review of the government's 18 U.S.C. § 3500 material, it is apparent that the government cannot establish at trial that the defendants conspired to commit the "serious harm" element of forced labor, as properly articulated under the law.  Upon the close of the government's case, the defendants intend to move for a judgment of acquittal as a matter of law pursuant to Federal Rule of Criminal Procedure 29 on this point.  But assuming the government's case survives a Rule 29 motion (which it should not), the Court's jury instruction as to what constitutes "serious harm" sufficient to establish forced labor is critical to the defense.

  As an initial matter, the government has insufficient evidence to even charge the jury on two theories of serious harm under the law.  In particular, the Court should strike all references from the jury charge to obtaining labor through use of "physical restraint against[] a person" or "through means of the abuse or threatened abuse of law or legal process."  *Id.* at

22. Based on the defense's review of the government's evidence to date, the evidence supporting these theories is nonexistent. There is, therefore, no basis to charge the jury on these theories and doing so would be unnecessarily confusing. The Court should reject the government's proposed charge in that regard.

By contrast, the Court should charge the jury, as the defense has requested, that "[i]n determining whether a particular type or certain degree of threatened harm was sufficient to obtain each alleged victim's labor or services, you should consider that victim's individual circumstances, including…*any reasonable means of escape or terminating the relationship.*" *Id.* at 34–35 (emphasis added). The evidence in this case will overwhelmingly show that all persons associated with OneTaste Inc., including the government's alleged victims, were at all times free to terminate their relationship with OneTaste Inc. and had the means to do so, including the unrestricted ability to travel, access to personal cellular telephones, personal laptops, the internet, and freedom to contact persons not associated with OneTaste Inc. Indeed, all the government's alleged victims did terminate their relationships with OneTaste Inc. or its various licensees during the period of the charged conspiracy, without facing any kind of "serious harm" as a result. As discussed below, the defendants' proposed charge is amply supported by the case law. Nonetheless, apparently perceiving this fatal defect in its case, the government has omitted this principle of law from its proposed charge. *See id.* at 34–35. Because this will be a central issue at trial, this Court should charge the jury on this point.

      A.      <u>Case Law Supports the Defendants' Proposed Instruction Regarding Escape and Termination of the Relationship</u>

In *Tegete,* a recent civil forced labor case from the Southern District of New York, Judge Seibel articulated the relevant principles supporting the defense's proposed jury instruction. *See United States v. Tegete*, 2023 U.S. Dist. Lexis 43034, at *25 (S.D.N.Y. Mar. 14, 2023). There, the court stated that, to establish forced labor under 18 U.S.C. § 1589, the government "must first show that the threat of harm was sufficiently serious and, second, that the defendant had the requisite scienter, *i.e.*, 'that the employer intended to cause the victim to believe that she would suffer serious harm . . . if she did not continue to work.'" *Id.* (alteration in original) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)). The court further explained that the cases finding threats of harm sufficiently serious to establish forced labor typically involve:

> squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English

>language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors.

*Id.* (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 618–19 (4th Cir. 2017)).

In accordance with these principles, *Tegete* held that the plaintiff's allegations were insufficient as a matter of law to establish the defendant obtained the plaintiff's labor through threats of serious harm. *Id.* at *26. Among other reasons for denying the plaintiff's claims, the court held that the plaintiff could "not establish 'the type of extreme isolation that would have led a reasonable person in [her] situation to believe that she was psychologically imprisoned in a forced-labor situation.'" *Id.* at *27–28 (alteration in original) (quoting *Muchira*, 850 F.3d at 621). The plaintiff "had virtually unfettered access to a private cell phone and to the Internet, including the use of a laptop," and "had substantial opportunity to use these forms of communication in the privacy of her living quarters." *Id.* at *28 (internal quotation marks omitted). Furthermore, the plaintiff was able to travel unaccompanied to visit family and vacation. *Id.* The court held that such "freedom of communication and movement belies the notion that [p]laintiff felt so psychologically imprisoned that she was unable to terminate her employment and walk away." *Id.* at *29 (citing *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012)). Indeed, rather than being "forced to provide her labor," she remained employed "because she herself wanted to continue pursuing her call to service." *Id.* at *33. And, when plaintiff did decide to leave, she "successfully left the first time she tried" and defendant "did not attempt to force her to return." *Id.* at *34–35 (internal quotation marks and alterations omitted).

In rejecting the plaintiff's forced labor claim on this basis, *Tegete* relied on decisions from the First and Ninth Circuits that have reached the same conclusion. *See Headley*, 687 F.3d at 1174–81 (church members' fear of being "excommunicated" from church—thereby losing contact with their friends and family members—and their opportunities to leave the Sea Org, the church's "elite religious order," undermined their claim of being psychologically "coerced" into forced labor for church); *Muchira*, 850 F.3d at 618–22 (employee was not psychologically "coerced" into labor because she had ample opportunities to walk away).

Similar to these cases, here, the government's evidence consists of little more than conclusory and speculative allegations that fall far short of establishing the alleged victims' fears of serious harm were reasonable or that defendants intended to instill any such fear. The less than one percent of OneTaste participants who chose to live in an OM house—communal housing predominately self-organized by those interested in the OM practice—were not subject to squalid or otherwise intolerable living conditions. The alleged victims were not subject to extreme isolation—they could travel and visit their families unaccompanied. For example, many of the government's remaining witnesses went on family vacations—including on expensive trips to locations like Israel, Bali and the Hamptons. Additionally, many of the

alleged victims had cellphones and laptops, could freely access the internet and social media, and held jobs outside of OneTaste. No one was locked in or prevented from leaving residences organized by individual participants or OneTaste's facilities. Further, as noted above, defendants never threatened to physically harm or restrain any of the alleged victims, nor did they threaten to have any of the alleged victims deported or arrested. Defendants did not require any of the alleged victims to surrender their passports, or place their immigration status in jeopardy. In fact, in general, OneTaste course participants were well-educated,[1] sophisticated, spoke English, and possessed their own bank accounts, credit cards, and had upward economic mobility. And, like the plaintiff in *Tegete*, the alleged victims here successfully left OneTaste when they chose to do so—just like countless others. Indeed, many received sizeable refunds when they requested them from OneTaste Inc. Thus, as a matter of law, the government cannot show the serious harm necessary to establish forced labor. To the extent this case goes to a jury, it should be specifically instructed that it should consider the alleged victims' "reasonable means of escape or terminating the relationship."

      B.    <u>Courts Have Instructed the Jury with the Defendants' Proposed Serious Harm Instruction</u>

In addition to the foregoing precedent, the defendants' proposed charge also is supported by other courts that have endorsed or given this jury instruction. For instance, in *Bradley*, the First Circuit noted that this portion of the Eleventh Circuit's pattern jury instruction for involuntary servitude is permissible for forced labor charges under 18 U.S.C. § 1589. *See United States v. Bradley*, 390 F.3d 145, 153–54 (1st Cir. 2004). That pattern instruction supports the defendants' proposed instruction here. It states:

> To decide whether a person reasonably believed there was no way to avoid continued service, you must consider:
>
> - the method or form of coercion threatened or used in relation to the person's particular circumstances and conditions;
>
> - the person's physical and mental condition;
>
> - the person's age, education, training, experience, and intelligence; and
>
> - *any reasonable means or chances the person may have had to escape.*

---

[1] Many of the government's remaining witnesses hold a bachelor's degree or higher.

*Eleventh Circuit Pattern Jury Instructions, Criminal Cases*, No. O62 (2024) (emphasis added).

Moreover, other courts have provided similar instructions when charging a jury on forced labor in violation of § 1589. *See, e.g.*, *United States v. Dann*, 4:08-cr-00390-CW (N.D. Cal. Oct. 6. 2009), Dkt. No. 92 at 11 (instructing jury that "[i]n determining whether a particular type or certain degree of harm or coercion was sufficient to obtain [alleged victim]'s labor or services, you should consider [alleged victim]'s individual circumstances, including her age, intelligence, education, experience, background, social isolation, social status, any inequalities between [alleged victim] and [defendant] *and any reasonable means of escape or terminating the relationship*" (emphasis added)); *United States v. Hernandez*, 4:17-cr-00462-JSW (N.D. Cal. Mar. 18, 2019), Dkt. No. 171 at 21 (instructing jury that "[i]n determining whether a particular type or certain degree of harm or coercion was sufficient to obtain labor or services of the persons listed above, you should consider their individual circumstances, including their age, intelligence, education, experience, background, social status, immigration status, any inequalities between that person and the defendant, *and any reasonable means of escape or terminating the relationship*" (emphasis added)); *United States v. Kaufman*, 5:04-cr-40141-MLB (D. Kan. Nov. 3, 2005), Dkt. No. 305 at 66 (instructing the jury that "[i]n determining what 'a reasonable person in the same situation as the alleged victim' would do, or what an alleged victim 'reasonably believed,' you may consider, for example, the method or form of the threats or 'scheme, plan, or pattern' used in relation to that alleged victim's particular station in life; his or her background, age, physical and mental condition and special vulnerabilities, if any; his or her experience, education, intelligence, any inequalities between the alleged victim and the defendant with respect to these considerations; *and any reasonable means the alleged victim may have had to escape*" (emphasis added)). Such an instruction is appropriate here.

Additionally, because this proposed instruction focuses on "reasonable means" of escape and/or termination of the relationship, it obviates the need for the government's proposed instruction related to escape: "The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to escape." Dkt. No. 223 at 25. This instruction is one-sided, confusing and an incorrect statement of the law, considering that reasonable means of escape and/or terminating the relationship are an appropriate consideration in assessing serious harm. In any event, the use of the term "reasonable means" is sufficient to alert the jury that it should not consider "unreasonable means," such as where terminating the relationship would result in serious harm to the alleged victim, and the government's additional proposed instruction on this point is unnecessary. Indeed, *Dann*, *Hernandez*, and *Kaufman* did not include the government's proposed language, but instead instructed the jury to consider "reasonable means" of escape and/or termination of the relationship.

II.    <u>Adverse but Legitimate Consequences Instruction</u>

    A.    <u>Proposed Instruction</u>

Defendants propose including the following, more fulsome instruction regarding adverse but legitimate consequences in its forced labor conspiracy charge:

> Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.

With this addition, the relevant instructions in the defendants' proposed charge would read:

> In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. **Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.**
>
> Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

*Id.* at 35–36.

Relatedly, because the joint proposed instructions do not presently define the term "threats," defendants propose adding the definition from the Modern Federal Jury Instructions' pattern instruction for forced labor, which states:

> A threat is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement

must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

2 Modern Federal Jury Instructions–Criminal ¶ 47A.02 (2025).

B. <u>Defendants' Proposed Instruction Regarding Adverse but Legitimate Consequences is Proper</u>

Numerous courts have distinguished between improper threats or coercion and permissible warnings of adverse but legitimate consequences in employer/employee relationships. *See, e.g.*, *Tegete*, 2023 US. Dist. Lexis 43034, at *35 ("At bottom, not all bad employer-employee relationships will constitute forced labor, and an employer will only be guilty of forced labor if [it] intends to cause a person in [its] employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm." (alterations in original) (internal quotation marks and citations omitted)); *Akhtar v. Vitamin Herbal Homeopathic Ctr.*, No. 19-CV-1422 (WFK) (RER), 2021 U.S. Dist. Lexis 255148, at *22 (E.D.N.Y. Apr. 30, 2021) (stating that not all bad employer/employee relationships constitute forced labor); *Bradley*, 390 F.3d at 155 (distinguishing between "merely abusive employers" and employers who "deliberately sought to compel forced labor"); *Dann*, 652 F.3d at 1170 ("To be sure, not all bad employer-employee relationships . . . will constitute forced labor."); *Muchira*, 850 F. 3d at 624 (distinguishing between improper threats of coercion and permissible warnings of adverse but legitimate consequences in employer/employee relationship). In fact, the Second Circuit has made clear that an adverse but legitimate consequence instruction may be appropriate depending on the circumstances. *See United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022). As the defense expects that the government will present evidence of legitimate employer warnings to OneTaste employees, this instruction is appropriate here.

The government's reasoning for rejecting the adverse but legitimate consequences instruction makes little sense. It argues that, because the Second Circuit affirmed the district court's denial of such an instruction in *Zhong*, this Court should "rely on the government's proposed instructions, which are less confusing and supported by precedent." Dkt. No. 223 at 45. First, presumably, the instruction that the government argues is "less confusing" and covers this point is that "[a] threat of serious harm . . . need not involve any threat of physical violence" and "includes improper threats of consequences." *Id.* at 23. It is unclear, however, since the government states its proposed instructions are "less confusing," but does not clarify to which part of its instructions it is referring. *Id.* at 45. Second, there is nothing confusing about what the Second Circuit stated in *Zhong*. That case made clear that "[w]hether an

employer's threatened consequences are legitimate and therefore do not qualify as serious harm will depend on the surrounding circumstances in each case." *Zhong*, 26 F.4th at 550 (internal quotation marks omitted). The Second Circuit also made clear the district court has discretion whether to charge the jury with an adverse but legitimate consequences instruction. *See id*. Third, the additional language the defendants propose above regarding this instruction undermines any claim that the government's instruction is "less confusing." Indeed, the government's instruction about "improper threats of consequences" does nothing to explain what might constitute such an "improper threat." The defendants' proposed instruction, on the other hand, clarifies the distinction between legitimate warnings to employees about the adverse consequences of the employees' actions and serious threats sufficient to unlawfully compel labor. This Court should give the defendants' proposed instruction.

III. Conclusion

For the foregoing reasons, the Court should grant defendants' requests regarding the serious harm instruction and the adverse but legitimate consequences instruction. Because this ruling is critical to and will shape the presentation of the defense at trial, this Court should issue a pre-trial ruling on these instructions.

Respectfully submitted,

Celia Cohen

Michael P. Robotti