

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EMR/KTF:KCB/NCG/SMF<br>F. #2018R01401 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

April 4, 2025

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Cherwitz, et al.
                Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully submits this motion to (*i*) preclude the defendants Rachel Cherwitz and Nicole Daedone from calling Special Agent Elliot McGinnis of the Federal Bureau of Investigation ("FBI") as a witness at trial because the bases set forth in their letter pursuant to United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951) ("Touhy") are improper; and (*ii*) object to the defendants' March 23, 2025 letter seeking Rule 17 subpoenas—to media entities and a law firm—since these subpoenas are the classic "fishing expedition" that is precluded by United States v. Nixon, 418 U.S. 683, 702 (1974) and its progeny.

      As the government intends to soon prove at trial, this is a case in which the defendants, over a period of years, subjected a series of different individuals—frequently survivors of rape, abuse, or addiction—to a sustained campaign of economic, sexual, emotional, and psychological abuse; surveillance; indoctrination; and intimidation to obtain their free sexual services and manual labor for the defendants' personal and professional benefit. Contrary to the defense's representations, this case is not remotely built on one individual, their purported journals, privileged materials, or media reports.

      But improperly putting the government's investigation on trial is transparently what the defense seeks to do through their Touhy request and requests for Rule 17 subpoenas to media companies and a law firm, notwithstanding prior court orders to the contrary. And there already exists a clear record that counsel are willing to make inflammatory statements to the Court based on nothing other than rank speculation. E.g., Cherwitz Mot. for Disclosure of Ex Parte Submission, ECF Dkt. No. 311. It is thus imperative that the Court closely police the defense to prevent "turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into

matters far beyond the scope of legitimate issues in a criminal trial." United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984). While the defendants are certainly permitted to cross-examine witnesses about their interactions with government personnel or the media to the extent relevant to impeach the witnesses' credibility, the Court should reject defense counsels' improper invitations to turn this trial—in which the only question is whether the defendants conspired to obtain labor and services of others through a variety of unlawful tactics—into a wide-ranging sideshow about the government's investigation.

I. The Defendants' Bases for Calling Special Agent McGinnis as a Witness are Improper

The reasons, bases, and topics the defense has thus far articulated for calling Special Agent McGinnis, as set forth in their Touhy requests, are wholly improper.

A. Factual Background

On December 23, 2024, counsel for the defendants submitted a letter to an Associate Division Counsel at the FBI to request the testimony of Special Agent McGinnis at trial. The defendants provided the following list of topics about which they intend to question Special Agent McGinnis:

1. Discussions with former OneTaste employees and other government witnesses—including information regarding how he was introduced to the witnesses, mode and manner of communications, promises or other consideration given to the likely government witnesses, etc.;

2. Interactions and communications with witnesses [Ayries] Blanck and her sister, including when and how he came into

2

   possession of Ms. Blanck's journals, and the nature and extent
   of his alterations of the journals;

 3. Interactions and communications with third parties about this case, including media outlets and Netflix;

 4. Review of OneTaste company records, witness-produced documents, and witness interviews;

 5. Discussions and communications regarding government-sponsored victim assistance services;

 6. FBI policies and procedures regarding investigation integrity, communications with victims/witnesses, and evidence handling/logging/disclosure.

Ex. A at 2-3 (Dec. 23, 2024 Letter). They also noted that Special Agent McGinnis interviewed dozens of witnesses, whom the defense expects to confront with statements the witnesses made to Special Agent McGinnis, which they expect to be inconsistent with the witnesses' testimony at trial. Id.

   The defendants stated that they "intend[] to demonstrate at trial that much of the anticipated government witness testimony from former OneTaste employees was the product of SA McGinnis and others' improper influence." Id. They indicated their intent to challenge the integrity of the investigation conducted by Special Agent McGinnis and his alleged conduct, including "instructing witnesses to destroy evidence and conceal materials," "mishandling and concealing privileged marked materials," "submitting misleading sworn statements to the court," "manipulating witness statements and documentary evidence and cherry-picking alleged 'victims' through an organized effort to recruit" witnesses. See id.

   Finally, the defendants indicated that they intended to provide a subpoena for the presence of Special Agent McGinnis at trial, which was scheduled for January 13, 2025. See id. However, on or about January 8, 2025, the trial was rescheduled to May 5, 2025.

   On or about February 21, 2025, counsel for defendant Cherwitz, on behalf of both defendants, submitted a letter to an Associate Division Counsel at the FBI to supplement the defendants' December 23, 2024 letter. The defendants "reiterate[d] the request for SA McGinnis' testimony" at the upcoming trial. Ex. B. at 1 (Feb. 21, 2025 Letter). The defendants noted that Special Agent McGinnis's "testimony is necessary for this case given his extensive knowledge about the investigation, including his personal interviews of over 90 witnesses, and his familiarity with the mountains of discovery produced in this case." Id. The defendants further noted that they anticipate that "SA McGinnis will testify that certain individuals had experiences that will refute the charge of conspiracy to commit forced labor." Id. at 1. Finally, the defendants asserted that "SA McGinnis has been involved in many unsound tactics that occurred during the investigation and tainted the indictment in this case," and the defendants

3

discussed allegations that Special Agent McGinnis fabricated and mishandled evidence. Id. at 2. The defendants noted that such allegations are "a key part of the defense in this case." Id.

    B.    Applicable Law

        1.  *Touhy* Regulations

Under 5 U.S.C. § 301, the head of every Executive Branch agency is authorized to prescribe regulations for the government of the department, the conduct of the employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property. See United States ex. rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951). A federal agency is not required to comply with any request for testimony that fails to comport with the applicable agency regulations governing the production or disclosure of such information. See id. (authorizing such regulations).

Subpart B of Part 16 of Title 28, Code of Federal Regulations, sometimes referred to as the Department of Justice's Touhy regulations, provides that "[a]n attorney shall not reveal or furnish any . . . testimony or information . . . without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding, the Director of the Executive Office for United States Trustees (hereinafter referred to as "the EOUST"), or such persons' designees." The regulations are intended to provide a procedure for subpoenaing federal agency employees, so the government has an opportunity to protect certain types of information from unwarranted and unconsidered disclosure. The regulations require, among other things, that the party making a demand for oral testimony must provide an affidavit, or, if that is not feasible, with a statement setting forth a summary of the testimony sought by the demand and its relevance to the proceedings. See 28 C.F.R. § 16.23(c); see also United States v. Duncan, No. 18-Cr-289 (SHS), 2019 WL 2210663, at *3-4 (S.D.N.Y. May 22, 2019) (granting government's motion to preclude testimony of agent where Touhy letter identified three irrelevant areas of examination). The government uses the summary, in consultation with the originating component—here, the FBI—to determine whether to authorize the testimony. See 28 C.F.R. §§ 16.23; 16.24(a), (b).

        2.  Prior Inconsistent Statements

"The Second Circuit has held that extrinsic evidence of a prior inconsistent statement may be introduced for the purpose of impeaching a witness's credibility only if (1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to cross-examine the witness thereon." United States v. Mahaffy, No. 05-CR-613 (S-3) (ILG), 2007 WL 1213743, at *4 (E.D.N.Y. Apr. 24, 2007) (internal citation and quotation marks omitted); Fed. R. Evid. 613(b).

The threshold questions are "whether the proffered statement in fact is inconsistent with the testimony sought to be impeached" and "whether there is any variance between the statement and the testimony that has a reasonable bearing on credibility." United States v. Ghailani, 761 F. Supp. 2d 114, 117-18 (S.D.N.Y. 2011). "[I]n certain circumstances, a

witness's failure to recall a prior statement regarding a subject at issue in the trial is so incredible that it may be deemed inconsistent and thus subject to impeachment by extrinsic evidence." United States v. Ashburn, No. 11-CR-303 NGG, 2015 WL 5098607, at *27 (E.D.N.Y. Aug. 31, 2015), rev'd in part on other grounds sub nom. United States v. Laurent, 33 F.4th 63 (2d Cir. 2022).  But a "witness's inability to recall a prior statement is not, per se, inconsistent."  4 Weinstein's Federal Evidence § 613.04 (2023); United States v. Boustani, 2019 U.S. Dist. LEXIS 196716, *3-5 (E.D.N.Y. Nov. 3, 2019) ("The trial testimony of the witnesses reflects their inability to recall a prior statement rather than an outright denial.  As such, there is no 'variance between the statement and the testimony that has a reasonable bearing on credibility.'").

Even where the foregoing requirements are satisfied, the party seeking to impeach based on a prior inconsistent statement must satisfy several other requirements.  The party must show that the extrinsic evidence of the prior inconsistent statement "is competent and otherwise admissible."  Ashburn, 2015 WL 5098607, at *27 (quoting Ghailani, 761 F. Supp. 2d at 118); see also United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (FBI notes offered to impeach not attributable to witness because "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them" (citation omitted)). The party must also show that the impeachment by prior inconsistent statement relates "to a material rather than a collateral matter." Ashburn, 2015 WL 5098607, at *27 (citations omitted). In other words, "the introduction of 'extrinsic proof of a prior inconsistent statement' is only appropriate as it relates 'to matters which are not collateral, *i.e.,* as to those matters which are relevant to the issues in the case and could be independently proven.'"  United States v. Dore, No. 12 CR 45 RJS, 2013 WL 3965281, at *6 (S.D.N.Y. July 31, 2013) (citing United States v. Blackwood, 456 F.2d 526, 531 (2d Cir. 1972)); and United States v. Purdy, 144 F.3d 241, 245-46 (2d Cir. 1998)).

Finally, the court may exclude extrinsic evidence of a prior inconsistent statement under Rule 403.  United States v. King, 560 F.2d 122, 128 n. 2 (2d Cir. 1977) ("Rule 613 and Rule 403 fulfill separate functions.  Although admissible under 613 the papers could be excluded under 403.").  Indeed, a "district court enjoys substantial discretion with respect to extrinsic evidence of inconsistent statements and is 'not unequivocally bound to admit any or all extrinsic evidence of a prior inconsistent statement.'"  Mahaffy, 2007 WL 1213743, at *4.

C. The Court Should Preclude Testimony of Special Agent McGinnis on the Proffered Topics

While it appears the defendants have generally complied with Touhy's procedural requirements by submitting letters outlining testimony topics to the appropriate government officials, the bases articulated by the defense for calling Special Agent McGinnis are wholly improper.  Thus, absent development at trial of an appropriate basis to call an agent to testify, the Court should not permit the defendants to call Special Agent McGinnis.

5

1. The Defendants Seek Irrelevant and Inadmissible Testimony

The Court should not permit the defense to elicit the requested testimony from Special Agent McGinnis because the defendants improperly seek largely irrelevant and inadmissible evidence.

For example, Topic 1—discussions with former OneTaste employees, including information regarding how Special Agent McGinnis "was introduced to the witnesses" and their "mode and manner of communications" —is entirely irrelevant to the charged crime. And as to "promises or other consideration" allegedly provided to government witnesses, the defendants will have the opportunity to cross-examine the government's witnesses on any such "promises or other consideration." As to Topic 2—"interactions and communications with witnesses [Ayries] Blanck and her sister," including regarding Blanck's journals—as the defendants are aware, the government is not calling Blanck or her sister as a witness. Therefore, any testimony from Special Agent McGinnis regarding statements from Blanck or her sister is plainly hearsay, and the defendants should not be permitted to call Special Agent McGinnis for this purpose. Moreover, any minimal probative value of such information would be substantially outweighed by the significant risk of confusion of the issues before the jury and of wasting time, and, though the defendants fail to specify how such topics would be elicited, would likely run afoul of both Federal Rule of Evidence 613(b) and various hearsay prohibitions, in addition to Rule 403.

Likewise, the defendants' February 21, 2025 letter noted that Special Agent McGinnis "will testify that certain individuals had experiences that will refute the charge of conspiracy to commit forced labor." Ex. B at 1. First, the Court precluded precisely this type of evidence as irrelevant and unlikely to withstand Rule 403. See Dec. 10, 2024 Tr. at 55-56. And second, insofar as any such testimony is relevant, eliciting this testimony from Special Agent McGinnis—as opposed to directly from an individual with such alleged experiences—is plainly hearsay.

Additionally, as to Topics 3 and 5, the defendants seek to admit testimony by Special Agent McGinnis as to his "communications with third parties about this case, including media outlets and Netflix," and "discussions and communications regarding government-sponsored victim assistance services." First, Special Agent McGinnis's communications with third parties, including media outlets, are not relevant to the charged crime. Indeed, to the extent the defendants seek to argue that the FBI somehow colluded with the media and Netflix, this Court has already ruled that any such argument is irrelevant. See Nov. 15, 2024 Tr. of Proc. at 83. Moreover, communications and information regarding services provided to witnesses have been produced where such communications constitute 18 U.S.C. § 3500 material or material otherwise discoverable, see ECF No. 290 (detailing such disclosures) and, thus, any inquiry regarding such services—to the extent relevant to the issues at trial—should be directed to the witnesses themselves. Second, to the extent the defense is offering such witness testimony for its truth through Special Agent McGinnis, the defense has not identified any permissible hearsay exception. See Fed. R. Evid. 801, 803, 804; United States v. Carton, 17 Cr. 680 (CM), 2018 WL 6040652, at *4 (S.D.N.Y. Oct. 26, 2018) (refusing to find out-of-court statements of FBI agent and Victim Witness Unit admissible under Rule 801(d)(2)); United States v. Skelos, No. 15-CR-317(KMW), 2018 WL 2254538, at *5 (S.D.N.Y. May 17, 2018) ("[O]ut-of-court statements by

6

Government agents are generally not admissible as party admissions under Federal Rule of Evidence 801(d)(2)."), aff'd, 988 F.3d 645 (2d Cir. 2021).

As to Topics 4 and 6—"[r]eview of OneTaste company records, witness-produced documents, and witness interviews" and "FBI policies and procedures regarding investigation integrity, communications with victims/witnesses, and evidence handling/logging/disclosure"— they suffer from the same infirmities, or lack sufficient specificity for the government to be able to evaluate their admissibility through an agent, as opposed to a witness with personal knowledge of, e.g., "OneTaste company records [and] witness-produced documents."

Accordingly, the proposed testimony by Special Agent McGinnis on these topics should be precluded.

### 2. The Defendants Cannot Call a Witness to Put the Government on Trial

The defendants' letters to FBI counsel make clear that they seek to call Special Agent McGinnis as a witness to put the government on trial. Their renewed attempt to do so should be rejected. See ECF Dkt. Nos. 169, 170 at 56 (moving in limine to preclude improper arguments about the government's investigation).

"Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999). Evidence elicited to support a broad claim that the government's investigation of the case was improper without this requisite connection to evidence introduced at trial is irrelevant and thus inadmissible under Rule 402 because the jury will be called upon to determine whether the government's investigation was good or bad and not whether the defendant is guilty or not guilty. See United States v. Knox, 687 F. App'x 51, 54 (2d Cir. 2017) (affirming instruction that "the government is not on trial"); United States v. Cordova, 157 F.3d 587, 594 (8th Cir. 1998) (upholding exclusion of "exhaustive exploration of things not done in the investigation" as "time-consuming and of little relevance" because "real issue at trial was whether the government's witnesses were truthful and whether their testimony was sufficient to convict").

It is well within a district court's discretion to preclude the defendant's counsel from questioning witnesses about the adequacy of an investigation. See, e.g., United States v. Manuel Chang, No. 18-CR-00681 (NGG) (CLP), 2024 U.S. Dist. LEXIS 133562, at *8 (E.D.N.Y. July 28, 2024) ("Should the Defense attempt to challenge the adequacy of the Government's investigation through Government or law enforcement witnesses, it will be precluded from doing so."). Any attempt by the defendant to shift the spotlight to efforts the government could have taken in the investigation inevitably diverts the jury's attention from the issues of the trial in violation of Rule 403. McVeigh, 153 F.3d at 1192.

In United States v. Robbins, 197 F.3d 829, 845 (7th Cir. 1999), for example, the Seventh Circuit affirmed the trial judge's refusal to have the "trial . . . become a trial of the investigation," holding that the district court properly excluded under Rule 403 a line of cross-examination by the defendant of a DEA agent where the defendant intended to impugn the

thoroughness of the investigation to demonstrate that people other than the defendant were responsible for the crime. The Court deemed the proffered cross-examination to be of "marginal relevance." Similarly, in United States v. Estell, 641 Fed App'x 552, 556 (7th Cir. 2016), the Court of Appeals upheld the District Court's ruling that prevented the defendant from arguing that the investigation was deficient, which the Court of Appeals held was a "tangential[] issue that could confuse the jury." Indeed, for these reasons, courts regularly instruct the jury that there is no legal requirement that law enforcement agents investigate crimes in a particular way or that the government prove its case through any particular means. See Dkt. No. 236-2, United States v. Kurland, Case No. 20-cr-306 (NGG), at 61 (particular investigative techniques instruction).

      Here, the defendants' letters to the FBI show that the defendants intend to call Special Agent McGinnis to challenge the integrity of the government's investigation. See Ex. A at 2 ("Specifically, Defendants contend that SA McGinnis' investigation lacks essential integrity which is relevant at trial."); Ex. B at 2 ("we reiterate that SA McGinnis has been involved in many unsound tactics that occurred during the investigation and tainted the indictment in this case."). For example, the defendants seek testimony on Topic 2 solely to make baseless allegations against Special Agent McGinnis that he personally altered Ayries Blanck's journals notwithstanding that there is no evidence to support this claim. And the defendants seek testimony on Topics 4 and 6 to suggest that Special Agent McGinnis's review of records and witness interviews were improper, that he mishandled evidence, and that he violated FBI policies and procedures. See Ex. A at 2 (challenging Special Agent McGinnis's conduct, including "instructing witnesses to destroy evidence and conceal materials," "mishandling and concealing privileged marked materials," "submitting misleading sworn statements to the court," "manipulating witness statements and documentary evidence and cherry-picking alleged 'victims' through an organized effort to recruit" witnesses); Ex. B at 2 (stating Special Agent McGinnis "fabricated key evidence in the case" and that evidence in his possession "has been deleted or is missing" and noting that such issues are "a key part of the defense in this case"). The defendants should not be permitted to call the government's investigative techniques into question before the jury, and eliciting testimony from Special Agent McGinnis for that purpose would be plainly improper and confuse the issues. These obvious attempts to put the government's investigation on trial should be rejected by the Court. See Knox, 687 F. App'x at 54 (affirming instruction that "the government is not on trial"); Duncan, 2019 WL 2210663, at *3-4 (granting government's motion to preclude testimony of agent where Touhy letter identified three irrelevant areas of examination).

      Indeed, the Second Circuit has squarely held that a defendant cannot "permissibly have called [an agent] as a hostile witness for the sole purpose of impeaching him." United States v. Shandorf, 20 F. App'x 50, 53 (2d Cir. 2001). The Court should preclude the defendants from calling Special Agent McGinnis absent an additional showing as to what relevant, admissible testimony he could provide.

      3. <u>Testimony Regarding Inconsistent Statements</u>

      Finally, after the witnesses testify at trial, to the extent that the defendants have identified with specificity prior statements from government witnesses that are in fact

8

inconsistent, and after the witnesses have been afforded an opportunity to deny or explain the same, the parties can revisit whether any FBI special agent's testimony would be necessary. However, as no such showing under the relevant requirements outlined above in Section I.B.2 have been met at this time, the Court should preclude the defendants from calling any witness to testify about such statement(s).

II.     The Defendants' Rule 17 Requests Should Be Rejected

The Court has already ruled that "[t]he Court will not permit anything along the lines of a claim that the Government colluded with the media in bringing this case." Nov. 15, 2024 Tr. at 83:14-16. Nevertheless, on March 23, 2025, the defendants filed a letter seeking leave to subpoena Netflix Inc. and other entities collectively referred to as "the filmmakers," "Bloomberg L.P. and/or Ellen Huet" and Reed Smith LLP, a law firm that has represented Ayries Blanck in the course of a civil suit filed by OneTaste against her, to obtain evidence that FBI personnel were "involved in the production of [a] Netflix film" about OneTaste and to ascertain whether "filmmakers were . . . influencing the stories of film participants turned witnesses." ECF No. 301 at 1.

Putting aside their apparent disregard of the Court's prior ruling, the defendants' requests fail to comply with the standards set forth by the Supreme Court in United States v. Nixon, 418 U.S. 683, 702 (1974), as the materials sought are not relevant, admissible, or specifically identified.[1] Indeed, given that the Court has already excluded "anything along the lines of a claim that the Government colluded with the media in bringing this case," these subpoenas resemble an attempt to use criminal proceeding to get documents for use in OneTaste's civil cases against Ms. Blanck, Netflix, and Bloomberg. Nov. 15, 2024 Tr. at 83:14-16. That is not a proper basis for a Rule 17 subpoena.

For the same reasons detailed above and addressed in the government's prior motion in limine, see ECF Dkt. Nos. 169 and 170, the topics described in the defendants' letter are not relevant to the issues at trial. For example, the defendants cite to participation in a Netflix film by Blanck's sister and state that "[t]the central allegation in the Bloomberg article was the story of Ayries Blanck," but as detailed herein, the government does not intend to call Blanck or her sister as witnesses at trial. See ECF No. 301 at 4-6, 7-8. And the only other possible witnesses identified in the defendants' letter as having participated in some manner in the Netflix film do not establish any involvement by the FBI in the production of that documentary, or even any contact whatsoever between members of the FBI and the filmmakers. Id. To the contrary, it only establishes contact by the FBI with potential witnesses, which is a key task of an FBI agent's job. The defendants also seek communications concerning OneTaste between any member of the prosecution team and employees or independent contractors of Bloomberg and argue that the article suggests that such communications occurred, but the article

---

[1] The government incorporates by reference its prior recitation of Nixon's standards in previously briefing a related defense request. See ECF No. 107.

9

merely notes that the FBI interviewed people associated with OneTaste. Id. at 8 n.9. Accordingly, the government objects to the defendants' requests, and specifically the six categories of information set forth in their letter, to either Netflix or Bloomberg.[2]  See id. at 7.

Further, the defendants have cited to no reason why they would be entitled to "communications between Ayries Blanck's civil attorneys . . . and FBI agents and/or prosecutors." Id. at 9. Neither Blanck, nor her attorneys, are anticipated government witnesses at the forthcoming trial and the use of a Rule 17(c) subpoena to obtain communications from the attorneys of an individual who is no longer a witness and who is a party in pending civil litigation involving the defendants' former employer does not meet Nixon's standards.

III.    Conclusion

For the reasons set forth herein, the Court should preclude the testimony of Special Agent McGinnis on the proffered topics and should deny the defendants' request for the Court to issue Rule 17 subpoenas on media entities and a law firm.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    /s/_____
Kayla C. Bensing
Kaitlin T. Farrell
Nina C. Gupta
Sean M. Fern
Assistant U.S. Attorneys
(718) 254-7000

Cc:    Clerk of Court (via ECF)
        Defense counsel (via ECF and email

Attachments (Exhibits A and B)

---

[2]    Bloomberg previously objected to issuance of a Rule 17 subpoena in this case on several grounds, including the reporters' privilege. See ECF No. 109.