

**BONJEAN LAW GROUP, PLLC**

303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

April 14, 2025

**VIA ELECTRONIC FILING:**
The Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *U.S. v. Cherwitz, et el.*, No. 23-cr-146 (DG)

Dear Judge Gujarati:

This letter is submitted on behalf of Defendants in response to the government's motion for a protective order, alleging protective order violations, witness harassment and intimidation, and a hodgepodge of other grievances. [Dkt. No. 318] Without any basis, prosecutors go so far as to implicitly threaten criminal contempt charges against defense counsel. Counsel understands that the prosecutors are offended by certain arguments raised by the defense but threatening criminal charges in retribution for Defendants' challenge to the integrity of the government's investigation is a step too far. The government is free to disagree with Defendants' characterization of the investigation in this case; the adversarial system allows for that. However, the prosecutors should not be permitted to weaponize their office or their charging power to interfere with Defendants' right to a zealous and vigorous defense.

Apart from its own intimidation agenda, the government has another reason for filing its motion. Prosecutors hope to manipulate the Court into revisiting its anonymity ruling as to two seemingly reluctant witnesses, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Even though nothing has changed since the Court made its ruling, the prosecution contends that ▒▒▒▒▒▒▒▒▒▒ suffered "harassment" or "intimidation" because a defense investigator attempted to interview them. As set out below, no one has intimidated ▒▒▒▒▒▒▒▒▒▒. These women seek anonymity for reasons wholly unrelated to harassment, intimidation, or fear of reprisals. Indeed, the argument is non-sensical since Defendants and OneTaste already know the identity of these women.

The government may not use the tool of anonymity to litigate its case in secrecy simply because witnesses are embarrassed about their past. These women are not children who were sex trafficked against their will as was the case in *Maxwell*. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. No witness has *ever* been harassed or intimidated by the Defendants or their counsel. That a witness has been contacted by an investigator is *not* harassment. That a witness does not like that her name appears in news articles in this high-profile case is *not* harassment. That a witness worries about being sued for stealing proprietary documents from his former employer, violating settlement

1



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

agreements, or for publishing false statements in the media is *not* intimidation. The government's accusations of witness intimidation are dishonest.

A.      There Have Been No Prior Violations of Any Protective Orders.

As an initial matter, the government states that there have been prior violations of the protective order in this case. This is false. The government made similar allegations in its August 15, 2025 letter. [Dkt. No 119] The matter was referred to Judge Levy who made no findings that the protective order had been violated or that there had been any witness intimidation, noting that such accusations were serious. [Ex. A – 11/15/2025 Hearing] In fact, before Judge Levy, undersigned counsel demanded a hearing on the prosecutors' flimsy claims. Fed up with the government's bald accusations without any support, undersigned counsel stated, "Judge, we need to have a hearing. You cannot just accuse people of violating protective orders." [*Id.* at 35-36] The court held no hearing, and the prosecutors did not press for one.

The prosecutors now refer back to their prior claims as if they are truth. The claims were meritless then and are meritless now. Defense counsel filed a response to the government's first motion for a protective order and arguments were heard before Judge Levy without finding. To the extent this Court is inclined to revisit these allegations, Defendants incorporate its responsive letter herein [Dkt. No. 133]

B.      The Alleged Misuse of Protective Order Materials.

The government complains that it received a letter from an attorney representing OneTaste, Ezra Landes, that contains "baseless accusations of criminal misconduct and ethical violations against the government" and relies on protected material. As defense counsel for both Defendants informed prosecutors, they did not share any protected material with Mr. Landes and had no knowledge of any material being shared.[1] Counsel also had no knowledge or involvement in the writing of the letter.

---

[1] The government writes in its letter, "counsel of record in the criminal case informed the government that they were unaware of how Mr. Landes received or reviewed 18 U.S.C. § 3500 material." This sentence is misleading as it suggests that defense counsel agreed or conceded that Mr. Landes had reviewed § 3500 material. Defense counsel had no information one way or the other and told the AUSA Bensing as much. AUSA Bensing emailed defense counsel declaring "it has come to our attention that an attorney for OneTaste, Ezra Landes, has access to materials designated as Sensitive under the governing protective order in this case." AUSA Bensing did *not* provide defense counsel with the letter that she has attached as Exhibit B nor did she explain her basis for making this claim. Ms. Daedone's counsel responded by stating "I can shed no light on this. I have no information about the sharing of 3500 with Ezra Landes." Counsel for Ms. Cherwitz stated the same. To the extent the prosecutors suggest that defense counsel conceded that Mr. Landes had accessed § 3500, that statement is inaccurate.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

That said, defense counsel disagrees that the letter is threatening, and many of the criticisms lodged therein are well earned. The contents of the letter focus almost exclusively on Blanck and her fabricated journals. None of this material qualifies as Sensitive and never should have been so designated. The letter was not published to the media and apparently was sent only to an EDNY supervisor. Beyond that, the question of whether attorney Landes had access to any § 3500 material about Blanck[2] and whether there was an intentional violation of the protective order would require an evidentiary hearing. However, we submit no hearing is necessary. It is sufficient here for the Court to direct that, to the extent Mr. Landes had access to § 3500 material that access should be removed. At most, the government's allegation amounts to a claim that a civil lawyer used § 3500 about Blanck to write a letter to the government. Even if true, no further remedy is warranted beyond that.

C.  There Is No Evidence of Witness Harassment and Intimidation.

The government's real agenda in bringing its motion is to persuade this Court to reconsider its anonymity ruling as to two witnesses. But there is *no* basis for reconsideration. Prosecutors have manufactured a "harassment" claim based on nothing more than an investigator attempting to interview two witnesses who declined to be interviewed without incident. What is clear is that two of the government's witnesses ▇▇▇▇▇▇▇▇▇▇) do not want to testify using their real name. It is not because they fear reprisal from the Defendants or OneTaste. That would make little sense since the Defendants already know the identity of these women. Put differently, whether these women testify anonymously (or not) does not protect them from "harassment" or "lawsuits" from OneTaste.

1.  Judge Levy Already Addressed the Claims Against Frank Parlato Which Were Frivolous In Any Event.

The government attempts to revive its stale argument that journalist Frank Parlato[3] targeted Ayries Blanck by calling her a liar in a series of articles he published in August 2024. This argument has not aged well. Parlato's reporting was not harassing; it was a legitimate criticism of a public accuser who had, in fact, fabricated evidence and lied – both in a documentary and to the

---

[2]  It is rich that the prosecution demands a hearing on the question of whether a civil attorney reviewed or saw § 3500 material related to Ayries Blanck's deceptions but for over six months vehemently objected to the defense's request for a hearing about *whether* Blanck fabricated evidence and whether such evidence should be admitted into evidence. The government's priorities are backwards.

[3]  The government insinuates that Frank Parlato is not "real" journalist or that the "Frank Report" is not a "real" news publication. FBI Director, Kash Patel, seemingly disagrees. Director Patel recently "tweeted" an article written by Parlato.

3



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

government. Frankly, it provides a good example of how the press plays a critical role in keeping the system and the witnesses honest. After all, the prosecution showed little appetite for getting to the truth about the authenticity of the journals. But for an unexpected continuance of the trial, the parties might be arguing *Brady* and *Napue* violations in a post-trial motion right now rather than whether Parlato hurt Blanck's feelings by (accurately) calling her a liar. The government remains ambivalent about Blanck's conduct which the government has conceded constitutes violations of 18 U.S.C. § 1001 and surely obstructed justice.

Parlato is not alone in his assessment of Blanck or the troubling role the government played in resisting a truth-seeking hearing about the evidence it referenced dozens of times in its Motion *In Limine*. Numerous media outlets, including the New York Times, the National Review, and Rolling Stone have all reported on Blanck's fabrication of evidence and the government's prolonged defense of the authenticity of the evidence.[4] Presumably, the government does not claim that these publications are "targeting" Blanck for harassment. That Parlato was ahead of the curve on the issue does not mean he was "targeting" Blanck for harassment.

Regardless, as the government likes to point out, Blanck is no longer a witness in this case. The government does not point to any publication by Parlato or anyone else wherein any "government witnesses" have been targeted for harassment. Again, this is an issue that was raised before Judge Levy and abandoned by the government. If this Court finds it necessary, Defendants welcome a hearing on these allegations as they did before Judge Levy back in November 2024.

---

[4]  https://natlawreview.com/article/netflix-content-becomes-federal-evidence-ednys-onetaste-prosecution-faces-scrutiny
https://reason.com/2025/02/19/the-weak-weird-case-against-a-supposed-orgasm-cult/?
https://artvoice.com/2025/02/28/fbi-special-agent-elliot-mcginnis-under-fire-immolation-almost-certain/
https://www.laweekly.com/the-ayries-blanck-journal-controversy-a-legal-battle-over-authenticity-and-truth/
https://www.legalreader.com/court-ruling-highlights-ignored-allegations-of-fbi-misconduct-in-onetaste-forced-labor-case/
https://natlawreview.com/article/netflix-content-becomes-federal-evidence-ednys-onetaste-prosecution-faces-scrutiny
https://www.dailymail.co.uk/news/article-14500563/amp/evidence-orgasmic-mediation-cult-leader-fake-prosecution-admits-onetaste.html
https://www.rollingstone.com/culture/culture-news/orgasm-cult-onetaste-lawsuit-trafficking-allegations-1235298246/
https://reason.com/2025/03/19/fbi-failed-to-spot-faked-evidence-in-case-against-alleged-orgasm-cult/
https://www.nytimes.com/2025/04/04/nyregion/one-taste-orgasmic-meditation-evidence.html
https://natlawreview.com/article/edny-onetaste-prosecution-faces-extraordinary-challenge-defense-goes-over-judges
https://revolver.news/2025/04/netflix-fbi-federal-frame-job-took-down-onetaste-wellness-company/?fbclid=IwY2xjawJo3ypleHRuA2FlbQIxMQABHioWeR4MZhNmjaPQ-DO1DPD_j-be168B3WE5MWX63mLHI5Yd4lJy3CJHUMJ8_aem_VgRy3BeHed-5OGJA5pJmiQ
https://www.law360.com/pulse/articles/2323452/fbi-agent-denounced-by-onetaste-execs-likely-to-testify



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

2.  No Investigator Intimidated or Harassed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The government argues that defense counsel "intimidated" or "harassed" two government witnesses because an investigator(s) attempted to interview these women, and they declined to be interviewed without incident. As a preliminary matter, there is nothing improper about defense efforts to investigate witnesses. Generally, "witnesses belong, neither to the defense nor the prosecution" and "both must have equal access to witnesses before trial." *United States v. Bryant,* 655 F. 3d 232, 238 (3d Cir. 2011); *See also, United States v Barnes,* 2018 U.S. Dist. LEXIS 175443, *42. A defendant's due process rights are violated "[i]f the prosecution impermissibly interferes with the defense's access to a witness such that the conduct "undermines the fundamental fairness of the proceeding." *Id.* at 43.

Even taking the 302s provided by the government at face value (which is difficult to do since they are typically heavy-handed and do not always reliably record witness statements), ▮▮▮▮▮▮▮▮▮ have not been harassed or intimidated by Defendants or OneTaste. They simply do not wish to testify using their real name and will say anything to convince this Court to give them anonymity. Defendants refer this Court back to the filings on this issue. ▮▮▮▮▮ request is particularly absurd where she has publicly spoken about her experiences at OneTaste[5] and continued to work for years in the Orgasmic Meditation space after her time at OneTaste. [Ex. B – Public Post by ▮▮▮▮] Furthermore, everyone associated with OneTaste knows ▮▮▮▮, making her argument that she needs anonymity to protect against reprisals by OneTaste non-sensical.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] This public post attached as Exhibit B was accompanied by a lengthy video detailing her time at OneTaste.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[7] The prosecution suggests that Ms. Daedone's counsel breached New York Rules of Professional Conduct 4.2 when an investigator reached out to ▮▮▮▮▮ who was represented. Of course, the prosecution fails to apprise this Court that upon learning that an investigator may have attempted to interview a represented party, Ms. Daedone's counsel responded within 30 minutes thanking prosecutors for bringing it to her attention. She assured prosecutors that she would look into it. Undersigned counsel then reached out to the investigators and reminded them to double-



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

 however, undersigned counsel agrees that the investigator should have ceased all conversation upon learning she was represented. Counsel has strongly communicated that directive to the investigative services hired by the defense.

That said, no matter how the government spins it, ▇▇▇ has no basis to allege intimidation or harassment by OneTaste and the Defendants who have done literally nothing to engage with her. That ▇▇▇ has paranoid fears about being sued by OneTaste is not a ground for testifying anonymously. It's not even logical since the party that she allegedly fears will sue her already knows who she is and will hear her testimony. Regardless, if the foregoing constitutes intimidation or harassment, it would be Ms. Daedone's counsel who is guilty of it; not the Defendants themselves or OneTaste.

As to ▇▇▇▇ (an unrepresented party), she was contacted by an investigator and communicated that she did not wish to speak to him. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Taking this 302 as true, the conduct does not constitute harassment or intimidation by the Defendants or OneTaste. It's a far cry from threatening someone with criminal charges absent cooperation, which the FBI routinely did in this case.

Like ▇▇▇▇▇▇ reasons for seeking anonymity have nothing to do with fears of harassment or reprisals by OneTaste but center entirely on her past becoming public. As reported in a 302, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The government's claims of harassment or intimidation are disingenuous.

The government's definition of harassment or intimidation is so broad as to cover any expression of an opinion that does not align with its theory of the case. For example, the prosecution continues to characterize legitimate lawsuits brought by OneTaste as "harassing" or "retaliation." The prosecution cannot accept that OneTaste's lawsuit against Blanck for breach of

---

check with attorneys on the case to determine whether witnesses are represented before speaking to them. Counsel for Ms. Daedone also asked prosecutors to kindly provide a list of any witnesses who have counsel to ensure that there were no future mishaps. Clearly, this was not an intentional violation of any rule of professional conduct and any suggestion to the contrary is unwarranted. [Ex. D – Email Communications]

6



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

contract is meritorious and likely to succeed. Indeed, lawyers representing the Blanck sisters withdrew from the case when the government acknowledged that the journals were fake.

Relatedly, the government attempted to characterize as harassment, two emails from Blanck's friends, Summer Engman and Louisa West, wherein they urged Blanck not to advance falsehoods in the media or to the government. Engman and West are not associated with OneTaste, nor were they associated with OneTaste at the time they reached out to Blanck. These are the emails that inexplicably prompted agent McGinnis to guide Blanck to delete her email account. The communications were not harassment; they were good advice from friends who knew that Blanck was not telling the truth.

In sum, there has never been harassment of any witnesses, including ▮▮▮▮▮ who curiously had no difficulties asserting their wishes with the investigators. As argued in Defendants' opposition papers filed at Dkt. No. 233, ▮▮▮▮▮ do not want their names in the press, plain and simple. Nothing has changed. The government's hysteria around non-existent "harassment" is not a basis for allowing these women to hide behind secrecy.

However, if this Court wishes to conduct an evidentiary hearing and have ▮▮▮▮▮ ▮▮▮▮▮ testify about the alleged harassment or intimidation they purportedly received by an investigator, Defendants welcome it. And while we are at it, a hearing should also address agent McGinnis's conduct in interacting with potential witnesses.

D.   Counsels' Responses to Reporters' Question about Matters That Were Already Part of the Public Record Was Not a Violation of Any Rule of Professional Responsibility.

Among the prosecutors' gripes are that defense counsel (primarily Ms. Daedone's counsel) answered reporters' questions after a court hearing that occurred on February 26, 2025. AUSA Bensing accuses defense counsel of violating Local Rule 23.1 because she answered follow-up questions from reporters who were present during the court appearance and were stunned that prosecutors continued to vouch for the credibility of Blanck's journals.

As AUSA Bensing should know, Rule 23.1 speaks to the prohibition on releasing *non-public* information or opinion based on *non-public* information with the intent that it be disseminated publicly and where there is a substantial likelihood that the dissemination will interfere with a fair trial that is imminent. As an initial matter, undersigned counsel did not utter a single word to reporters that was not contained within a publicly filed document or the subject of the in-court hearing or prior hearings. In fact, the question of Blanck's journals' authenticity and agent McGinnis's misconduct had been litigated extensively and had already been reported on dozens of times in the press prior to that press conference. *See* Footnote 4.

The government's reliance on *United States v. Khan,* 538 F. Supp. 2d 929, 932-34 (E.D.N.Y. 2007), is misplaced where the attorney there had engaged in a clear Rule 23.1 violation



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

by identifying individuals by name who he believed were potential government witnesses or cooperators against the defendant, putting numerous people and their families and friends in danger. Counsel did not identify any witness by name except Ayries Blanck who has been referenced countless times in court filings and in open court.

The government also complains that defense counsel "suggested that witnesses are getting paid to testify." Defense counsel did not state that witnesses were getting paid *to testify*. Rather, she contended that they were getting paid for "alleged restitution" and "reimbursement for therapy." This is true. Counsel noted that the checks were being cut by "New York State victim services" but through the apparatus of the federal government." This is also true. Again, this was an issue raised in a public filing on February 25, 2025.[8] [Dkt. No. 285] Counsel did not state anything that was not already stated in a public filing or in a court appearance.

With no basis whatsoever, the government asks this Court to enter a gag order out of "necessity" to prevent the parties from making extrajudicial statements regarding the credibility of witnesses, the merits of the case, and the anticipated evidence at trial. A "gag order" under Rule 23.1 is an extreme remedy "to be issued only as a last resort." *United States v. Combs,* 2024 U.S. Dist. LEXIS 204491, *2 (S.D.N.Y. Nov. 8, 2024). This Court has an affirmative duty to ensure a fair trial for both parties (although only the Defendants' right to a fair trial is protected by the Due Process clause), but this duty must be balanced with the protections the First Amendment affords. *Id.* at 5. After all, "prior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press. Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). Less restrictive alternatives must be considered and rejected before imposing a restraint on speech. *In re Application of Dow Jones & Co.,* 842 F. 2d 603, 611 (2d Cir. 1988).

---

[8] During a hearing on Defendants' motion to issue Rule 17 subpoena to New York State Office of Victim Services ("OVS"), prosecutors generally denied the government's role in securing financial benefits for witnesses. As of January 23, 2025, the prosecution admitted that five witnesses had sought financial support. [Ex. F – Email Communications; Ex. G – Gov. Giglio Letter] Based on references in communication provided to the defense, the number appears to be in the teens. At least one witness has been paid in excess of $33K from OVS. The discovery disclosed to the defense shows that the FBI and even prosecutors assigned to the case work hand in glove with OVS, including by helping witnesses fill out applications, accepting invoices, and monitoring the status of payments. ███████████████████████████████████████████████████████████████ AUSA Bensing professes ignorance as to how the system works but the discovery shows otherwise. Communications between Angela Jackson (FBI personnel) and government witnesses reflect that Angela Jackson completed portions of the witnesses' applications to New York State OVS, gathered information for submission, corresponded directly with OVS, and communicated with witnesses about payments. [Exhibit I at pages 2, 4, 8-10; Ex. J] This information formed the basis for Defendants' motion to issue Rule 17 subpoenas and even the government recognizes this information as *Giglio* material.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

The government points to no violations of Rule 23.1 and has made no showing that a gag order is necessary in this case. As a point of comparison, the government had no qualms about issuing a scandalous press release when it indicted the Defendants, creating a frenzy of media activity that caused unquantifiable prejudice to the Defendants who are presumed innocent.[9] But when the government's conduct comes under fire, it tries to hide behind a gag order. There is no basis for a gag order. The defense has said very little publicly and, when it has, it has confined its comments to matters that are already a matter of public record.

E.   No Remedial Action Is Warranted Where the Government Has Not Made Even a *Prima Facie* Case of Intimidation or Harassment.

As detailed above, the government has failed to make any showing that a government witness has been intimidated or harassed by Defendants or OneTaste. Nothing has changed since the issue of anonymity was first raised. Accusations of intimidation or harassment are serious allegations that should not be bandied about carelessly. If the Court believes this issue warrants a hearing, Defendants welcome it.

As stated above, the Court also should reject the prosecution's request for a gag order which was based on nothing more than counsel answering reporters' questions about matters raised publicly in filings and the courtroom.

F.   Defendants Have Complied with Their Rule 26.2 or Rule 16 Obligations.

Contrary to the government's assertions, defendants have not failed to comply with Federal Rules of Criminal Procedure 16(b) and 26.2. *See* Apr. 8, 2025 Gov't Letter, Dkt. No. 318 at 12. As an initial matter, despite repeated defense requests, the government refuses to narrow down its witness list or its exhibit list to evidence that will realistically be presented during its four-week case-in-chief. Indeed, the government has marked thousands of exhibits, including voluminous email communications (with significant admissibility problems, as discussed below) and video evidence, which would extend this trial for months. Thus, the defense has no realistic notice of what the government's case-in-chief will look like in this case—perhaps, because the government still does not know itself.

As this Court is aware, Rule 16(b)(1) requires the defense to produce to the government documents and other items it intends to use in its "case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(ii). Rule 26.2 requires the defense to turn over a witness's statements after the witness has "testified on direct examination." Fed. R. Crim. P. 26.2(a). Needless to say, the defense's case-in-chief—including whether it will present any evidence and, if so, which witnesses it will call and documents it will introduce into evidence—is highly dependent on the government's case-in-chief. Without any notice of what that case will actually look like, the defense cannot identify with any

---

[9] https://www.justice.gov/usao-edny/pr/onetaste-founder-and-former-head-sales-indicted-forced-labor-conspiracy

9



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

certainty what its case-in-chief will look like. Therefore, once the government narrows down its case in a realistic manner, and the defense identifies what witnesses and evidence it will present in its case-in-chief, it will endeavor to turn over that material as soon as practicable, in the interest of expediting trial.

The defense reiterates, however, that it has no obligation to produce Rule 26.2 material before its witnesses testify. *See* Feb. 12, 2025 Opp. to Gov't Mot. for Discovery, Dkt. No. 279 (collecting authority). The government persists in ignoring the plain language of the rule with its repeated claims that the defense has somehow not complied with its obligations. Below, the defense also reiterates that it has no obligation to turn over (1) documents that are in the possession, custody and control of OneTaste, but not the defendants and (2) video interviews conducted by OneTaste counsel that the government has conceded are protected work-product and Judge Chen has so ruled.

1.     OneTaste's Documents are not in the Possession, Custody or Control of the Defendants.

The government seems to believe that, because the defendants and OneTaste have a common-interest privilege under a joint-defense agreement, the defendants have possession, custody, and control of OneTaste's documents. That is not accurate, and the government cites no authority for such a proposition. While, of course, documents relevant to a litigation may be shared under such an arrangement, which documents are shared is attorney-client privileged and work-product. The defendants asked for certain company attorneys to be listed on the protective order, so that they could share protected material under their common-interest privilege. Despite the government's contrary claim, however, nothing in the protective order indicates that, by adding OneTaste attorneys to the protective order, the defendants somehow took possession, custody and control of all OneTaste documents, including its email servers. The law, in fact, says the opposite.

As former employees of OneTaste, the defendants are not in possession, custody or control of the company's documents. *See Lowe v. D.C.*, 250 F.R.D. 36, 38 (D.D.C. 2008) (holding that former Department of Health employees "d[id] not have 'possession, custody, or control' of documents held by their former employers, and plaintiff did not present evidence to the contrary"); *Bryant v. Armstrong*, 285 F.R.D. 596, 607 (S.D. Cal. 2012) (holding former employee could not be compelled to produce records from her former employer when the records were not in her custody, possession, or control); *Lopez v. Chertoff*, 7-cv-1566 (LEW), 2009 U.S. Dist. LEXIS 50419, at *4 (E.D. Cal. June 2, 2009) ("[A]s a former employee . . . [the defendant] neither has possession, custody, or control of documents held by his former employer . . . .").

Even if the defendants have *access* to certain OneTaste documents through the joint-defense agreement, such access does not amount to possession, custody and control. *See In Re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981) ("That [the employee] had access to the records is irrelevant, for mere access is not possession, custody, or control."); *Dotson v. Edmondson*, 16-cv-15371 (SM) (JVM), 2017 U.S. Dist. LEXIS 159571, at *18 (E.D. La. Sept. 28, 2017) ("[I]n the case of an employee who has access to his employer's documents for the purpose



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

of completing his work for the employer, it is not reasonable to presume that such access means the employee has the legal right to personally possess those documents outside of his employment."). The defendants have no obligation to produce documents in the possession, custody and control of OneTaste.

    2.    The Defendants Have No Obligation to Turn Over Video Interviews in the Possession, Custody and Control of OneTaste.

The government has repeatedly argued that the defendants have an obligation to turn over video interviews conducted by OneTaste counsel in the possession, custody and control of OneTaste. *See* Apr. 8, 2025 Gov't Letter, Dkt. No. 318 at 12. This argument fails for numerous reasons. First, as described above, they are not in the possession, custody and control of the defendants, so the defense has no obligation to produce them under Rule 26.2. Second, even assuming these videos were discoverable under Rule 26.2, the government only would be entitled to videos reflecting statements of defense witnesses, if any, not all videos. Lastly, even that limited set of videos is not discoverable under Rule 26.2, because they are protected work-product material, as the government already has conceded in related litigation before Judge Chen. *See* Ex. K at 8.

As to this latter point, in granting OneTaste's motion to quash the government's subpoena for the videos, the government conceded and Judge Chen already ruled that these recorded interviews are work product in their entirety. *See id.* at 7–12. Judge Chen held the government failed to both show a substantial need for these videos and that it would be unable to obtain the substantial equivalent of the materials by other means without undue hardship, by reaching out to these witnesses on its own. *See id.*

Rule 26.2 exempts privileged and work-product material from production; it instructs the Court to conduct an *in camera* review to excise any protected materials. *See* Fed. R. Crim. Pro. 26.2(c) ("If the party who called the witness claims that the statement contains information that is privileged . . . the court must inspect the statement in camera. After excising any privileged . . . portions, the court must order delivery of the redacted statement to the moving party."); *United States v. Watts*, 934 F. Supp. 2d 451, 496–97 (E.D.N.Y. 2013) (denying production of protected work-product after *in camera* review under Rule 26.2); *see also United States v. Jacques Dessange, Inc.*, No. S2 99 CR 1182, 2000 U.S. Dist. LEXIS 3734, at *7, 9 (S.D.N.Y. Mar. 27, 2000) (noting that there is a "strong societal interest" in giving a criminal defense attorneys' notes "the greatest protection" and stating "the Second Circuit has noted the severely restricted scope of discovery of documents created by a criminal defendant's attorneys"). However, because the government has conceded and Judge Chen has ruled that these recordings are protected work product in their entirety, the defendants submit that there is no need for the Court to review the recordings *in camera*, as their content is entirely exempt from production under Rule 26.2. The Court should deny the government's request for production of these videos.

11



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

G.     Motion to Exclude Communications Collected From OneTaste.

The government notes in its submission that OneTaste counsel indicated it had discussed the government's request that it certify certain records as business records with defense counsel. *See* Apr. 8, 2025 Gov't Letter, Dkt. No. 318 at 12–13. The government appears to contend that defense counsel's common-interest communications with OneTaste counsel regarding materials directly relevant to this litigation somehow indicates the defendants have possession, custody and control over all OneTaste documents.[10] For reasons already discussed, that argument fails.

Moreover, as the government knows, the defense has the right to challenge whether any exhibits qualify as business records. *See* Fed. R. Evid. 902(11). A review of the government's expansive exhibit list demonstrates that it is attempting to certify records as OneTaste business records, in particular email and text communications and social media posts, which clearly do not qualify under the rules. *See* Fed. R. Evid. 803(6) and 902(11). Given that the government has marked more than 1300 "communications" on its exhibit list, and the defense anticipates that it will object to introduction of many of them at trial, we respectfully request that the Court issue a legal ruling in advance of trial to clarify the appropriate framework for evaluating the admissibility of such communications and to preclude the government from admitting "communications" that do not meet the relevant hearsay exceptions. We expect that such a ruling will streamline the resolution of the defense's objections at trial.

3.     Communications among OneTaste Employees and between OneTaste Employees and Customers Do Not Automatically Qualify as Business Records.

Many of these exhibits that the government intends to admit at trial are emails and text communications and social media posts that were not regularly kept records of regularly conducted business activity of OneTaste. Simply because OneTaste employees emailed, texted or otherwise messaged each other or customers does not make such communications business records under Federal Rule of Evidence 803(6). Emails and texts are "categorically distinct" from other types of purported business records. *United States v. Weigand*, No. 20-CR-188 (JSR), 2021 U.S. Dist.LEXIS 28417, at *6 (S.D.N.Y. Feb. 14, 2021). ""Rule 803(6) only applies to a record when 'making the record was a regular practice of that [regularly conducted business] activity.'" *Id.*

---

[10] Any conversation between OneTaste counsel and defense counsel regarding business records certifications is protected under the common-interest privilege. Under the common-interest privilege, all parties' consent is required to waive privilege. *See United States v. Napout*, 2017 U.S. Dist. LEXIS 34759, *9 (E.D.N.Y. 2017). The defendants have not and do not waive privilege over any such conversations. The government's attempt to rely on common-interest privileged communications without confirming with defendants whether they have waived is particularly concerning, in light of the government's history of disregarding the attorney-client privilege in this case. The defense requests that the government's summary of common-interest communications be redacted from its public filing and that it refrain from relying on such communications in any way in the future.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

(alterations in original). "The mere fact that [a company] requires its employees to send and receive emails, in general, does not mean that every [company] employee email is self-authenticating." *Id.* "Put differently, Rule 803(6) speaks not of the medium by which a record is recorded (*e.g.*, email) but rather the content of the record itself." *Id.* "An email does not become a business record by virtue of merely discussing the entity's business." *Weisfelner v. Blavatnick (In re Lyondell Chem. Co.)*, 09-ck-1002, 2016 Bankr. LEXIS 3768, at *11 (S.D.N.Y. Bank. Oct. 19, 2016).

Accordingly, emails, texts or social media posts collected from OneTaste do not qualify as business records, if they relate to activity that is not "regularly conducted or part of recurring business activity" or if "there is no indication that making the [communication] record was a regular part of that activity." *Id.* (finding emails not business records that, among other things, described preparations for long-range plan and upcoming tasks, contained "one-off questions among team members" and "sporadic internal discussions," and discussed "unique occurrence[s]"); *Hampson v. State Farm Mut. Auto Ins. Co.*, 12-cv-258 (BKS/CFH), 2015 U.S. Dist. LEXIS 194378, at *24 (N.D.N.Y. Oct. 22, 2015) ("The casual nature of the emails indicates that they are more akin to telephone calls than to records of a regularly conducted activity."); *New World Trading Co. v. 2 Feet Prods., Inc.*, 11-cv-6219 (SAS), 2014 WL 988475, at *1 (S.D.N.Y. Mar. 13, 2014) (holding emails not business records that "contain unique and sporadic communications, not created as a record of 'any regularly conducted business activity'"); *Rosioreanu v. City of New York*, 07-cv- 2925 (LB), 2012 U.S. Dist. LEXIS 26424, at *7 (E.D.N.Y. Feb. 12, 2012) (concluding "emails written by plaintiff regarding the conditions of her employment" were not admissible as business records). Moreover, an email, text or social media post written for "personal purposes" or "in anticipation of any litigation" does not qualify. *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). And, such a communication from a third-party does not qualify in the absence of proof that it was sent and kept as part of regularly conducted business activity. *See Al Infinity, LLC v. Crown Cell, Inc.*, 20-cv-4813 (NRB), 2023 U.S. Dist. LEXIS 139284, at *21 & n.9 (S.D.N.Y. Aug. 9, 2023).

More fundamentally, the underlying rationale for the business records exception to the hearsay rule is that such records have "sufficient indicia of trustworthiness to be considered reliable." *Saks Int'l, Inc. v. M/V "Export Champion,"* 817 F.2d 1011, 1013 (2d Cir. 1987*)*. Here, many of the email, text and social media communications marked by the government as exhibits simply are not reliable enough to meet this hearsay exception. They are not typical business records, like regular reports of sales numbers or periodic profit and loss statements. Rather, among other things, they are internal discussions about irregular events and issues; hearsay summaries of other persons' experiences, feelings and opinions; after-the-fact subjective evaluations of events and other persons' experiences at events; complaints by customers, including those trying to get refunds; and personal concerns, gossip or commentary. In short, many of these communications contain the precise type of unreliable statements that the hearsay rules are designed to keep out of trial. This Court should exclude them.[11]

---

[11] The government may also seek to admit certain of these communications under other hearsay exceptions. In that regard, the defense notes that many of these communications do not qualify under the present-sense impression or then-existing state-of-mind exceptions, because they are after-the-fact discussions of past events. *See* Fed. R. Evid.

13



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

    4.    <u>Admitting Communications Containing Employee and Customer Complaints May Violate the Defendants' Confrontation Clause Rights.</u>

The government also intends to introduce communications that contain employee and customer complaints. If the government offers exhibits recounting an employee's or customer's allegation of potentially criminal conduct, the defense will object on Confrontation Clause grounds, to the extent the government seeks to offer that exhibit for its truth.

The Confrontation Clause bars the introduction of "testimonial hearsay" at trial. *Smith v. Arizona*, 602 U.S. 779, 784 (2024). Thus, a statement is inadmissible under the Confrontation Clause if it meets two requirements. *See id.* First, it must be "testimonial," a category of statements which includes those statements made "under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." *Id.* at 784–85 (alteration, citation and internal quotation marks omitted). Second, the statement "must be hearsay—"meaning, out-of-court statements offered to prove the truth of the matter asserted." *Id.* at 779 (internal quotation marks omitted). Emails, texts and social media posts may violate the Confrontation Clause under this rationale. "If the purpose of an [] employee's [or customer's] email was to establish or prove past events potentially relevant to later criminal prosecution, then the defendants must be permitted to cross-examine the declarant." *Weigand*, 2021 U.S. Dist. LEXIS 28417, at *6 (citation and internal quotation marks omitted). The defense expects to object to such exhibits on this basis, and the Court should exclude them.[12]

---

803(1), (3); *United States v. Dawkins*, 999 F.3d 767, 790 (2d Cir. 2021) ("This exception specifically excludes a statement of memory or belief to prove the fact remembered or believed. That exclusion is necessary to prevent the exception from swallowing the hearsay rule." (internal quotation marks omitted)). Moreover, not every employee of OneTaste is an alleged coconspirator and not every statement made by a OneTaste employee—alleged co-conspirator or not—is in furtherance of the charged forced labor conspiracy. The government must meet those preconditions to satisfy Federal Rule of Evidence 801(d)(2)(E). *See United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001) ("To be in furtherance of the conspiracy, a statement must be more than a merely narrative description by one co-conspirator of the acts of another."). Based on the government's exhibit list, it is not clear that it plans to adhere to these limitations at trial, and the defense expects it will need to object on these bases.

[12] The Second Circuit has held that customer complaints may be admissible to prove a defendant's state of mind, where relevant, and pursuant to an appropriate limiting instruction. *See United States v. Moseley*, 980 F.3d 9, 27 (2d Cir. 2020). The defense expects to object on relevance grounds, especially to the extent there is no evidence that any such complaint was brought to the attention of the defendants. But to the extent the Court admits any complaint as relevant to the defendants' state of mind, it will request an appropriate limiting instruction. *See id.*



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

Respectfully Submitted,

/s/JENNIFER BONJEAN
One of the attorneys for Nicole Daedone
Bonjean Law Group, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
718-875-1850
Jennifer@bonjeanlaw.com



/s/CELIA COHEN/MICHAEL
ROBOTTI Celia A. Cohen
Michael P. Robotti
Counsel for Rachel Cherwitz
Ballard Spahr, LLC
1675 Broadway, 19th Floor
New York, NY 10019
212-223-0200
cohenc@ballardsphar.com
robottim@ballardspahr.com