

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| KCB/KTF/NCG/SMF | *271 Cadman Plaza East* |
| F. #2018R01401 | *Brooklyn, New York 11201* |

May 11, 2025

By ECF to the Honorable Diane Gujarati

      Re:    United States v. Rachel Cherwitz, et al.
                  Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully requests that the Court preclude or substantially limit defense questioning of non-victim witnesses who are current or former members of OneTaste regarding whether they subjectively enjoyed their time at OneTaste or personally benefited—spiritually, psychologically, or otherwise—from their participation in OneTaste as irrelevant, cumulative, and confusing under Federal Rules of Evidence 401, 403 and 611(a)(2). The Court should also substantially curb defense presentation regarding OneTaste's operations and offerings on the same grounds. Such testimony substantially risks confusing the issues and misleading the jury. And as a practical matter, questioning on these topics to date has already proven cumulative and wasted substantial trial time. Relatedly, to the extent necessary, the government respectfully requests that the Court impose reasonable limitations on the length of defense cross-examinations.[1]

      While non-victims may certainly testify as percipient witnesses, or be cross-examined regarding their bias, untruthfulness, or poor memory, their own subjective feelings about their time at OneTaste is irrelevant to the issue of whether the defendants conspired to force or coerce the victims' labor. And even if a non-victim's feelings were marginally relevant, such testimony should be excluded under Rule 403. Introducing evidence about non-victims' positive experiences would necessitate mini-trials about the circumstances of each witness's involvement with OneTaste, their psychological vulnerabilities, financial situations, and other factors that shaped their experiences—substantially wasting time and confusing the issues.

      But such testimony was elicited at length by counsel for Ms. Cherwitz yesterday from a non-victim, resulting in a cross-examination that has already substantially outlasted the witness's direct and veered far afield from his direct examination.[2] See, e.g., Tr. 898: 6-10 ("Q:

---

[1] If the trial continues at its current pace, it is likely to last substantially longer than what was represented to the jury. The government is currently assessing its order of proof in order to cut and streamline where possible.

[2] Counsel for Ms. Cherwitz's cross-examination of the first witness was also as long or longer than the direct examination.

Were you in a wig at the Halloween party? A: Yes. Q: Were you laughing and having fun? A: I was definitely laughing. I don't know if it was fun or embarrassment."); Tr. 901:19-21 (beginning with, "Q: Is it fair to say that while you were at OneTaste in 2007, you had positive views about your experience there? A: Yeah, that's fair to say." and then continuing on this line of questioning for five more pages); Tr. 879:9-10 (asking re "[Y]ou found it really fascinating about humans being actual humans, right?"); see also Tr. 891 (attempting to offer pictures of unidentified individuals having fun); Tr. 894-896 (questioning re book store and café; Court sustaining multiple objections to testimony about a Halloween party and witness's wife teaching naked yoga classes). There was also considerable time spent laying the foundation to impeach the witness regarding his prior statements on these topics although his testimony was not inconsistent with his prior statements. See, e.g., Tr. 898:22 ("Q: Is it fair to say that you also had a lot of positive things to say about your time at OneTaste while you were there? A: Yes, of course. Q: All right. In particular, you spoke on video about your time at OneTaste in 2007; do you recall that? A: No. Actually, I forgot all about that. Q: Okay. But do you recall it now? . . . [continuing to refresh with audio clip].").

Such protracted questioning has not yielded proportionate probative value. Rather, it has unnecessarily prolonged proceedings while frequently venturing into tangential or irrelevant matters. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "The scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Rosa, 11 F.3d 315, 335 (2d Cir.1993); see United States v. Whitten, 610 F.3d 168, 182–83 (2d Cir. 2010). Given the record thus far, the Court would be well within its discretion to impose reasonable time limits on cross-examination. See Fed. Rule of Evid. 611(a). Such limitations would promote efficiency and focus the jury's attention on relevant matters without impairing the defendants' Sixth Amendment rights. See United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) (upholding limitation on defense cross-examination).

For these reasons, the government respectfully requests that the Court prohibit or substantially curtail defense questioning of non-victim witnesses regarding whether they enjoyed their time at OneTaste and OneTaste's operations and offerings and, to the extent necessary, impose reasonable time limits on cross-examination pursuant to Rule 611(a).

**The Defense Position**

The government seeks to limit the defense cross-examination of government witnesses. For the reasons more fully described in the defense motion for a mistrial filed this evening, the defense has been saddled with an extremely cumbersome process through which it must cross-examine government witnesses about their contemporaneous statements that go to the heart of the defense, including asking witnesses one-by-one about their prior statements and their demeanor while making those statements. If the Court does not declare a mistrial, it should admit the video, audio and photographic evidence of contemporaneous witness statements and demeanor, which will significantly speed up cross-examination.

Moreover, with respect to Mr. Hubbard, in particular, the government elicited extremely broad testimony on direct examination—over repeated defense objections—about his

2

time at OneTaste, including his supposedly negative views of OneTaste's "culture," which the defendants supposedly "used to control the community."  *See, e.g.*, Tr. 830 ("Q: Based on your personal experience and observations, what affect did the in/out game have on the culture at OneTaste?  A: It was one of the aspects of the culture of OneTaste.  And it was, in my opinion, just one of the many ways that we were used to control the community."); Tr. at 842 (Q: "Mr. Hubbard, you testified that you had concerns about the culture of OneTaste?  What concerns did you raise specifically? A: Going back early one of my, one of the things—one of the ideas I was trying to get convey is that you only to people's yes if they have a free no.  If somebody can't freely say no, then they also can't freely say yes, they can't consent…"); Tr. at 844 (Q: "What concerns, if any, did you express to Nicole Daedone? A: I expressed a concern about trying to force people to do stuff as opposed to encouraging or enrolling them to do stuff.").  The government also elicited general testimony about the OneTaste "community" and supposed practices in that community used to "manage the community."  Tr. at 832; *see, e.g.*, Tr. at 827-828.

The defense agrees that Mr. Hubbard's views on OneTaste's culture were entirely irrelevant and it objected; however, now that the government has opened the door with this incredibly broad testimony, the defense is entitled to contradict and rebut that testimony with evidence showing that Mr. Hubbard held a positive view of OneTaste and its culture at the time. The government does not get to elicit a one-sided negative view of OneTaste's culture, and then complain when the defense elicits testimony about the positive nature of OneTaste's culture. Moreover, the government complains about delays in cross-examination, yet it ignores the delays that it caused during Mr. Hubbard's direct testimony by repeatedly asking him improper questions and eliciting improper testimony.  Indeed, the Court sustained 27 objections during his direct testimony.  The defense, of course, will continue to work to streamline its cross-examinations if trial progresses, but the breadth of the testimony on direct and the improper exclusion of impeachment evidence to date have made that challenging.

There is no basis to limit cross-examination at this point, and the defense objects on Sixth Amendment grounds to the government's effort to preclude the defense from cross-examining witnesses about the broad topics, such as OneTaste's culture, that it elicits during direct testimony of its witnesses.  If the government would like to preclude further cross-examination of Mr. Hubbard, then the defense requests that the Court strike his entire testimony as irrelevant under Federal Rules of Evidence 401 and 403.

    Respectfully submitted,

    JOSEPH NOCELLA, JR.
    United States Attorney

By:    /s/
    Kayla C. Bensing
    Kaitlin T. Farrell
    Nina C. Gupta
    Sean M. Fern
    Assistant U.S. Attorneys
    (718) 254-7000