

BONJEAN
LAW GROUP, PLLC

233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

December 29, 2025

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Cherwitz, et al.*
Criminal Docket No. 23-146 (DG)

Dear Judge Gujararti:

The government seeks a forfeiture money judgment in the sum of $12,000,000 along with two of Ms. Daedone's bank accounts, the balances of which it seeks to credit against any money judgment the Court imposes. The government argues generally that: (1) the entire sale price of OneTaste is traceable to the offense of forced labor conspiracy, and (2) that the corporate entity itself was an instrumentality of the forced labor conspiracy. Both arguments lack merit. The government fails to provide a sufficient nexus between the forced labor conspiracy and the sale proceeds of OneTaste, and a company cannot, as a matter of law, be forfeited as an "instrumentality" under the § 1594(d). Even if the government's arguments had merit, a $12M personal judgment award constitutes an excessive fine in violation of the Eighth Amendment.

I. A Forfeiture Money Judgment Is Not Authorized by the Applicable Statute.[1]

The government seeks a forfeiture judgment pursuant to 18 U.S.C. § 1594(d) and 1594(e)(1). Forfeiture money judgments are not authorized by those statutes. Where – as here – the text of the statutes at issue do not explicitly provide for a forfeiture money judgment, courts lack the power to impose one. *See, e.g., United States v. Nejad,* 933 F. 3d 1162, 1164-65 (9th Cir. 2019) ("The criminal forfeiture statutes at issue . . . lack any textual basis for imposing a personal money judgment.") *United States v. Surgent,* No. 04-CR-364 (JG), 2009 WL 2525137 at *5-16 (E.D.N.Y. Aug. 17, 2009) (holding that neither § 982 nor § 853 authorize forfeiture of money judgments discussing flawed reasoning of decisions imposing such judgments; observing that "Congress knows how to explicitly authorize" a forfeiture of money when is desires to.)

[1] Daedone recognizes that current Circuit law forecloses this argument but preserves the issue for review.




233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

II. The $12 Million Received from the Sale of OneTaste Does Not Constitute "Proceeds" of Ms. Daedone's Conviction.

The government opines that the $12M Daedone received from the sale of OneTaste constitutes proceeds of the forced labor conspiracy and that her specific account holdings are traceable to the $12M. As the government concedes, Fed. R. Crim. P. 32.2 requires the government to prove a nexus between the property and the offense of conviction. The government has failed to demonstrate with sufficient evidence that any of the $12M received from the sale of OneTaste is attributable to the forced labor conspiracy, let alone the entire amount.

As the Second Circuit has held "forfeiture is gain based." *United States v. Torres,* 703 F. 3d 194, 203 (2d Cir. 2012) "Congress's intent [is] that forfeiture proceedings be used to recover all of the [defendant's] ill-gotten gains but *not* to seize legitimately acquired property." *United States v. Daugerdas,* 892 F. 3d 545, 548 (2d Cir. 2018). In contrast to their pre-conviction thesis which was "that the defendants' scheme targeted only a group of OneTaste participants and not all individuals associated with OneTaste" (Dkt. No. 169 at 19), the government now opines that not a single dollar of monies paid to Daedone for the sale of the company was legitimately earned. The government makes this claim in summary fashion making no attempt to show a nexus between the $12M and the actual offense of conviction. For example, the government makes sweeping and conclusory statements that because certain witnesses were "coerced" into being a handler for Reese Jones, an investor in OneTaste, it follows that OneTaste's entire valuation and ability to command a $12M sale was derived from the "sexually exploitive practices." This argument is factually and legally wrong.

For starters, only three of the government's witnesses testified to being sexually involved with Jones compared to the 150 employees and over 300 ICs over the 13 years from OneTaste's formation in 2004 to its sale in 2017. Importantly, the government grossly mischaracterizes the record by claiming that the so-called "handlers" were compelled to engage in sexual activities with Jones whose capital funded OneTaste's early expansion. No witness testified that they were "compelled" to serve as a handler for Jones. In fact, two women (Berkely and Gill) testified that they expressly consented to being Jones' handler. *See* Tr. Tr. 1571: 5-23. 1627:6-11, 1629: 2-5. For Wright's part, she conceded that she too agreed to serve as Jones's handler even if she felt manipulated into the position. *See* Tr. 2567:11-17, 2568:16-17, 2632:11-25. In short, every witness who testified acknowledged that they participated in OneTaste knowingly and voluntarily. *See* Tr. 589:16-18, 1185:22–25, 1392:1–3, 1826:2–7, 1892:19-25, 2230:21–23, 2817:11–15, 2821:17, 3108:12–3109:1, 3147:1–3, 4025:20–23. The government continues to claim




233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

that Wright, Berkely, and Gill were "coerced" but have no jury verdict to rest that assumption on and are simply redefining the word to its liking.

Facts aside, even assuming – contrary to Wright's testimony- that she felt compelled to serve as a handler for Reese Jones, the government's claim that "OneTaste would have collapsed absent the conspiracy" is speculative to the absurd, finding no concrete support in the record. There is not a shred of evidence that the company would have crumbled without Jones's investment, that other investments could not be secured, or even that Jones's investment was conditioned on any sexual services. Indeed, Jones refuted that assumption during his grand jury testimony. Just by way of example, ample evidence exists showing that OneTaste had access to other funding sources, including from Ippolita Rostagno who loaned the company a total of $500,000 on commercial terms, $250,000 in November 2012 and a further $250,000 in October 2013. This Court cannot simply credit the government's baseless claim that OneTaste would have "collapsed" if the three government witnesses were not Jones's handlers without affording Ms. Daedone the opportunity to present evidence to the contrary, including expert testimony.

The government cites *United States v. Peters,* 732 F. 3d 93 (2d Cir. 2013) for the proposition that "proceeds" in the context of § 1594 includes receipts and is not limited to profits. But *Peters* is inapt. There, the Second Circuit made clear that its interpretation of "proceeds" was limited to the particular forfeiture statute at issue—and that the term may well have a different meaning in other forfeiture statutes—such as § 1594. *See id.* at 99 ("The term 'proceeds'…has not acquired a common meaning in the provisions of the Federal Criminal Code.... Congress has defined 'proceeds' in various criminal provisions but sometimes has defined it to mean 'receipts' and sometimes 'profits.') (cleaned up). There is nothing in the text of § 1594 that suggests that this Court should construe proceeds as receipts rather than profits. The government further argues application of a "but for" standard, claiming the standard is routinely applied to cases like the instant one yet it cites to only one where this purported standard is found in a single footnote.

At bottom, the court must find a nexus between the "ill-gotten gains" and the offense of conviction. The government has fallen short. Apart from stating the obvious, that is, Ms. Daedone sold OneTaste for $12M and Ms. Daedone was convicted of forced labor conspiracy, the government has failed to connect the dots. There are no "proceeds" from the sale that can be traced to the forced labor conspiracy in any identifiable way. As the government itself acknowledged (Ltr. 5), rank speculation does not suffice.

In keeping with its pattern, the government treats this case as a vast fraudulent




233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

enterprise, attempting to recharge and prove a fraud or RICO enterprise *after* conviction. The government needs to be reminded that it neither charged nor convicted the defendants of any fraud offense. In fact, the government never charged or proved forced labor. The government must do more than summarily claim that the entire sale amount of OneTaste was attributable to the forced labor conspiracy to establish the requisite nexus. OneTaste had over 150 employees over the course of the alleged conspiracy the jury heard from a handful of people, some of whom were associated with OneTaste for barely a year, and some of whom never worked for OneTaste but were part of the larger community. The government's contention that some of the women who testified at trial were underpaid, does not *ipso facto* establish a nexus between the forced labor conspiracy and the monies contained in Daedone's bank accounts; it certainly does not justify a $12M personal money judgment against Daedone.

*United States v. James,* 151 F. 4th 28 (2005), is highly instructive. There, the defendant was convicted, *inter alia,* of conspiracy to commit health care fraud, and wire fraud. The government argued that the defendant should forfeit $63 million which represented the defendant's total business revenues. The defendant objected, arguing that the forfeiture amount should be limited to the portion of the revenues attributable to the fraud. *Id.* at 48. The trial judge granted the government's motion, stating that the "gain to [the defendant] was a minimum of $63 million." *Id.*

The Second Circuit sided with the defendant, acknowledging that courts "may use general points of reference as a starting point for a forfeiture calculation and make reasonable extrapolations" but finding that the District Court provided little to no permissible justification for the forfeiture award. The Second Circuit expressed disapproval of the District Court's failure to attempt to calculate the percentage of the submitted claims tainted by fraud or to determine whether partially fraudulent claims were subject to forfeiture and emphasized that "[a]ny forfeiture must be tailored to ill-gotten gains." *Id.* The Second Circuit rejected the government's argument that the defendant's medical-billing business was "permeated with fraud" where the District Court made no such finding – and where, as here, "evidence at trial showed that [the defendant] earned revenue derived from completely legitimate" sources. *Id.* The *James* court vacated the forfeiture order and remanded the cause with instructions for the District Court to recalculate the amount of forfeiture "making specific findings justifying the final amounts, and excluding from its calculation all revenue derived from [the defendant's] legitimate claims." *Id.*

The government is inviting this Court to commit precisely the same error at issue in *James.* The government has not explained to this Court what methodology it should




233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

employ to calculate the amount of forfeiture. As a reminder, the jury found a single instance where Ms. Daedone agreed to procure unlawful labor; the government made it crystal clear to the jury that that was all it was required to find. The jury verdict, along with the testimony of a handful of alleged victims, does not lead to a showing that every dollar of OneTaste's value was the product of forced labor. Because the government has not identified any methodology used to reach its proposed forfeiture award, Ms. Daedone has been denied the opportunity to meaningfully respond to the government's arguments. If the Court is inclined to entertain the government's arguments, Ms. Daedone is entitled to an evidentiary hearing and should be afforded the opportunity to retain an expert to rebut any calculation the government reaches. Presently, Ms. Daedone remains in the dark about how the government reached the conclusion that a $12M forfeiture order is justified.

Just by way of example, nearly all the alleged victims worked for OneTaste before 2014 when the company was valued at the time of the co-founder Rob Kandell's departure. At that time the company was valued at $2,727,272 (Kandell received $1.35 million for his 49.5% share). Between July 2014 and the sale of the company in March 2017 none of the government's witnesses worked for the company. Anthia Gillick and Michal Neria worked for an independent company OneTaste NYC LLC and Lyndsi Keves worked for OneTaste after the company sale, so none of their efforts could be logically said to improve the value of OneTaste. These facts must be considered in determining whether the entire value of the company was a product of the forced labor conspiracy.

In short, based on the current record, this Court has no authority to enter a forfeiture award for the entirety of the sale amount of OneTaste. Ms. Daedone is minimally entitled to understand *in advance* of any sentencing hearing what methodology the court will apply in making this determination since the government has offered nothing more than summary conclusions.

III. There Is No Authority for the Government's Unprecedented Argument that the Entire $12M of Sale Proceeds Is Forfeitable Because OneTaste Was an "Instrumentality" of the Forced Labor Conspiracy.

The government argues that because OneTaste was a "vehicle" through which Ms. Daedone carried out her forced labor conspiracy, the company itself, and the proceeds from the sale of that company should be forfeited. There is no authority statutory or otherwise, that supports this novel argument. Indeed, the text of § 1594(d)(1) and (e)(1) refutes it. While the statute permits the government to forfeit "property, real or



BONJEAN
LAW GROUP, PLLC

233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

personal" as an instrumentality, a company is *not* property as contemplated under the statute. Even the authority cited by the government makes this point.

In every case cited by the government, the court ordered forfeited specific, concrete property such as houses or phones that were *used* to carry out the offense. For example, in *United States v. Sabhnani,* 599 F. 3d 215 (2d Cir. 2010), the defendants were convicted of forced labor and illegal harboring of aliens in connection with holding two domestic servants in a condition of peonage in their home under severe conditions (e.g. the two victims passports had been confiscated, they were undocumented aliens, did not speak English, had a first grade education and were forced to work under threats that their children in Indonesia would be murdered and actual punishments such as slashing with knives, beating with brooms and being made to eat their own vomit). The District Court determined that the entire house was subject to forfeiture because the *property* was used to facilitate the commission of the crimes, that is, the house was used to conceal the women and was the property that the servants were forced to clean.

The government has pointed to no specific property that was used to carry out the forced labor conspiracy and instead repackages its other baseless arguments that the entirety of OneTaste is tied to the alleged criminality. Again, this blunderbuss approach is directly contrary to Second Circuit precedent. *See James*, 151 F.4th at 47 (noting the basic principle that 'forfeiture is gain based'")

The government's absurd contention that all of OneTaste was an instrument of criminality is an altogether different thing than an argument that a specific piece of property having been used to carry out particular criminal conduct. The forfeiture statute envisions the latter not the former. There is simply no authority for the unprecedented claim that "property" under the statute can mean an entire company absent particularized evidence that each and every part of the company was used to commit the alleged criminal acts—and the government doesn't even attempt to present any such evidence here. Indeed, if the government's argument had merit, it would mean that every company involving a fraud would automatically be subject to forfeiture in its entirety. Unsurprisingly, the government has failed to point to a single case where a court has forfeited an entire company, or the value of an entire company, that was allegedly used to commit forced labor or fraud.

IV. A $12M Personal Money Judgment Would Be Unconstitutionally Excessive.

If a forfeiture can be characterized as punitive, a court must consider "whether the forfeiture is unconstitutionally excessive." *United States v. Viloski*,




233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

814 F.3d 104, 110 (2d Cir. 2016). In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Supreme Court "emphasize[d] that the Excessive Fines Clause grew out of the English constitutional tradition, including Magna Carta, which required that a fine 'should not deprive a wrongdoer of his livelihood.'" *Viloski*, 814 F.3d at 111. This Court has held that, in appropriate cases, courts should consider "[w]hether a forfeiture would destroy a defendant's livelihood" in addition to the non-exhaustive Bajakajian factors, because "hostility to livelihood-destroying fines is deeply rooted in our constitutional tradition." *Id.* at 111-12.

Here, there can be no doubt that the forfeiture imposed will destroy Daedone's future livelihood, given the size of the judgment. In addition to the excessive term of imprisonment the government seeks to subject Daedone to, the government also seeks to destroy Daedone's ability to support herself if she is ever released from prison. A $12M personal money judgment would unquestionably be ruinous.

V. Conclusion

For the foregoing reasons, no order of forfeiture is justified where the government has failed in all respects to demonstrate a nexus between the offense of conviction and any amount of the proceeds from the $12M sale of OneTaste. The government's argument rests entirely on speculation and summary conclusions devoid of factual support. Moreover, the government's "instrumentality" theory is dead on arrival where OneTaste is not forfeitable *property* as imagined by § 1594. A $12M personal judgment award would unquestionably amount to an excessive fine in violation of the Eighth Amendment. At the very least, Ms. Daedone is entitled to understand what methodology the government proposes, and the Court intends to apply in determining whether a personal money judgment forfeiture order is justified so that she can defend against it, including through the use of expert evidence.

Sincerely,

/s/JENNIFER BONJEAN